No. 21-2683

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT

_____

JANAY E. GARRICK,

Plaintiff-Appellee,

v.

THE MOODY BIBLE INSTITUTE OF CHICAGO,

Defendant-Appellant.

_____

On Appeal from the United States District Court
for the Northern District Of Illinois
No. 1:18-cv-00573, John Z. Lee, Judge

_____

JURISDICTIONAL MEMORANDUM
OF THE MOODY BIBLE INSTITUTE OF CHICAGO

_____

Christian M. Poland
Bryan Cave Leighton Paisner LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601-3315
312-602-5000
Fax: 312-602-5050
christian.poland@bclplaw.com
*Counsel for Defendant-Appellant*

604205984.2

TABLE OF CONTENTS

I.      INTRODUCTION ...................................................................................................1

II.     FACTUAL AND PROCEDURAL BACKGROUND........................................3

III.    ARGUMENT .........................................................................................................6

        A.    This Court Has Jurisdiction Under the Collateral Order Doctrine .........6

              1.    The Religious Autonomy Defenses Asserted by Moody Prohibit the Court
                    from Engaging in Its Planned Adjudication of Garrick's Allegations of
                    Pretext (and Her Claims Generally).........................................................7

              2.    The Rejection of Moody's Immunity from Discovery Will Be Effectively
                    Unreviewable After Final Judgment.......................................................12

                    a.    The First Amendment's Protection of Religious Autonomy Guards
                          Against Not Only Liability But Also Unnecessary Discovery and
                          Trial, Providing a Form of Immunity from Suit ..........................12

                    b.    The District Court's Orders, Which Open This Matter Up for
                          Discovery and Possibly Trial, Deprive Moody of Its Right to Be
                          Free from Judicial Intrusion, Which Is an Issue Effectively
                          Unreviewable After Final Judgment..............................................15

              3.    The District Court's Orders Conclusively Rejected Moody's Immunity
                    from Discovery ........................................................................................16

              4.    The Denial of the Immunity Flowing from Moody's Religious Autonomy
                    Defenses is Collateral to the Merits of Garrick's Claims ........................17

              5.    This Court's Prior Collateral Order Decisions in the Religious Autonomy
                    Context Confirm that the Court Has Jurisdiction ....................................19

IV.     CONCLUSION...................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Abney v. United States*,
    431 U.S. 651 (1977)...........................................................................................................14

*Alicea-Hernandez v. Catholic Bishop of Chi.*,
    320 F.3d 698 (7th Cir. 2003) ................................................................8, 10, 11, 13

*Argyropoulos v. City of Alton*,
    539 F.3d 724 (7th Cir. 2008) ...................................................................................9

*Behrens v. Pelletier*,
    516 U.S. 299 (1996)...................................................................................14, 17

*Blair v. Equifax Check Servs., Inc.*,
    181 F.3d 832 (7th Cir. 1999) ...................................................................................5

*Bryce v. Episcopal Church in the Diocese of Colo.*,
    289 F.3d 648 (10th Cir. 2002) ...................................................................... *passim*

*Catholic High School Ass'n of the Archdiocese v. Culvert*,
    753 F.2d 1161 (2d Cir. 1985)...................................................................................11

*Cohen v. Beneficial Indus. Loan Corp.*,
    337 U.S. 541 (1949)...................................................................................................6

*Conlon v. InterVarsity Christian Fellowship*,
    777 F.3d 829 (6th Cir. 2015) .................................................................................13

*Curay-Cramer v. Ursuline Academy*,
    450 F.3d 130 (3d Cir. 2006)...................................................................................8

*Demkovich v. St. Andrew the Apostle Parish*,
    3 F.4th 968 (7th Cir. 2021) ..............................................................5, 7, 10, 13, 20

*Fratello v. Archdiocese of N.Y.*,
    863 F.3d 190 (2d Cir. 2017)...................................................................................11

*Garrick v. Moody Bible Institute*,
    412 F. Supp. 3d 859 (N.D. Ill. 2019) ......................................................................4

*Grussgott v. Milwaukee Jewish Day School, Inc.*,
    882 F.3d 655 (7th Cir. 2018) ...................................................................................8

ii

*Guerrero-Lasprilla v. Barr*,
    __ U.S. __, 140 S. Ct. 1062 (2020).......................................................................18

*Hanson v. LeVan*,
    967 F.3d 584 (7th Cir. 2020) ................................................................7, 14, 17, 18

*Harris v. Matthews*,
    643 S.E.2d 566 (N.C. 2007)...............................................................................12

*Heard v. Johnson*,
    810 A.2d 871 (D.C. 2002) ..................................................................................12

*Herx v. Diocese of Ft. Wayne–S. Bend, Inc.*,
    772 F.3d 1085 (7th Cir. 2014) .......................................................................19, 20

*Hosanna-Tabor Evangelical Lutheran Church and Sch. v. EEOC*,
    565 U.S. 171 (2012)....................................................................................*passim*

*Kirby v. Lexington Theological Seminary*,
    426 S.W.3d 597 (Ky. 2014) ................................................................................12

*Korte v. Sebelius*,
    735 F.3d 654 (7th Cir. 2013) ..............................................................................12

*Lee v. Sixth Mount Zion Baptist Church*,
    903 F.3d 113 (3d Cir. 2018)..........................................................................11, 13

*Marceaux v. Lafayette City-Parish Consol. Gov't*,
    731 F.3d 488 (5th Cir. 2013) ................................................................................6

*McCarthy v. Fuller*,
    714 F. 3d 971 (7th Cir. 2013) ......................................................................*passim*

*Meyers v. Oneida Tribe of Indians of Wisc.*,
    836 F. 3d 818 (7th Cir. 2016) ............................................................................18

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985)....................................................................................*passim*

*Myhre v. Seventh-Day Adventist Church Reform Movement Am. Union Int'l
    Missionary Soc'y*, 719 Fed. App'x 926 (11th Cir. 2018)......................................11

*Nixon v. Fitzgerald*,
    457 U.S. 731 (1982)......................................................14 BA_Cite_563433_000101

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
    __ U.S. __, 140 S. Ct. 2049 (2020).................................................................*passim*

*Petruska v. Gannon Univ.*,
   462 F.3d 294 (3d Cir. 2006)...............................................................11, 12

*Plumhoff v. Rickard*,
   572 U.S. 765 (2014)...........................................................................6, 14, 16

*Presbyterian Church (U.S.A.) v. Edwards*,
   566 S.W.3d 175 (Ky. 2018) ............................................................12

*Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*,
   506 U.S. 139 (1993) ............................................................14

*Rweyemamu v. Cote*,
   520 F.3d 198 (2d Cir. 2008)............................................................11

*Sell v. United States*,
   539 U.S. 166 (2003) ............................................................6

*Sterlinski v. Catholic Bishop of Chi.*,
   934 F.3d 568 (7th Cir. 2019) ............................................................10

*Tomic v. Catholic Diocese of Peoria*,
   442 F.3d 1036 (7th Cir. 2006) ............................................................13

*United Methodist Church v. White*,
   571 A.2d 790 (D.C. 1990) ............................................................13

*Whole Woman's Health v. Smith*,
   896 F.3d 362 (5th Cir. 2018) ............................................................12, 16

**Statutes**

20 U.S.C. § 1681 et seq.............................................................................3, 4

28 U.S.C. § 1291..........................................................................................6, 20

28 U.S.C. § 1292(b) ......................................................................................5, 20

42 U.S.C. § 2000e et seq.............................................................. *passim*

**Rules**

Fed. R. App. P. 4(a)(4)(A) .........................................................................5

Fed. R. App. P. 26(a) ...................................................................................6

Fed. R. Civ. P. 12........................................................................................2, 4, 18

Fed. R. Civ. P. 12(b)(1)...............................................................................11

Fed. R. Civ. P. 12(b)(6)........................................................................................7, 8, 11, 17

**Other Authorities**

First Amendment to the U.S. Constitution.............................................................. *passim*

I.    INTRODUCTION

This case involves an attempt to hold Defendant-Appellant, The Moody Bible Institute of Chicago ("Moody"), liable for its religiously based decision not to renew the faculty employment contract of Plaintiff-Appellee, Janay Garrick ("Garrick"), who was in admitted disagreement with Moody's Doctrinal Statement, with which all faculty members must agree. This Court has jurisdiction over this appeal pursuant to the collateral order doctrine.

Moody is a pervasively religious institution whose mission is to train students for Christian ministry. All of its faculty members serve key religious roles in training the next generation of Christian leaders. To preserve Moody's religious distinctives and mission, all faculty members must annually certify that they believe and will support, without qualification, Moody's Doctrinal Statement, which is its statement of core religious beliefs. One such belief is Moody's view that the Bible teaches that certain head pastoral roles in the local church are reserved for men. When Garrick became vocal about her disagreement with Moody's views on the role of women in pastoral roles, Moody decided it could not renew her faculty contract, and communicated that decision to her in writing.

Garrick sued, alleging that her nonalignment with Moody's Doctrinal Statement was not the "real" reason for her separation, but that instead sex discrimination and retaliation were. Moody moved to dismiss Garrick's claims based on the religious-autonomy doctrines derived from the Free Exercise and Establishment Clauses of the First Amendment. Together, the Religion Clauses protect the right of religious groups to make religiously-based employment decisions free from intrusive civil discovery and secular court adjudication of the propriety of those religious decisions.

1

In the orders from which Moody appeals, the district court refused to dismiss Garrick's employment discrimination claims. Despite the facts that were apparent from the pleadings, which established Moody's religious nature, Garrick's religious role, Moody's religious requirements, and Garrick's nonalignment with those religious requirements, the district court held that Moody was not entitled to dismissal under Rule 12 because Garrick alleged that Moody's stated religious reason for Garrick's separation was "pretext" for sex discrimination and retaliation.

The district court's decisions require this matter to move forward into civil discovery and likely to an eventual jury trial on whether Moody's motives were in fact religious motivations or were instead secular motives of discrimination or retaliation. But permitting discovery and trial based on pretext is impermissible under the First Amendment Religion Clauses, and permitting this case to proceed past the pleading stage deprives Moody of its right not to be subject to intrusive discovery and judgment by a secular court regarding its religious decisions.

Interlocutory review is therefore available because (1) the district court's orders conclusively determine that entangling discovery may proceed, with the possibility of trial looming, (2) whether Moody is immune from discovery and trial is an issue conceptually distinct from the merits of Garrick's claims, and (3) once Moody is subject to discovery (which Moody contends is constitutionally prohibited), its loss of immunity is effectively unreviewable on appeal from a final judgment because the intrusion on Moody's religious decisionmaking cannot be undone. This Court's precedents, pertaining to both religious adjudications and qualified immunity generally, establish that this Court has jurisdiction to hear Moody's appeal.

II.     FACTUAL AND PROCEDURAL BACKGROUND

Moody is a religious institution that trains students for Christian ministry.  (Dkt. 97 [Pl.'s 2d Am. Compl.] at 1 [¶ 1], 34.)[1]  In April 2017, Moody communicated to Garrick that it would not be renewing her faculty contract because of her admitted nonalignment with Moody's Doctrinal Statement, with which every Moody faculty member must agree.  (Dkt. 97 at 18 [¶ 80], 19 [¶ 84-85], 22 [¶ 96], 34, 36.)

On January 28, 2018, Garrick filed her initial Complaint against Moody, alleging retaliation in violation of Title IX of the Education Amendments of 1972 (20 U.S.C. § 1681 et seq.) ("Title IX").  (Dkt. 1.)  Moody moved to dismiss the original Complaint (Dkt. 19), but before the district court had ruled on Moody's motion, Garrick filed a First Amended Complaint ("FAC").  In her FAC, Garrick alleged discrimination and retaliation in violation of both Title IX and Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) ("Title VII") and breach of contract.  (Dkt. 67.)

Moody filed a motion to dismiss Garrick's entire FAC, arguing that its religious autonomy defenses, the factual support for which was apparent from the pleadings,[2] barred all of Garrick's claims.  The district court granted Moody's motion in full.  Noting that "the overarching principle of religious autonomy . . . may require dismissal where a religious employer offers a religious justification for the adverse action or where the claim will otherwise pose too much intrusion into the religious employer's Free Exercise and Establishment Clause rights," the district court properly held that because "Moody's alleged reasons for firing Garrick were rooted firmly in its religious beliefs" and because "delv[ing] into the disputes posed by

_____

[1] All references to "Dkt." herein are to the docket in the underlying district court matter, No. 1:18-cv-00573 in the U.S. District Court for the Northern District of Illinois.

[2] Moody relied on the allegations of Garrick's FAC, the FAC's exhibits, and certain other documents that the district court could properly consider on a motion to dismiss.

Garrick . . . would impermissibly inject the auspices of government into religious doctrine and governance," Garrick's claims were barred by the church autonomy doctrine.[3]  *Garrick v. Moody Bible Institute*, 412 F. Supp. 3d 859, 871-72 (N.D. Ill. 2019) (cleaned up).  But the district court dismissed without prejudice and gave Garrick leave to amend certain of her claims.  *Id*. at 872.

Garrick's Second Amended Complaint ("SAC") dropped her Title IX and contract claims, but re-alleged her sex discrimination and retaliation claims under Title VII.  (*See* Dkt. 97.)  Moody moved to dismiss the SAC under Rule 12, again asserting its religious-autonomy defenses under the First Amendment Religion Clauses.  (Dkt. 101, 103, 113.)  As before, Moody argued that Garrick's suit had to be dismissed because the district court had no authority to adjudicate discrimination claims brought against Moody, a religious school, by a faculty member who served in religious roles, regarding a religiously motivated decision to terminate her employment.

In a memorandum and order dated October 13, 2020, the district court granted in part, but denied in part, Moody's motion to dismiss.  (Dkt. 126.)  It permitted Garrick's claims of discriminatory and retaliatory termination to proceed because, the court said, Garrick's SAC alleged that Moody's stated religious reason for her separation was "pretextual," i.e., not the "real" reason for the nonrenewal of her contract.  (*See id*. at 1-2, 9-14.)  Even though adjudicating whether Moody's stated reason was "pretextual" would directly involve intrusive discovery about, and entangle the district court (both judge and jury) in adjudicating, a religious body's "true" intentions and motives, the district court held that the constitutional religious-

---

[3] The district court held that it could not grant Moody's motion to dismiss based on the "ministerial exception" (which is a particular doctrine within the constitutional protections of religious autonomy) because the ministerial exception is an affirmative defense and "the allegations of the [FAC] do not conclusively demonstrate that Garrick falls within the ministerial exception."  412 F. Supp. 3d at 871.  But, as stated, the district court found that church autonomy principles generally barred all of Garrick's claims in her FAC.  *Id*. at 871-72.

autonomy doctrines do not bar adjudication of pretext.  (*See id.* at 9-14.)  Such decision was contrary to both Supreme Court and Seventh Circuit decisions.  The decision was also inconsistent with the district court's prior dismissal of Garrick's FAC, because the FAC had also alleged that Moody's religious reasons were "pretextual" (*see* Dkt. 67 ¶¶ 64, 76, 110(f), 129), the issue that the district court now believed saved Garrick's claims from dismissal.

On October 27, 2020, Moody filed a timely motion for reconsideration of the district court's partial denial of its motion to dismiss the SAC.[4]  (Dkt. 128, 129.)  Moody explained that the First Amendment Religion Clauses prohibit a court from permitting litigation of, or adjudicating, employment discrimination claims against religious employers by religious employees over religiously motivated decisions, notwithstanding a plaintiff's allegation that the religious employer's stated religious reason was "pretextual" (an allegation that virtually any plaintiff could make).  (*See* Dkt. 128, 133.)

On August 12, 2021, the district court denied Moody's motion to reconsider.  (Dkt. 134.)  Among the errors committed, the district court's decision completely ignored this Court's en banc decision in *Demkovich v. St. Andrew the Apostle Parish*, 3 F.4th 968, 981 (7th Cir. 2021), and in fact relied on the *reversed* district court decision in *Demkovich* and the *vacated* panel decision in *Demkovich*.  (*See* Dkt. 134 at 3, 7, 8 & n.4.)  The district court also denied Moody's request that it certify for interlocutory appeal pursuant to 28 U.S.C. § 1292(b) the district court's conclusion that the religious autonomy doctrines present no bar to the adjudication of pretext.  (*See* Dkt. 128 at 14-15; Dkt. 134 at 9-10.)

---

[4] Moody's motion for reconsideration, which was filed 14 days after the district court's October 13, 2020 decision, tolled the time period in which Moody had to appeal that decision until 30 days after the ruling on Moody's motion to reconsider.  *See Blair v. Equifax Check Servs., Inc.*, 181 F.3d 832, 8837 (7th Cir. 1999); *cf.* Fed. R. App. P. 4(a)(4)(A).

On September 13, 2021, Moody filed a timely Notice of Appeal.  (Dkt. 142.)  (Because the thirtieth day after the district court's August 12, 2021 ruling was Saturday, September 11, Moody's Notice of Appeal was timely when filed on September 13.  *See* Fed. R. App. P. 26(a).)

III.     ARGUMENT

    *A.     This Court Has Jurisdiction Under the Collateral Order Doctrine*

Courts of appeal have jurisdiction over appeals of "all final decisions of the district courts of the United States." 28 U.S.C. § 1291.  This includes certain prejudgment, collateral orders resolving rights that are "too important to be denied review and too independent of the cause [of action] itself to require that appellate consideration be deferred."  *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949).  The first, and "major," characteristic of an appealable collateral order is that, if the order is not "reviewed before the proceedings terminate, it can never be reviewed at all."  *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985) (cleaned up).  After that, "[a]n appealable interlocutory decision must satisfy two additional criteria:  it must conclusively determine the disputed question, and that question must involve a claim of right separable from, and collateral to, rights asserted in the action."  *Id*. at 527 (cleaned up).  Under this three-part test, qualifying collateral orders include those that involve a party's "entitlement not to stand trial or face the other burdens of litigation," *id*. at 526, and those that implicate compelling interests of a constitutional dimension, *see, e.g., Sell v. United States*, 539 U.S. 166 (2003) (privacy).  The application of these principles was summarized in *Plumhoff v. Rickard*, 572 U.S. 765 (2014):

> Qualified immunity is an immunity from suit rather than a mere defense to liability. As a result, pretrial orders denying qualified immunity generally fall within the collateral order doctrine. This is so because such orders conclusively determine whether the defendant is entitled to immunity from suit; this immunity issue is both important and completely separate from the merits of the action, and this question could not be effectively reviewed on appeal from a final judgment

because by that time the immunity from standing trial will have been irretrievably lost.

Id. at 771-72 (cleaned up and citations omitted).

This Court's decisions properly follow the well-settled Supreme Court precedent. *See, e.g.*, *Hanson v. LeVan*, 967 F.3d 584 (7th Cir. 2020) (appellate court has collateral order jurisdiction to review denial of Rule 12(b)(6) motion asserting qualified immunity defense); *McCarthy v. Fuller*, 714 F. 3d 971 (7th Cir. 2013) (collateral order doctrine permitted interlocutory appeal of district court's decision to adjudicate issues related to the authority and decision of a religious body).

Moody's appeal satisfies the criteria for appeal under collateral order doctrine.

> 1.    *The Religious Autonomy Defenses Asserted by Moody Prohibit the Court from Engaging in Its Planned Adjudication of Garrick's Allegations of Pretext (and Her Claims Generally)*

As stated, Moody argued that Garrick's Title VII claims had to be dismissed because the district court had no authority to adjudicate discrimination claims brought against a religious school that made a religiously based decision not to retain one of its faculty members because she no longer shared the school's religious beliefs as required. (*See* Dkt. 101, 103, 113, 128, 129, 133.) Moody's position is based on well-settled and recent precedent. *See, e.g.*, *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, __ U.S. __, 140 S. Ct. 2049 (2020) (reinstating the district courts' summary judgment rulings in favor of the religious schools; "The religious education and formation of students is the very reason for the existence of most private religious schools, and therefore the selection and supervision of the teachers upon whom the schools rely to do this work lie at the core of their mission. Judicial review of the way in which religious schools discharge those responsibilities would undermine the independence of religious institutions in a way that the First Amendment does not tolerate."); *Demkovich*, 3 F.4th 968 at

7

981 (reversing, on interlocutory appeal, the district court's denial of the religious body's motion to dismiss the plaintiff's hostile work environment claims; "[b]ecause a minister lies at the heart of a religious organization's work and workplace, deciding whether discrimination pervaded his employment impermissibly requires intrusion into a religious thicket" [cleaned up]); *McCarthy*, 714 F. 3d at 976-980 (church autonomy principles bar adjudication of religious decisions).[5] Moody's motion to dismiss was especially justified because Garrick admitted that Moody required faculty members to adhere to its Doctrinal Statement, that her beliefs were not in alignment with the Doctrinal Statement, and that Moody communicated to her in writing that it was not renewing her faculty contract because she was not in alignment with its Doctrinal Statement.  *See, e.g.*, *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 657-59 (10th Cir. 2002) (holding that church employee and her same-sex partner could not bring sex harassment claims based on allegedly anti-gay statements because the church autonomy doctrine gives the church the right "to engage freely in ecclesiastical discussions").[6]

While acknowledging Moody's religious autonomy defenses, the district court held that Garrick's allegation of "pretext" (an allegation that virtually any plaintiff could make) required discovery to go forward.  Yet adjudicating whether Moody's stated religious reason for not

---

[5] *See also Grussgott v. Milwaukee Jewish Day School, Inc.*, 882 F.3d 655 (7th Cir. 2018) (affirming summary judgment for Jewish school on elementary teacher's employment discrimination claims; "the purpose of the ministerial exception is to allow religious employers the freedom to hire and fire those with the ability to shape the practice of their faith"); *Alicea-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698, 702-03 (7th Cir. 2003) (race and gender discrimination claims were barred by the ministerial exception; "To rule otherwise would enmesh the court in endless inquiries as to whether each discriminatory act was based in Church doctrine or simply secular animus").

[6] *See also Curay-Cramer v. Ursuline Academy*, 450 F.3d 130 (3d Cir. 2006) (affirming Rule 12(b)(6) dismissal of the Catholic school teacher's sex discrimination claim because adjudicating pretext would violate the First Amendment; the types of cases that courts may permissibly adjudicate are likely only those in which "a religious employer does not offer a religious justification for an adverse employment action against a non-ministerial employee").

renewing Garrick's faculty contract was "pretextual," that is, "a lie, specifically a phony reason for some action," *Argyropoulos v. City of Alton*, 539 F.3d 724, 736 (7th Cir. 2008) (cleaned up), would directly involve intrusive discovery into evidence about what other reasons could have come into play, how Moody treated other ministerial employees, and what Moody's "real" reason was for its decision to separate Garrick from employment. Such an inquiry will entangle the district court (both judge and jury) in adjudicating a religious body's "true" motives, questioning the sincerity and validity of religious leaders decisions about who is fit to serve as the organization's religious teachers.

Both the Supreme Court and the Seventh Circuit have noted the significant problems that would result if a court were to permit discovery regarding, and then adjudicate, the "true" motives of religious leaders in making religiously based decisions. In *Hosanna-Tabor Evangelical Lutheran Church and Sch. v. EEOC*, 565 U.S. 171 (2012), which held that the "ministerial exception" barred the employment discrimination claims of a religious elementary school teacher, the Court wrote:

> The EEOC and Perich [i.e., the terminated religious school teacher] suggest that [the religious employer's] asserted religious reason for firing Perich—that she violated the [religious denomination's] commitment to internal dispute resolution—was pretextual. That suggestion misses the point of the ministerial exception. The purpose of the exception is not to safeguard a church's decision to fire a minister only when it is made for a religious reason. The exception instead ensures that the authority to select and control who will minister to the faithful—a matter strictly ecclesiastical—is the church's alone.

*Id.* at 194-95.[7] In *Our Lady*, the Court held that the Religion Clauses protect religious institutions' "autonomy with respect to internal management decisions that are essential to the

---

[7] Concurring, Justice Alito emphasized the point: "For civil courts to engage in the pretext inquiry that respondent and the Solicitor General urge us to sanction would dangerously undermine the religious autonomy that lower court case law has now protected for nearly four decades." *Id*. at 205 (Alito, J., concurring).

institution's central mission, . . . [a component of which] is the selection of the individuals who play certain key roles." 140 S. Ct. at 2060. *Our Lady* concluded: "When a school with a religious mission entrusts a teacher with the responsibility of educating and forming students in the faith, judicial intervention into disputes between the school and the teacher threatens the school's independence in a way that the First Amendment does not allow." *Id*. at 2069. [8]

This Court too has repeatedly held that secular courts have no business intruding into religious matters. In *McCarthy v. Fuller*, 714 F. 3d 971 (7th Cir. 2013), this Court, on appeal under the collateral order doctrine, held that church autonomy principles barred the district court from adjudicating issues related to a religious body. In its recent *en banc* decision in *Demkovich*, this Court held that the ministerial exception bars all hostile environment claims (regardless of whether the alleged harassment is religious in nature, has no religious connection at all, or is claimed to be "pretextual"), writing that adjudicating a hostile environment claim "would enmesh the court in endless inquiries as to whether each discriminatory act was based in Church doctrine or simply secular animus." *Id.* at 981-83 (quoting *Alicea-Hernandez*, 320 F.3d at 703). In *Sterlinski v. Catholic Bishop of Chi.*, 934 F.3d 568 (7th Cir. 2019), this Court held that the ministerial exception barred the employment discrimination claims of the plaintiff church organist, noting the problems with adjudicating religious decisions:

> If the Roman Catholic Church believes that organ music is vital to its religious services, and that to advance its faith it needs the ability to select organists, who are we judges to disagree? Only by subjecting religious doctrine to discovery and, if necessary, jury trial, could the judiciary reject a church's characterization of its own theology and internal organization. Yet it is precisely to avoid such judicial entanglement in, and second-guessing of, religious matters that the Justices established the rule of *Hosanna-Tabor*.

---

[8] *Our Lady* endorsed Justice Thomas's concurrence in *Hosanna-Tabor*: "'[a] religious organization's right to choose its ministers would be hollow . . . if secular courts could second-guess' the group's sincere application of its religious tenets." *Id*. at 2063 (quoting with approval *Hosanna-Tabor*, 565 U.S. at 197 [Thomas, J., concurring]).

*Id*. at 570.  In *Alicea-Hernandez*, this court affirmed the Rule 12(b)(1) dismissal of the

employment discrimination claims brought by the Hispanic Communications Director for the

Catholic Bishop of Chicago:

> The [ministerial] exception precludes any inquiry whatsoever into the reasons
> behind a church's ministerial employment decision. The church need not, for
> example, proffer any religious justification for its decision, for the Free Exercise
> Clause protects the act of a decision rather than a motivation behind it. . . .  To
> rule otherwise would enmesh the court in endless inquiries as to whether each
> discriminatory act was based in Church doctrine or simply secular animus. . . . It
> is therefore not our role to determine whether the Church had a secular or
> religious reason for the alleged mistreatment of Alicea–Hernandez.

320 F.3d at 703 (cleaned up).  Numerous other federal circuit courts have also held that pretext

inquiries are not appropriate under the Religion Clauses.[9]

---

[9] *See, e.g., Lee v. Sixth Mount Zion Baptist Church*, 903 F.3d 113 (3d Cir. 2018)
("parsing the precise reasons for [plaintiff] Lee's termination is akin to determining whether a
church's proffered religious-based reason for discharging a church leader is mere pretext, an
inquiry the Supreme Court has explicitly said is forbidden by the First Amendment's ministerial
exception" [citing *Hosanna-Tabor*, 565 U.S. at 194-95]); *Myhre v. Seventh-Day Adventist
Church Reform Movement Am. Union Int'l Missionary Soc'y*, 719 Fed. App'x 926, 927-29 (11th
Cir. 2018) (former employee's breach-of-contract claim against church denomination for
terminated retirement benefits was properly dismissed because ecclesiastical abstention doctrine
prevented court from evaluating denomination's view of the propriety of plaintiff's conduct);
*Fratello v. Archdiocese of N.Y.*, 863 F.3d 190, 202 n.25 (2d Cir. 2017) ("even when we permit
suits by lay employees [as opposed to dismissing cases brought by ministerial employees], we
will not subject to examination the genuineness of a proffered religious reason for an
employment action" [cleaned up]); *Rweyemamu v. Cote*, 520 F.3d 198, 207 (2d Cir. 2008) ("the
First Amendment prohibits . . . [the courts] from inquiring into an asserted religious motive to
determine whether it is pretextual" [quoting *Catholic High School Ass'n of the Archdiocese v.
Culvert*, 753 F.2d 1161 (2d Cir. 1985)]); *Petruska v. Gannon Univ.*, 462 F.3d 294 (3d Cir. 2006)
(affirming Rule 12(b)(6) dismissal of Title VII claims of gender discrimination and retaliation of
female Catholic university chaplain; plaintiff argued that the university's decision was "merely
pretext for gender discrimination," but the court held that adjudicating the university's reasons
for its decisions would be to impermissibly evaluate its decisions as to ministerial functions);
*Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 657-59 (10th Cir. 2002)
(affirming dismissal of youth minister's Title VII claims of harassment based on her sexual
orientation, as barred by the church autonomy doctrine; courts may only adjudicate "purely
secular disputes").

Despite these many controlling authorities holding that pretext adjudications are off limits, the district court, relying on outdated, inapplicable, and reversed case law, held that the constitutional religious-autonomy doctrines do not bar adjudication of pretext.  (*See* Dkt. 126 at 9-14.)  Such decision was contrary to the cases noted above, and, as shown next, warrants review under the collateral order doctrine.

> 2.     *The Rejection of Moody's Immunity from Discovery Will Be Effectively Unreviewable After Final Judgment*

>> a.     *The First Amendment's Protection of Religious Autonomy Guards Against Not Only Liability But Also Unnecessary Discovery and Trial, Providing a Form of Immunity from Suit*

This Court has recognized that the constitutional prohibition on judicial interference in internal religious affairs is "closely akin" to a type of "official immunity":  it confers "immunity from the travails of a trial and not just from an adverse judgment."  *McCarthy*, 714 F.3d at 975; *see also Korte v. Sebelius*, 735 F.3d 654 (7th Cir. 2013) ("the church-autonomy principle operates as a complete immunity, or very nearly so.").[10]  Vindicating this immunity from

---

[10] Many other courts have likewise recognized that church autonomy is an immunity that protects against the burden of discovery and trial, not just liability, so interlocutory appeal is justified to ensure protection of the immunity.  *See, e.g., Whole Woman's Health v. Smith*, 896 F.3d 362, 367-68, 373 (5th Cir. 2018) (the "structural protection afforded religious organizations and practice under the Constitution" justified interlocutory appeal of a discovery order), *cert. denied*, 139 S. Ct. 1170 (2019); *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006) ("assertion of [a church autonomy defense] . . . is akin to a government official's defense of qualified immunity"); *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 654 (10th Cir. 2002) ("the church autonomy doctrine . . . is similar to a government official's defense of qualified immunity"); *Presbyterian Church (U.S.A.) v. Edwards*, 566 S.W.3d 175, 179 (Ky. 2018) (explaining that church autonomy defenses are "'to be applied in a manner that is procedurally consistent with the application of qualified governmental immunity,'" and "[a] party entitled to immunity is immune not only from liability, but also 'from the burdens of defending the action'"); *Kirby v. Lexington Theological Seminary*, 426 S.W.3d 597, 609 n.45 (Ky. 2014) ("[T]he denial of a religious institution's assertion of [church autonomy defenses] . . . is appropriate for interlocutory appeal."); *Harris v. Matthews*, 643 S.E.2d 566, 569-70 (N.C. 2007) ("[W]hen First Amendment rights" against "entangle[ment] in ecclesiastical matters" are "threatened or impaired by an interlocutory order, immediate appeal is appropriate."); *Heard v. Johnson*, 810 A.2d 871, 877 (D.C. 2002) ("[A] defendant church may appeal the denial of a

unnecessary discovery and trial protects two constitutional interests:  the religious body's interest in the autonomy of its religious affairs and the judiciary's interest in avoiding improper entanglement in those affairs.  First, any "[j]udicial review" of the merits of a religious organization's internal management decisions "would undermine the independence of religious institutions."  *Our Lady*, 140 S. Ct. at 2055.  The Free Exercise Clause bars the "onerous" burden of "depositions of fellow ministers and the search for a subjective motive behind the alleged hostility" of a religious employer.  *Demkovich,* 3 F.4th 968 at 983.  The investigation and review necessary to resolve the merits of Title VII claims "could only produce by its coercive effect the very opposite of that separation of church and State contemplated by the First Amendment." *Alicea-Hernandez*, 320 F.3d at 703 (cleaned up); *see also Hosanna-Tabor*, 565 U.S. at 205-06 (2012) (Alito, J., joined by Kagan, J., concurring) ("the *mere adjudication* of [religious] questions would pose grave problems for religious autonomy" [emphasis added]).

Second, apart from a religious organization's interests, the federal courts have an independent duty "not [to] allow [themselves] to get dragged into a religious controversy." *Tomic v. Catholic Diocese of Peoria*, 442 F.3d 1036, 1042 (7th Cir. 2006).  This is because the Religion Clauses set "constitutional limits on judicial authority," requiring courts to avoid "entangle[ment] . . . in religious doctrine."  *Lee v. Sixth Mount Zion Baptist Church*, 903 F.3d 113, 116, 118 & n.4 (3d Cir. 2018); *accord Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 836 (6th Cir. 2015) (these "structural" limitations "categorically prohibit[]" the judiciary from "involve[ment] in religious leadership disputes").  "Religious questions are to be answered by religious bodies," and "federal courts are not empowered to decide (or to allow

---

motion to dismiss where the motion was based on First Amendment immunity from suit."); *United Methodist Church v. White*, 571 A.2d 790, 793 (D.C. 1990) ("[O]nce exposed to discovery and trial, the constitutional rights of the church to operate free of judicial scrutiny would be irreparably violated.").

juries to decide) religious questions." *McCarthy*, 714 F.3d at 976, 980.  Thus, "courts must take

care to avoid resolving underlying controversies over religious doctrine." *Our Lady*, 140 S. Ct.

at 2063 n.10 (cleaned up).  By treating religious autonomy defenses as an immunity that must be

resolved "early in litigation," courts can ensure they meet their obligation to "avoid excessive

entanglement in church matters." *Bryce*, 289 F.3d at 654 n.1.

    The decisions of the Supreme Court and this Court in the context of qualified immunity

further reinforce the point.  As with the Constitution's protection of religious autonomy,

qualified immunity provides government officials the right "'not to stand trial or face the other

burdens of litigation,' including pretrial discovery." *Hanson*, 967 F.3d at 589 (quoting *Mitchell*,

472 U.S. at 526).  Because of this, denials of qualified immunity are perhaps the most frequently

sought—and granted—appeals under the collateral order doctrine. *See, e.g.*, *Plumhoff v.

Rickard*, 572 U.S. 765, 771-72 (2014) ("Qualified immunity is an immunity from suit rather than

a mere defense to liability" so "pretrial orders denying qualified immunity generally fall within

the collateral order doctrine" [cleaned up]).[11]

---

    [11] *See also Mitchell*, 472 U.S. at 523-30 (approving interlocutory appeal of decision
regarding qualified immunity and noting that civil discovery is a burden against which immunity
is designed to protect); *Behrens v. Pelletier*, 516 U.S. 299, 306-08 (1996) (immunity is "not
merely to avoid standing trial, but also to avoid the burdens of such pretrial matters as discovery"
[internal quotations omitted]; collateral order doctrine appeal is available after rejection of a
qualified immunity defense on a motion to dismiss and then again if denied on a motion for
summary judgment); *Hanson*, 967 F.3d at 589 ("Denials of qualified immunity often fall into this
[collateral order doctrine] category of immediately appealable orders.").

    The collateral order doctrine permits interlocutory appeal of other forms of immunity as
well. *See, e.g., Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139
(1993) (approving interlocutory appeal of decision regarding Eleventh Amendment immunity);
*Nixon v. Fitzgerald*, 457 U.S. 731 (1982) (approving interlocutory appeal of decision regarding
absolute immunity); *Abney v. United States*, 431 U.S. 651 (1977) (approving interlocutory appeal
of decision regarding double jeopardy immunity).

If anything, though, church autonomy defenses are *better* candidates for immediate

appeal under the collateral order doctrine than qualified immunity cases.  Courts regularly hold

that both types of defenses should be addressed "early in the litigation," but for different reasons:

Qualified immunity is resolved early on for efficiency reasons, primarily to "avoid excessive

disruption of government."  *Bryce*, 289 F.3d at 654 n.1.  But for religious autonomy defenses,

early resolution is essential to "protecting a church's Free Exercise rights" and to uphold the

constitutional command for courts to "avoid excessive entanglement in church matters."  *Id*.

In short, orders denying protection to a religious group for its religiously motivated

decision as to who to retain as one of its religious teachers are immediately appealable because a

critical component of the immunity is "an entitlement not to stand trial or face the other burdens

of litigation," which is "effectively lost if a case is erroneously permitted to go to trial."  *Mitchell*,

472 U.S. at 526.

> b.  *The District Court's Orders, Which Open This Matter Up for Discovery and Possibly Trial, Deprive Moody of Its Right to Be Free from Judicial Intrusion, Which Is an Issue Effectively Unreviewable After Final Judgment*

As stated, Moody's First Amendment defenses provide a form of immunity from

discovery and trial, not just liability.  If Moody were required to wait for final judgment to

appeal, it will have suffered the very injuries the Religion Clauses do not permit, making the

protection of Moody's rights effectively unreviewable upon final judgment.

The case law so holds.  In *McCarthy*, this Court explained that interlocutory review was

proper because of the constitutional issues at stake, citing *Hosanna-Tabor* and liking the matter

to collateral order review of denials of official immunity.  *Id*. at 975-76 ("The harm of such a

governmental intrusion into religious affairs would be irreparable").  Other courts have likewise

permitted interlocutory appeals in cases arising under the Religion Clauses and other First

Amendment provisions. *See* Section III.A.2.a *supra*. Indeed, courts "have repeatedly found the [collateral order] doctrine applies in cases in which pre-trial orders arguably infringe on First Amendment rights," because of the irreparable nature of the harm if the district court has gotten in wrong. *Marceaux v. Lafayette City-Parish Consol. Gov't*, 731 F.3d 488, 490 (5th Cir. 2013).

The decision in *Whole Woman's Health v. Smith*, 896 F.3d 362, 368 (5th Cir. 2018), *cert. denied*, 139 S. Ct. 1170 (2019), is instructive. There, the court took up interlocutory review under the collateral order doctrine of a district court order requiring certain Catholic bishops to turn over internal church communications related to abortion. The court held that it had jurisdiction to hear the appeal because "the consequence of forced discovery" on rights that "go to the heart of the constitutional protection of religious belief and practice" would be "effectively unreviewable" without an interlocutory appeal. *Id.* at 367-68.

Subjecting Moody to intrusive and burdensome discovery regarding the "real" reasons for Garrick's separation will be effectively unreviewable once such intrusion has occurred. *See Plumhoff v. Rickard*, 572 U.S. 765, 772 (2014) ("orders [denying qualified immunity] [cannot] be effectively reviewed on appeal from a final judgment because by that time the immunity from standing trial will have been irretrievably lost"); *Hosanna-Tabor*, 565 U.S. at 194-95 (noting that to inquire into the motives of a ministerial firing decision would be to "miss[] the point of the ministerial exception").

### 3. The District Court's Orders Conclusively Rejected Moody's Immunity from Discovery

The district court's denial of Moody's motion to dismiss conclusively decides that Garrick's Second Amended Complaint states a legal claim and permits discovery to proceed. (If there were any doubt that the district court did not intend to revisit its ruling, the district court's denial of Moody's motion to reconsider confirmed the point.) It does not matter that the district

court's decision was "only" the denial of a motion to dismiss; such decision conclusively

determined that the case must move into the discovery phase (and that Moody was not immune

from discovery). This Court has expressly held that a ruling on a motion to dismiss qualifies as a

"conclusive determination" for purposes of the collateral order doctrine when it rejects an

immunity defense:

> [B]efore discovery begins, a defendant asserting qualified immunity is
> entitled to dismissal if the allegations in the complaint fail to state a claim of a
> clearly established right having been violated. *Mitchell*, 472 U.S. at 526. After
> discovery, however, the defendant asserting qualified immunity is entitled to
> summary judgment if the evidence fails to demonstrate a genuine factual issue
> [regarding immunity]. *See id*.; . . . .
> In this way, while qualified immunity may not entitle a defendant to
> dismissal on the pleadings, qualified immunity may entitle the defendant to
> summary judgment later on. And because *each determination is conclusive as to
> the defendant's right to avoid the burdens of pretrial discovery* and trial, a denial
> of qualified immunity can be a "final decision" at both stages of the litigation.
> *See Behrens* [*v. Pelletier*, 516 U.S. 299, 307-08 (1996)].

*Hanson*, 967 F.3d at 591-92 (granting collateral order review of denial of Rule 12(b)(6) motion

asserting a right to qualified immunity) (emphasis added). Thus, the "conclusive determination"

element is satisfied as to Moody's appeal. *See Behrens*, 516 U.S. at 308 ("Whether or not a later

summary judgment motion is granted, denial of a motion to dismiss is conclusive as to this

right," i.e., "a right . . . to avoid the burdens of such pretrial matters as discovery[,] . . . [which]

can be particularly disruptive" [cleaned up]).

> 4.    *The Denial of the Immunity Flowing from Moody's Religious Autonomy
>       Defenses is Collateral to the Merits of Garrick's Claims*

Moody's religious autonomy defenses are also collateral to the merits of Garrick's

claims. As this Court has recognized, the First Amendment's prohibition on "governmental

intrusion into religious affairs" gives rise to an immunity that is "'conceptually distinct' from the

merits." *McCarthy*, 714 F.3d at 975-76 (quoting *Mitchell*, 472 U.S. at 527). Thus, rejection of a

religious autonomy defense, which would otherwise provide immunity from the travails of

litigation, is "closely akin to a denial of official immunity" and is immediately appealable under the collateral order doctrine. *Id*. This is in part because "[a]n appellate court reviewing the denial of the defendant's claim . . . need not consider the correctness of the plaintiff's version of the facts" regarding her employment discrimination claims; "[a]ll it need determine is a question of law." *Mitchell*, 472 U.S. at 528; *accord Bryce*, 289 F.3d at 654 (comparing the church autonomy defense to qualified immunity, which is a "question of law").[12] But more generally, the district court's ruling resolved the issue of whether Moody is insulated from the discovery process by its religious autonomy defenses (determining that Moody is not), which is an issue conceptually distinct from the merits of the case (i.e., whether Moody could defeat Garrick's claims it if proceeded through the typical stages of litigation). For this reason, courts have regularly held that a claim of immunity is an issue separate from the merits of the case. *See Meyers v. Oneida Tribe of Indians of Wisc.*, 836 F. 3d 818, 822 (7th Cir. 2016) ("sovereign immunity, like qualified immunity, also bears the characteristics of immunity from trial and the attendant burdens of litigation . . . [which] is why an order rejecting a foreign government's claim of sovereign immunity also meets the criteria for collateral-order appeal" [cleaned up]).

---

[12] The "question of law" in this context is not to be read constrictively. "[W]e have treated the issue as an "abstract" matter of law, for purposes of jurisdiction, when antecedent facts are taken as given and we are asked to review only the application of a legal standard to those given facts in a qualified-immunity assessment." *Hanson*, 967 F.3d at 591 (citing numerous cases); c*f. Guerrero-Lasprilla v. Barr*, __ U.S. __, 140 S. Ct. 1062, 1067 (2020) ("questions of law," for purposes of appellate jurisdiction under 8 U.S.C. § 1252(a)(2)(D), "includes the application of a legal standard to undisputed or established facts"). A "question of law" is present here, because the presented question arises out of a Rule 12 ruling based on the pleadings (and not, say, from an evidentiary hearing at which various factual disputes arose).

     5.    *This Court's Prior Collateral Order Decisions in the Religious Autonomy Context Confirm that the Court Has Jurisdiction*

Although the Court need not limit (indeed should not limit) its consideration of its jurisdictional authority to what appear to be its only two collateral-order-doctrine decisions involving religious defenses, both such decisions support a finding of jurisdiction here.

As noted several times above, this Court's decision in *McCarthy* strongly supports a finding of collateral order doctrine jurisdiction. *McCarthy* involved consideration of church autonomy principles under the First Amendment, and this Court determined that the collateral order doctrine permitted the immediate appeal. 714 F.3d at 976. ("the First Amendment . . . forbids the government to make religious judgments[,] [and] [t]he harm of such a governmental intrusion into religious affairs would be irreparable") Moody's appeal also involves an appeal on church autonomy issues that will result in irreparable harm if not reversed, and collateral order jurisdiction is therefore present.

This Court's decision in *Herx v. Diocese of Ft. Wayne–S. Bend, Inc.*, 772 F.3d 1085 (7th Cir. 2014), which declined to exercise collateral order jurisdiction over a statutory Title VII defense, nevertheless supports this Court's jurisdiction here. *Herx* did not question this Court's previous conclusion in *McCarthy* that First Amendment church autonomy defenses are eligible for collateral order review. *See Herx*, 772 F.3d at 1091 (discussing and quoting *McCarthy* with approval). And *Herx*'s decision not to allow interlocutory appeal in that case is distinguishable. First, *Herx* concerned primarily statutory defenses, which were not at issue in *McCarthy* (nor are they here), and the *Herx* court went out of its way to note that the defendant did "not seek collateral-order review of the district court's ruling regarding the ministerial exception" (which is a *constitutional* religious autonomy defense). 772 F.3d at 1091 n.1. Here, as in *McCarthy*, Moody is seeking review of constitutional religious autonomy defenses. Second, *Herx*

emphasized that, unlike *McCarthy*, "[t]he district court has not ordered a religious question submitted to the jury for decision." 772 F.3d at 1091. Here, however, Garrick's position is that, despite her admitted nonalignment with Moody's religious beliefs and Moody's written decision that her nonalignment required her discharge, she is entitled to probe (and the court should become entangled in probing) Moody's "real" reasons for its religious decision. But, as discussed above, courts may not adjudicate pretext, *see* Section III.A.1 *supra*, so here questions of religion and religious motivation have been raised. Finally, *Herx* was careful to emphasize that it merely held that defendants "ha[d] not made a persuasive case" for allowing interlocutory appeal, which was not entirely surprising since (1) the defendants' brief focused almost entirely on "the merits," offering "only a few sentences . . . addressed to the criteria for collateral-order review," and (2) the defendants "cite[d] no authority for the proposition that the exemptions provide an immunity from the burdens of trial rather than an ordinary defense to liability." 772 F.3d at 1090-91. Here, of course, Moody has demonstrated that its constitutional religious autonomy defenses *do* provide an immunity from discovery (and trial). *See* Section III.A.2.a *supra*.

Thus, this Court's prior decisions support collateral-order-doctrine jurisdiction over Moody's appeal. *Cf. Demkovich*, 3 F.4th at 974-85 (en banc) (approving interlocutory appeal under 28 U.S.C. § 1292(b) of religious autonomy defense, and holding that it barred all of the plaintiff's claims).

IV.    CONCLUSION

For the foregoing reasons, this Court has jurisdiction over Moody's appeal under 28 U.S.C. § 1291 and the collateral order doctrine.

Dated:  September 27, 2021                    Respectfully submitted,


                                             s/  Christian Poland
                                             One of the Attorneys for Defendant-Appellant,
                                             The Moody Bible Institute of Chicago

Christian M. Poland
Bryan Cave Leighton Paisner LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601-3315
312-602-5000
Fax: 312-602-5050
christian.poland@bclplaw.com