No. 21-2683

_____

# IN THE UNITED STATES COURT OF APPEALS FOR THE SEVENTH CIRCUIT

_____

JANAY E. GARRICK,

Plaintiff-Appellee,

v.

THE MOODY BIBLE INSTITUTE OF CHICAGO,

Defendant-Appellant.

_____

On Interlocutory Appeal from the United States District Court for the Northern District Of Illinois
No. 1:18-cv-00573, John Z. Lee, Judge

_____

## JANAY GARRICK'S RESPONSE IN OPPOSITION TO THE JURISDICTIONAL MEMORANDUM OF THE MOODY BIBLE INSTITUTE OF CHICAGO

_____

Jamie S. Franklin
Civil Litigation Clinic of the
Chicago-Kent College of Law
565 W. Adams, Suite 600
Chicago, IL 60661
(312) 906-5048
(773) 696-1478 (fax)
jfranklin5@kentlaw.iit.edu

*Attorney for the Plaintiff-Appellee*

# TABLE OF CONTENTS

I. INTRODUCTION ..................................................................................... 1

II. ARGUMENT ............................................................................................. 1

   A. This Court has no jurisdiction over Moody's appeal. ............................. 1

      1. Moody asks this Court to improperly expand the collateral order doctrine. ....................................................... 2

      2. This Court has already rejected Moody's position. ................................. 4

      3. Moody has not satisfied the three *Cohen* requirements. ......................... 7

         a. The district court did not conclusively determine a disputed question. ..................................................... 8

         b. The district court did not resolve any issue that is completely separate from the merits. ..................... 9

         c. Moody has not identified any order that is unreviewable upon final judgment. ................................. 11

III. CONCLUSION ....................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**

*Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949) ................................... 1, 7

*Demkovich v. St. Andrew the Apostle Parish*, 3 F.4th 968 (7th Cir. 2021) ............ 8, 10

*Digital Equip. Corp. v. Desktop Direct*, 511 U.S. 863 (1994). ............................ passim

*Doe v. Vill. of Deerfield*, 819 F.3d 372 (7th Cir. 2016) .................................................. 7

*Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368 (1981) ............................ 4, 7, 12

*Grussgott v. Milwaukee Jewish Day School, Inc.*,
    882 F.3d 655 (7th Cir. 2018) ................................................................................... 10

*Hall v. Hall*, __ U.S; __, 138 S. Ct. 1118 (2018) ........................................................... 3

*Herx v. Diocese of Fort Wayne-South Bend, Inc.*,
    772 F.3d 1085 (7th Cir. 2014) ..................................................................... 4, 5, 6, 12

*Hosanna-Tabor Evangelical Lutheran Church and Sch. v. EEOC*,
    565 U.S. 171 (2012) .................................................................................................. 10

*Johnson v. Jones*, 515 U.S. 304 (1995) .......................................................... 4, 7, 8, 9

*JP Morgan Chase Bank, N.A. v. Asia Pulp & Paper Co.*,
    707 F.3d 853 (7th Cir. 2013) ...................................................................................... 5

*Lauro Lines s. r. l. v. Chasser*, 490 U.S. 495, 501 (1989) ........................................... 12

*McCarthy v. Fuller*, 714 F. 3d 971 (7th Cir. 2013) ........................................................ 6

*Microsoft Corp. v. Baker*, __ U.S. __, 137 S. Ct. 1702 (2017) ....................................... 3

*Midland Asphalt Corp. v. United States*, 489 U.S. 794 (1989). ............................ 1, 12

*Mohawk Indus. v. Carpenter*, 558 U.S. 100 (2009) ............................................ passim

*Ott v. City of Milwaukee*, 682 F.3d 552 (7th Cir. 2012) ............................................... 5

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
    __ U.S. __, 140 S. Ct. 2049 (2020) ...................................................................... 9, 10

*Swint v. Chambers Cty. Comm'n*, 514 U.S. 35 (1995) .................................................. 3

*Will v. Hallock*, 546 U.S. 345 (2006) ..................................................................... 2, 12

**Statutes**

28 U.S.C. § 1291 ................................................................................................ 9, 11, 13
28 U.S.C. § 1292(e) ...................................................................................................... 2
28 U.S.C. § 2071 *et seq.* .............................................................................................. 2

## I. INTRODUCTION

This Court lacks jurisdiction over Moody Bible Institute ("Moody")'s appeal. The Court was correct when it held in its Order of September 15, 2021 that "there appears no other basis to review any district court order at this time." Docket No. 2.

Moody purports to assert appellate jurisdiction under the collateral order doctrine – a narrow exception that provides that an immediate appeal of an interlocutory decision may be taken if the decision conclusively determines an important issue, collateral to the merits of the action, that would be effectively unreviewable if immediate appeal were not available and that threatens the appellant with irreparable harm if no appeal is permitted. *Midland Asphalt Corp. v. United States,* 489 U.S. 794, 799 (1989). As shown below, that exception does not apply here, and Moody's appeal should be dismissed.

## II. ARGUMENT

### A.    **This Court has no jurisdiction over Moody's appeal.**

Moody relies on a single basis for jurisdiction in its bid to convince this Court to entertain its appeal – the collateral order doctrine, which allows a "small class" of nonfinal, "collateral" orders to be appealed. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). Collateral orders "finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." *Id*. Those conditions are not met here.

### 1. Moody asks this Court to improperly expand the collateral order doctrine.

The collateral order doctrine is a narrow and stringent exception to the rule that only final orders may be appealed. *Digital Equip. Corp. v. Desktop Direct*, 511 U.S. 863, 868 (1994). It has always been narrowly interpreted. *Will v. Hallock*, 546 U.S. 345, 350 (2006). This strict interpretation is intended to preserve the general rule that only final orders may be appealed. *Digital Equip.*, 511 U.S. at 868.

The U.S. Supreme Court has explicitly disfavored the expansion of the doctrine to new areas of law. *Mohawk Indus. v. Carpenter*, 558 U.S. 100, 113 (2009). There, the Supreme Court reiterated its principle from *Digital Equip.* that the exception should "never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered." *Id.* at 106 (citation omitted).

In *Mohawk*, in support of a narrow interpretation of the collateral order doctrine, the Supreme Court noted that in 1990, Congress amended the Rules Enabling Act, 28 U.S.C. § 2071 *et seq.*, to authorize it to adopt rules "defin[ing] when a ruling of a district court is final for the purposes of appeal under section 1291." *Id.* at 113-114. It further noted that shortly thereafter, Congress empowered it to "prescribe rules, in accordance with [§ 2072], to provide for an appeal of an interlocutory decision to the courts of appeals that is not otherwise provided for under [§ 1292]." 28 U.S.C. § 1292(e); *Id.* These provisions, the Supreme Court emphasized, "warran[t] the Judiciary's full respect." *Id.* (citations omitted.)

In light of these statutory grants of authority, the Supreme Court recognized that the "procedure Congress ordered for such changes . . . is not expansion by court decision, but by rulemaking." *Swint v. Chambers Cty. Comm'n*, 514 U.S. 35, 48 (1995). Rulemaking is the "preferred means for determining whether and when prejudgment orders should be immediately appealable," because it allows the judiciary to "draw[] on the collective experience of bench and bar" and to "facilitate[] the adoption of measured, practical solutions." *Mohawk*, 558 U.S. at 113-14.

That makes sense, because application of the collateral order doctrine was never meant to be an individualized, case-by-case inquiry. *See Digital Equip.*, 511 U.S. at 868. Rather, the question is whether an entire category of orders should be immediately appealable before final judgment. *Id*. Hence, considered rulemaking allows for a measured, informed approach, unlike ad hoc "judicial decisions in particular controversies." *Hall v. Hall*, __ U.S; __, 138 S. Ct. 1118, 1131 (2018) (*quoting Microsoft Corp. v. Baker*, __ U.S. __, 137 S. Ct. 1702, 1714 (2017)).

Accordingly, the Supreme Court has refused time and again to expand the collateral order doctrine. If the courts of appeal could expand appellate jurisdiction over interlocutory orders at will, "Congress['s] final decision rule would end up a pretty puny one." *Baker*, 137 S. Ct. at 1715 (*quoting Digital Equip.*, 511 U.S. at 872). The Supreme Court has thus ensured, in keeping with logic and Congressional intent, that the final decision rule preserves the role of the district court, ensures efficiency by requiring that all appealable issues be raised in a single appeal on a fully developed record, and preserves judicial and party resources by avoiding

3

piecemeal appeals. *See Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 374 (1981); *Johnson v. Jones*, 515 U.S. 304, 309 (1995).

Justice Thomas went a step further in *Mohawk*, arguing in a concurrence that the courts should categorically cease relying on *Cohen* and the collateral order doctrine as a basis for expanding appellate jurisdiction and rely solely on the rule making process. *Mohawk*, 558 U.S. at 115 (Thomas, J., concurring in part and in the judgment). *Mohawk* clarified that the courts should be extraordinarily cautious when expanding the doctrine beyond the few situations for which it has already been applied. *Id.* at 113-14.

### 2. This Court has already rejected Moody's position.

Moody asks the Court to expand the collateral order doctrine to cover a new category of orders – denials of motions to dismiss. This Court has already rejected Moody's argument in *Herx v. Diocese of Fort Wayne-South Bend, Inc.*, 772 F.3d 1085 (7th Cir. 2014). In that case, this Court declined to permit the Diocese to use the collateral order doctrine to appeal a nonfinal order requiring it to proceed to trial on an employment discrimination claim brought by a lay teacher. *Id.* at 1088-90.

As Moody does here, the school in *Herx* argued that as a religious organization, it had complete immunity from trial and that the district court's denial of its motion for summary judgment would result in the jury being "asked to engage in an impermissible inquiry into the religious teachings of the Catholic Church." *Id.* at 1087.

This Court disagreed, noting that the Diocese's request would expand the collateral order doctrine beyond the "few, well-established categories" that have been established. *Herx*, 772 F.3d at 1090. As is the case here, this Court in *Herx* noted that the district judge's ruling did not ask the jury to decide a religious question or a question of church doctrine. Instead, the jury would be evaluating a purely secular question: did the church unlawfully discriminate against a lay teacher? *Id.* at 1091.

The same is true here. If it is established that Ms. Garrick is not a minister for the purposes of the ministerial exception, then the only question the jury will weigh is whether she was discriminated against because of her sex. There is no basis for expanding the collateral order doctrine on Moody's behalf simply because it is a religious organization. *Herx*, 772 F.3d at 1091-92 ("[w]e do not question the importance of the interests the Diocese has asserted. But those interests will not be irreparably harmed by enforcement of the final-judgment rule."). See also *JP Morgan Chase Bank, N.A. v. Asia Pulp & Paper Co.*, 707 F.3d 853, 869 (7th Cir. 2013) ("the class of collaterally appealable orders must remain narrow and selective in its membership"); *Ott v. City of Milwaukee*, 682 F.3d 552, 555 (7th Cir. 2012) (same).

Moody argues that *Herx* does not apply because it involved "primarily statutory defenses" (Moody Brf., p. 19). There is no rationale for this position, and Moody provides none. Moody contends that unlike here, the district court in *Herx* did not ask a jury to evaluate a religious question. *Id.* at p. 20. But as noted above,

5

the same is true here. In Judge Lee's order denying Moody's motion to dismiss, he makes this point clear: "[b]ecause Garrick pleads that Moody fired her as a result of her gender, and not her religious beliefs, see SAC ¶¶ 97, 101, 111–12, 116–17, her claims falls outside the scope of the religious organization exemption." Dist. Ct. Dkt. No. 126, p. 8. His order further explains: "the Court will not sit in judgment as to what Moody's complementarian doctrine entails or whether it represents a reasonable basis for firing Garrick. Rather, the Court will need only determine (and the parties will need only investigate during discovery) whether Moody terminated her because of its religious beliefs or whether its invocation of its religious beliefs was, in fact, a cover to discriminate against Garrick because of her gender." *Id.* at pp. 11-12.

Moody cites *McCarthy v. Fuller*, 714 F. 3d 971 (7th Cir. 2013) for the principle that religious autonomy confers "immunity from the travails of a trial and not just from an adverse judgment." Moody Brf. p. 12, citing *McCarthy*, 714 F.3d at 975. But *McCarthy* stands only for the undisputed principle that "[a] secular court may not take sides on issues of religious doctrine." *Id.* at 975. The district court there asked a jury to rule on whether a party was a member of a Roman Catholic religious order, even though the Church had already decided she was not. *Id.* at 975-976. Of course such a question entangles the civil process in religious affairs. That is not the case here, where the question is a civil one, not a religious one. Critically, this Court in *McCarthy* allowed the rest of the case to go forward to a jury. *Id.* at 976 ("[a] secular court must be allowed to decide, however, whether a

6

party is correct in arguing that there is an authoritative church ruling on an issue, a ruling that removes the issue from the jurisdiction of that court.").

The district court in this case has exhibited its understanding of the sensitive landscape this matter traverses and is fully capable of keeping religious questions away from a jury. As such, this Court should decline to extend the collateral order doctrine to Moody's appeal.

### 3.     Moody has not satisfied the three *Cohen* requirements.

As shown above, Moody has failed to make its case that the district court's order should be immediately appealable under Supreme Court case law and the prior decisions of this Court. An analysis of the three *Cohen* requirements similarly forecloses Moody's request.

To be immediately appealable, a collateral order must: (a) conclusively determine a disputed question; (b) resolve an important issue completely separate from the merits; and (c) be effectively unreviewable on an appeal from a final judgment. *Mohawk*, 558 U.S. at 106. These three elements are to be "'stringent[ly]' applied, lest the collateral order doctrine exception swallow the whole of the final order doctrine." *Doe v. Vill. of Deerfield*, 819 F.3d 372, 375 (7th Cir. 2016). The challenged order must constitute "a complete, formal and, in the trial court, final rejection of a claimed right where denial of immediate review would render impossible any review whatsoever." *Risjord*, 449 U.S. at 376 (citations and quotation marks omitted); *Johnson*, 515 U.S. at 313. Moody satisfies none of the three requirements.

7

### a. The district court did not conclusively determine a disputed question.

The first requirement of the collateral order doctrine is that the issue on appeal must be a disputed question that the district court conclusively determined. *Mohawk*, 558 U.S. at 106. The district court's denial of Moody's motion to dismiss is not a determination of a disputed question. The question of whether Ms. Garrick is a minister for the purposes of the ministerial exception, or whether she is merely a lay teacher, is an issue has not yet been decided in this case. *See Demkovich v. St. Andrew the Apostle Parish*, 3 F.4th 968, 975 (7th Cir. 2021). The district court held that the case could proceed past a motion to dismiss precisely so that the parties could take discovery on whether Ms. Garrick is a minister for the purposes of the ministerial exception.

The collateral appeal doctrine does not apply to questions of "which facts a party may, or may not, be able to prove at trial." *Johnson*, 515 U.S. at 313. Because Ms. Garrick, who taught secular classes, denies that she was a minister – recall that Moody admittedly *bars* women from the ministry – this issue, which precedes a determination of whether she can sustain a discrimination claim against Moody, must be decided by the district court. Indeed, the only discovery that the district court has allowed at this stage in the case is the inquiry into whether Ms. Garrick was a minister for the purposes of the ministerial exception.

Moody made the same error below. The district court noted that the ministerial exception applies only to "certain key employees" who are found, based on a factual analysis, to be ministers. Dist. Ct. Dkt. No. 134, p. 6, citing *Our Lady of*

8

*Guadalupe Sch. v. Morrissey-Berru*, __ U.S. __, 140 S. Ct. 2049 (2020). That question remains to be answered in this case.

Moody has identified no other disputed question that the district court conclusively determined, save the overarching issue of whether it can be sued for employment discrimination. As discussed in Section 1 above, it can, as long as religious decisions are not put in the hands of the judiciary. The district court here has ensured that this will be the case: "[t]he court will not sit in judgment as to what Moody's complementarian doctrine entails, or whether it represents a reasonable basis for firing Garrick." Dist. Ct. Dkt. No. 126, pp. 11-12.

### b. The district court did not resolve any issue that is completely separate from the merits.

Again, the only issue that the district court decided was whether the Ms. Garrick's claims could proceed past a motion to dismiss. This decision is not a resolution that is separate from the merits of the case.

In *Johnson*, the Supreme Court affirmed this Court's refusal to grant appellate jurisdiction in a qualified immunity case where the district court's order was predicated on weighing the sufficiency of evidence in the pre-trial record. 515 U.S. at 313–14. The Supreme Court effectively held that limiting interlocutory appeals brought under § 1291's narrow exceptions to cases presenting "more abstract issues of law," rather than scrutinizing issues based on matters of triable fact in the district court, aligns with the spirit of the collateral order doctrine. *Id.* at 317. But the collateral order doctrine requires the abstract issue of law to be *separate* from the merits. *Id.* at 313.

Here, the district court decided no abstract issue of law not intertwined with the merits. Moody argues that the district court's denial of the motion to dismiss impinges on its purported "entitlement not to stand trial or face [] other burdens of litigation." Appellant's Brief, p. 15. It also argues that analyzing pretext is off limits when the employer is a religious organization. *Id.* at p. 7. But the district court made no decisions about either of these issues. There is no impending trial date and no decision regarding pretext – rather, the only burden Moody faces right now is the requirement that it answer Ms. Garrick's discovery requests, which are limited in scope to whether she is a minister under the ministerial exception.

Moody proceeds in its jurisdictional brief as if it were *already established* that Ms. Garrick is a minister. As discussed in Section 1.a. above, this is a key question of fact that has not yet been decided in this case. In the line of cases on which Moody relies – *Demkovitz*, *Our Lady*, *Grussgott v. Milwaukee Jewish Day School, Inc.*, 882 F.3d 655 (7th Cir. 2018); *Hosanna-Tabor Evangelical Lutheran Church and Sch. v. EEOC*, 565 U.S. 171 (2012) – a decision had already been made regarding whether the plaintiff was a minister. And, more importantly, none of those cases involved interlocutory appeals.

Moody also argues that the defenses raised in its motion to dismiss are "better" candidates for immediate appeal than qualified immunity cases, but it fails to cite any authority in which a denial of a motion to dismiss in the face of a religious school's contentions of a right to be free from the burdens of litigation or discovery fell under the category of immediately appealable judgments. The

10

ministerial exception is not an explicit statutory or constitutional immunity, because although its application can affect Moody's rights in litigation, it does not bar litigation altogether, including discovery used to ascertain whether the ministerial exception even applies. As such, Moody's reliance on cases regarding qualified immunity is of little value to the analysis here.

### c. Moody has not identified any order that is unreviewable upon final judgment.

Moody contends that it should be immune from all litigation and that it will be irreparably harmed if it is required to engage in discovery in this case. But the Supreme Court explicitly stated in *Digital Equip.* that "§ 1291 requires courts of appeals to view claims of a 'right not to be tried' with skepticism, if not a jaundiced eye." 511 U.S. at 873 (citations omitted). Moody has failed to demonstrate any irreparable harm brought on by the district court's denial of Ms. Garrick's motion to dismiss. It is already engaged in litigation in this case and has been for years. It has not shown how moving to the next stage – discovery regarding the ministerial exception – changes the equation.

And even when a post-judgment appeal cannot completely redress asserted harms from an interlocutory order, a party may still be required to wait. See *Mohawk*, 558 U.S. at 107. For example, post-judgment review is sufficient to correct a discovery order improperly requiring a party to share privileged information, even if the party argues that the privilege "does not merely 'prohibit use of protected information at trial'" but also "provides a 'right not to disclose the privileged information in the first place.'" *Id.* at 109. Indeed, post-judgment review is sufficient

11

for most pretrial discovery orders, see *Risjord*, 449 U.S. at 377, even though the sharing of information in discovery cannot fully be undone. "The mere fact that a ruling may burden litigants in ways that are only imperfectly reparable by appellate reversal of a final district court judgment ... has never sufficed." *Herx*, 772 F.3d at 1090 (quotations and citations omitted.)

Claiming that the burdens of discovery and trial are effectively unreviewable on appeal after a final judgment "is too easy to be sound." *Hallock*, 546 U.S. at 350-51. Many pretrial orders address issues that could be characterized as implicating a right not to stand trial, including those dealing with personal jurisdiction, statutes of limitations, the Sixth Amendment right to a speedy trial, claim preclusion, and summary judgment. *See Digital Equip.*, 511 U.S. at 873. To treat all such orders as collateral and subject to immediate appeal "would leave the final order requirement of § 1291 in tatters" and wholly undermine the strong jurisprudential and social interests in saving appellate review for after final judgment. *Hallock*, 546 U.S. at 351. The Supreme Court has rejected "the right not to stand trial" as a basis for jurisdiction under the collateral order doctrine numerous times. *See, e.g., Digital Equip.*, 511 U.S. at 875; *Midland Asphalt*, 489 U.S. at 802; *Lauro Lines s. r. l. v. Chasser*, 490 U.S. 495, 501 (1989).

Moody argues that the defenses raised in its motion to dismiss are "better" candidates for immediate appeal than qualified immunity cases, but it fails to cite any authority in which a denial of a motion to dismiss in the face of a religious school's contentions of a right to be free from the burdens of litigation or discovery

12

fell under the category of immediately appealable judgments under § 1291. The ministerial exception is not an explicit statutory or constitutional immunity – it is an *affirmative defense*. As such, Moody's reliance on cases regarding qualified immunity is of little value to the analysis here.

### III.　CONCLUSION

For the foregoing reasons, this Court lacks jurisdiction over Moody's appeal, and the Plaintiff-Appellee respectfully requests that it be dismissed.

Dated: November 5, 2021　　　　　　　　　Respectfully Submitted,

　　　　　　　　　　　　　　　　　　　　/s/ Jamie S. Franklin

Jamie S. Franklin
Civil Litigation Clinic of the
Chicago-Kent College of Law
565 W. Adams, Suite 600
Chicago, IL 60661
(312) 906-5048
(773) 696-1478 (fax)
jfranklin5@kentlaw.iit.edu