No. 21-2683

# In the United States Court of Appeals for the Seventh Circuit

JANAY E. GARRICK,

*Plaintiff-Appellee,*

v.

MOODY BIBLE INSTITUTE,

*Defendant-Appellant.*

On Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division
Case No. 1:18-cv-00573 – Judge John Lee, Magistrate Judge Young Kim

## APPELLANT'S APPENDIX

Christian M. Poland
*Counsel of Record*
BRYAN CAVE LEIGHTON
 PAISNER LLP
161 N. Clark St.,
 Ste. 4300
Chicago, IL 60601-3315
(312) 602-5050
christian.poland@bclplaw.com

Daniel H. Blomberg
Luke W. Goodrich
Laura Wolk Slavis
Colten L. Stanberry
THE BECKET FUND FOR
 RELIGIOUS LIBERTY
1919 Pennsylvania Ave. N.W.,
 Ste. 400
Washington, DC 20006
(202) 955-0095
dblomberg@becketlaw.org

*Counsel for Defendant-Appellant*

## TABLE OF CONTENTS

**Document Name**                                                     **Page**

District Court Docket Sheet, N.D. Ill. No 18-573 ........................................................ 1

Third Modified First Amended Complaint filed by Janay E. Garrick (Dkt.67) ...................................................................................................... 16

Exhibits to Moody's Motion to Dismiss Garrick's Third Modified First Amended Complaint (Dkt.69-1).................................................... 56

Opinion & Order Granting Moody's Motion to Dismiss Third Modified First Amended Complaint (Dkt.91) ...................................... 70

Second Amended Complaint filed by Janay E. Garrick (Dkt.97)........................................................................................................ 91

APPEAL,KIM,MIDP

# United States District Court
## Northern District of Illinois – CM/ECF NextGen 1.7.1.1 (Chicago)
## CIVIL DOCKET FOR CASE #: 1:18–cv–00573

Garrick v. Moody Bible Institute et al
Assigned to: Honorable John F. Kness
Case in other court:  21–02683
Cause: 42:2000e Job Discrimination (Employment)

Date Filed: 01/25/2018
Jury Demand: Both
Nature of Suit: 442 Civil Rights: Jobs
Jurisdiction: Federal Question

**Plaintiff**

**Janay E Garrick**

represented by **Jamie S. Franklin**
Law Offices of Chicago–Kent
565 W. Adams St., Suite 600
Chicago, IL 60661
(312) 906–5048
Fax: Active
Email: jfranklin5@kentlaw.iit.edu
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Moody Bible Institute**

represented by **Christian Mark Poland**
Bryan Cave Leighton Paisner LLP
161 North Clark Street
#4300
Chicago, IL 60601–3206
(312) 602–5000
Fax: Not a member
Email: christian.poland@bclplaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**Board of Trustees of Moody Bible
Institute**
*TERMINATED: 11/05/2019*

| Date Filed | # | Docket Text |
|---|---|---|
| 01/25/2018 | 1 | COMPLAINT filed by Janay E Garrick; Jury Demand. Filing fee $ 400, receipt number 0752–14049484.(Franklin, Jamie) (Entered: 01/25/2018) |
| 01/25/2018 | 2 | CIVIL Cover Sheet (Franklin, Jamie) (Entered: 01/25/2018) |
| 01/25/2018 | 3 | ATTORNEY Appearance for Plaintiff Janay E Garrick by Jamie S. Franklin (Franklin, Jamie) (Entered: 01/25/2018) |
| 01/25/2018 | | CASE ASSIGNED to the Honorable John Z. Lee. Designated as Magistrate Judge the Honorable Young B. Kim. (meg, ) (Entered: 01/26/2018) |
| 01/26/2018 | 4 | NOTICE TO THE PARTIES – The Court is participating in the Mandatory Initial Discovery Pilot (MIDP). The key features and deadlines are set forth in the attached Notice which includes the MIDP Standing Order. Also attached is a checklist for use by the parties. In cases subject to the pilot, all parties must respond to the mandatory initial discovery requests set forth in the Standing Order before initiating any further discovery in this case. Please note: The discovery obligations in the Standing Order supersede the disclosures required by Rule 26(a)(1). Any party seeking affirmative relief must serve a copy of the attached documents (Notice to Parties and the Standing Order) on each new party when the Complaint, Counterclaim, Crossclaim, or |

A.001

| | | |
|---|---|---|
| | | Third–Party Complaint is served. (kp, ) (Entered: 01/26/2018) |
| 01/26/2018 | 5 | REQUEST for Waiver of Service sent to Moody Bible Institute on 01/26/2018 by Plaintiff Janay E Garrick. Waiver of service due by 2/26/2018. (Franklin, Jamie) (Entered: 01/26/2018) |
| 01/26/2018 | 6 | REQUEST for Waiver of Service sent to Board of Trustees of Moody Bible Institute on 01/26/2018 by Plaintiff Janay E Garrick. Waiver of service due by 2/26/2018. (Franklin, Jamie) (Entered: 01/26/2018) |
| 02/02/2018 | 7 | MINUTE entry before the Honorable John Z. Lee: Initial status hearing set for 4/12/18 at 9:00 a.m. Judge Lee participates in the Mandatory Initial Discovery Pilot Project ("Project"). The Project applies to all cases filed on or after June 1, 2017, excluding the following: (1) cases exempted by Rule 26(a)(1)(B), (2) actions brought by a person in the custody of the United States, a state, or a state subdivision, regardless of whether an attorney is recruited, (3) actions under the Private Securities Litigation Reform Act, (4) patent cases governed by the Local Patent Rules, and (5) cases transferred for consolidated administration in the District by the Judicial Panel on Multidistrict Litigation ("Exempt Cases").For all cases to which the Project applies, Judge Lee requires (1) each attorney appearing on behalf of Plaintiff(s) to file a "Certification by Attorney Regarding Discovery Obligations Under Mandatory Initial Discovery Pilot Project" form within 28 days after the filing of the Complaint and (2) each attorney appearing on behalf of Defendant(s) to file the certification form with the Answer. The parties are directed to file a joint initial status report four business days prior to the initial status hearing. The certification form and initial status report requirements are set forth in Judge Lee's standing order regarding the "Mandatory Initial Discovery Pilot Project" available on the Courts website. For all Exempt Cases, the parties are directed to file a joint initial status report four business days prior to the initial status hearing in accordance with the standing order governing "Initial Status Report in Cases Exempt from the Mandatory Initial Discovery Pilot Project" also available on the Court's website. Mailed notice (ca, ) (Entered: 02/02/2018) |
| 02/06/2018 | 8 | CERTIFICATE by Attorney Regarding Discovery Obligations Under MIDP (Franklin, Jamie) (Entered: 02/06/2018) |
| 02/21/2018 | 9 | WAIVER OF SERVICE returned executed by Janay E Garrick. Moody Bible Institute waiver sent on 1/26/2018, answer due 3/27/2018. (Franklin, Jamie) (Entered: 02/21/2018) |
| 03/09/2018 | 10 | ATTORNEY Appearance for Defendant Moody Bible Institute by Christian Mark Poland (Poland, Christian) (Entered: 03/09/2018) |
| 03/09/2018 | 11 | NOTIFICATION of Affiliates pursuant to Local Rule 3.2 by Moody Bible Institute (Poland, Christian) (Entered: 03/09/2018) |
| 03/09/2018 | 12 | MOTION by Defendant Moody Bible Institute to stay *Court proceedings pending termination of EEOC proceeding* (Attachments: # 1 Exhibit A)(Poland, Christian) (Entered: 03/09/2018) |
| 03/09/2018 | 13 | NOTICE of Motion by Christian Mark Poland for presentment of motion to stay 12 before Honorable John Z. Lee on 3/14/2018 at 09:00 AM. (Poland, Christian) (Entered: 03/09/2018) |
| 03/14/2018 | 14 | MINUTE entry before the Honorable John Z. Lee: Motion hearing held on 3/14/18. For the reasons stated on the record, Defendant's motion to stay Court proceedings pending termination of EEOC proceeding 12 is denied. The case will proceed on the current schedule. Defendant's answer and motion to dismiss shall be due by 4/6/18. A motion to stay pending resolution of the motion to dismiss is limited to five pages shall be due by 3/31/18; Plaintiff's response shall be due by 3/28/18. Mailed notice (ca, ) (Entered: 03/14/2018) |
| 03/21/2018 | 15 | MOTION by Defendant Moody Bible Institute to stay *discovery pending adjudication of Moody's Motion to Dismiss Plaintiff's Complaint* (Attachments: # 1 Exhibit s A through L)(Poland, Christian) (Entered: 03/21/2018) |
| 03/28/2018 | 16 | RESPONSE by Janay E Garrickin Opposition to MOTION by Defendant Moody Bible Institute to stay *discovery pending adjudication of Moody's Motion to Dismiss Plaintiff's Complaint* 15 (Franklin, Jamie) (Entered: 03/28/2018) |

| 04/06/2018 | 17 | CERTIFICATE by Attorney Regarding Discovery Obligations Under Mandatory Initial Discovery Pilot Project (Poland, Christian) (Entered: 04/06/2018) |
|---|---|---|
| 04/06/2018 | 18 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Moody Bible Institute *[Motion to Dismiss Pursuant to Rule 12(B)(1) and 12(B)(6)]* (Poland, Christian) (Entered: 04/06/2018) |
| 04/06/2018 | 19 | MEMORANDUM *IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) AND 12(B)(6)* (Attachments: # 1 Exhibit s A through L)(Poland, Christian) (Entered: 04/06/2018) |
| 04/06/2018 | 20 | NOTICE of Motion by Christian Mark Poland for presentment of Motion to Dismiss for Failure to State a Claim 18 before Honorable John Z. Lee on 4/12/2018 at 09:00 AM. (Poland, Christian) (Entered: 04/06/2018) |
| 04/06/2018 | 21 | ANSWER to Complaint by Moody Bible Institute(Poland, Christian) (Entered: 04/06/2018) |
| 04/09/2018 | 22 | STATUS Report *(Joint)* by Janay E Garrick (Franklin, Jamie) (Entered: 04/09/2018) |
| 04/12/2018 | 23 | MINUTE entry before the Honorable John Z. Lee: Status and motion hearing held on 4/12/18. Defendant's motion to stay discovery 15 is denied. Discovery shall proceed. Oral motion to dismiss Board of Trustees for the Moody Bible Institute is granted. Plaintiff's response to Defendant's motion to dismiss 18 shall be due by 5/11/18; reply due by 6/1/18. The parties should meet and confer and submit a proposed discovery schedule by 4/23/18. Status hearing set for 4/25/18 at 9:00 a.m. Mailed notice (ca, ) (Entered: 04/12/2018) |
| 04/19/2018 | 24 | MOTION by Defendant Moody Bible Institute for reconsideration *of the denial of Its request that discovery be limited at this stage to Its constitutional defenses, or in the alternative for Section 1292(b) certification* (Attachments: # 1 Exhibit s A and B)(Poland, Christian) (Entered: 04/19/2018) |
| 04/19/2018 | 25 | NOTICE of Motion by Christian Mark Poland for presentment of motion for reconsideration, 24 before Honorable John Z. Lee on 4/25/2018 at 09:00 AM. (Poland, Christian) (Entered: 04/19/2018) |
| 04/20/2018 | 26 | TRANSCRIPT OF PROCEEDINGS held on 4/12/2018 before the Honorable John Z. Lee. Order Number: 30571. Court Reporter Contact Information: ALEXANDRA ROTH, alexandra_roth@ilnd.uscourts.gov, (312) 408−5038.<br><br>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.<br><br>Redaction Request due 5/11/2018. Redacted Transcript Deadline set for 5/21/2018. Release of Transcript Restriction set for 7/19/2018. (Roth, Alexandra) (Entered: 04/20/2018) |
| 04/23/2018 | 27 | Rule 26(f) Report for Mandatory Initial Discovery Pilot (MIDP) */ Jointly Proposed Discovery Schedule*, filed by Defendant Moody Bible Institute. (Poland, Christian) (Entered: 04/23/2018) |
| 04/25/2018 | 28 | MINUTE entry before the Honorable John Z. Lee: Status and motion hearing held on 4/25/18. Plaintiff's response to Defendant's motion to reconsider the denial of its request that discovery be limited at this stage to its constitutional defenses, or in the alternative for section 1292(b) certification 24 shall be due by 5/18/18; reply no longer than five pages shall be due by 5/25/18. Discovery is stayed pending the ruling on the motion to reconsider. Status hearing set for 6/6/18 at 9:00 a.m. Mailed notice (ca, ) (Entered: 04/26/2018) |
| 05/03/2018 | 29 | NOTICE by Christian Mark Poland of Change of Address */Name Change Only* (Poland, Christian) (Entered: 05/03/2018) |

| | | |
|---|---|---|
| 05/11/2018 | 30 | RESPONSE by Janay E Garrickin Opposition to MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Moody Bible Institute *[Motion to Dismiss Pursuant to Rule 12(B)(1) and 12(B)(6)]* 18 (Franklin, Jamie) (Entered: 05/11/2018) |
| 05/18/2018 | 31 | RESPONSE by Janay E Garrickin Opposition to MOTION by Defendant Moody Bible Institute for reconsideration *of the denial of Its request that discovery be limited at this stage to Its constitutional defenses, or in the alternative for Section 1292(b) certification* 24 (Franklin, Jamie) (Entered: 05/18/2018) |
| 05/25/2018 | 32 | REPLY by Defendant Moody Bible Institute *in Support of Its Motion to Reconsider, or in the Alternative for Section 1292(B) Certification* (Poland, Christian) (Entered: 05/25/2018) |
| 06/01/2018 | 33 | REPLY by Defendant Moody Bible Institute to Motion to Dismiss for Failure to State a Claim 18 *[REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PURSUANT TO RULE 12(B)(1) AND 12(B)(6)* (Attachments: # 1 Exhibit M)(Poland, Christian) (Entered: 06/01/2018) |
| 06/05/2018 | 34 | MINUTE entry before the Honorable John Z. Lee:The status hearing set for 6/5/18 is reset to 7/5/18 at 9:00 a.m.Mailed notice (ca, ) (Entered: 06/05/2018) |
| 07/03/2018 | 35 | ORDER : Defendants Moody Bible Institute and the Board of Trustees for the Moody Bible Institute ("Moody") have filed a motion 24 seeking reconsideration of the Court's denial of Moody's request to limit discovery at this stage to that which is necessary to resolve whether the "ministerial exception" defeats Plaintiff Janay Garrick's claims. Moody's motion is granted in part and denied in part. Signed by the Honorable John Z. Lee on 7/3/18. [For further details see order].Mailed notice(ca, ) (Entered: 07/03/2018) |
| 07/05/2018 | 36 | MINUTE entry before the Honorable John Z. Lee: Status hearing held on 7/5/2018. Fact discovery deadline for both the breach of contract and ministerial exception portions of this case is set for 11/30/2018. Status set for 9/18/2018 at 9:00 a.m. Mailed notice (cn). (Entered: 07/06/2018) |
| 08/08/2018 | 37 | MOTION by Defendant Moody Bible InstituteMotion for Leave to Cite Additional Authorities in Support of Pending Motion to Dismiss (Attachments: # 1 Supplement al Authority)(Poland, Christian) (Entered: 08/08/2018) |
| 08/08/2018 | 38 | NOTICE of Motion by Christian Mark Poland for presentment of motion for miscellaneous relief 37 before Honorable John Z. Lee on 8/16/2018 at 09:00 AM. (Poland, Christian) (Entered: 08/08/2018) |
| 08/15/2018 | 39 | MINUTE entry before the Honorable John Z. Lee:Defendant's motion for leave to cite additional authorities in support of its pending motion to dismiss 37 is granted. No appearance is required on the motion.Mailed notice (ca, ) (Entered: 08/15/2018) |
| 09/17/2018 | 40 | MINUTE entry before the Honorable John Z. Lee:The status hearing set for 9/18/18 is reset to 10/31/18 at 9:00 a.m.Mailed notice (ca, ) (Entered: 09/17/2018) |
| 09/27/2018 | 41 | MOTION by Attorney Jamie S. Franklin to withdraw as attorney for Janay E Garrick. New address information: Janay Garrick, PO Box 1729 Orlando FL 32802 (Franklin, Jamie) (Entered: 09/27/2018) |
| 09/27/2018 | 42 | NOTICE of Motion by Jamie S. Franklin for presentment of motion to withdraw as attorney 41 before Honorable John Z. Lee on 10/3/2018 at 09:00 AM. (Franklin, Jamie) (Entered: 09/27/2018) |
| 09/27/2018 | 43 | NOTIFICATION of Party Contact Information for Janay E Garrick Janay Garrick, PO Box 1729 Orlando FL 32802 re MOTION by Attorney Jamie S. Franklin to withdraw as attorney for Janay E Garrick. New address information: Janay Garrick, PO Box 1729 Orlando FL 32802 41 (Franklin, Jamie) (Entered: 09/27/2018) |
| 10/03/2018 | 44 | MINUTE entry before the Honorable John Z. Lee:Status hearing held on 10/3/18. Jamie Franklin's motion to withdraw as counsel 41 is granted. Plaintiff is granted 45 days to retain counsel. Fact discovery is stayed until 11/14/18. Status hearing set for 11/14/18 at 9:00 a.m. Mailed notice (ca, ) (Entered: 10/03/2018) |

A.004

| | | |
|---|---|---|
| 10/04/2018 | 45 | MINUTE entry before the Honorable John Z. Lee:The status hearing set for 10/31/18 is stricken. The Court set a status hearing for 11/14/18 at 9:00 a.m. Mailed notice (ca, ) (Entered: 10/04/2018) |
| 10/08/2018 | 46 | MOTION by Defendant Moody Bible Institute to supplement *, and to cite additional authorities in support of,* its pending motion to dismiss (Poland, Christian) (Entered: 10/08/2018) |
| 10/08/2018 | 47 | NOTICE of Motion by Christian Mark Poland for presentment of motion to supplement 46 before Honorable John Z. Lee on 10/16/2018 at 09:00 AM. (Poland, Christian) (Entered: 10/08/2018) |
| 10/09/2018 | 48 | MINUTE entry before the Honorable John Z. Lee: Defendant has filed a motion 46 to supplement its motion to dismiss with additional legal authorities and evidence. The Court construes this filing as a motion to amend Defendant's pending motion to dismiss 18 , and grants the motion. Accordingly, the pending motion to dismiss 18 is stricken. Defendant to file a new motion, including all the argument and authorities to which it intends to refer by 10/24/18.Mailed notice (ca, ) (Entered: 10/09/2018) |
| 10/16/2018 | 49 | ENTERED in Error. (Poland, Christian) Modified on 10/16/2018 (kp, ). (Docket Text Modified by Clerk's Office) Modified on 10/22/2018 (smm). (Entered: 10/16/2018) |
| 10/16/2018 | 50 | MOTION by Defendant Moody Bible Institute Motion to Modify the Court's October 9, 2018 Order in Light of Plaintiff Garrick's Intention to Seek Leave to Add a New Claim to Her Complaint (Attachments: # 1 Exhibit A–B)(Poland, Christian) (Entered: 10/16/2018) |
| 10/16/2018 | 51 | ENTERED in Error. (Poland, Christian) Modified on 10/22/2018 (smm, ). (Entered: 10/16/2018) |
| 10/16/2018 | 52 | NOTICE of Motion by Christian Mark Poland for presentment of motion for miscellaneous relief, 50 before Honorable John Z. Lee on 10/23/2018 at 09:00 AM. (Poland, Christian) (Entered: 10/16/2018) |
| 10/19/2018 | 54 | RESPONSE by Janay E. Garrick in Opposition to MOTION by Defendant Moody Bible Institute Motion to Modify the Court's October 9, 2018 Order in Light of Plaintiff Garrick's Intention to Seek Leave to Add a New Claim to Her Complaint 50 . (jh, ) (Entered: 10/23/2018) |
| 10/22/2018 | 53 | NOTICE of Correction regarding notice of motion 51 , MOTION by Defendant Moody Bible Institute Motion to Modify the Court's October 9, 2018 Order in Light of Plaintiff Garrick's Intention to Seek Leave to Add a New Claim to Her Complaint 49 . (smm) (Entered: 10/22/2018) |
| 10/23/2018 | 55 | MINUTE entry before the Honorable John Z. Lee: Motion hearing held on 10/23/18. Ms. Garrick requests time to secure counsel in order to determine if she will be amending her complaint. This case is stayed until 11/14/18. Defendant's motion to modify the Courts October 9, 2018 order in light of Plaintiff Garrick's intention to seek leave to add a new claim in her complaint 50 is entered and continued until 11/14/18. The status hearing set for 11/14/18 at 9:00 a.m. will stand. Mailed notice (ca, ) (Entered: 10/23/2018) |
| 11/14/2018 | 56 | MINUTE entry before the Honorable John Z. Lee: Status hearing held on 11/14/18. Ms. Garrick reports that she has been unable to retain counsel. Plaintiff's motion for leave to file an amended complaint, attaching the proposed amended complaint, shall be due by 12/5/18 and should be noticed up for presentment on 12/13/18 at 9:15 a.m. Defendant's motion to modify the Court's October 9, 2018 order 50 is entered and continued for 12/13/18 at 9:15 a.m. Discovery remains stayed. Status hearing set for 12/13/18 at 9:15 a.m. Mailed notice (ca, ) (Entered: 11/14/2018) |
| 12/04/2018 | 57 | MOTION by Plaintiff Janay E Garrick for leave to file first amended complaint. (Exhibits) (nsf, ) (Entered: 12/04/2018) |
| 12/04/2018 | 58 | MOTION by Plaintiff Janay E Garrick for telephonic hearing. (nsf, ) (Entered: 12/04/2018) |
| 12/04/2018 | 59 | NOTICE of Motion by Janay E Garrick for presentment of motion for leave to file 57 , motion for hearing 58 before Honorable John Z. Lee on 12/13/2018 at 09:15 AM. (nsf, ) (Entered: 12/04/2018) |

**A.005**

| 12/06/2018 | 60 | MINUTE entry before the Honorable John Z. Lee:Plaintiff's motion for a telephonic hearing 58 is granted. Ms. Garrick should contact the courtroom deputy the day before with a call in number. Mailed notice (ca, ) (Entered: 12/06/2018) |
|---|---|---|
| 12/12/2018 | 61 | RESPONSE by Defendant Moody Bible Institute to motion for leave to file 57 *a First Amended Complaint [Partial Opposition]* (Attachments: # 1 Exhibit s A and B)(Poland, Christian) (Entered: 12/12/2018) |
| 12/12/2018 | 62 | RECEIVED Modified First Amended complaint by Janay E Garrick against Moody Bible Institute (One service copy)(las, ) (Entered: 12/13/2018) |
| 12/12/2018 | 63 | RECEIVED Modified First Amended complaint by Janay E Garrick against Moody Bible Institute (One service copy) (las, ) (Entered: 12/13/2018) |
| 12/13/2018 | 64 | MINUTE entry before the Honorable John Z. Lee: Status and motion hearing held on 12/13/18. Defendant's motion to modify the Court's October 9, 2018 order in light of Plaintiff's intention to seek leave to add a new claim to her complaint 50 is granted. Plaintiffs motion for leave to file first amended complaint 57 is granted, but should be amended as suggested in Defendants motion. Plaintiff's amended complaint shall be due by 12/20/18. Defendant motion to dismiss limited to 20 pages shall be due by 1/17/19; Plaintiff's response limited to 20 pages shall be due by 2/14/19; Defendant's reply limited to 15 pages shall be due by 3/7/19; ruling will be by mail. Discovery will remain stayed. Mailed notice (ca, ) (Entered: 12/13/2018) |
| 12/18/2018 | 65 | SECOND modified First Amended Complaint by Janay E Garrick against All Defendants (las, ) (Entered: 12/18/2018) |
| 01/07/2019 | 66 | RECEIVED THIRD MODIFIED FIRST AMENDED complaint by Janay E Garrick against All Defendants. (tt, ) (Entered: 01/09/2019) |
| 01/07/2019 | 67 | RECEIVED THIRD MODIFIED FIRST AMENDED complaint by Janay E Garrick against All Defendants (Exhibits). (tt, ) (Entered: 01/09/2019) |
| 01/17/2019 | 68 | MOTION to dismiss for failure to state a claim by Defendant Moody Bible Institute */ MOODY BIBLE INSTITUTE'S motion to dismiss plaintiff's first amended complaint pursuant to Rule 12(b)(1) and 12(b)(6)* (Poland, Christian) Text Modified on 1/18/2019 (las, ). (Entered: 01/17/2019) |
| 01/17/2019 | 69 | MEMORANDUM by Moody Bible Institute in support of Motion to Dismiss for Failure to State a Claim 68 (Attachments: # 1 Exhibit s A through M)(Poland, Christian) (Entered: 01/17/2019) |
| 02/07/2019 | 70 | MOTION by Plaintiff Janay E Garrick for miscellaneous relief regarding response in opposition to defendant's memorandum of law in suppport of its motion to dismiss Plaintiff's first amended complaint pursuant to Rule 12(b)(1) and 12(b)(6). (gcy, ) (Entered: 02/07/2019) |
| 02/08/2019 | 71 | MINUTE entry before the Honorable John Z. Lee: Plaintiff's motion for a four–week extension to file her response brief 70 is granted. Plaintiff's response to Defendant's motion to dismiss will be due 3/14/19, with Defendant's reply due 4/4/19. Further, in light of Plaintiff's pro se status, her motion to use five additional pages for her response brief is granted. Mailed notice (ca, ) (Entered: 02/08/2019) |
| 03/14/2019 | 72 | RESPONSE by Janay E Garrick in Opposition to MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Moody Bible Institute */ MOODY BIBLE INSTITUTE'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(1) and 12(b)(6)* 68 (Exhibit) (las, ) (Entered: 03/18/2019) |
| 03/14/2019 | 73 | PRO SE Appearance by Plaintiff Janay E Garrick (las, ) (Entered: 03/18/2019) |
| 03/18/2019 | 74 | MAIL RETURNED, for document # 71 sent to Janay Garrick returned as undeliverable, return to sender. Re–mailed to Tallahassee, Florida (las, ) (Entered: 03/19/2019) |
| 03/18/2019 | 75 | MAIL RETURNED, for document # 70 sent to Janay Garrick returned as undeliverable, return to sender. Re–mailed to Tallahassee, Florida (las, ) (Entered: 03/19/2019) |

| | | |
|---|---|---|
| 04/02/2019 | 76 | MOTION by Defendant Moody Bible Institute for extension of time to file response/reply *in support of its motion to dismiss plaintiff's first amended complaint and for leave to file overlength reply brief* (Poland, Christian) (Entered: 04/02/2019) |
| 04/02/2019 | 77 | *NOTICE OF AGREED MOTION /* NOTICE of Motion by Christian Mark Poland for presentment of motion for extension of time to file response/reply 76 before Honorable John Z. Lee on 4/9/2019 at 09:00 AM. (Poland, Christian) (Entered: 04/02/2019) |
| 04/02/2019 | 78 | MINUTE entry before the Honorable John Z. Lee:Agreed motion for extension of time until April 11, 2019 to file its reply brief in support of the motion to dismiss 76 is granted; the reply is limited to 20 pages. No appearance is required on the motion.Mailed notice (ca, ) (Entered: 04/02/2019) |
| 04/11/2019 | 79 | REPLY by Moody Bible Institute to MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Moody Bible Institute */ MOODY BIBLE INSTITUTE'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(1) and 12(b)(6) 68 / MOODY BIBLE INSTITUTE'S REPLY MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO RULE 12(b)(1) AND 12(b)(6)* (Poland, Christian) (Entered: 04/11/2019) |
| 05/09/2019 | 80 | MOTION by Defendant Moody Bible Institute for Leave to Cite Additional Authority in Support of Moody's Pending Motion to Dismiss Plaintiff's First Amended Complaint (Entered: 05/09/2019) |
| 05/09/2019 | 81 | NOTICE of Motion by Christian Mark Poland for presentment of motion for miscellaneous relief 80 before Honorable John Z. Lee on 5/16/2019 at 09:00 AM. (Poland, Christian) (Entered: 05/09/2019) |
| 05/13/2019 | 82 | MINUTE entry before the Honorable John Z. Lee:Motion for leave to cite additional authority 80 is granted. No appearance is required on the motion.Mailed notice (ca, ) (Entered: 05/13/2019) |
| 06/25/2019 | 83 | MOTION by Defendant Moody Bible InstituteMotion for Leave to Cite Additional Authority in Support of Pending Motion to Dismiss *First Amended Complaint* (Poland, Christian) (Entered: 06/25/2019) |
| 06/25/2019 | 84 | NOTICE of Motion by Christian Mark Poland for presentment of motion for miscellaneous relief 83 before Honorable John Z. Lee on 7/3/2019 at 09:00 AM. (Poland, Christian) (Entered: 06/25/2019) |
| 06/25/2019 | 85 | *CORRECTED* NOTICE of Motion by Christian Mark Poland for presentment of (Poland, Christian) (Entered: 06/25/2019) |
| 06/26/2019 | 86 | MINUTE entry before the Honorable John Z. Lee:Motion for leave to cite additional authority in support of its pending motion to dismiss 83 is granted. No appearance is required on the motion.Mailed notice (ca, ) (Entered: 06/26/2019) |
| 08/19/2019 | 87 | MOTION by Defendant Moody Bible Institutefor Leave to Cite Additional Authority in Support of Moody's Pending Motion to Dismiss Plaintiff's First Amended Complaint (Poland, Christian) (Entered: 08/19/2019) |
| 08/19/2019 | 88 | NOTICE of Motion by Christian Mark Poland for presentment of motion for miscellaneous relief 87 before Honorable John Z. Lee on 8/27/2019 at 09:00 AM. (Poland, Christian) (Entered: 08/19/2019) |
| 08/20/2019 | 89 | MINUTE entry before the Honorable John Z. Lee:Defendant's motion for leave to cite additional authority in support of its pending motion to dismiss 87 is granted. No appearance is required on the motion.Mailed notice (ca, ) (Entered: 08/20/2019) |
| 09/25/2019 | 90 | MINUTE entry before the Honorable John Z. Lee: For the reasons stated in the memorandum opinion and order, Moody's motion to dismiss 68 is granted. Counts I, II, and VI are dismissed with prejudice. Counts III, IV and V are dismissed without prejudice, and Garrick is granted leave to amend her complaint to restate those claims consistent with this order within twenty–one days. If she does not do so, this action will be dismissed with prejudice, and judgment entered in Moodys favor. Garrick is cautioned that an amended complaint must stand complete and on its own, without referring back to prior pleadings. [For further details see memorandum opinion and order].Mailed notice (ca, ) (Entered: 09/25/2019) |

| 09/25/2019 | 91 | MEMORANDUM Opinion and Order Signed by the Honorable John Z. Lee on 9/25/19.Mailed notice(ca, ) (Entered: 09/25/2019) |
|---|---|---|
| 09/25/2019 | 92 | MINUTE entry before the Honorable John Z. Lee: Status hearing set for 10/23/19 at 9:00 a.m.Mailed notice (ca, ) (Entered: 09/25/2019) |
| 10/11/2019 | 93 | MOTION for miscellaneous relief regarding court's granting of leave to amend complaint as stated in the memorandum opinion and order by Plaintiff Janay E Garrick (pk, ) (Entered: 10/15/2019) |
| 10/15/2019 | 94 | MINUTE entry before the Honorable John Z. Lee:Motion for an extension of time until November 6, 2019 to amend her complaint 93 is granted. The status hearing set for 10/23/19 is reset to 11/13/19 at 9:00 a.m.Mailed notice (ca, ) (Entered: 10/15/2019) |
| 11/05/2019 | 95 | MOTION for telephonic hearing by Plaintiff Janay E Garrick (pk, ) (Entered: 11/06/2019) |
| 11/05/2019 | 96 | NOTICE of Motion by Janay E Garrick for presentment of motion for for telephonic hearing 95 before Honorable John Z. Lee on 11/13/2019 at 09:00 AM. (pk, ) (Entered: 11/06/2019) |
| 11/05/2019 | 97 | SECOND AMENDED complaint by Janay E Garrick. (Exhibits) (pk, ) (Entered: 11/06/2019) |
| 11/05/2019 | 98 | SECOND AMENDED complaint by Janay E Garrick against Moody Bible Institute (pk, ) (Entered: 11/06/2019) |
| 11/08/2019 | 99 | MINUTE entry before the Honorable John Z. Lee:Plaintiff's motion for a telephonic hearing 95 is granted. Ms. Garrick should contact the courtroom deputy with her contact number. Mailed notice (ca, ) (Entered: 11/08/2019) |
| 11/13/2019 | 100 | MINUTE entry before the Honorable John Z. Lee:Status hearing held on 11/13/19. Defendant's motion to dismiss limited to 20 pages is due by 12/4/19; Plaintiff's response limited to 20 pages is due by 1/10/20; Defendant's reply limited to 15 pages is due by 1/24/20. Status hearing set for 3/5/20 at 9:00 a.m.Mailed notice (ca, ) (Entered: 11/13/2019) |
| 12/04/2019 | 101 | MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM by Defendant Moody Bible Institute (Poland, Christian) (Entered: 12/04/2019) |
| 12/04/2019 | 102 | NOTICE of Motion by Christian Mark Poland for presentment of Motion to Dismiss for Failure to State a Claim 101 before Honorable John Z. Lee on 12/12/2019 at 09:00 AM. (Poland, Christian) (Entered: 12/04/2019) |
| 12/04/2019 | 103 | MEMORANDUM by Moody Bible Institute in support of Motion to Dismiss for Failure to State a Claim 101 (Attachments: # 1 Exhibit A)(Poland, Christian) (Entered: 12/04/2019) |
| 12/11/2019 | 104 | MINUTE entry before the Honorable John Z. Lee:The Court entered a briefing schedule on the motion to dismiss on 11/13/19. No appearance is necessary on the motion. Mailed notice (ca, ) (Entered: 12/11/2019) |
| 01/07/2020 | 105 | MOTION to stay district court proceedings pending resolution of the supreme court's decision in St. James School v. Biel by Plaintiff Janay E Garrick to stay (pk, ) (Entered: 01/08/2020) |
| 01/08/2020 | 106 | RESPONSE by Moody Bible Institutein Opposition to MOTION by Plaintiff Janay E Garrick to stay 105 *this Matter Pending Resolution of the Supreme Court's Decision in St. James School v. Biel* (Poland, Christian) (Entered: 01/08/2020) |
| 01/08/2020 | 108 | MOTION for telephonic hearning by Plaintiff Janay E Garrick (Attachments: # 1 Notice of Motion)(Received for docketing on 1/9/2020)(pk, ) (Entered: 01/10/2020) |
| 01/09/2020 | 107 | MINUTE entry before the Honorable John Z. Lee:The motion to dismiss response and reply deadlines are stricken until the Court rules on the motion to stay. Hearing on the motion to stay 105 is set for 1/16/20 at 9:00 a.m. Plaintiff should provide the courtroom deputy a call in number the day before the hearing.Mailed notice (ca, ) (Entered: 01/09/2020) |

**A.008**

| | | |
|---|---|---|
| 01/13/2020 | 109 | MINUTE entry before the Honorable John Z. Lee:Motion for telephonic hearing 108 is granted. As specified in the Court's 1/9/2020 Minute Entry, Plaintiff should provide the courtroom deputy with a call in number the day before the hearing.Mailed notice (ca, ) (Entered: 01/13/2020) |
| 01/16/2020 | 110 | MINUTE entry before the Honorable John Z. Lee:Status hearing held on 1/16/20. Plaintiff's motion to stay the proceedings pending the resolution of the Supreme Court's decision 105 is denied. Plaintiff's oral motion for additional time to file her response is granted. Plaintiff's response to the motion to dismiss 101 is due by 2/27/20; Defendant's reply due is by 3/19/20. The status hearing set for 3/5/20 is reset to 4/29/20 at 9:00 a.m. Mailed notice (ca, ) (Entered: 01/16/2020) |
| 02/26/2020 | 111 | RESPONSE in Opposition to defendant's memorandum of law in support of its motion to dismiss plaintiff's second amended complaint by Plaintiff Janay E Garrick. (Exhibit) (pk, ) (Entered: 02/26/2020) |
| 03/16/2020 | 112 | ORDER Amended General Order 20–0012 IN RE: CORONAVIRUS COVID–19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on March 16, 2020. All open cases are impacted by this Amended General Order. See attached Order for guidance.Signed by the Honorable Rebecca R. Pallmeyer on 3/16/2020: Mailed notice. (pj, ) (Entered: 03/18/2020) |
| 03/19/2020 | 113 | REPLY by Defendant Moody Bible Institute *in Support of Its Motion to Dismiss Plaintiff's Second Amended Complaint* (Poland, Christian) (Entered: 03/19/2020) |
| 03/23/2020 | 114 | ORDER Seconded Amended General Order 20–0012 IN RE: CORONAVIRUS COVID–19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on March 30, 2020. All open cases are impacted by this Second Amended General Order. Amended General Order 20–0012, entered on March 17, 2020, and General Order 20–0014, entered on March 20, 2020, are vacated and superseded by this Second Amended General. See attached Order for guidance.Signed by the Honorable Rebecca R. Pallmeyer on 3/23/2020: Mailed notice. (docket7, ) (Entered: 03/31/2020) |
| 03/30/2020 | 115 | ORDER CORRECTED ENTRY: ORDER Seconded Amended General Order 20–0012 IN RE: CORONAVIRUS COVID–19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on March 30, 2020. All open cases are impacted by this Second Amended General Order. Amended General Order 20–0012, entered on March 17, 2020, and General Order 20–0014, entered on March 20, 2020, are vacated and superseded by this Second Amended General. See attached Order for guidance. Signed by the Honorable Rebecca R. Pallmeyer on 3/30/2020: Mailed notice...Signed by the Honorable Rebecca R. Pallmeyer on 3/30/2020:Mailed notice(docket7, ) (Entered: 04/03/2020) |
| 04/07/2020 | 116 | MINUTE entry before the Honorable John Z. Lee:Pursuant to the Second Amended General Order 20–0012, In re: Coronovirus COVID–19 Public Emergency (dated Mar. 30, 2020), the status hearing set for 4/29/20 is hereby stricken. The Court will issue an order scheduling a status hearing at a future date. Mailed notice (ca, ) (Entered: 04/07/2020) |
| 04/24/2020 | 117 | ORDER Third Amended General Order 20–0012 IN RE: CORONAVIRUS COVID–19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on April 24, 2020. All open cases are impacted by this Third Amended General Order. Parties are must carefully review all obligations under this Order, including the requirement listed in paragraph number 5 to file a joint written status report in most civil cases. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 4/24/2020: Mailed notice. (docket3, ) (Entered: 04/27/2020) |
| 05/12/2020 | 118 | STATUS Report / *JOINT STATUS REPORT* by Moody Bible Institute (Poland, Christian) (Entered: 05/12/2020) |
| 05/26/2020 | 119 | ORDER ORDER Fourth Amended General Order 20–0012 IN RE: CORONAVIRUS COVID–19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on May 26, 2020. This Order does not extend or modify any deadlines set in civil cases. For non–emergency motions, no motion may be noticed for presentment on a date earlier than July 15, 2020. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 5/26/2020: Mailed notice. (docket3, ) (Entered: 05/26/2020) |

# A.009

| 07/10/2020 | 120 | ORDER Fifth Amended General Order 20–0012 IN RE: CORONAVIRUS COVID–19 PUBLIC EMERGENCY Signed by the Chief Judge Rebecca R. Pallmeyer on July 10, 2020. This Order does not extend or modify any deadlines set in civil cases. No motions may be noticed for in–person presentment; the presiding judge will notify parties of the need, if any, for a hearing by electronic means or in–court proceeding. See attached Order. Signed by the Honorable Rebecca R. Pallmeyer on 7/10/2020: Mailed notice. (Clerk2, Docket) (Entered: 07/10/2020) |
|---|---|---|
| 07/13/2020 | 121 | MOTION by Defendant Moody Bible Institute for leave to file *Defendant Moody Bible Institute's Motion for Leave to Cite Additional Authority in Support of Its Motion to Dismiss Plaintiff's Second Amended Complaint* (Poland, Christian) (Entered: 07/13/2020) |
| 07/14/2020 | 122 | MINUTE entry before the Honorable John Z. Lee: Moody's motion for leave to file additional authority 121 is denied as unnecessary. The Court stays abreast of developments in the case law and is aware of the Supreme Court's recent decision in Our Lady of Guadalupe School v. Morrissey–Berru, No. 19–267, 2020 WL 3808420 (U.S. July 8, 2020). Mailed notice (ca, ) (Entered: 07/14/2020) |
| 09/25/2020 | 123 | MOTION by Plaintiff Janay E Garrick for leave to cite additional authorities in support of Plaintiff's Second Amended Complaint. (lma, ) (Entered: 09/25/2020) |
| 09/28/2020 | 124 | MINUTE entry before the Honorable John Z. Lee: Plaintiff's motion for leave to cite additional authorities 123 is denied as unnecessary. As noted, the Court stays abreast of developments in the relevant case law, and is aware of the Seventh Circuit's recent decision in Demkovich v. St. Andrew the Apostle Parish, No. 19–2142 (7th Cir. 2020). Mailed notice (ca, ) (Entered: 09/28/2020) |
| 10/13/2020 | 125 | MINUTE entry before the Honorable John Z. Lee:For the reasons stated in the memorandum opinion and order, Moody's motion to dismiss 101 is granted in part and denied in part. Garrick's disparate treatment and retaliation claims (Counts II to IV) may proceed, but her hostile work environment (Count I) and class claims (to the extent that Garrick intended to raise such claims) cannot. A telephone status hearing is set for 10/22/20 at 9:15 a.m. to discuss the scope and timing of discovery. In light of the COVID–19 pandemic and the related General Orders, the Court finds that it is necessary to conduct the status hearing via telephone conference. The call–in number is 888–273–3658 and the access code is 1637578. Counsel of record will receive a separate email at least 12 hours prior to the start of the telephonic hearing with instructions on how to join the call. All persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in court–imposed sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. All participants should review the Court's standing order regarding telephone conferences that is on Judge Lee's website, which can be found at: https://www.ilnd.uscourts.gov/judge–info.aspx?4Qf5zc8loCI5U7rfMP9DHw==. [For further details see memorandum opinion and order]. Mailed notice (ca, ) (Entered: 10/13/2020) |
| 10/13/2020 | 126 | MEMORANDUM Opinion and Order Signed by the Honorable John Z. Lee on 10/13/20.Mailed notice(ca, ) (Entered: 10/13/2020) |
| 10/14/2020 | 127 | MINUTE entry before the Honorable John Z. Lee:The status hearing set for 10/22/20 is reset to 11/5/20 at 9:00 a.m., the dial in number remains the same.Mailed notice (ca, ) (Entered: 10/14/2020) |
| 10/27/2020 | 128 | MOTION by Defendant Moody Bible Institute for reconsideration *of this Court's denial of Moody's Motion to Dismiss as to the Termination of Claims in Plaintiff's Second Amended Complaint* (Poland, Christian) (Entered: 10/27/2020) |
| 10/27/2020 | 129 | NOTICE of Motion by Christian Mark Poland for presentment of motion for reconsideration 128 before Honorable John Z. Lee on 11/5/2020 at 09:15 AM. (Poland, Christian) (Entered: 10/27/2020) |
| 10/28/2020 | 130 | MINUTE entry before the Honorable John Z. Lee:Plaintiff's response to Defendant's motion to reconsider 128 is due by 11/25/20; Defendant's reply by 12/11/20. No appearance is required on the motion. Mailed notice (ca, ) (Entered: 10/28/2020) |

**A.010**

| 11/05/2020 | 131 | MINUTE entry before the Honorable John Z. Lee:Status hearing held on 11/5/20. The briefing scheduled entered on 10/28/20 will stand. The Court will issue its ruling on the motion for reconsideration by mail.Mailed notice (ca, ) (Entered: 11/09/2020) |
| --- | --- | --- |
| 11/25/2020 | 132 | OPPOSITION by Janay E Garrick to Defendant's motion to reconsider the memorandum and order on Defendant's motion to dismiss or, in the alternative, motion for certification of interlocutory appeal. (ph, ) (Entered: 11/30/2020) |
| 12/11/2020 | 133 | REPLY by Defendant Moody Bible Institute *in Support of Its Motion to Reconsider This Court's Denial of Moody's Motion to Dismiss as to the Termination Claims in Plaintiff's Second Amended Complaint* (Poland, Christian) (Entered: 12/11/2020) |
| 08/12/2021 | 134 | ORDER : For the reasons below, Moody Bible Institute's ("Moody") motion to reconsider the Court's denial in part of its motion to dismiss Janay Garrick's second amended complaint, or alternatively to certify an interlocutory appeal, is denied 128 . Signed by the Honorable John Z. Lee on 8/12/21. [For further details see order].(ca, ) (Entered: 08/12/2021) |
| 08/12/2021 | 135 | MINUTE entry before the Honorable John Z. Lee: Status hearing set for 9/1/21 at 9:00 a.m. The call–in number is 888–273–3658 and the access code is 1637578. Counsel of record will receive a separate email at least 12 hours prior to the start of the telephonic hearing with instructions on how to join the call. All persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in court–imposed sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. All participants should review the Court's standing order regarding telephone conferences that is on Judge Lee's website, which can be found at: https://www.ilnd.uscourts.gov/judge–info.aspx?4Qf5zc8loCI5U7rfMP9DHw==. (ca, ) (Entered: 08/12/2021) |
| 08/26/2021 | 136 | ATTORNEY Appearance for Plaintiff Janay E Garrick by Jamie S. Franklin (Franklin, Jamie) (Entered: 08/26/2021) |
| 09/01/2021 | 137 | MINUTE entry before the Honorable John Z. Lee:Status hearing held on 9/1/21. Written discovery requests are to be served by 9/10/21; responses are due by 10/8/21. Defendant's answer is due by 9/22/21. The discovery as to the ministerial exception to be completed by 11/30/21. The parties request a settlement conference. This case is referred to Magistrate Judge Kim for a settlement conference. Magistrate Judge Kim may modify the schedule if he deems it appropriate. Status hearing set for 12/2/21 at 9:00 a.m. The call–in number is 888–273–3658 and the access code is 1637578. Counsel of record will receive a separate email at least 12 hours prior to the start of the telephonic hearing with instructions on how to join the call. All persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation of these prohibitions may result in court–imposed sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. All participants should review the Court's standing order regarding telephone conferences that is on Judge Lee's website, which can be found at: https://www.ilnd.uscourts.gov/judge–info.aspx?4Qf5zc8loCI5U7rfMP9DHw==. (ca, ) (Entered: 09/02/2021) |
| 09/02/2021 | 138 | Pursuant to Local Rule 72.1, this case is hereby referred to the calendar of Honorable Young B. Kim for the purpose of holding proceedings related to: settlement conference.(ca, ) (Entered: 09/02/2021) |
| 09/03/2021 | 139 | MINUTE entry before the Honorable Young B. Kim: A preliminary settlement discussion is scheduled for September 10, 2021, at 11:00 a.m. by phone. The conference call number is (877) 336–1839 and the passcode is 4333213. Mailed notice (ma,) (Entered: 09/03/2021) |
| 09/10/2021 | 140 | MINUTE entry before the Honorable Young B. Kim: Preliminary settlement discussion held by phone. A telephonic settlement conference is scheduled for November 16, 2021, at noon by phone. Parties are to use the same call–in information. Parties are ordered to review and follow the court's standing order on "Settlement |

A.011

| | | |
|---|---|---|
| | | Conferences" on its webpage. The individuals with the authority to settle this matter must appear and be present by phone for the duration of the conference. Plaintiff to email a written settlement position statement to Defendant, with a copy to the court, by October 1, 2021. Defendant to respond in writing, with a copy to the court, by October 15, 2021. Defendant must also include a draft settlement agreement so that Plaintiff is aware of the terms Defendant requires to resolve this matter. These settlement position statements are not to be filed with the clerk's office. Defendant's unopposed request to stay discovery is granted. The written discovery schedule that court issued on September 1, 2021, (R. 137), stricken. The court will reset this schedule when appropriate. Mailed notice (ma,) (Entered: 09/10/2021) |
| 09/13/2021 | 141 | MINUTE entry before the Honorable Young B. Kim: Defendant's unopposed request to strike the September 22, 2021 deadline for answering the second amended complaint is granted. The answer deadline is stricken and the court will reset it if and when appropriate. Mailed notice (ma,) (Entered: 09/13/2021) |
| 09/13/2021 | 142 | NOTICE of appeal by Moody Bible Institute regarding orders 126 , 125 , 134 Filing fee $ 505, receipt number 0752–18661034. Receipt number: n (Poland, Christian) (Entered: 09/13/2021) |
| 09/14/2021 | 143 | NOTICE of Appeal Due letter sent to counsel of record regarding notice of appeal 142 . (nsf, ) (Entered: 09/14/2021) |
| 09/14/2021 | 144 | TRANSMITTED to the 7th Circuit the short record on notice of appeal 142 . Notified counsel. (nsf, ) (Entered: 09/14/2021) |
| 09/15/2021 | 145 | ACKNOWLEDGMENT of receipt of short record on appeal regarding notice of appeal 142 ; USCA Case No. 21–2683. (rc, ) (Entered: 09/15/2021) |
| 09/23/2021 | 146 | TRANSCRIPT OF PROCEEDINGS held on 9/1/21 before the Honorable John Z. Lee. Order Number: 41586. Court Reporter Contact Information: Joseph Rickhoff, 312–435–5562, joseph_rickhoff@ilnd.uscourts.gov. <P>IMPORTANT: The transcript may be viewed at the court's public terminal or purchased through the Court Reporter/Transcriber before the deadline for Release of Transcript Restriction. After that date it may be obtained through the Court Reporter/Transcriber or PACER. For further information on the redaction process, see the Court's web site at www.ilnd.uscourts.gov under Quick Links select Policy Regarding the Availability of Transcripts of Court Proceedings.</P> Redaction Request due 10/14/2021. Redacted Transcript Deadline set for 10/25/2021. Release of Transcript Restriction set for 12/22/2021. (Rickhoff, Joseph) (Entered: 09/23/2021) |
| 09/27/2021 | 147 | 7th Circuit Transcript Information Sheet by Moody Bible Institute (Poland, Christian) (Entered: 09/27/2021) |
| 09/30/2021 | 148 | MOTION by Plaintiff Janay E Garrick to Reinstate Discovery Schedule (Franklin, Jamie) (Entered: 09/30/2021) |
| 09/30/2021 | 149 | NOTICE of Motion by Jamie S. Franklin for presentment of motion for miscellaneous relief 148 before Honorable Young B. Kim on 10/7/2021 at 09:00 AM. (Franklin, Jamie) (Entered: 09/30/2021) |
| 09/30/2021 | 150 | MINUTE entry before the Honorable Young B. Kim: Plaintiff's motion to reinstate discovery schedule 148 is entered and continued. Appearance on October 7, 2021, is not required to present this motion. Plaintiff is ordered to file a supplement to the motion by October 4, 2021, explaining the upside to reinstating the discovery schedule before exhausting settlement discussions. Parties agreed to stay discovery on September 10, 2021, until they completed their settlement discussion. Plaintiff now wishes to engage in discovery because she is required to file a response to Defendant's jurisdictional statement with the Seventh Circuit. If Plaintiff wishes to cancel the settlement conference, proceed with discovery, and consider settlement after discovery, that makes sense. But the court does not see the benefit of the parties expending more resources on discovery prior to completing settlement discussions merely because Plaintiff has to now file a brief with the Seventh Circuit. Mailed notice (ma,) (Entered: 09/30/2021) |
| 10/04/2021 | 151 | MEMORANDUM motion for miscellaneous relief 148 by Janay E Garrick *Supplemental Memorandum in Support of Motion to Reinstate Discovery Schedule* |

| | | |
|---|---|---|
| | | (Franklin, Jamie) (Entered: 10/04/2021) |
| 10/04/2021 | 152 | MINUTE entry before the Honorable Young B. Kim: Plaintiff's motion to reinstate discovery 148 is granted without a response from Defendant. On September 10, 2021, the court granted Defendant's request to stay discovery because Plaintiff did not oppose this request. (R. 140.) However, in light of Defendant's appeal three days later, Plaintiff has changed her position on this request and now opposes the discovery stay. Because Plaintiff no longer agrees to the stay the court reinstates Plaintiff's right to engage in limited discovery as permitted on September 1, 2021. (See R. 137.) The court will not interfere with Plaintiff's right to discovery. However, Plaintiff should recognize that Defendant may take the added cost of discovery into its settlement position. Mailed notice (ma,) (Entered: 10/04/2021) |
| 10/08/2021 | 153 | MOTION by Defendant Moody Bible Institute to stay *discovery pending the outcome of the parties' settlement conference and Moody's Seventh Circuit Appeal (EXPEDITED CONSIDERATION REQUESTED)* (Poland, Christian) (Entered: 10/08/2021) |
| 10/11/2021 | 154 | RESPONSE by Janay E Garrickin Opposition to MOTION by Defendant Moody Bible Institute to stay *discovery pending the outcome of the parties' settlement conference and Moody's Seventh Circuit Appeal (EXPEDITED CONSIDERATION REQUESTED)* 153 (Franklin, Jamie) (Entered: 10/11/2021) |
| 10/11/2021 | 155 | REPLY by Moody Bible Institute to MOTION by Defendant Moody Bible Institute to stay *discovery pending the outcome of the parties' settlement conference and Moody's Seventh Circuit Appeal (EXPEDITED CONSIDERATION REQUESTED)* 153 (Poland, Christian) (Entered: 10/11/2021) |
| 10/13/2021 | 156 | MINUTE entry before the Honorable John Z. Lee:Defendant's motion to stay discovery 153 is referred to Magistrate Judge Kim. (ca, ) (Entered: 10/13/2021) |
| 10/13/2021 | 157 | MINUTE entry before the Honorable Young B. Kim: Defendant's motion to stay discovery 153 is entered and continued. Defendant is not required to answer Plaintiff's October 5, 2021 written discovery requests until further order of the court. The court will consider the merits of the motion after the November 16, 2021 settlement conference. It is clear from the record that neither side requires discovery in order to explore settlement options on November 16, 2021. And if the parties are able to resolve this case at the settlement conference, the motion would become moot. That said, if the parties wish to reconsider pursuing settlement, they should confer after Defendant serves its settlement position statement on October 15, 2021, and notify the court as soon as possible so that it can cancel the settlement conference and consider the merits of the motion sooner. Mailed notice (ber, ) (Entered: 10/13/2021) |
| 10/14/2021 | 158 | MINUTE entry before the Honorable Young B. Kim: Defendant's unopposed request for extension of time is granted. Defendant to serve its settlement position statement and draft settlement agreement by October 20, 2021. Mailed notice (Kim, Young) (Entered: 10/14/2021) |
| 10/16/2021 | 159 | MINUTE entry before the Honorable Young B. Kim: Plaintiff's request to cancel the November 16, 2021 settlement conference is granted. The court will turn its attention to the pending motion to stay discovery pending appeal. Mailed notice (Kim, Young) (Entered: 10/16/2021) |
| 11/05/2021 | 160 | MINUTE entry before the Honorable Young B. Kim: Defendant's motion to stay discovery 153 is granted. Enter Memorandum Opinion and Order. All matters relating to the referral of this action having been concluded, the referral is closed and the case is returned to the assigned District Judge. Mailed notice (lp, ) (Entered: 11/05/2021) |
| 11/05/2021 | 161 | MEMORANDUM Opinion and Order. Signed by the Honorable Young B. Kim on 11/5/2021: Mailed notice (lp, ) (Entered: 11/05/2021) |
| 11/29/2021 | 162 | MINUTE entry before the Honorable John Z. Lee:The status hearing set for 12/2/21 is reset for 12/8/21 at 9:15 a.m. The call−in number is 888−273−3658 and the access code is 1637578. Counsel of record will receive a separate email at least 12 hours prior to the start of the telephonic hearing with instructions on how to join the call. All persons granted remote access to proceedings are reminded of the general prohibition against photographing, recording, and rebroadcasting of court proceedings. Violation |

**A.013**

|  |  |  |
|---|---|---|
|  |  | of these prohibitions may result in court–imposed sanctions, including removal of court issued media credentials, restricted entry to future hearings, denial of entry to future hearings, or any other sanctions deemed necessary by the Court. All participants should review the Court's standing order regarding telephone conferences that is on Judge Lee's website, which can be found at: https://www.ilnd.uscourts.gov/judge–info.aspx?4Qf5zc8loCI5U7rfMP9DHw==. (ca, ) (Entered: 11/29/2021) |
| 12/08/2021 | 163 | MINUTE entry before the Honorable John Z. Lee: Status hearing held on 12/8/21. The parties report that they are waiting for a ruling from the Seventh Circuit. The parties are directed to file a joint status report by 2/18/22 to update the Court on the Seventh Circuit case (ca, ) (Entered: 12/10/2021) |
| 02/18/2022 | 164 | STATUS Report */ JOINT STATUS REPORT* by Moody Bible Institute (Poland, Christian) (Entered: 02/18/2022) |
| 02/25/2022 | 165 | MINUTE entry before the Honorable John Z. Lee:The Court has reviewed the status report. The parties are directed to file a joint status report by 4/28/22 to update the Court on the Seventh Circuit case. (ca, ) (Entered: 02/25/2022) |
| 04/25/2022 | 166 | STATUS Report *Joint Status Report* by Moody Bible Institute (Poland, Christian) (Entered: 04/25/2022) |
| 04/27/2022 | 167 | MINUTE entry before the Honorable John Z. Lee:The Court has reviewed the status report. The parties are directed to file another status report on 6/28/22. (ca, ) (Entered: 04/27/2022) |
| 06/24/2022 | 168 | STATUS Report */ JOINT STATUS REPORT* by Moody Bible Institute (Poland, Christian) (Entered: 06/24/2022) |
| 06/27/2022 | 169 | MINUTE entry before the Honorable John Z. Lee:he Court has reviewed the status report. The parties are directed to file another status report on 8/29/22. (ca, ) (Entered: 06/27/2022) |
| 06/27/2022 | 170 | MINUTE entry before the Honorable John Z. Lee:The Court has reviewed the status report. The parties are directed to file another status report on 8/29/22. (ca, ) (Entered: 06/27/2022) |
| 08/26/2022 | 171 | STATUS Report */ JOINT STATUS REPORT* by Moody Bible Institute (Poland, Christian) (Entered: 08/26/2022) |
| 08/30/2022 | 172 | MINUTE entry before the Honorable John Z. Lee:The Court has reviewed the status report. The parties are directed to file another status report regarding the interlocutory appeal by 10/30/22. (ca, ) (Entered: 08/30/2022) |
| 09/08/2022 | 173 | EXECUTIVE COMMITTEE ORDER: The Honorable John Z. Lee having been confirmed for a seat on the Court of Appeals for the Seventh Circuit, It is hereby ordered that the cases on the attached list are to be reassigned to the other judges of this Court as indicated, pursuant to Local Rule 40.1(f). Case reassigned to the Honorable John F. Kness for all further proceedings. Honorable John Z. Lee no longer assigned to the case. Signed by Honorable Rebecca R. Pallmeyer on 9/08/2022.(tg, ) (Entered: 09/09/2022) |
| 10/25/2022 | 174 | STATUS Report */ JOINT STATUS REPORT* by Moody Bible Institute (Poland, Christian) (Entered: 10/25/2022) |
| 12/29/2022 | 175 | ANNUAL REMINDER: Pursuant to Local Rule 3.2 (Notification of Affiliates), any nongovernmental party, other than an individual or sole proprietorship, must file a statement identifying all its affiliates known to the party after diligent review or, if the party has identified no affiliates, then a statement reflecting that fact must be filed. An affiliate is defined as follows: any entity or individual owning, directly or indirectly (through ownership of one or more other entities), 5% or more of a party. The statement is to be electronically filed as a PDF in conjunction with entering the affiliates in CM/ECF as prompted. As a reminder to counsel, parties must supplement their statements of affiliates within thirty (30) days of any change in the information previously reported. This minute order is being issued to all counsel of record to remind counsel of their obligation to provide updated information as to additional affiliates if such updating is necessary. If counsel has any questions regarding this |

| | | process, this LINK will provide additional information. Signed by the Executive Committee on 12/29/2022: Mailed notice. (tg, ) (Entered: 12/29/2022) |

IN THE UNITED STATES DISTRICT COURT **RECEIVED**
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

JAN   7 2019

JANAY E. GARRICK,                    )
                                     )            **THOMAS G. BRUTON**
                                     )         **CLERK, U.S. DISTRICT COURT**
        *Plaintiff,*                 )
                                     )   Case No. 18-cv-00573
        v.                           )
                                     )   Judge John Lee
MOODY BIBLE INSTITUTE,               )   Magistrate Judge Young Kim
                                     )
        *Defendant.*                 )

## PLAINTIFF'S  THIRD MODIFIED FIRST AMENDED COMPLAINT

The plaintiff, Janay E. Garrick, brings this Complaint against defendants Moody Bible

Institute and the Board of Trustees for the Moody Bible Institute for retaliation in violation of

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*, breach of contract,

and in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et*

*seq.,* gender discrimination (female), and religious discrimination (egalitarian Christian).

### THE PARTIES

1.      Defendant Moody Bible Institute is a post-secondary religious educational

institution that offers both undergraduate and graduate courses of study. It is a not-for-profit

corporation incorporated in the state of Illinois.

2.      Defendant Board of Trustees for the Moody Bible Institute is the governing board

of Moody Bible Institute.

3.      Collectively, the defendants are referred to as "MBI" or "Moody."

4.      MBI's primary campus is located in downtown Chicago, IL.

5.      MBI has accepted federal financial aid funds pursuant to Title IV of the Higher

Education Act since at least 2012.

**A.016**

6.      As of the date of this filing, MBI has not submitted a request to the Office of Civil

Rights of the U.S. Department of Education for a religious exemption to the requirements of

Title IX.

7.      Plaintiff Janay E. Garrick was employed by MBI at its Chicago campus as an

Instructor of Communications from December 1, 2014 until December 31, 2017.

## PROCEDURAL BACKGROUND

8.      The Plaintiff timely filed a Charge of Discrimination with the U.S. Equal

Employment Opportunity Commission (EEOC) on January 5, 2018. See Exhibit C (EEOC

Charge).

9.      The Plaintiff's case was timely filed with the Federal Court on January 25, 2018.

10.      On September 24, 2018, the EEOC issued Ms. Garrick her Notice of Rights letter,

which states that the Plaintiff must file a lawsuit "WITHIN 90 days of … receipt of this notice."

11.      On September 27, 2018, Plaintiff's counsel withdrew due to the Plaintiff's

inability to continue paying out-of-pocket for her legal fees.

12.      After 45 days of trying to secure new counsel, contacting almost 200 law firms,

organizations, and law professors, the Plaintiff was unable to do so.

13.      On October 16, 2018, during Ms. Garrick's 45-day period in which Plaintiff was

seeking new counsel, the Defendant ("Moody") moved to dismiss, and the court ordered it to re-

brief. The Defendant refused because it thought the Plaintiff was amending.

14.      On November 14, 2018, the Plaintiff was forced to proceed representing herself.

15.      Plaintiff has exhausted her remedies with the EEOC.

## JURISDICTION AND VENUE

2

**A.017**

16.                                                                              T

his Court has federal question jurisdiction over the plaintiff's federal claims pursuant to 28

U.S.C. § 1331.

17.                                                                              T

his Court has supplemental jurisdiction over the plaintiff's state law claims pursuant to 28

U.S.C. § 1367(a).

18.                                                                              V

enue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the defendants reside in

this District and a substantial part of the events or omissions giving rise to the claims occurred

in this District.

19.                                                                              T

he Northern District of Illinois has personal jurisdiction over the defendants because they

reside in and/or and maintain offices in this District and/or do business in Illinois.

## FACTS SUPPORTING THE PLAINTIFF'S CLAIMS

20.                                                                              M

s. Garrick is an ordained minister. She has a Master's Degree in Cross-Cultural Studies and a

Bachelor's Degree in Creative Writing and Speech Communications, and she is working on a

second Master's Degree in Creative Nonfiction. Ms. Garrick has worked in the field of

communications for 15 years.

21.                                                                              M

s. Garrick was hired by MBI on December 1, 2014 as an Instructor of Communications in

MBI's Communications Program, which is one of two programs in its Music and Media Arts

Division.

**A.018**

22.                                                                                                      M

s. Garrick informed MBI during the interview process that she was an "egalitarian Christian"
and believed in gender equality in the ministry. MBI hired her with full knowledge of her
beliefs and renewed her contract twice with this knowledge.

23.                                                                                                      M

s. Garrick's direct supervisor was Brian Kammerzelt, the Communications Program Head.
Terry Strandt, Chair of the Music and Media Arts Division, was responsible for her
performance reviews. Ms. Garrick also reported to Larry Davidhizar, Vice President and
Associate Provost of Faculty. Other MBI administrators at the time included James Spencer,
Vice President and Dean; Junias Venugopal, Provost; Debbie Zelinski, Vice President of
Human Resources; Clive Craigen, Faculty Advocate; Tim Arens, Dean of Student Life; and
Bryan O'Neal, Dean of the Undergraduate Faculty.

### *Campus-Wide Hostility Toward Women*

24.                                                                                                      M

s. Garrick quickly learned that MBI both tolerated and cultivated an environment that was
hostile to female faculty and students.

25.                                                                                                      F

or example, in October 2014, shortly before her campus interview, Ms. Garrick was told by Mr.
Davidhizar to remove the reference to being an ordained minister from her resume. Later, it
became clear that MBI believed that the office of pastor is reserved exclusively for male
candidates and did not want her to represent herself as an ordained minister.

26.                                                                                                      M

s. Garrick was disadvantaged by this demand. When she was hired, she was not told by

administration that ordained ministers could claim a tax deduction for their housing costs. After a male professor informed her of this, Ms. Garrick took steps to file her ordination license with MBI in order to claim the deduction, but she lost the opportunity to take the deduction for a full year.

27. Female instructors were confined to certain programs, like the one in which Ms. Garrick was hired, while the more prestigious Bible and Theology Programs were staffed exclusively by men.

28. In late 2015, Ms. Garrick was asked to assist in forming a committee to address women's concerns on campus, which she did. The group, called Respect for Women Personally and Ministerially, was viewed with suspicion and hostility from the beginning. Ms. Garrick was explicitly told by the administration that any changes resulting from the committee's work should be "small and incremental."

29. The faculty workroom that Ms. Garrick used was otherwise all-male, and her male colleagues treated her with antagonism. For example, they ignored her when she spoke to them, left the room abruptly when she entered, and openly ridiculed her. When Ms. Garrick tried to suggest solutions to the problem, she was told by MBI administration to simply avoid the workroom and to get her own printer so that she could work in her office.

### *Advocacy on Behalf of Students*

30.    In February 2015, Ms. Garrick was approached by a lesbian student who was struggling with MBI's hostility toward her sexual orientation. Ms. Garrick brought the student's concerns to Dean Tim Arens. His response was to ask what she said and did in response to the student and to warn her that MBI had "community living standards." The female student was later expelled from MBI.

**A.020**

31.    In October 2015, a female student informed Ms. Garrick that she wanted to enter the Pastoral Ministry program but that it was closed to women. Ms. Garrick was shocked and began to investigate MBI's stance on barring women from access to its programs.

32.    In January 2016, another female student came to Ms. Garrick for help with the same problem. The student wanted to change her major to Pastoral Ministry, which is an undergraduate program that teaches students to become leaders, pastors, and teachers in the church. MBI refused to allow her to enter the program because of her gender.

33.    Ms. Garrick discovered that MBI's website at the time stated that the program was only open to male students. She contacted her own faculty mentor and the head of the program to ask about the exclusion of women, and they confirmed that it was true.

34.    MBI was accepting federal financial aid funds during this time and, on information and belief, was reporting to the Department of Education that it met all the relevant criteria, including the prohibition against discriminating on the basis of sex.

35.    Ms. Garrick helped this student lodge the first Title IX complaint ever brought at MBI.

36.    On February 17, 2016, the first meeting of the Respect for Women Personally and Ministerially group was held. Ms. Garrick was rebuked when she told the participants that she was assisting a student who had been barred from an MBI program because of her sex. Immediately after the meeting, Ms. Garrick's faculty mentor called her into a closed-door meeting and attacked her further, asking "how can you have any integrity?"

37.    After Ms. Garrick brought her concerns to several other MBI personnel. the second Respect for Women Personally and Ministerially meeting was cancelled.

38.    On February 23, 2016, Ms. Garrick met with Mr. Davidhizar and Bryan O'Neal about the student's complaint and about the hostility Ms. Garrick herself was facing. Rather than seeking

6
**A.021**

solutions to the concerns raised by Ms. Garrick, the administrators suggested she might not be able to continue in the faculty and told her she should voluntarily leave MBI.

39.     Ms. Garrick decided to stay and fight.

40.     Throughout the spring of 2016, Ms. Garrick continued to work with the student to advance her Title IX complaint against MBI.

41.     At first, MBI denied that the Pastoral Ministry program was not open to women, despite the fact that its website explicitly limited the degree program to male students. Then MBI tried to convince the student to take courses in another program, presenting her with false and misleading information about its offerings. Ultimately, despite its attempts to muddy the waters, it became clear that MBI had been discriminating against women by barring them from the Pastoral Ministry program from 1928 until this student filed her complaint.

42.     Despite this admission, MBI denied the student's complaint, stating that her concerns were "programmatic" and were not "appropriately addressed through an investigatory process designed to address discrete complaints of sexual misconduct." In its denial letter, MBI purported to have misunderstood the nature of the student's complaint – which was untrue, as Ms. Garrick and the student had made it clear numerous times.

43.     With Ms. Garrick's help, the student appealed. In response, professors made disparaging comments to the student such as "don't you know the image of God is male?" and "what makes you think you have the right to preach?"

44.     The student and Ms. Garrick continued to push MBI to open the program to all women. As a result, on April 20, 2016, MBI announced that it intended to remove the discriminatory restrictions and open the Pastoral Ministry program to women (though it failed to notify the student herself until mid-May 2016, and even then continued to equivocate about its position).

**A.022**

45.     Even after this decision, MBI continued, and, on information and belief, continues to discourage women from applying to the Pastoral Ministry program. There are currently just three women in a program of approximately 60 students. It is unclear whether MBI has officially opened the program to all women.

46.     Throughout the summer and fall of 2016, Ms. Garrick continued to experience hostility and opposition from MBI's faculty and administration.

47.     Ms. Garrick also assisted a transgender student with her hostile environment concerns, which Ms. Garrick reported to faculty and administrators. That student ultimately left the institution because of the discrimination and harassment she experienced.

48.     In September 2016, a male theology professor at MBI drafted a proposal that would require all students to sign a statement affirming their belief in and adherence to a biblically orthodox position on human sexuality. Ms. Garrick spoke out at an all-faculty and administration meeting and told a story about a student who came to Ms. Garrick in tears over being told one could not be gay and "saved." She submitted and co-presented (with a male faculty member) a counter-proposal with an inclusive message.

49.     In response, Mr. Davidhizar pulled Ms. Garrick into his office the next day and told her that the speech was "inflammatory rhetoric" and that she was "not a Moody fit." The male faculty member who co-presented the proposal was never the subject of any disciplinary treatment.

### *Retaliatory Denial of Promotion*

50.     On November 1, 2016, after two years as an Instructor at MBI, Ms. Garrick submitted a written application for an increase in rank to Assistant Professor.

51.     The position of Instructor is the lowest-paid and lowest-status position at MBI.

52.    To become an Assistant Professor, MBI requires the faculty member to have a Master's

Degree or equivalent and a minimum of 12 years of full time experience in a field directly related

to his or her primary teaching responsibilities. Once those requirements are met, MBI reviews

three sets of criteria to determine whether to issue a promotion to a faculty member: Teaching

Performance, Professional/Scholarly Status, and Service. Within each criterion,

53.    Ms. Garrick's background and performance fully qualified her for a promotion to

Assistant Professor under all of MBI's requirements. She had a Master's Degree (and began

working on a second advanced degree in 2016). She also had 15 years of experience in the

Communications field.

54.    During her two years as an Instructor, Ms. Garrick was required to perform work at the

level of an Assistant Professor. Among many other duties, she developed and implemented six

courses, including upper-level electives; created institution-wide initiatives like the publication of a

new art and theology journal; developed an educational plan for ESL students; fulfilled all of her

academic and professional duties; and actively participated in her department and the wider

institution. Such duties were beyond the scope of the Instructor rank, based on Moody's own

written policies.

55.    Nevertheless, MBI denied Ms. Garrick's application, stating that she needed to "improve

her fit within the division" – a clear reference to the hostility against Ms. Garrick as a result of her

opposition to discrimination at the institution.

56.    MBI's retaliatory denial of Ms. Garrick's promotion application resulted in both a loss of

income and the loss of professional development opportunities.

57.    Shortly thereafter, Ms. Garrick received an informal performance review from Mr.

Strandt in which he congratulated her on "two years of excellent service" and stated that she was

"concise, clear and engaging with the students" during a class he had observed her teaching. Mr. Strandt's glowing review further highlighted the disconnect between Ms. Garrick's excellent performance and MBI's denial of her application for a promotion.

### *Retaliatory Discharge*

58.    In early 2017, Ms. Garrick was due to receive her formal two-year performance review. She initially met with Mr. Kammerzelt, who asked her if she wanted to stay at MBI. She responded that she did.

59.    This led to a series of meetings, cancelled meetings, and emails with MBI administrators regarding Ms. Garrick's performance. Mr. Davidhizar told her she had "performance and interpersonal issues," despite a lack of evidence of either. Mr. Kammerzelt told her she had been found to be performing "below standards" by Mr. Strandt, despite his earlier glowing reports. Mr. Kammerzelt also threatened to demote Ms. Garrick to teaching only General Education courses and to shift three of the courses she had developed into the hands of another full Communications professor.

60.    Finally, on March 30, 2017, Ms. Garrick met with Mr. Strandt for a final, formal performance review. He handed her a negative written performance evaluation – the first written criticism of her performance she had ever received at MBI – that was filled with inaccuracies and was not based on direct observations of her work. There was no mention of Ms. Garrick being non-aligned with the gender provisions of MBI's doctrinal statement.

61.    On April 12, 2017, Ms. Garrick met with Mr. Davidhizar and the Vice President of Human Resources. Mr. Davidhizar told her that she did not fit in and that she was not aligned with MBI's doctrinal statement as it related to gender roles in ministry. Mr. Davidhizar admitted that he

heard Ms. Garrick state her egalitarian position during her October 2014 panel interview prior to MBI's decision to hire her.

62.    On April 17, 2017, Ms. Garrick was officially terminated. MBI stated that she was required to continue teaching classes and performing her other job duties until the end of that semester, then stay on as a non-teaching faculty member for the Fall 2017 semester. Her last day of pay was December 31, 2017. On April 26, 2017, after Ms. Garrick spoke to students and student reporters about her termination, MBI asked her to leave campus early and to turn in her computer and keys, stating that it would close out the semester for her.

63.    Ms. Garrick filed an internal grievance on May 17, 2017 and went through MBI's grievance process in the summer of 2017. In her grievance document, she pointed out that MBI had hired her in 2014, renewed her contract for 2015, and renewed her contract for 2016 – all the while apparently pleased with her performance. It was only after she began advocating for female students who alleged violations of Title IX that MBI began to pressure her to quit, then fired her, purportedly because it had just realized she held an "egalitarian" view of Christianity.

64.    In fact, as alleged above, MBI knew from her resume and interviews that Ms. Garrick held an egalitarian view before it even hired her. MBI's decision was pretext for its true motives – discrimination and retaliation.

65.    MBI engaged in a variety of tactics to thwart any chance of Ms. Garrick succeeding in the grievance process. In her grievance document, she fully documented the discrimination and retaliation she had been subjected to. She also presented written testimony from 12 female students who reported violations ranging from sexual assault to harassment in the classroom and on the campus by both faculty members and fellow students. MBI ignored these testimonials and took no action to follow up.

66.   MBI denied Ms. Garrick's grievance on July 24, 2017. After Ms. Garrick's termination, MBI also terminated a female Full Professor and a female Assistant Professor who were members of Ms. Garrick's grievance committee and who had challenged MBI during that process.

67.   The environment of pervasive gender discrimination at Moody contributed to a hostile work environment and created a male-dominated workplace culture in which the retaliatory firing of Ms. Garrick would be acceptable and routine. In 2012, the Higher Learning Commission, an independent accrediting body, critiqued Moody that its faculty looks "white male," and tasked it to diversify. The Defendant has created a hostile workplace by discriminating against females repeatedly, including the following acts, *inter alia*…

(a) male students organized a student "walk out" when a female speaker took the stage at Founder's Week (February 6-10, 2017). At a February 22, 2017 faculty meeting, a long-term male Bible Program faculty member argued: "I think it's time we addressed the misogyny and sexism at this institution,"

(b) Moody's annual Pastor's Conference had never included female speakers as main session speakers, leading to continued feelings of exclusion and disenfranchisement from females,

(c) there were a disproportionate number of male to female speakers at required student chapels,

(d) some Bible professors were known to be "overtly discouraging" to female students in their classes,

(e) there were zero female faculty teaching in the Bible Program,

(f) there were zero female faculty teaching in the Theology Program,

(g) there were a disproportionate number of male to female faculty,

**A.027**

(h) there were zero female administrators, and

(i) while Moody purportedly requires faculty to sign and adhere "without disclaimers,

clarifications, or personal exceptions" to a "Gender Roles in Ministry" addendum

included in the doctrinal statement at the time of contract renewal each year, Moody

selectively enforces adherence, and this enforcement disproportionately affects female

faculty who do not "align" or "adhere."

## COUNT I

### Retaliation in Violation of Title IX of the
### Education Amendments of 1972, 20 U.S.C. § 1681 *et seq.*

68.    The plaintiff realleges each of the paragraphs set forth above.

69.    Title IX of the Education Amendments Act of 1972, 20 U.S.C. § 1681 *et seq.* ("Title IX"),

provides that "[n]o person in the United States shall, on the basis of sex, be excluded from

participation in, be denied the benefits of, or be subjected to discrimination under any education

program or activity receiving Federal financial assistance ...."

70.    Title IX also prohibits employment discrimination on the basis of sex at educational

institutions receiving federal assistance.

71.    MBI is subject to the requirements of Title IX.

72.    Because Congress enacted Title IX to prevent use of federal dollars to support

discriminatory practices, reporting incidents of discrimination is integral to Title IX enforcement.

73.    Accordingly, persons who complain about sex discrimination have protection against

retaliation and are provided a private right of action as part of the Title IX enforcement scheme.

74.    Title IX prohibits retaliation against individuals who engage in protected activity,

including good faith complaints of sex discrimination, opposing discriminatory practices through

internal channels, and voicing concerns to superiors at the educational institution.

13

**A.028**

75. Ms. Garrick engaged in activity protected by Title IX, as alleged above.

76. MBI retaliated against Ms. Garrick because of her protected activity, as alleged above, including, but not limited to, subjecting her to a hostile environment; subjecting her to discriminatory disciplinary action; denying her a promotion; and unlawfully terminating her.

77. MBI's actions were willful, intentional and/or done maliciously or with callous disregard or reckless indifference and/or were arbitrary, discriminatory, negligent and/or in bad faith.

78. Exemplary damages are warranted to prevent similar unlawful conduct by MBI, which is likely to recur.

79. The plaintiff was severely damaged by MBI's conduct.

## COUNT II

### Breach of Contract under Illinois Law

80. The plaintiff realleges each of the paragraphs set forth above.

81. The terms of Ms. Garrick's employment were governed by a valid and enforceable Faculty Contract, which was entered into by both Ms. Garrick and MBI on a yearly basis. See Exhibit A (2017 Faculty Contract).

82. The Faculty Contract explicitly incorporates by reference two additional documents: MBI's Faculty Manual and MBI's Employee Information Guide.

83. The Faculty Manual and Employee Information Guide are promises by MBI to abide by a set of rules that benefit the employee. They were disseminated to Ms. Garrick in the manner of an offer, which she accepted when she entered into the Faculty Contract with MBI.

84. The Faculty Contract states that "MBI and the faculty member mutually agree that this contract will be binding on both parties except as modified by the mutual consent of the Trustees and/or the President and the faculty member, or unless terminated for cause, in which case the

procedures of termination stated in the current Faculty Manual and Employee Information Guide will be followed by both parties." See Exhibit A.

85.    In turn, the Faculty Manual's section designated "Termination" states as follows: "[i]f for some reason a faculty member is not to be retained after the Spring semester, notification will be given to the teacher concerning this decision by the last Friday in November of the Fall semester, except for such serious violations of Institute policy which may result in immediate termination." See Exhibit B (excerpt from Faculty Manual).

86.    On April 18, 2017, MBI informed Ms. Garrick that it had decided not to renew her contract for the next academic year, but that she would continue to be employed until December 31, 2017. She was informed that she was expected to continue teaching her classes until the end of the semester.

87.    Because Ms. Garrick was not terminated "immediately," MBI was contractually obliged to follow the termination provisions set forth in the Faculty Manual by informing her by the last Friday in November prior to a Spring termination.

88.    MBI failed to do so.

89.    MBI therefore breached its contract with Ms. Garrick by failing to notify her by the last Friday in November of the fall semester prior to her last Spring semester of employment, as required by the termination provisions of the Faculty Manual.

90.    MBI cannot contend that Ms. Garrick engaged in a violation of its policy that warranted "immediate termination," as it retained her for several months after its decision not to renew her contract, requiring her to teach classes and otherwise continue to perform her job duties for a period of time.

91.  Under the terms of the Faculty Contract and the termination provisions of the Faculty

Manual referenced and incorporated therein, MBI is obligated to pay Ms. Garrick for two

additional semesters she is owed under the contractual terms.

## COUNT III

### Title VII, 42 U.S.C. § 2000e-2(a)
### Hostile Work Environment Based on Gender (Female)
### Against Ms. Garrick

92.  The Plaintiff realleges each of the paragraphs set forth above.

93.  Ms. Garrick was discriminated against and harassed based on gender (female) by

administrators, supervisors, and coworkers.

94.  The discriminatory statements, threats, and conduct were unwelcome, sufficiently severe

or pervasive, detrimentally affected Ms. Garrick, were viewed as subjectively hostile and abusive

by Ms. Garrick, and would be viewed as objectively hostile and abusive to a reasonable person.

95.  During the relevant time period, Ms. Garrick and similarly situated female employees

also were treated differently than coworkers of a different gender. For example, female faculty

were subjected to the following acts, *inter alia*...

   (a) denied the opportunity to speak at President's Chapel, and

   (b)  excluded from teaching in the Bible and Theology Programs, while male faculty were

       permitted to do so.

96.  Ms. Garrick was denied the opportunity to speak at chapel although she twice requested

to do so.

97.  Some other specific examples of the discrimination and harassment against Ms. Garrick

and similarly-situated employees include the following acts, *inter alia*...

   (a) two of the three outspoken female faculty members who served on Ms. Garrick's

Grievance Committee, and who actively questioned Moody administration's actions

concerning Ms. Garrick, were terminated following Ms. Garrick's termination, while the

two male professors on the Grievance Committee were retained;

(b) Ms. Garrick was subject to peer reviews while similarly-situated male professors in the

Communications Program were not;

(c) Ms. Garrick was disciplined for her "inflammatory rhetoric" at a faculty meeting, and

told she needed "to learn how to speak around here" while a male professor (who wrote

and presented their *joint* proposal) was not disciplined; and

(d) Ms. Garrick was not informed by Moody that she could receive a tax exemption for being

an ordained minister while her male counterparts were informed of this benefit.

98.    During the relevant time period, Ms. Garrick was denied a reduced teaching load at

Moody while she completed a terminal degree in her field, while similarly-situated male faculty

in terminal degree programs did receive reduced teaching loads.

99.    During the relevant time period, Ms. Garrick was required to develop and create

complete, from scratch, five new undergraduate courses beyond the scope of her Instructor

position requirements while recently hired male Instructors received no similar assignments.

100.    Moody's Title IX coordinator, in the presence of Ms. Garrick and the entire

Communications Program faculty, snidely stated at a meeting that she would have been able to

accomplish certain tasks had she not been occupied with a Title IX complaint.

101.    The Defendant has created a hostile workplace by discriminating against females

repeatedly, including the following acts, *inter alia*…

(a) being ignored and shunned by male professors in common work space,

(b) being told by a male professor how women in Moody's hiring process frequently need to

be "walked through" the doctrinal statement,

(c) disparaging comments about Ms. Garrick's dress ("What are you wearing?" remarked one
male theology professor. "I thought you were a student"),

(d) disparaging remarks about Ms. Garrick's undergraduate college and post-graduate
seminary—"they believe anything and everything there,"

(e) being told by Larry Davidhizar ("Mr. Davidhizar"), Moody's Associate Provost of
Faculty, that she did not understand her theological positions even though she held an
advanced seminary degree,

(f) being shunned by a male Theology professor after Ms. Garrick spoke and wrote about
"white privilege" on Moody's campus.

102.    Additionally, during the relevant time period, there were numerous reports of gender
harassment and gender-based violence (sexual assault, rape) that went unaddressed or ignored by
Moody administration contributing to an unsafe campus environment for female students and
faculty to speak up and to report.

103.    Ms. Garrick complained numerous times to Moody administrators and supervisors about
the discrimination and harassment, and Moody had actual or constructive knowledge of the
ongoing discrimination and harassment.

104.    Moody failed to take prompt and appropriate remedial action to prevent or correct further
discrimination and harassment of Ms. Garrick.

105.    Moody discriminated against Ms. Garrick on the basis of gender in violation of Section
703(a) of Title VII, 42 U.S.C. § 2000e-2(a).

106.    As a direct and proximate result of said unlawful employment practices and in disregard
of Ms. Garrick's rights and sensibilities, Ms. Garrick has suffered great mental anguish,

**A.033**

humiliation, degradation, emotional distress, pain and suffering, inconvenience, financial crisis,

lost wages and benefits, future pecuniary losses and other consequential damages.

## COUNT IV
### Gender Discrimination (Female) in Violation of Title VII of the
### Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

## COUNT V
### Title VII. 42 U.S. C. § 2000e-3(a)
### Retaliation Against Ms. Garrick for Engaging in Protected Activity

107.    The Plaintiff realleges each of the paragraphs set forth above.

108.    Ms. Garrick engaged in protected activity when she complained about discrimination and

harassment based on gender.

109.    Ms. Garrick engaged in protected activity when she assisted a female student in filing and

processing a Title IX complaint charging discrimination based on gender (for the student's

exclusion from the all-male Pastoral Ministry undergraduate program).

110.    In retaliation for Ms. Garrick's complaints, the Defendant took the following actions,

*inter alia…*

    (a) disciplined her,

    (b) threatened to demote her to teaching General Education courses and to assign her elective

    courses to another professor,

    (c) subjected her to an unfounded negative performance evaluation,

    (d) denied her a chance for promotion,

    (e) treated her poorly in her final days at Moody, and

    (f) terminated her employment.

**A.034**

111.    During the relevant time period, and in the middle of Ms. Garrick's assistance to a female

student in filing a Title IX (gender discrimination) complaint, Moody administrators pressured

Ms. Garrick to quit her job.

112.    During the relevant time period, Ms. Garrick experienced open hostility from some of the

all-male faculty in the Bible and Theology Programs after it became known to them that in

January 2016 she began assisting a female student in filing a Title IX complaint (for her

exclusion from the all-male Pastoral Ministry undergraduate program). Their actions included

the following, *inter alia…*

   (a) shunning,

   (b) silent treatment, and

   (c) in February 2016, during a meeting of the Respect for Women Professionally and

       Ministerially group, a male Theology professor commented that he would rather have "a

       thousand Junias's" on this issue (of Ms. Garrick assisting a female student with filing a

       TIX complaint) than a TIX violation. Junias Venugopal was the Provost of Moody at the

       time.

113.    On February 17, 2016, Ms. Garrick was chastised by a faculty member (her faculty

mentor) for lacking integrity in signing the doctrinal statement while holding to an egalitarian

position.

114.    On February 17, 2016, at a Respect for Women Professionally and Ministerially meeting

Ms. Garrick was openly rebuked by several faculty members for her activity in assisting a female

student in filing a Title IX complaint.

115.    On February 19, 2016, Ms. Garrick requested a meeting with Debbie Zelinski ("Ms.

Zelinski"), Vice President of Human Resources, to discuss the Title IX backlash and hostility she

was experiencing from peer faculty. Ms. Zelinski, *inter alia*, suggested that Ms. Garrick avoid the Sweeting 3 workroom and get a printer for her office.

116.    On February 23, 2016, in a meeting in which Ms. Garrick discussed the Title IX backlash and hostility she was experiencing from peer faculty, Mr. Davidhizar and Bryan O'Neal, Dean of Faculty, pressured Ms. Garrick to quit.

117.    Mr. Davidhizar also instructed Ms. Garrick to remove herself from her role in organizing and co-leading the Respect for Women Professionally and Ministerially group.

118.    Ms. Garrick reported this negative conversation with Moody administrators to Communications Program Head, Brian Kammerzelt ("Mr. Kammerzelt").

119.    In January 2017, at Ms. Garrick's two-year performance review, Mr. Kammerzelt praised her for "doing everything you were hired to do," and informed her that Larry Davidhizar wanted to know if she intended to stay. Ms. Garrick responded yes.

120.    On March 2, 2017, Mr. Davidhizar communicated with Ms. Garrick that she would not have a contract renewal in her mailbox when she returned from Spring Recess, and that if Moody renewed her contract, it would have expectations: "there are performance and interpersonal issues."

121.    The Defendant has retaliated against Ms. Garrick repeatedly, including the following acts, *inter alia*...

   (a) subjecting Ms. Garrick to a falsified negative performance evaluation. On March 30, 2017, Ms. Garrick received a negative performance evaluation from Moody's Music and Media Arts Division Chair, Terry Strandt ("Mr. Strandt");

   (b) in January 2017, two months prior to Ms. Garrick receiving a negative performance evaluation, Mr. Kammerzelt instructed her to add a new course to her teaching schedule

21
**A.036**

(Debate) and to develop what would have been her fifth new course (Missions
Journalism) slated for release in the fall 2017;

(c) on December 3, 2016, after two years of employment, Ms. Garrick received a glowing
review in writing by Mr. Strandt after he had observed one of her classes, Core Tools:
Words: "Dear Janay, Congratulations on your two years of excellent service to MBI.
Your Industry and enthusiasm is gratifying and contributing in a huge way to your
Program and the whole Division. I enjoyed very much your class on Grant Writing for
NGO's. You were concise, clear and engaging with the students. I hope that God blesses
you with the same unexpected surprise our family received by finding a long-term home
at Moody. Warmly, Terry." And just four months later, Mr. Strandt would deliver Ms.
Garrick a borderline "Below Standards" performance evaluation;

(d) on March 3, 2017, Mr. Kammerzelt stated that Ms. Garrick had been subjected to reviews
by her peer Communications professors. He stated further that she would have the
opportunity to similarly prepare reviews of her peers;

(e) on March 30, 2017, Mr. Strandt stated that peer reviews helped form the basis for his
negative evaluation of her;

(f) On April 5, 2017, when Ms. Garrick questioned Mr. Davidhizar about Mr. Standt's
negative conclusions regarding her work performance as well as his data collection
methods and information sources, Mr. Davidhizar responded: "This being his (Terry
Strandt's) first time has allowed for pure, unadulterated objectivity in all of his reviews.
No one has had input into his evaluations of anyone including me. My only input back
before Spring Break is when he mentioned that it would not be a strong review I talked to
him about what should be included in a 'Performance Improvement Program'";

22
**A.037**

(g) Ms. Garrick was never given any information about the peer reviews even though she

requested to see them. During the Grievance procedure, James Spencer, Vice President

and Dean of Moody Bible Institute, stated that there were no peer reviews; and

(h) during her performance evaluation meeting with Mr. Strandt on March 30, 2017, he

stated that he had no knowledge of Ms. Garrick's work performance and got all his

information from Brian Kammerzelt, Larry Davidhizar, and peer reviews.

122.    On April 5, 2017, in an email entitled "Performance Evaluation Follow-up Meeting |

April 7 @ 1pm," Moody changed tactics for separating Ms. Garrick from her employment, Mr.

Davidhizar stating that he would like to meet "to discuss (Ms. Garrick's) vocal non-alignment

with the Institute's doctrinal statement as it relates to 'Gender Roles in Ministry.'"

123.    On April 9, 2017, after fighting her negative performance evaluation, Moody raised Ms.

Garrick's score from 2.57 (borderline "Below Standards") to 2.96 ("Meets Standards").

124.    On April 18, 2017, Ms. Garrick was officially terminated from her employment at

Moody. The reason given for termination was her egalitarian view on gender roles in ministry.

125.    On April 25, 2017, after Ms. Garrick began to speak to students and student journalists

about her termination, Ms. Garrick was dismissed from campus (instructed to turn in her keys and

computer) before the semester's end.

126.    Following her firing, Ms. Garrick was subjected to an impossible Grievance Hearing

process that was lacking in any manner of reasonable due process. For example, retaliatory acts

by the Defendant, *inter alia*…

(a) on April 18, 2018 when Ms. Garrick was given her notice of termination, Moody

commented that she could file a grievance but that she would not have much time to do

so. The Defendant stated that summer break would make it all the more difficult to

convene a Grievance Committee as faculty would not be on campus;

(b) in preparation for the Grievance Hearing, questions for witnesses had to be approved in

advance by Moody, and Moody gave Ms. Garrick less than 24-hour notice about her

ability to call witnesses (in the middle of the work week) to testify on her behalf; and

(c) at the July 7, 2017 Grievance Hearing, Moody would not allow any underlying

discrimination or retaliation facts to be discussed.

127.    At the Grievance Hearing, Mr. Davidhizar admitted to hearing Ms. Garrick state her

egalitarian position on gender roles in ministry during her Chicago campus interviews in October

2014.

128.    Desiree Hassler, the female Assistant Professor of Music and grievance committee

member, who questioned Mr. Davidhizar on this point was later fired.

129.    Ms. Garrick was fired for assisting a female student in filing a Title IX complaint.

130.    There was a causal connection between Ms. Garrick's complaints and the materially

adverse actions taken against Ms. Garrick by Moody.

131.    The retaliation endured by Ms. Garrick would dissuade a reasonable employee from

making complaints of discrimination and harassment.

132.    Moody retaliated against Ms. Garrick for engaging in protected activity in violation of

Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

## COUNT VI

### Religious Discrimination (egalitarian Christian) in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*

133.    The Plaintiff realleges each of the paragraphs set forth above.

134.    Ms. Garrick was hired in December 2014 in spite of her known and stated

24
**A.039**

position/disagreement with Moody's "Gender Roles in Ministry" addendum included in its doctrinal statement.

135.    Ms. Garrick was offered two subsequent contract renewals (academic years 2015-16 and 2016-17) in spite of her stated position/disagreement with Moody's "Gender Roles in Ministry" addendum.

136.    After Ms. Garrick assisted a female student in filing a Title IX complaint, Ms. Garrick was terminated for her stated position/disagreement with Moody's "Gender Roles in Ministry" addendum included in its doctrinal statement, Defendant stating that she could not sign the doctrinal statement based on her holding to an egalitarian position (Moody holds to a complementarian position that excludes women from certain roles within the church due to their gender).

137.    During the relevant time period, there were key male Moody Radio personnel who did not affirm "without disclaimers, clarifications, or personal exceptions" the "Gender Roles in Ministry" addendum in Moody's doctrinal statement and therefore refused to sign the doctrinal statement but who remained employed by Moody.

138.    The Defendant has created a hostile workplace by discriminating against egalitarian Christians repeatedly, including the following acts, *inter alia*...

    (a) At a Communications Program meeting, Ms. Garrick was slandered as a "liberal progressive" by a peer professor and informed by a Moody administrator that this peer professor "hates you."

    (b) Ms. Garrick was terminated from employment for her "inability" to sign the doctrinal statement while other male faculty openly espoused egalitarian points of view and/or attended egalitarian churches and remained employed by Moody.

139.    Ms. Garrick was terminated from employment for her "inability" to sign the doctrinal

statement while male faculty openly espoused differing points of view from the doctrinal statement

(for example, on gifts of the Spirit, inerrancy of Scripture, eschatology) and who remained

employed by Moody.

140.    Moody discriminated against Ms. Garrick on the basis of religion (egalitarian Christian)

in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

### PRAYER FOR RELIEF

WHEREFORE, the plaintiff, Janay E Garrick, prays for relief as to all counts of this

Complaint as follows:

A.    An order declaring that MBI violated Title IX and Illinois law;

B.    An order enjoining future violations by MBI;

C.    Injunctive relief sufficient to eliminate unlawful and discriminatory policies and

procedures at MBI;

D.    Payment of all costs of implementing and monitoring such injunctive relief;

E.    Payment of the plaintiff's lost past and future wages, benefits, and any other

income and/or monetary or monetized benefits of employment that she would have been entitled

to absent MBI's unlawful acts;

F.    Payment of her contract damages;

G.    All other compensatory and consequential damages proven by the plaintiff;

H.    Punitive damages sufficient to punish MBI for its unlawful behavior and to deter

future discriminatory conduct;

I.    Payment of the plaintiff's attorneys' fees and all costs of litigation (including any

expert witness fees);

J.    Pre-and post-judgment interest; and

K.    All other and relief, whether legal or equitable, that the Court may deem

appropriate.

## **JURY DEMAND**

The plaintiff demands a trial by jury on all counts.

Dated: January 3, 2019                    Respectfully submitted,


                                          /s/ Janay E. Garrick


Janay E. Garrick
PO BOX 1729
Orlando, FL 32802
(407) 803-3051
Janay.garrick@gmail.com

**A.042**

## CERTFICATE OF SERVICE

I, the undersigned, certify that on January 3, 2019, I had the foregoing document served by filing it with the Clerk's Office via USPS. On that day, I also served a true and correct copy of the foregoing *Plaintiff's 3rd Modified First Amended Complaint* upon Defendant by causing said document to be delivered to it via email, to which form of service it has consented, addressed as follows:

Christian Poland
Bryan Cave LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601
christian.poland@bryancave.com

/s/ Janay E. Garrick

Service List:

Christian Poland
Bryan Cave LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601
christian.poland@bryancave.com

**A.043**

# EXHIBIT A



# MOODY BIBLE INSTITUTE

# *FACULTY CONTRACT*

Moody Bible Institute (hereinafter referred to as "MBI") enters into this agreement with

### **Ms. Janay Garrick**

(hereinafter referred to as "the faculty member"), who agrees to accept and fill the position(s) of

### **Instructor, Department of Communications**

at MBI for the school year beginning July 1, 2016 and ending June 30, 2017.

MBI agrees to pay the faculty member a salary of $ 53,520 (plus or minus any budget or rank adjustment and including, if appropriate, a housing allowance to be approved annually by the board of trustees). The salary will be paid in 12 monthly installments on the last business day of each of the 12 months in the contract year, subject to deductions as required by law, and other deductions, if any, as authorized by the faculty member. Benefits as determined by MBI are provided to eligible faculty. If the faculty member performs year-round administrative responsibilities, MBI agrees to grant the faculty member  N/A  weeks vacation with pay.

The faculty member agrees (a) to perform diligently and faithfully, under the supervision of the provost and dean of education, and the appropriate dean, the responsibilities prescribed for this position, and (b) to adhere faithfully to the standards, policies, and procedures established by the *Faculty Manual* and the *Employee Information Guide*. The faculty member's specific responsibilities will be determined by his/her department chairman and the appropriate dean.

The faculty member also agrees to read the attached *Doctrinal Statement* and *Institutional Positions Related to the Moody Bible Institute Doctrinal Statement (1928)* and the final Addendum and, by returning this contract dated and signed, affirms that he/she agrees with, personally adheres to, and supports each and every statement.

MBI and the faculty member mutually agree that this contract will be binding on both parties except as modified by the mutual consent of the Trustees and/or the President and the faculty member, or unless terminated for cause, in which case the procedures of termination stated in the current *Faculty Manual* and the *Employee Information Guide* will be followed by both parties.

_____          _____
Provost and Dean of Education                              Date

_____          _____
Vice President and Dean of the Undergraduate School    Date

_____          _____
Faculty Member                                               Date

## **A.045**

# EXHIBIT B



Teaching loads for those in Sacred Music, Missionary Aviation and Lifetime Fitness and Sports Ministry Department are formulated differently. Faculty members should consult with the department Chair about specific requirements.

Overloads
Undergraduate faculty may be invited to teach overloads in their own department or in other undergraduate departments when such needs arise. All such assignments must be cleared through the faculty member's department chair. Faculty members should guard against becoming overextended.

Adjuncting
Undergraduate faculty may be invited to teach in either the Graduate Division or the External Studies Division within the Education Group. All such overtures must be cleared by the faculty member with the department chair before any commitment is made. Formal exchange arrangements of faculty between Graduate and Undergraduate Division have been established. All such initiatives must be cleared in advance with the graduate and undergraduate deans and the department chair.

# TERMINATION

If for some reason a faculty member is not to be retained after the Spring semester, notification will be given to the teacher concerning this decision by the last Friday in November of the Fall semester, except for serious violations of Institute policy which may result in immediate termination.

# WRITING
## (For Outside Publications)

When articles prepared by faculty members appear in outside publications, the author shall request that the official connection with the Institute be indicated giving the official position, or stating simply "a member of the faculty of Moody Bible Institute." It is also appropriate to use faculty rank.

Official connection with any publication is governed by the policies already stated under the section entitled "Boards."

**A.047**

# EXHIBIT C

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Janay Garrick<br>c/o Jamie S. Franklin<br>THE FRANKLIN LAW FIRM LLC<br>53 W. Jackson Blvd, Suite 803<br>Chicago, IL 60604 | From: | **Chicago District Office**<br>**500 West Madison St**<br>**Suite 2000**<br>**Chicago, IL 60661** |
|---|---|---|---|

| | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) | | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **440-2018-02205** | Zachary M. Florent,<br>Investigator | **(312) 869-8040** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

### - NOTICE OF SUIT RIGHTS -

(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Julianne Bowman*                    9/24/18

| Enclosures(s) | **Julianne Bowman,**<br>**District Director** | (Date Mailed) |
|---|---|---|

cc:    The Moody Bible Institute of Chicago
    c/o Christian M. Poland
    Bryan Cave LLP
    161 N. Clark Street, #4300
    Chicago, IL 60601

**A.049**

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ___ FEPA<br>_X_ EEOC | 440-2018-02205 |

Illinois Department of Human Rights, Chicago Commission on Human Rights and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.) | Home Phone (Incl. Area Code) | Date of Birth |
|---|---|---|
| Ms. Janay Garrick | 407-803-3051 | 04-20-1976 |

| Street Address | City, State and ZIP Code | | |
|---|---|---|---|
| P. O. Box 1729 | Orlando, FL 32802 | | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| Moody Bible Institute | 100+ Employees | 800-356-6639 |

| Street Address | City, State and ZIP Code | |
|---|---|---|
| 820 N. LaSalle St. | Chicago, IL 60610 | |

| Name | No. Employees, Members | Phone No. (Include Area Code) |
|---|---|---|
| | | |

| Street Address | City, State and ZIP Code |
|---|---|
| | |

DISCRIMINATION BASED ON *(Check appropriate box(es).)*

☐ RACE  ☐ COLOR  ☒ SEX  ☒ RELIGION  ☐ NATIONAL ORIGIN

☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION

☐ OTHER *(Specify)*

DATE(S) DISCRIMINATION TOOK PLACE

Earliest: 2016  Latest: 12/31/2017

☐ CONTINUING ACTION

THE PARTICULARS ARE *(If additional paper is needed, attached extra sheet(s)):*

I am a former faculty member at Moody Bible Institute ("MBI"). I was hired on December 1, 2014 as an Instructor of Communications. I was terminated on April 17, 2017 in violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e *et seq.*, because of my gender (female) and my religion (egalitarian Christian). I was also retaliated against in violation of Title VII after I engaged in protected activity by complaining of discrimination. I bring this charge on behalf of myself and all others who are similarly situated.

RECEIVED EEOC

Please see the attached additional pages for the particulars.

JAN 0 5 2018

CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or Local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the above is true and correct. | SIGNATURE OF COMPLAINANT |
| *Date*    Charging Party Signature | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE *(month, day, year)* |

**A.050**

## Introduction

MBI is a private academic institution with a stated mission of training students for the Christian ministry. It offers both undergraduate and graduate degrees. MBI receives federal funding from Title IV federal student loan programs, and it is subject to the requirements of Title IX, which prohibits discrimination on the basis of sex in federally-funded education programs and activities.

I was hired on a year-to-year basis to teach in the Communications Program, which is one of two programs in the Music and Media Arts Division. My direct supervisor was Brian Kammerzelt, the Communications Program Head. Terry Strandt functioned as a higher-level supervisor and the Chair of that Division responsible for performance reviews. I also reported to Larry Davidhizar, the Vice President and Associate Provost of Faculty.

MBI has a doctrinal statement that all faculty members are required to sign. It holds that the role of women in ministry is "complementary" – meaning that they are to be subservient to men and are suited to minister only to other women and children. I made it clear from the beginning of my association with MBI that I did not agree with this view, and that, in fact, I was an egalitarian Christian, meaning that I believe that women are equal to men and should not be excluded from any role in the church (or any other sphere). MBI knew my views when it hired me.

## Pattern of Discrimination and Retaliation

From the beginning of my tenure at MBI, I was treated with hostility by some key members of the administration and faculty. Before my campus interview, I was told to remove the reference to being an ordained minister from my resume. I was not told why. Later it became clear that because I was a woman, MBI did not want me to represent myself as an ordained minister.

Female instructors were confined to certain programs, like mine, while the Bible and Theology Programs were staffed exclusively by men. In late 2015, I was asked to assist in forming a committee to address women's concerns on campus. I was explicitly told that any changes resulting from the committee's work should be small and incremental.

MBI retaliated against me for assisting students who had gender-related and other discrimination complaints at MBI. For example, in January 2016, a black female student came to me for help. She wanted to change her major to Pastoral Ministry, which is an undergraduate program that teaches students to become leaders, pastors, and teachers in the church. MBI refused to allow her to enter the program because of her gender. MBI's website at the time confirmed that the program was only open to male students.

I helped this student lodge the first Title IX complaint ever brought at MBI. At first, MBI denied that the Pastoral Ministry program was not open to women, despite the fact that its website at the time stated that the program was strictly for male students. Then MBI tried to convince the student to take courses in another program. Ultimately it became clear that MBI had been

**A.051**

discriminating against women by barring them from the Pastoral Ministry program from 1928 until this student filed her complaint.

MBI then dismissed the student's complaint, stating misleadingly that her concerns were "programmatic" and were not "appropriately addressed through an investigatory process designed to address discrete complaints of sexual misconduct." With my help, she appealed. Professors made disparaging comments to her like "don't you know the image of God is male?" and "what makes you think you have the right to preach?"

The student and I continued to push MBI to open the program to all women, and I was open and active in my opposition to MBI's discriminatory practices. As a result, in April 2016, MBI announced that they intended to remove the discriminatory restrictions and open the Pastoral Ministry program to women, after decades of denying them access, though MBI continues to informally discourage women from applying. There are currently just three women in a program that has approximately 60 students enrolled. However, as of the date of the conclusion of my appeal of my termination (June 26, 2017), it is my understanding that MBI still had not removed the gender restrictions from that degree program.

I also assisted a transgender student with her hostile environment concerns, which I reported to faculty and administrators. That student ultimately left the institution because of the discrimination and harassment she experienced.

As a result of my advocacy, I was retaliated against by MBI. For example, after a meeting of the "Respect for Women Professionally and Ministerially" Committee, in which I stated that denying women access to the ministry program was discriminatory under Title IX, my faculty mentor called me into her office. She admonished me by reading me the section of MBI's doctrinal statement on gender roles, then asked, "How do you have any integrity working here?"

In February 2016, as a result of open hostility from faculty who were aware of my Title IX complaint assistance, I called a meeting with the supervising Deans and Vice Presidents, Larry Davidhizar and Bryan O'Neal, to talk about the hostile work environment and gender discrimination I was experiencing. I also shared my concerns that other female students and faculty were being treated differently because of their gender. In response, my supervisors treated me with increased hostility and questioned whether I could sign the doctrinal statement again. At the end of the meeting, they began to discuss terminating my employment, telling me I should voluntarily leave MBI. I decided to stay and fight.

In September 2016, one of the theology professors at MBI drafted a proposal that would require all students to sign a statement that they could not be both LGBT and also "love Jesus." I spoke out against this blatant bigotry at an all-faculty and administration meeting and told a story about a student who came to me in tears over being told one could not be gay and "saved." I submitted and co-presented (with a male faculty member) a counter-proposal with an inclusive message. Mr. Davidhizar pulled me into his office the next day and told me my speech was "inflammatory rhetoric." He told me I was "not a Moody fit." The male faculty member who co-presented the proposal was never the subject of any disciplinary treatment.

*EEOC Charge of Janay Garrick*
*Page 4 of 4*

Shortly thereafter, MBI denied my application for a promotion in my rank as a faculty member. I was still ranked as an "instructor" – the lowest category and pay at MBI – despite my extensive experience and many accomplishments at MBI. As a result of this retaliatory denial, I lost both professional status and the additional income that I would have received at a higher rank.

## My Unlawful Termination

In March 2017, at my two-year review, Mr. Davidhizar made it clear that MBI was considering not renewing my contract due to alleged "performance and interpersonal issues." Later that month, Mr. Strandt again threatened to terminate me, and delivered to me a negative performance review – the first written criticism of my performance I had ever received at MBI – prepared by someone unfamiliar with my work and filled with inaccuracies.

On April 12, 2017, I met with Mr. Davidhizar and the Vice President of Human Resources. Mr. Davidhizar told me that I did not fit in and that I was not aligned with the doctrinal statement.

On April 17, 2017, I was officially terminated because of my gender, my form of Christianity, and in clear retaliation for my complaints about my own treatment and my complaints on behalf of female students who were discriminated against.

I filed an internal grievance and went through the grievance process in the summer of 2017. MBI engaged in a variety of tactics to thwart any chance of success. In my grievance document, I presented testimony from 12 women who reported violations ranging from rape to harassment in the classroom and on the campus. My grievance was denied on June 26, 2017 in a document filled with more inaccuracies.

I am now seeking all damages to which I am entitled in law and equity, including reinstatement, back pay, front pay, compensatory damages (including future lost income, emotional distress, mental pain and suffering, inconvenience, and loss of enjoyment of life), attorneys' fees, costs of litigation, and punitive damages.

I bring this charge on behalf of myself and all others similarly situated.

**A.053**

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Chicago District Office**

500 West Madison Street, Suite 2000
Chicago, IL 60661
PH: (312) 869-8000
TTY: (312) 869-8001
ENFORCEMENT FAX: (312) 869-8220
STATE & LOCAL FAX: (312) 869-8077
LEGAL FAX: (312) 869-8124

FILE REVIEWS FAX: (312) 869-8220
MEDIATION: (312) 869-8060
HEARINGS FAX: (312) 869-8125

# NOTICE OF DISCLOSURE RIGHTS

Parties to an EEOC charge are entitled to review and obtain copies of documents contained in their investigative file. Requests must be made in writing to **Sylvia Bustos** and either mailed to the address above, faxed to **(312) 869-8220** or sent via email to sylvia.bustos@eeoc.gov (please chose only one method, no duplicate requests). *Be sure to include your name, address, phone number and EEOC charge number with your request*.

If you are the Charging Party and a RIGHT TO SUE has been issued, you may be granted access to your file:

* **Before filing a lawsuit,** but within 90 days of your receipt of the Right to Sue, or

* **After your lawsuit has been filed.** If more than 90 days have elapsed since your receipt of the Right to Sue, include with your request a copy of the entire court **complaint** (with court stamped docket number) or enough pages to determine whether it was filed based on the EEOC charge.

If you are the *Respondent* you may be granted access to the file *only after* a lawsuit has been filed. Include with your request a copy of the entire court complaint that includes an official court stamped docket number.

Pursuant to federal statutes, certain documents, such as those which reflect the agency's deliberative process, will not be disclosed to either party.

You must sign an Agreement of Nondisclosure **before** you are granted access to the file, which will be sent to you after receipt of your written request. (Statutes enforced by the EEOC prohibit the agency from making investigative information public.)

The process for access to the file will begin no later than ten (10) days following receipt of your request.

When the file becomes available for review, you will be contacted. You may review the file in our offices and/or request that a copy of the file be sent to you. Files may not be removed from the office.

Your file will be copied by **Aloha Print Group, 60 East Van Buren, Suite 1502, Chicago, IL 60605, (312) 542-1300.** You are responsible for the copying costs and must sign an agreement to pay these costs before the file will be sent to the copy service. Therefore, **it is recommended that you first review your file** to determine what documents, if any, you want copied. EEOC will not review your file or provide a count of the pages contained in it. If you choose not to review your file, it will be sent **in its entirety** to the copy service, **and you will be responsible for the cost.** Payment must be made directly to **Aloha Print Group,** which charges 15 cents per page.

(Revised 04/20/2016, previous copies obsolete)

**A.054**

# FILING SUIT IN COURT OF COMPETENT JURISDICTION

### PRIVATE SUIT RIGHTS

The issuance of this *Notice of Right to Sue* or *Dismissal and Notice of Rights* ends the EEOC process with respect to your Charge. You may file a lawsuit against the Respondent within 90 days from the date you receive this Notice. Therefore, you should keep a record of the date. Once the 90 day period is over, your right to sue is lost. If you intend to consult an attorney, you should do so as soon as possible. Furthermore, in order to avoid any question that you did not act in a timely manner, if you intend to sue on your own behalf, your suit should be filed well in advance of the expiration of the 90 day period.

You may file your lawsuit in a court of competent jurisdiction. Filing this Notice is not sufficient. A court complaint must contain a short Statement of the facts of your case which shows that you are entitled to relief. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the Respondent has its main office.

You may contact the EEOC if you have any questions about your rights, including advice on which court can hear your case, or if you need to inspect and copy information contained in the case file.

IF THE FIRST THREE CHARACTERS OF YOUR EEOC CHARGE NUMBER ARE "21B" AND YOUR CHARGE WAS INVESTIGATED BY THE ILLINOIS DEPARTMENT OF HUMAN RIGHTS (IDHR), REQUEST FOR REVIEWING AND COPYING DOCUMENTS FROM YOUR FILE MUST BE DIRECTED TO IDHR.

A lawsuit against a private employer is generally filed in the U.S. District Court.

A lawsuit under Title VII of the Civil Rights Act of 1964, as amended, against a State agency or a political subdivision of the State is also generally filed in the U.S. District Court.

However, a lawsuit under the Age Discrimination in Employment of the American with Disabilities Act or, probably, the Equal Pay Act against a State instrumentality (an agency directly funded and controlled by the State) can only be filed in a State court.

A lawsuit under the Age Discrimination in Employment Act or the American with Disabilities Act or the Equal Pay Act against a political subdivision of a State, such as municipalities and counties, may be filed in the U.S. District Court.

For a list of the U.S. District Courts, please see the reverse side.

### ATTORNEY REPRESENTATION

If you cannot afford an attorney, or have been unable to obtain an attorney to represent you, the court having jurisdiction in your case may assist you in obtaining a lawyer. If you plan to ask the court to help you obtain a lawyer, you must make this request of the court in the form and manner it requires. Your request to the court should be made well in advance of the 90 day period mentioned above. A request for representation does not relieve you of the obligation to file a lawsuit within the 90-day period.

### DESTRUCTION OF FILE

If you file suit, you or your attorney should forward a copy of your court complaint to this office. Your file will then be preserved. Unless you have notified us that you have filed suit, your Charge file could be destroyed as early as six months after the date of the Notice of Right to Sue.

IF YOU FILE SUIT, YOU OR YOUR ATTORNEY SHOULD NOTIFY THIS OFFICE WHEN THE LAWSUIT IS RESOLVED.

# Exhibits to Moody's Motion to Dismiss Garrick's Third Modified First Amended Complaint

# MOODY BIBLE INSTITUTE

**EMPLOYEE INFORMATION GUIDE**
**July 1, 2016**



EXHIBIT

B

**TABLE OF CONTENTS**

Introduction 1

Community Standards 4

Workplace Attire 7

Hiring and Employee Placement 9

Work and Hours, Time Reporting and Salary Administration 22

Employee Benefits 26

Employee Services 41

Administrative Procedures 44

**INTRODUCTION**

**Our Purpose**
As a higher education and media ministry, Moody exists to equip people with the truth of God's Word to be maturing followers of Christ who are making disciples around the world.

**Purpose Statement — Unwrapped**

*As a higher education and media ministry,*
These are our areas of ministry. Higher education includes undergraduate education, graduate education, and non-degree adult education. Media ministry is intentionally broad, and it currently includes publishing and radio. However, with ever-changing technology, Moody may utilize new forms of media that prove to be effective.

*Moody exists to equip*
This is our core business. We are in the equipping business, which means both the proclamation of the Word to all and the development of ministry skills in people.

*people*
Our ministry is to all people. Both believers and nonbelievers are influenced by the ministry of Moody.

*with the truth of God's Word*
The Bible is the basis for everything we teach, broadcast, and publish.

*to be maturing followers of Christ*
This is the immediate impact of Moody's work—moving people along in their journey toward maturity in Christ.

*who are making disciples around the world.*
Making disciples is the goal of mature believers. This, then, is the ultimate impact of Moody's work—contributing to the fulfillment of the Great Commission.

**Our Values**
The authority of the Word of God
The centrality of the Church
The worth and dignity of the individual
The priority of servanthood
The practice of integrity
The responsibility of stewardship

**Values Statements - Unwrapped**

*The Authority of God's Word*
At Moody we believe that the Bible is the inerrant Word of God and the final authority with respect to our faith, our worship, and our personal conduct.

1

### The Centrality of the Church

Because the Church is God's instrument in the world to reconcile mankind to Himself through Jesus Christ in this age, our ministries at Moody will complement and support the work and mission of the Church—not compete with it.

### The Worth and Dignity of the Individual

As God's creation, each person has worth to be valued and respected without regard to individual giftedness, identity, gender, or life circumstances. At Moody our relationships, attitudes, and actions will consistently reflect this fundamental truth.

### The Priority of Servanthood

Our obligation as believers is to serve Christ, and in His name to serve others—rather than being served. Regardless of our roles or responsibilities, each of us at Moody will exhibit the attitude and actions of a servant.

### The Practice of Integrity

As believers within the Moody community we will strive for an honest and authentic congruence of heart, body, words, and actions—based on our alignment with and commitment to God's Word.

### The Responsibility of Stewardship

Because God owns everything, we are to be faithful stewards of the gifts and good things from God's hand. For this reason, at Moody we will strive to efficiently and effectively manage all the resources He has entrusted to us.

## Our Rich Heritage

### 1800s

**1886** A formal meeting at Farwell Hall with Mr. Moody addressing the gathering results in the founding of the Chicago Evangelization Society (later renamed Moody Bible Institute).

**1891** Institute Tie, later known as Moody Magazine, begins.

**1894** The Bible Institute Colportage Association is founded by Mr. Moody.

**1899** The Bible Institute Colportage Association is incorporated.

**1899** D.L. Moody dies at his home in Northfield on December 22.

**1899** Dr. R.A. Torrey becomes Moody's 2nd President.

### 1900 - 1950

**1900** The name Chicago Evangelization Society formally changes to Moody Bible Institute on March 21.

**1901** Moody Correspondence School is organized (distance courses in some form began as early as 1895).

**1903** Moody Evening School is organized, although evening classes were held as early as 1889.

**1904** Dr. James M. Gray becomes Moody's 3rd President.

**1925** First Institute radio broadcast over WGES.

2

**A.060**

**1926** WMBI, Moody's first radio station, goes on the air.
**1934** Dr. Will H. Houghton becomes Moody's 4th President.
**1938** Crowell Hall is built.
**1941** The Bible Institute Colportage Association becomes Moody Press (later Moody Publishers).
**1945** Moody Institute of Science is founded, later to become Moody Video.
**1946** Moody begins aviation training.
**1947** Dr. William Culbertson becomes Moody's 5th President.

**1950 - 2000**
**1951** Houghton Hall is built as a women's dorm.
**1958** MOODY purchases radio station WCRF in Cleveland, Ohio and shortly thereafter, WDLM in Moline, Illinois. This is the catalyst for a network that would grow to include 35 stations in the continental U.S.
**1969** Culbertson Hall is built as a men's dorm.
**1971** Dr. George Sweeting becomes Moody's 6th President.
**1972** Moody Evening School opens its first off-campus location.
**1973** Pastors Conferences begin.
**1982** Moody Radio begins satellite-feed broadcasting system.
**1986** Moody Graduate School begins.
**1986** Moody celebrates its 100-year anniversary.
**1987** Dr. Joseph M. Stowell becomes Moody's 7th President.
**1989** MOODY receives regional accreditation.
**1990** Solheim Center is built as Moody's sports complex.
**1991** Sweeting Center for World Evangelization is built.
**1998** Alumni Student Center is built.

**2000 - present**
**2000** Moody begins on-line education.
**2003** Ministries of Moody Magazine and Moody Retail come to a close.
**2005** Moody Aviation relocates to Spokane.
**2006** Moody Northwest becomes a branch campus, renamed Moody Bible Institute-Spokane.
**2005** Dr. Michael J. Easley becomes Moody's 8th President.
**2006** *The Five Love Languages* makes the *New York Times* Best Seller list.
**2008** Moody Broadcasting Network becomes Moody Radio.
**2009** Dr. Paul Nyquist becomes Moody's 9th President.
**2009** Moody Graduate School becomes Moody Theological Seminary and Graduate School.
**2010** Michigan Theological Seminary merges with Moody to become Moody Theological Seminary – Michigan.

To learn more about Moody's rich heritage, see <u>About Moody</u>.

**A.061**

## COMMUNITY STANDARDS

### Moody's Christian Identity and Values

At Moody Bible Institute we value being a community of caring Christians dedicated to helping one another grow toward Christian maturity. We are part of the larger Christian community and we represent an institution committed to spreading the Word of God through education and media ministries. We seek to cultivate attitudes and conduct that are consistent with Scripture, striving to reflect God and his values in our lifestyle and the conduct of our service.

As members of the MBI Christian community, we commit ourselves to live Christ-honoring lives. Employment at MBI presupposes that each employee has committed his or her life to Jesus Christ for salvation and Christian service. A lifestyle in accordance with biblical principles is essential to demonstrate that commitment to fellow employees, to MBI students, and to the outside world. Scripture clearly indicates that "whatever you do, whether in word or deed, do it all in the name of the Lord Jesus" (Col. 3:17).

### Rules and the Christian Life

The Scriptures encourage us to pursue a course of conduct that is free from both lawlessness and legalism. Rules are not in themselves a test of spirituality, yet a spiritual person will submit to God's Word and to God's established authority (e.g., church, government, employer). Such a person will live in love and self-control in the community in which God allows him or her to live and serve.

The Bible clearly presents certain absolutes of moral behavior. In other areas where absolute principles do not exist, Christians must search the Scriptures for wisdom in dependence on the Holy Spirit. MBI calls its employees to live in accordance with all *biblical absolutes*. On the other hand, matters of *individual discernment* will be left to the Christian's conscience (with a few exceptions due to *communal* considerations). In every instance, the exaltation of God's holy name is what should ultimately determine the employee's behavior.

### Biblical Absolutes and Moody Employees

By *biblical absolutes*, MBI means those unchanging scriptural truths about God, his creation, and his will for human beings. Rooted in his character and law, these truths are universal, unchanged by time, circumstances, culture, or human interpretation. Included in the absolutes are certain requirements of the Bible about moral living.

> Positive Commands
> Because we desire that the life of Christ be manifested in the MBI community, we expect that a believer will seek to follow every direct command of God. Examples of Scripture's positive commands would include actively participating in a biblical*, Protestant local church, loving all people, being filled with the Holy Spirit, obeying the Word, and trusting God for personal needs (Prov. 3:5-6; Luke 11:28; John 13:34-35; Gal. 6:10; Eph. 5:18-21; Col. 3:12-17; 1 Thess. 5:12-22; Heb. 10:24-25).

4

**A.062**

Prohibitive Commands

Biblical teaching forbids practices such as idolatry, stealing, drunkenness, chemical dependency, gossip, gluttony, dishonesty, occult involvement, murder, profanity, law-breaking, the use of illegal, addictive, or mind-altering drugs (including marijuana), physical abuse or battery, child abuse, all sexual activity outside of the husband/wife marital relationship (including pornography, all other manifestations of the 'sex industry', and homosexual or transgender behavior). Furthermore, attitudes such as lust, greed, divisiveness, thanklessness, pride, hatred, rebelliousness, and jealousy are equally displeasing to God.  (Gen. 1:26-27; Ex. 20:1-17; Ps. 11:5; Prov. 6:16-19; Rom. 1:26-27, 13:1-14; 1 Cor. 6:9-20, 15:34; Gal. 5:19-21; Eph. 5:1-18; Col. 3:5-10; 1 Thess. 4:3-8; 1 Pet. 5:8)

While recognizing that no Christian can attain perfect holiness this side of heaven, MBI nonetheless calls its employees to let these biblical absolutes govern their lives at work and away from the workplace at all times.

**Matters of Individual and Communal Discernment**

By *individual discernment* we mean each employee is free to follow a biblically informed conscience. As noted above, Scripture provides certain moral absolutes that MBI expects to be followed. Concerning issues about which Scripture is not clear and Christians disagree, MBI endeavors to leave these matters to the individual's conscience as described in Romans 14. "Who are you to judge the servant of another? To his own master he stands or falls; and he will stand, for the Lord is able to make him stand … Each person must be fully convinced in his own mind" (vv. 4-5).

The guiding principle of a Christian's moral life is God's glory. This means we will never use our moral freedom as an occasion to abuse our bodies, which are God's temple. It also means our Christian liberty must be balanced by the needs of the broader community to which we belong and our behavior adapted to its benefit.

Therefore, certain prohibitions not mentioned in Scripture are nonetheless necessary for the MBI community. While in the workplace or carrying out MBI job duties, employees are prohibited from consuming alcoholic beverages, using tobacco products or gambling in any form or venue. Though these are not explicit biblical commands, neither are they left to employee discernment; they are communal limitations that allow MBI to maintain a good reputation so as to glorify God in all things.

---

*By 'biblical' we mean a church that subscribes to the five primary doctrines of biblical Christianity, which are: 1) **The Trinity:** God is one "What" and three "Whos" with each "Who" possessing all the attributes of Deity and personality. 2) **The Person of Jesus Christ:** Jesus is fully God and fully man. 3) **The Second Coming:** Jesus Christ is coming bodily to earth to rule and judge. 4) **Salvation:** It is by grace alone through faith alone in Christ alone. 5) **The Scripture:** It is entirely inerrant and sufficient for all Christian life.

**Human Sexuality**

The Moody Bible Institute's foundation for understanding human sexuality is rooted in our commitment to the Bible as the only authoritative guide for faith and practice.  The first two chapters of Genesis constitute the paradigm and prerequisite of God's enduring creative intent for human personhood, gender and sexual identity, and sexual intimacy in marriage (Genesis 1:27, 2:24; cf. Matthew 19:4-5).

We affirm that humanity came from the hand of God with only two sexual distinctions—male and female—both in the image of God, and emerging from one flesh with the unique physical capacity to reunite as one flesh in complementarity within a marriage. God's creation design and intent for marriage as expressed in Genesis 2 is therefore exclusively between one man and one woman.  Marriage alludes to the love of Christ for His Bride, the Church (Ephesians 5:22-33; Revelation 19:7-9). Within this monogamous context, intended to be lifelong, sexual intimacy is a glorious blessing from God.

We affirm the worth and relevance of human gender and sexuality, and of sexual intimacy as a distinctive of marriage. Based on Scripture (cf. Leviticus 18, 1 Corinthians 5-6, and other passages), non-marital sex, homosexual sex, same-sex romantic relationships, and gender identification incongruent with one's birth-sex all violate God's generous intention for human relationships. Such practices misrepresent the nature of God Himself, and therefore are sinful under any circumstance. In God's standards, we find merciful restraint on our fallenness. Concerns about sexuality and gender may be difficult to disclose, but suffering in silence is a far greater challenge. Moody Bible Institute believes that people are best supported if we are able to share our questions, struggles, or our self-understanding with trusted others.

We affirm God's love and concern for all of humanity—a concern that compelled Him to offer His Son a ransom for our lives—and we consider His biblically recorded and specifically defined guidelines for sexual practice to be enduring expressions of His love and protection of our human identity (cf. Matthew 19:5-9).

Our expectation is that the entire Moody community will honor the biblical obligation to surrender one's body to God (Romans 12:1). Our community standards reflect our commitment to support the spiritual and relational maturation of each member as we endeavor to stand in the fullness of Christ's stature (Ephesians 4:11-13; cf. 1 Thessalonians 4:3-8). We willingly submit ourselves to these biblical mandates in light of our call to holiness and to self-surrender.

6

**A.064**

*MOODY BIBLE INSTITUTE*
*INSTITUTIONAL POSITIONS RELATED TO THE MOODY BIBLE INSTITUTE*
*DOCTRINAL STATEMENT (1928)*

**Introduction**

Throughout its history MBI has without qualification held to the essentials of biblical orthodoxy. In addition it has defined itself in other distinct ways in terms of more specific interpretations of Scripture. These positions are reflected in the *Doctrinal Statement* (1928) documents and policies published by the Institute. This *Institutional Positions Related to the Moody Bible Institute Doctrinal Statement (1928)* was produced to clarify and make explicit the doctrinal positions of the institution.

While the Institute's particular definitions are important to its position, it is readily recognized that they do not define orthodoxy for the whole body of Christ. MBI gladly embraces all that faithfully adhere to the essentials of biblical Christianity as fellow believers and colleagues in Christ's cause.

Whereas biblical Christianity is defined by the central tenets of the faith, throughout the history of the Church various groups have employed more specific definitions to define themselves. Historically MBI has maintained positions, which have identified it as non-charismatic, dispensational, and generally Calvinistic.

To maintain continuity and consistency with the heritage entrusted to its care, the Institute expects faculty and administration to agree with, personally adhere to, and support the Institute's doctrinal distinctives as noted above and defined in the following *Institutional Positions Related to the Moody Bible Institute Doctrinal Statement (1928)*.

MBI rev 031715

2



MOODY BIBLE INSTITUTE
DOCTRINAL STATEMENT

### Article I

*God is a Person who has revealed Himself as a Trinity in unity, Father, Son, and Holy Spirit-three Persons and yet but one God (Deuteronomy 6:4; Mathew 28:19; I Corinthians 8:6).*

### Article II

*The Bible, including both the Old and New Testaments, is a divine revelation, the original autographs of which were verbally inspired by the Holy Spirit[1] (II Timothy 3:16; II Peter 1:21).*

### Article III

*Jesus Christ is the image of the invisible God, which is to say, He is Himself very God; He took upon Him our nature, being conceived by the Holy Spirit and born of the Virgin Mary;[2] He died upon the cross as a substitutionary sacrifice for the sin of the world;[3] He arose from the dead in the body in which He was crucified; He ascended into heaven in that body glorified, where He is now our interceding High Priest; He will come again personally and visibly to set up His Kingdom[4] and to judge the quick and the dead (Colossians 1:15; Philippians 2:5-8; Matthew 1:18-25; I Peter 2:24-25; Luke 24; Hebrews 4:14-16; Acts 1:9-11; I Thessalonians 4:16-18; Matthew 25:31-46; Revelation 11:15-17; 20:4-6, 11-15).*

### Article IV

*Man was created[5] in the image of God but fell into sin, and, in that sense, is lost; this is true of all men, and except a man be born again he cannot see the kingdom of God; salvation is by grace through faith in Christ who His own self bare our sins in His own body on the tree; the retribution of the wicked and unbelieving and the reward of the righteous are everlasting, and as the reward is conscious, so is the retribution[6] (Genesis 1:26-27; Romans 3:10, 23; John 3:3; Acts 13:38-39; 4:12; John 3:16; Matthew 25:46; II Corinthians 5:1; II Thessalonians 1:7-10).*

### Article V

*The Church[7] is an elect company of believers baptized by the Holy Spirit into one body; its mission is to witness concerning its Head, Jesus Christ, preaching the gospel among all nations; it will be caught up to meet the Lord in the air ere He appears to set up His kingdom[8] (Acts 2:41; 15:13-17; Ephesians 1:3-6; I Corinthians 12:12-13; Matthew 28:19-20; Acts 1:6-8; I Thessalonians 4:16-18).*

*(Board of Trustees, October 1928)*

A.066

### INSTITUTIONAL POSITIONS RELATED TO THE MOODY BIBLE INSTITUTE DOCTRINAL STATEMENT (1928)

*Footnotes elaborating The 1928 Doctrinal Statement*

*Footnotes:*

1. The Bible is without error in all it affirms in the original autographs and is the only authoritative guide for faith and practice and as such must not be supplanted by any other fields of human learning.

2. Jesus Christ, the only begotten Son of God, is fully God and fully man possessing both deity and humanity united in one person, without division of the person or confusion of the two natures.

3. An individual receives the benefit of Christ's substitutionary death by faith as the result of responding to the message of the gospel. Salvation is the free gift of God's grace through faith alone, in Christ alone, therefore not dependent upon church membership, intermediaries, sacraments or works of righteousness to attain or sustain it.

4. It is the Institute's position that this refers to the premillennial return of Christ at which time He will set up His millennial reign during which time He will fulfill His promises to Israel.

5. This affirms that the first human beings were a special and unique creation by God as contrasted to being derived from any pre-existing life forms. Further, God created everything "after its kind" which excludes any position that allows for any evolutionary process between kinds.

6. This statement excludes any position which asserts a temporary or complete cessation of consciousness, or merging with eternal oneness, or annihilation of the damned, or a "second chance" or a period of suffering or purification in preparation for entrance into the presence of God.

7. The Church of Jesus Christ is a distinct entity from Israel in the ongoing program of God. Further, that this universal Church consists of all who possess saving faith in the death and resurrection of Jesus Christ from Pentecost to the Rapture of the Church and which will represent every language, people and nation.

8. Christ will return in the air preceding the seven-year Tribulation at which time He will receive into heaven all believers who constitute His church. During that tribulation period God will bring salvation to Israel and the nations while exercising judgment on unbelievers.

4

MBI rev 031715

**A.067**

ADDENDUM
## INSTITUTIONAL POSITIONS IN ADDITION TO THE ELABORATION OF THE MOODY BIBLE INSTITUTE DOCTRINAL STATEMENT (1928)

In addition to distinctives derived from an historic understanding of the 1928 Doctrinal Statement, the Moody Bible Institute has historically been identified with the positions outlined below. While Trustees, education administrators and Faculty are expected to hold these positions, we recognize that we serve and minister with others whose traditions differ on these subjects.

### GENDER ROLES IN MINISTRY

The Moody Bible Institute values the worth and dignity of all persons without distinction as created in God's image. We affirm the priesthood of all believers and the responsibility of every Christian woman and man to take an active role in edifying the Church. For that purpose, the Holy Spirit distributes ministry gifts to believers without distinction of any kind. That reality imposes the responsibility on every believer to fulfill ministry consistent with God's grace.

The Institute distinguishes between ministry function and church office. While upholding the necessity of mutual respect and affirmation as those subject to the Word of God, MBI understands that the biblical office of elder /pastor in the early church was gender specific. Therefore it maintains that it is consistent with that understanding of Scripture that those church offices should be limited to the male gender.

### SIGN GIFTS OF THE HOLY SPIRIT

The Institute maintains that there is one baptism of the Holy Spirit that occurs at the time a person is born again, placing that one into the body of Christ. MBI also distinguishes between spiritual gifts distributed to believers to equip them for ministry and the "sign gifts" which are understood to have been manifestations of the Holy Spirit to authenticate the messenger and the gospel message during the foundational period of the church. Therefore, the Institute holds that "sign gifts" are not normative for the church today.

### HUMAN SEXUALITY (APPROVED BY THE FACULTY 1/22/2014)

In addition to the above, I confirm that I have previously read and affirmed the entire position paper on Human Sexuality approved by the faculty of The Moody Bible Institute of Chicago on January 22, 2014 (the "Human Sexuality Position Paper") and presently acknowledge and confirm that I have not changed my position or agreement with the Human Sexuality Position Paper and continue to affirm it in its entirety, as when originally signed by me.

5

MBI rev 031715

**A.068**



**MOODY**
**Bible Institute**™                    *Office of the Vice President and Associate Provost of Faculty*

April 17, 2017

Ms. Janay Garrick
Instructor of Communications
Moody Bible Institute

Dear Janay,

Thank you for meeting with me last week along with Debbie Zelinski of the Human Resources department. The purpose of the meeting was to gain clarification as to your position on "Gender Roles in Ministry." You articulated in our meeting that you hold to the egalitarian view. Granted, this view is within the theological bounds of evangelicalism but it is not the view of Moody Bible Institute. As you know, faculty and upper administration must annually confirm the doctrinal statement which includes the complementarian view of gender roles without "disclaimers, clarifications, or personal exceptions...." For the record I would like to state that your signing of the doctrinal statement in previous years was based on the understanding that since you were approved for hiring you must therefore be able to sign the statement. However, given that your view is different from that of Moody, we will not give you a contract for the next academic year.

Since it is April, Moody will pay your monthly salary and your benefits will continue through December 2017 without any teaching responsibilities. Moody will also pay for your MFA course scheduled for summer 2017. We please request that you vacate your office by June 30, 2017 and we will notify colleagues of your departure on July 1.

Thank you for your service these last five semesters and may God continue to open doors for you that will allow for your continued professional and personal growth.

Sincerely,

Larry J. Davidhizar, PhD
Vice President and Associate Provost of Faculty
Moody Bible Institute

LJD:ps

cc: Dr. Junias Venugopal, Provost
    Dr. James Spencer, Vice President and Dean of the Moody Bible Institute
    Dr. Terry Strandt, Division Chair, Music and Media Arts
    Ms. Debbie Zelinski, Vice President, Human Resources

 **MOODY** Bible Institute    **MOODY** Theological Seminary    **MOODY** Bible Institute DISTANCE LEARNING   

820 N. LaSalle Blvd.        (800) DL MOODY        moody.edu
Chicago, IL 60610          (312) 329-4000

**A.069**

**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **JANAY E. GARRICK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 18 C 0573** |
| **v.** | ) | |
| | ) | **Judge John Z. Lee** |
| **MOODY BIBLE INSTITUTE and** | ) | |
| **THE BOARD OF TRUSTEES FOR** | ) | |
| **THE MOODY BIBLE INSTITUTE,** | ) | |
| | ) | |
| **Defendants.** | ) | |

<u>**MEMORANDUM OPINION & ORDER**</u>

Plaintiff Janay Garrick, a former faculty member of Defendant Moody Bible Institute

("Moody"), has sued Moody and its Board of Trustees, alleging that it unlawfully terminated her

employment because of her advocacy in favor of women serving as clergy members.    Moody

moves to dismiss Garrick's first amended complaint under Federal Rules of Civil Procedure

12(b)(1) and 12(b)(6), contending that its rights under the First Amendment's Religion Clauses

bar Garrick's claims.[1]    For the reasons that follow, Moody's motion [68] is granted.

<u>**Background**</u>[2]

Moody is a post-secondary religious educational institution offering both undergraduate

---

[1]    The Court previously granted Garrick's motion to voluntarily dismiss the Board of Trustees as a
Defendant, *see* ECF No. 23, but Garrick has again included the Board as a Defendant.    The docket does
not reflect that the Board has ever been served.    Accordingly, the Court dismisses the complaint as to the
Board of Trustees of the Moody Bible Institute pursuant to Federal Rule of Civil Procedure 4(m).

[2]    When reviewing a motion to dismiss, the Court assumes the alleged facts in the complaint are true
and draws all possible inferences in favor of Plaintiff.  *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081
(7th Cir. 2008).    In addition to the complaint itself, on a motion to dismiss the Court may consider
"documents attached to the complaint, documents that are critical to the complaint and referred to in it, and
information that is subject to proper judicial notice."    *Geinosky v. City of Chi.*, 675 F.3d 743, 745 n.1 (7th
Cir. 2012).

**A.070**

and graduate courses of study; it accepts federal financial aid.    Pl.'s 3d Modified 1st Am. Compl. ("FAC") ¶¶ 1, 5, ECF No. 67.    Garrick, who is proceeding in this lawsuit *pro se*, worked at Moody as an Instructor of Communications from December 1, 2014, to December 31, 2017.    *Id.* ¶ 7.

Prior to being hired by Moody, Garrick was an ordained minister with a Master's degree in cross-cultural studies and a Bachelor's degree in creative writing and speech communications. *Id.* ¶ 20.    She identifies as an "egalitarian Christian" and believes in gender equality in ministry. *Id.* ¶ 22.    While interviewing at Moody, she informed her superiors of her egalitarian beliefs.    *Id.* Moody hired her with "full knowledge" of her beliefs and twice renewed her contract with this knowledge.    *Id.*

According to Garrick, she "quickly learned" that Moody "both tolerated and cultivated an environment that was hostile to female faculty and students."    *Id.* ¶ 24.    This was primarily driven by Moody's "complementarian" doctrine, which "excludes women from certain roles within the church due to their gender," *id.* ¶ 136, as well as Moody's general stances on gender and sexuality, *see id.* ¶¶ 30, 48.    The conflict between Moody's and Garrick's views played out in a number of ways during her two-year tenure.

First, before Garrick's interview in October 2014, Larry Davidhizar, the Vice President and Associate Provost of Faculty, told Garrick to remove the statement that she was an ordained minister from her resume.    *Id.* ¶ 25.    Furthermore, when she was hired, administrators did not inform her that she could claim a tax deduction for housing costs as an ordained minister.    *Id.* ¶ 26.    Although she took steps to claim the deduction by filing her ordination license with Moody, she lost the opportunity to take the deduction for a full year.    *Id.*

**A.071**

In February 2015, a lesbian student approached Garrick about hostility she was experiencing because of her sexual orientation. *Id.* ¶ 30. When Garrick brought the student's concerns to Tim Arens, the Dean of Student Life, he warned her that Moody had "community living standards." *Id.* The student was later expelled. *Id.*

In late 2015, Garrick was asked to assist in forming a committee to address women's concerns on campus—the "Respect for Women Personally and Ministerially" group. *Id.* ¶ 28. From the outset, this group was "viewed with suspicion and hostility," and administrators told Garrick to expect any change to be "small and incremental." *Id.*

Two other female students came to Garrick for help in October 2015 and January 2016, respectively. *Id.* ¶¶ 31–32. Both students wanted to enter Moody's Pastoral Ministry Program, but it was closed to women. *Id.* Garrick helped one of the students lodge a complaint against Moody under Title IX of the Education Amendments of 1972. *Id.* ¶ 35. But Garrick soon came under fire for this advocacy. At the inaugural meeting of the Respect for Women Personally and Ministerially group on February 17, 2016, she was rebuked for filing the complaint and asked how she could have "any integrity." *Id.* ¶¶ 36, 113–14.

Garrick met with Debbie Zelinski, the Vice President of Human Resources, on February 19, 2016, to address the "backlash" she had suffered from her Title IX advocacy, as well as "antagonism" she was suffering from male colleagues in a shared workroom. *Id.* ¶¶ 29, 115. Zelinski suggested that Garrick should simply avoid the workroom and get her own printer so she could work in her office instead. *Id.*

Garrick then met with Davidhizar and Bryan O'Neal, Dean of the Undergraduate Faculty, on February 23. *Id.* ¶ 38. Davidhizar and O'Neal suggested that she "might not be able to

**A.072**

continue in the faculty and told her she should voluntarily leave [Moody]."    *Id.* ¶ 38, 116.
Davidhizar additionally instructed Garrick to remove herself from her role in organizing and co-leading the Respect for Women Professionally and Ministerially group.    *Id.* ¶ 117.    Garrick resisted their suggestions and continued to fight in favor of female students entering the Pastoral Ministry Program, despite objections from administrators and other faculty members to women preaching.    *Id.* ¶¶ 40–45.

At a meeting for faculty and administrators in September 2016, Garrick spoke out against a male theology professor's proposal to require all students to "sign a statement affirming their belief in and adherence to a biblically orthodox position on human sexuality."    *Id.* ¶ 48.    Along with a male faculty member, Garrick submitted a counter-proposal with an "inclusive" message. *Id.*    In response, Davidhizar pulled her into his office the next day and told her that the speech was "inflammatory rhetoric," and that she was "not a Moody fit."    *Id.* ¶ 49.    Garrick alleges that her male co-presenter was never subjected to similar disciplinary action.    *Id.*

Soon thereafter, Garrick submitted a written application for a promotion to Assistant Professor.    *Id.* ¶¶ 50–51.    Garrick asserts that she was qualified for the promotion and already had performed the work of an Assistant Professor, such as developing numerous courses, creating "institution-wide initiatives like the publication of a new art and theology journal," and developing an educational plan for ESL students.    *Id.* ¶¶ 52–54.    Still, Moody denied Garrick's request, stating that she needed to "improve her fit within the division."    *Id.* ¶ 55.

Garrick then underwent a series of performance reviews.    She first received an informal performance review on December 3, 2016, from Terry Strandt, Chair of the Music and Media Arts

4

**A.073**

Division, who congratulated her on "two years of excellent service," and described her teaching as "concise, clear[,] and engaging." *Id.* ¶ 57.

But in early 2017, Davidhizar told her that she had "performance and interpersonal issues," and that she should not expect to receive a contract renewal following Spring Recess. *Id.* ¶¶ 59, 120. Moreover, directly contradicting Strandt's review just months before, Brian Kammerzelt, the head of the Communications Program, told Garrick that Strandt had found her to be performing "below standards," and threatened to demote her. *Id.* ¶ 59.

Kammerzelt also informed Garrick that she had been subjected to peer reviews, which (according to Garrick) did not apply to male faculty members. *Id.* ¶ 97(b), 121(d). Garrick asked to see the results, but was never given the information. *Id.* ¶ 121(g). Garrick eventually received a formal performance review from Strandt on March 30, which criticized her performance. *Id.* ¶¶ 60, 121(a).

On April 5, 2017, Garrick received an email stating that Davidhizar would like to meet with her "to discuss [her] vocal non-alignment with [Moody's] doctrinal statement as it relates to 'Gender Roles in Ministry.'" *Id.* ¶ 122. On April 12, she met with Davidhizar and the Vice President of Human Resources. *Id.* ¶ 61.

During this meeting, Davidhizar told Garrick that she did not fit in at Moody, and that she was not "aligned with [Moody's] doctrinal statement as it related to gender roles in ministry." *Id.* Faculty members at Moody are required to annually sign its doctrinal statement, which describes certain gender roles for those in ministry. According to Garrick, however, Moody "selectively enforces adherence" to the doctrine, "and this enforcement disproportionately affects female faculty" like herself "who do not 'align' or 'adhere.'" *Id.* ¶¶ 67(i), 138(b)–139. For instance,

5

**A.074**

there were "key male Moody Radio personnel who did not affirm" the "Gender Roles in Ministry" statement but who remained employed at Moody.  *Id.* ¶ 137.

Garrick was officially terminated on April 17 or 18, on account of "her egalitarian views on gender roles in ministry."  *Id.* ¶¶ 62, 124.  At the time, she was informed that she could continue teaching until the end of the semester and remain as a non-teaching faculty member until December 31, 2017.  *Id.* ¶ 62.  But, on April 26, Moody asked her to leave campus and return her keys without finishing the semester.  *Id.*  Garrick asserts that this was in response to her having spoken to students and student reporters about her termination.  *Id.* ¶¶ 62, 124–25.

Garrick claims that her sudden ouster on April 26 violated the Faculty Manual and Employee Information Guide.  The Manual, which Garrick contends is incorporated into the Faculty Contract, provides: "If for some reason a faculty member is not to be retained after the Spring semester, notification will be given to the teacher concerning this decision by the last Friday in November of the Fall semester, except for such serious violations of Institute policy which may result in immediate termination."  *Id.* ¶¶ 81–85, *id.* Ex. B, Excerpt from Faculty Manual.

As a result, Garrick filed an internal grievance on May 17, 2017.  *Id.* ¶ 63.  In it, she alleged that Moody already had been aware of her doctrinal disagreement when it hired her and that it was only after she began advocating for students' Title IX rights that she was fired.  *Id.* ¶¶ 63–64.  Garrick alleges that Moody made her grievance process "impossible" and that she was denied "any manner of reasonable due process."  *Id.* ¶ 126.  Still, during the administrative hearing, Davidhizar admitted that Garrick had informed him of her egalitarian views during her interview in October 2014.  *Id.* ¶ 127.  Despite this testimony, Moody denied Garrick's

6

**A.075**

grievance on July 24, 2017, and it also terminated two female professors who had challenged Moody during Garrick's grievance process.  *Id.* ¶ 66.

Outside of the events that led to her firing, Garrick alleges that women at Moody were generally subjected to different standards than men.  For instance, she says, she was denied a reduced teaching load while completing a terminal degree in her field, even though men were given that accommodation.  *Id.* ¶ 98.  Not only that, but she was required to develop and complete five new undergraduate courses, which exceeded her stated responsibilities, while recently hired male instructors were not made to do the same.  *Id.* ¶ 99.

Furthermore, Garrick claims, female instructors were confined to programs like the Communications Program, while "the more prestigious Bible and Theology Programs" were staffed exclusively by male instructors.  *Id.* ¶¶ 27, 67(e)-(f).  Moody's annual Pastor's Conference never included female speakers as main session speakers; there were a "disproportionate" number of male to female speakers at required student chapels; and female faculty were denied the opportunity to speak at "President's Chapel."  *Id.* ¶ 67(b)-(c), 95(a). And there was a disproportionate number of male faculty and administration members as compared to women.  *Id.* ¶ 67(f)-(h).

Women were also treated with hostility and faced discrimination, according to Garrick. For example, during Founder's Week in February 2017, male students organized a "walk out" when a woman was brought in as a speaker.  *Id.* ¶ 67(a).  Some Bible professors were "known to be 'overtly discouraging' to female students in their classes."  *Id.* ¶¶ 67(d).  A male professor once told Garrick that women in Moody's hiring process often needed to be "walked through" the doctrinal statement.  *Id.* ¶ 101(b).  Moreover, disparaging remarks were frequently made about

**A.076**

Garrick's dress, education, and understanding of her own theological positions. *Id.* ¶ 101(c)-(e). And there were "numerous reports of gender harassment and gender-based violence (sexual assault, rape) that went unaddressed or ignored by Moody administration[,] contributing to an unsafe campus environment for female students and faculty." *Id.* ¶ 102. Garrick says she complained numerous times to Moody administrators about this environment, to no avail. *Id.* ¶¶ 103–04.

## Legal Standards

To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Additionally, when considering motions to dismiss, the Court accepts "all well-pleaded factual allegations as true and view[s] them in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013) (citing *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013)). At the same time, "allegations in the form of legal conclusions are insufficient to survive a Rule 12(b)(6) motion." *McReynolds v. Merrill Lynch & Co., Inc.*, 694 F.3d 873, 885 (7th Cir. 2012) (citing *Iqbal*, 556 U.S. at 678). As such, "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## Analysis

In Count I of Garrick's amended complaint, she alleges that Moody retaliated against her for engaging in activity protected by Title IX by "subjecting her to a hostile environment;

8

**A.077**

subjecting her to discriminatory disciplinary action; denying her a promotion; and unlawfully terminating her."    FAC ¶ 76.    Count II alleges breach of contract related to Moody's failure to provide the required notice of its intention not to renew her contract beyond the spring semester. *Id.* ¶¶ 81–91.    In Count III, Garrick alleges that she was subjected to a hostile work environment and discrimination based on her gender.    *Id.* at 16–19.[3]    Count V asserts that she was retaliated against for complaining about sex harassment and discrimination.    *Id.* ¶¶ 108–10, 121, 125–26, 129.    Count VI alleges that she was subjected to religious discrimination because of her egalitarian positions, and gender discrimination given that men who held similar views were not treated similarly.    *Id.* ¶¶ 134–40.

Moody moves to dismiss the complaint under Rule 12(b)(6) based upon the "ministerial exception" described in *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, 565 U.S. 171 (2012); the statutory religious exemptions found in Titles VII and IX; the preemption of Title IX claims by Title VII; the statute of limitations under Title VII; and the complaint's overall failure to state a claim.    It also argues that the complaint should be dismissed under Rule 12(b)(1) on account of the First Amendment's protection of religious liberties, variously described as "ecclesiastical abstention," "church autonomy," and "deference."    *See* Mem. Supp. Mot. Dismiss at 10, ECF No. 69.

---

[3]    The complaint contains a separate heading for "Count IV: Gender Discrimination," but no allegations under that heading.    Because Count III also alleges instances of discriminatory treatment, the Court considers Count III to raise both a hostile-work-environment claim and a disparate-treatment claim based on gender.

## I.    Timeliness

Turning first to Moody's reliance upon the statute of limitations, Garrick claims that she was terminated on April 17 or April 18, 2017.   *See* FAC ¶¶ 62, 124.   She filed her charge with the EEOC on January 5, 2018, approximately 262 days later.   *See* FAC Ex. C, EEOC Charge. Moody contends that, because Garrick did not file the charge within 180 days, her Title VII claims are untimely.   Garrick counters that the 300-day time limit, rather than the 180-day limit, should apply here.

> Under Section 706(e) of Title VII, a charge of discrimination
>
> shall be filed within one hundred and eighty days after the alleged unlawful employment practice occurred . . . except that in a case of an unlawful employment practice with respect to which the person aggrieved has initially instituted proceedings with a State or local agency with authority to grant or seek relief from such practice . . . such charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred, or within thirty days after receiving notice that the State or local agency has terminated the proceedings under the State or local law, whichever is earlier.

42 U.S.C. § 2000e-5(e)(1).   Illinois has an agency with the authority to grant relief from unlawful employment practices; therefore, it is a so-called "deferral" state whose residents are not required to file a charge with the EEOC until 300 days after the discriminatory act, so long as they meet certain statutory requirements.   *See Gilardi v. Schroeder*, 833 F.2d 1226, 1230 (7th Cir. 1987).

The question is whether a plaintiff actually must file a charge with the state agency in order to benefit from the 300-day limitation.   *See, e.g.*, *Adams v. City of Indianapolis*, 742 F.3d 720, 729 n. 7 (7th Cir. 2014) (citing 42 U.S.C. § 2000e-5(c); 29 C.F.R. § 1601.13(a)(3)(ii)) ("In states that have an employment-discrimination agency, the plaintiff must file a charge with the state agency first and allow it 60 days to investigate before going to the EEOC.").   Decisions on this issue are somewhat unclear.   *Compare Gilardi*, 833 F.2d at 1230 (holding that 300-day rule

10

**A.079**

applies across the board because the EEOC is required to cross-file the claim with the state agency) *with Turner v. The Saloon, Ltd.*, 595 F.3d 679, 684 n.5 (7th Cir. 2010) (noting that the district court may have incorrectly applied the 300-day rule because the record suggested that the plaintiff did not file any charge with an Illinois agency).

The Court need not delve into this thicket today, however, because "[f]ailure to timely file an administrative charge is an affirmative defense," *Laouini v. CLM Freight Lines, Inc.*, 586 F.3d 473, 475 (7th Cir. 2009), and plaintiffs need not plead around affirmative defenses, *see Hyson USA, Inc. v. Hyson 2U, Ltd.*, 821 F.3d 935, 939 (7th Cir. 2016). Unless the complaint "unambiguously establish[es] all the elements of the defense," dismissal is inappropriate. *Id.*; *see also Stuart v. Local 727, Int'l Bhd. of Teamsters*, 771 F.3d 1014, 1018 (7th Cir. 2014). Here, the complaint is silent on whether Garrick filed allegations with the state agency. Accordingly, Moody's motion to dismiss the Title VII claims based upon the statute of limitations is denied.

## II.    Church Autonomy: Title VII's Religious Exemption, the Ministerial Exception, and First Amendment Principles

Moody primarily defends against this action by pointing to its status as a religious institution and its beliefs as described by Garrick in her complaint. Although Moody raises several doctrines and statutory exemptions in support of its position, each of its arguments can be said to arise from the long-standing deference courts have afforded to religious institutions known as the "church autonomy" doctrine (sometimes called the "deference" doctrine or "ecclesiastical abstention").

The church autonomy doctrine has its roots in the First Amendment's Free Exercise and Establishment Clauses and "respects the authority of churches to 'select their own leaders, define their own doctrines, resolve their own disputes, and run their own institutions' free from

11

**A.080**

governmental interference." *Korte v. Sebelius*, 735 F.3d 654, 677 (7th Cir. 2013). "This dimension of religious liberty . . . is perhaps best understood as marking a boundary between two separate polities, the secular and the religious, and acknowledging the prerogatives of each in its own sphere." *Id.* As a result, federal courts should take care to not apply federal statutes in a way that fosters "excessive government entanglement" with the affairs of religious organizations. *Lemon v. Kurtzman*, 403 U.S. 602, 612–13 (1971).

In accordance with this principle, courts have recognized that the First Amendment "permit[s] hierarchical religious organizations to establish their own rules and regulations for internal discipline and government, and to create tribunals for adjudicating disputes over these matters." *Serbian E. Orthodox Diocese for the U.S. & Can. v. Milivojevich*, 426 U.S. 696, 724 (1976). Accordingly, "civil authorities have no say over matters of religious governance," and "secular judges must defer to ecclesiastical authorities on questions properly within their own domain." *Korte*, 735 F.3d at 678. Put simply, "[a] secular court may not take sides on issues of religious doctrine." *McCarthy v. Fuller*, 714 F.3d 971, 975–76 (7th Cir. 2013).

This constitutional concern for religious liberty is the foundation of the "ministerial exception" described in *Hosanna-Tabor*, 556 U.S. 171. There, the Supreme Court "recognized the right of churches to choose their own ministers (broadly understood) and adopted a constitutional ministerial exception to laws regulating employment discrimination." *Korte*, 735 F.3d at 677. Under *Hosanna-Tabor*, "religious organizations are free to hire and fire their ministerial leaders without governmental interference," including through application of federal employment discrimination laws. *Grussgott v. Milwaukee Jewish Day Sch.*, 882 F.3d 655, 657 (7th Cir. 2018).

12

A.081

Additionally, both Title VII and Title IX have codified elements of the church autonomy doctrine, providing exemptions for religious employers.   *See Korte*, 735 F.3d at 678.   Title VII provides that its prohibitions

> shall not apply to . . . a religious corporation, association, educational institution, or society with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities.

42 U.S.C. § 2000e-1(a).   Title VII also states that

> it shall not be an unlawful employment practice for a school, college, university, or other educational institution or institution of learning to hire and employ employees of a particular religion if such school, college, university, or other educational institution or institution of learning is, in whole or in part, owned, supported, controlled, or managed by a particular religion or by a particular religious corporation, association, or society, or if the curriculum of such school, college, university, or other educational institution or institution of learning is directed toward the propagation of a particular religion.

42 U.S.C. § 2000e-2(e)(2).

Similarly, Title IX notes that its prohibitions of sex discrimination "shall not apply to an educational institution which is controlled by a religious organization if" the application "would not be consistent with the religious tenets of such organization."   20 U.S.C. § 1681(a)(3).

Moody argues that, because Garrick qualifies as a "minister," her claims must be dismissed under *Hosanna-Tabor*.   Failing that, Moody argues that Garrick's Title VII and Title IX claims fall within the statutory exemptions and, furthermore, that her entire complaint implicates the church autonomy doctrine and invites excessive entanglement into religious matters.   The Court will address each defense in turn.

But first, a jurisdictional matter.   Moody claims that its religious autonomy wrests this Court of subject-matter jurisdiction.   This is incorrect.   "[T]he Supreme Court has repeatedly

13

**A.082**

reminded the lower courts of the narrow scope of truly jurisdictional rules." *Adkins v. VIM Recycling, Inc.*, 644 F.3d 483, 491 (7th Cir. 2011).    Indeed, in *Hosanna-Tabor* itself, the Supreme Court clarified that the ministerial exception is an affirmative defense, not a bar to jurisdiction. *See* 565 U.S. at 195 n.4; *see also Sterlinski v. Catholic Bishop of Chi.*, 934 F.3d 568, 571 (7th Cir. 2019). ("The ministerial exception is a defense, not a component of subject-matter jurisdiction[.]"); *Schleicher v. Salvation Army*, 518 F.3d 472, 478 (7th Cir. 2008) (noting that "[j]urisdiction is determined by what the plaintiff claims rather than by what may come into the litigation by way of defense").    Accordingly, the church autonomy principles upon which Moody relies give rise to an affirmative defense under Rule 12(b)(6), not a jurisdictional proscription that can be raised under Rule 12(b)(1).    And, as an affirmative defense, a defendant's invocation of religious autonomy must be conclusively established from the face of the complaint.    *See Hyson USA, Inc.*, 821 F.3d at 939.

### A.    Title VII Exemption

Turning to the merits, the Court agrees that the religious exemption described in Title VII applies to this case.    But it does not, as Moody asserts, apply to bar all of Garrick's Title VII claims.    Rather, "Title VII's exemptions are limited specifically to claims of discrimination premised upon religious preferences." *Herx v. Diocese of Ft. Wayne-South Bend Inc.*, 48 F. Supp. 3d 1168, 1175 (N.D. Ind. 2014); *accord Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 192 (4th Cir. 2011); *Boyd v. Harding Acad. of Memphis, Inc.*, 88 F.3d 410, 413 (6th Cir. 1996); *Elbaz v. Congregation Beth Judea, Inc.*, 812 F. Supp. 802, 807 (N.D. Ill. 1992).    The statute's plain language supports this interpretation, as both exemptions speak to a religious organization's hiring of employees of "a particular religion."    *See* 42 U.S.C. §§ 2000e-1(a);

14

**A.083**

2000e-2(e)(2).    Accordingly, Count VI, which claims that Moody discriminated against Garrick because of her different religious beliefs, is dismissed with prejudice.

### B.    Ministerial Exception

As for the ministerial exception, the Court notes that this issue is "subject to a fact-intensive analysis," of the type usually "left for a jury."    *Grussgott*, 882 F.3d at 657.    Relevant considerations include "(1) the formal title given by the Church, (2) the substance reflected in that title, (3) [the teacher's] own use of that title, and (4) the important religious functions she performed for the Church."    *Id.* at 658 (quoting *Hosanna-Tabor*, 565 U.S. at 192 (internal quotations omitted)).    In *Hosanna-Tabor*, the plaintiff, a "called teacher" at a religious school, was held out to the public as a minister and tasked with performing her job "according to the Word of God"; her title reflected a "significant degree of religious training followed by a formal process of commissioning"; she claimed a housing allowance on her taxes available only to those working in "ministry"; and she taught students religion and led them in prayer.    565 U.S. at 191–92.    In *Grussgott*, the plaintiff was held to be a minister even despite her role as a "grade school teacher," because she followed a unified curriculum incorporating religious teachings; taught her students about Jewish holidays, prayer, and weekly Torah readings; and practiced religion alongside her students by praying with them and performing rituals.    882 F.3d at 659–60.

Here, most of the facts on which Moody relies to support its application of the ministerial exception come not from Garrick's complaint, but from documents Moody submitted indicating the purpose and mission of the school, Garrick's practices while at the school, and statements she made in her employment application.    While these documents might be appropriately attached to a motion for judgment on the pleadings—or, even better, a motion for summary judgment—

15

**A.084**

consideration of them is not appropriate here, where the Court's task is to assess the plausibility of Garrick's allegations.[4]    *See Schleicher*, 518 F.3d at 478 (explaining that it is appropriate to invoke the ministerial exception in a motion for judgment on the pleadings, and if the plaintiff presents evidence rebutting the applicability of the exception, to treat the motion as one for summary judgment).    And, as the ministerial exception is an affirmative defense, *see Hosanna-Tabor*, 565 U.S. at 195 n.4, the defense must be clearly established from the face of the complaint, *see Hyson USA, Inc.*, 821 F.3d at 939.

Weighing in Moody's favor are its own status as a religious institution, the fact that Garrick took a housing-tax deduction for ordained ministers, and the fact that she participated in publishing an "art and theology journal" as part of her role at Moody, *see* FAC ¶ 54.    Weighing heavily in Garrick's favor is the fact that her position, Instructor of Communications, has no obvious connection to religion.    Although Moody makes much of the fact that Garrick was an ordained minister, it glosses over the fact that it itself did not consider her to be a one, openly rejecting her ordained status by telling her to remove it from her resume, requiring her to sign a doctrinal statement explaining that women cannot hold certain church offices, and rejecting her requests to speak publicly at various Moody events and chapel services.    Finally, it may be the case that, like the plaintiff in *Grussgott*, Garrick was required to integrate religious teachings into her classes, but her complaint contains no allegations to that effect.    Accordingly, the allegations

---

[4]    Moody contends that the Faculty Manual—an excerpt of which is attached to Garrick's complaint—is fair game, because it is "central" to her claims.    *See* Mem. Supp. Mot. Dismiss at 1 n.2. This may be true as to Garrick's contract claim, which relates to contractual provisions contained within the manual.    But it is not true as to the ministerial exception, an affirmative defense that need not be anticipated in the complaint.    *See Sterlinski*, 934 F.3d at 571.

of the complaint do not conclusively demonstrate that Garrick falls within the ministerial exception.

### C.    Church Autonomy Principles

Be that as it may, the overarching principle of religious autonomy still may require dismissal where a "religious employer offers a religious justification" for the adverse action or where the claim will otherwise "pose too much intrusion into the religious employer's Free Exercise and Establishment Clause rights."  *Demkovich v. St. Andrew the Apostle Parish*, 343 F. Supp. 3d 772, 782, 785 (N.D. Ill. 2018); *see also McCarthy*, 714 F.3d at 976 (explaining that a "final judgment of a secular court resolving a religious issue" would impermissibly cause "governmental intrusion into religious affairs"); *cf. Alicea-Hernandez v. Catholic Bishop of Chi.*, 320 F.3d 698, 702 (7th Cir. 2003) (recognizing that, if the plaintiff had raised claims based on disagreements with church policies, this might "contravene the First Amendment prohibition against excessive entanglement").[5]

For instance, in *Demkovich*, the court concluded that a hostile-work-environment claim pertaining to the plaintiff's sexual orientation and marital status could not proceed where the harassment was rooted in the Catholic church's doctrinal opposition to same-sex marriage. 343 F. Supp. 3d at 786–87.   The Tenth Circuit reached a similar decision in *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 657–59 (10th Cir. 2002), concluding that neither a minister nor her lay partner could bring sexual-harassment claims challenging the church's

---

[5]    The question posed by the Title IX exemption—whether application of the law would "not be consistent with the religious tenets" of the church—effectively raises the same issue.   Accordingly, the Court considers its analysis in this section to apply to the Title IX exemption as well as general church autonomy principles.

ecclesiastical discussions about homosexuality.   And in *Aparicio v. Christian Union, Inc.*, the Southern District of New York dismissed claims substantially similar to Garrick's; there, the plaintiff—whose position was not ministerial in nature—was prohibited from pursuing claims of discrimination arising from a religious institution's complementarian policy.   No. 18-CV-0592, 2019 WL 1437618, at *8–10 (S.D.N.Y. Mar. 29, 2019).   The court explained that, because the defendant's complementarian policy "reflect[ed] its right to choose who performs certain religious roles within the organization," the First Amendment "bar[red] the Court from asserting Title VII's secular sensibilities" on that policy through the vehicle of discrimination or retaliation claims.

Here, the essence of Garrick's claims derives from her advocacy in favor of women gaining access to ministry positions—taking a stance that, according to Garrick herself, is contrary to Moody's doctrinal views.   She explains that the stated reason for her discipline and termination was her "egalitarian" view of gender and her failure to ratify Moody's complementarian doctrine. Furthermore, she contends that this reason was pretext and that she was actually fired because of her advocacy in favor of female students joining the Pastoral Ministry Program.   *See* FAC ¶¶ 124–29.   Either way, Moody's alleged reasons for firing Garrick were rooted firmly in its religious beliefs.

Garrick's disagreement with Moody's beliefs on the role of women in the ministry underlies the majority of Garrick's allegations.   For instance, she contends she was told to remove her ordained status from her resume; that women were not allowed to teach in the Bible and Theology Programs; that she was attacked after advocating on behalf of an inclusive doctrinal statement regarding human sexuality; and that she was prohibited from speaking at chapel services. Even her hostile-work-environment claim implicates Moody's doctrine, given that much of the

hostility Garrick says she experienced arose out of her views on women in the ministry.    *See id.*
¶¶ 28, 67(a)-(c), 95–96.    Under these circumstances, if the Court were to delve into the disputes
posed by Garrick, it would impermissibly inject the auspices of government into religious doctrine
and governance.    *See Alicea-Hernandez*, 320 F.3d at 702; *Demkovich*, 343 F. Supp. 3d at 786–
87; *Aparicio*, 2019 WL 1437618, at *8–10.

This analysis rings particularly true as to Garrick's Title IX claim, which is based entirely
upon the alleged retaliation Garrick faced for her advocacy in favor of female students entering
the Pastoral Ministry Program.    *See* FAC ¶¶ 69–79.    Because this problem cannot be cured by
additional pleading, Count I is dismissed with prejudice.[6]

But there are strains of Garrick's Title VII claims that may not be tied to Moody's religious
beliefs.    For instance, Garrick complains of antagonistic treatment by male colleagues and
inconsistent treatment of female and male faculty members by the administration with respect to
job duties, employment requirements, and performance reviews.    To the extent Garrick can state
a claim concerning these issues in a way that is untethered from her disagreements with Moody's
religious views, she may be able to pursue those claims.    Accordingly, the Court dismisses
Counts III, IV, and V without prejudice and will grant Garrick leave to amend those claims in a
manner consistent with this order.

## II.    Breach of Contract

In her claim for breach of contract, Garrick contends that Moody failed to give her the
requisite notice before deciding not to retain her after the spring semester.    Moody contends that

---

[6]    The Court thus need not address Moody's arguments concerning preemption of Garrick's Title IX
claims by Title VII.

Garrick's contract claim too is precluded by the church autonomy doctrine, and that in any event, Garrick fails to plausibly allege the existence of a valid contract.

In certain circumstances, church autonomy principles may apply to state-law claims as well as employment-discrimination claims. Here, too, the ultimate question is whether adjudication of the claim will involve impermissible government interference into religious matters. For example, in *Lee v. Sixth Mount Zion Baptist Church of Pittsburgh*, the Third Circuit refused to wade into the issue of whether a minister was terminated for cause in accordance with an employment agreement, because determining whether the minister had "provide[d] adequate spiritual leadership" would "impermissibly entangle the court in religious governance and doctrine." 903 F.3d 113, 120–21 (3d Cir. 2018); *see also Nevius v. Africa Inland Mission Int'l*, 511 F. Supp. 2d 114, 120 (D.D.C. 2007) (dismissing a breach-of-contract claim where "the court's inquiry . . . would tread too closely to religious affairs").

Here, Garrick alleges that she was initially given notice of her impending termination, but then was asked to leave immediately after she spoke out about her firing to student reporters. *See* FAC ¶¶ 62, 86. Although she contends that she was not "immediately" terminated because Moody was willing to let her continue teaching, the sequence of events she alleges could not be described as anything but an "immediate" termination. *See id.* ¶ 62 ("On April 26, after Ms. Garrick spoke to students and student reporters about her termination, [Moody] asked her to leave campus early and to turn in her computer and keys, stating that it would close out the semester for her."). Under the contractual provision she cites, immediate termination (that is, termination without a notice period) is permitted for "serious violations of Institute policy." *Id.* ¶ 85. Moody, of course, argues, that Garrick's actions did constitute a "serious violation," because they

20

**A.089**

ran contrary to Moody's doctrinal beliefs.

Given these circumstances, it would be impossible to resolve Garrick's breach-of-contract claim without first deciding whether she committed a "serious violation" of Moody's policies. And it is substantially likely that such a question would turn on matters of religion, given the reasons that—both Moody and Garrick agree—led to her termination. Accordingly, the Court concludes that adjudicating Garrick's breach-of-contract claim would require this Court to improperly entangle itself into Moody's rights to maintain and exercise its religious beliefs, and the claim is dismissed with prejudice.[7]

### Conclusion

For the reasons stated herein, Moody's motion to dismiss [68] is granted. Counts I, II, and VI are dismissed with prejudice. Counts III, IV and V are dismissed without prejudice, and Garrick is granted leave to amend her complaint to restate those claims consistent with this order within twenty-one days. If she does not do so, this action will be dismissed with prejudice, and judgment entered in Moody's favor. Garrick is cautioned that an amended complaint must stand complete and on its own, without referring back to prior pleadings.

**IT IS SO ORDERED.**                    **ENTERED:   9/25/19**

_____

**JOHN Z. LEE**
**United States District Judge**

---

[7]       Because the Court is allowing Garrick to replead Counts III through V and is dismissing Counts I, II, and VI with prejudice on other grounds, there is no need to address Moody's arguments regarding the plausibility of Garrick's allegations.

21

**A.090**

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

JANAY E. GARRICK,

    *Plaintiff,*

    v.

MOODY BIBLE INSTITUTE,

    *Defendant.*

Case No. 18-cv-00573

Judge John Lee

Magistrate Judge Young Kim

FILED

NOV - 5 2019

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

## PLAINTIFF'S SECOND AMENDED COMPLAINT

The Plaintiff, Janay E. Garrick, brings this Complaint against defendant Moody Bible
Institute for (1) hostile work environment and (2) disparate treatment based on gender (female)
in violation of Title VII, 42 U.S.C. § 2000e-2(a); (3) gender discrimination (female) in
violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*;
and (4) retaliation for engaging in protected activity in violation of Title VII of the Civil Rights
Act of 1964, as amended, 42 U.S.C. § 2000e-3(a).[1]

## THE PARTIES

1.    Defendant Moody Bible Institute ("MBI" or "Moody") is a post-secondary religious
educational institution that offers both undergraduate and graduate courses of study. It is a not-
for-profit corporation incorporated in the state of Illinois.

2.    MBI's primary campus is located in downtown Chicago, IL.

3.    MBI has accepted federal financial aid funds pursuant to Title IV of the Higher Education
Act since at least 2012.

---

[1] Plaintiff brought other religious-based claims in her first Complaint and First Amended Complaint (FAC), but they
were dismissed with prejudice. Therefore, those claims are not in this Second Amended Complaint.

**A.091**

4.      As of the date of this filing, MBI has not submitted a request to the Office of Civil Rights of the U.S. Department of Education for a religious exemption to the requirements of Title IX.

5.      Plaintiff Janay E. Garrick ("Ms. Garrick") was employed by MBI at its Chicago campus as an Instructor of Communications from December 1, 2014 until December 31, 2017.

## PROCEDURAL BACKGROUND

6.      The Plaintiff timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission (EEOC) on January 5, 2018. See Exhibit A (EEOC Charge).

7.      The Plaintiff's case was timely filed with the Federal Court on January 25, 2018.

8.      On September 24, 2018, the EEOC issued Ms. Garrick her Notice of Rights letter, which states that the Plaintiff must file a lawsuit "WITHIN 90 days of … receipt of this notice."

9.      On September 27, 2018, Plaintiff's counsel withdrew due to the Plaintiff's inability to continue paying out-of-pocket for her legal fees.

10.     After 45 days of trying to secure new counsel, contacting almost 200 law firms, organizations, and law professors, the Plaintiff was unable to do so.

11.     On October 16, 2018, during Ms. Garrick's 45-day period in which Plaintiff was seeking new counsel, the Defendant ("Moody") moved to dismiss, and the court ordered it to re-brief. The Defendant refused because it thought the Plaintiff was amending.

12.     On November 14, 2018, the Plaintiff was forced to proceed representing herself.

13.     Plaintiff has exhausted her remedies with the EEOC. However, prior to issuing Ms. Garrick's right to sue letter, the EEOC investigator assigned to her case communicated to Jamie Franklin, Ms. Garrick's counsel at the time, that the EEOC would like to take this further, but that it was not the right time.

## JURISDICTION AND VENUE

14. This Court has federal question jurisdiction over the Plaintiff's federal claims pursuant to 28
   U.S.C. § 1331.

15. This Court has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28
   U.S.C. § 1367(a).

16. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the Defendant resides
   in this District and a substantial part of the events or omissions giving rise to the claims
   occurred in this District.

17. The Northern District of Illinois has personal jurisdiction over the defendant because it resides
   in and/or and maintain offices in this District and/or do business in Illinois.

**FACTS SUPPORTING THE PLAINTIFF'S CLAIMS**

18. Ms. Garrick is an ordained minister. She has a Master's Degree in Cross-Cultural Studies and a
   Bachelor's Degree in Creative Writing and Speech Communications, and now holds a terminal
   degree in her field — a Master of Fine Arts Degree in Creative Writing completed in 2019. Ms.
   Garrick has worked in the field of communications for 17 years.

19. Ms. Garrick was hired by MBI on December 1, 2014 as an Instructor of Communications in
   MBI's Communications Program, which is one of two programs in its Music and Media Arts
   Division.

20. Ms. Garrick informed MBI during the interview process that she was an "egalitarian Christian"
   and believed in gender equality in the ministry. MBI hired her with full knowledge of her
   beliefs and renewed her contract twice with this knowledge.

21. Ms. Garrick's direct supervisor was Brian Kammerzelt, the Communications Program Head.
   Terry Strandt, Chair of the Music and Media Arts Division, was responsible for her
   performance reviews. Ms. Garrick also reported to Larry Davidhizar, Vice President and

Associate Provost of Faculty. Other MBI administrators at the time included James Spencer, Vice President and Dean; Junias Venugopal, Provost; Debbie Zelinski, Vice President of Human Resources; Clive Craigen, Faculty Advocate (during the grievance hearing); Tim Arens, Dean of Student Life; and Bryan O'Neal, Dean of the Undergraduate Faculty.

### *Campus-Wide Hostility Toward Women*

22. Ms. Garrick quickly learned that MBI both tolerated and cultivated an environment that was hostile to female faculty and students.

23. For example, in October 2014, shortly before her campus interview, Ms. Garrick was told by Larry Davidhizar ("Mr. Davidhizar") to remove the reference to being an ordained minister from her resume. Later, it became clear that MBI believed that the office of pastor is reserved exclusively for male candidates and did not want her to represent herself as an ordained minister.

24. Ms. Garrick was disadvantaged by this demand. When she was hired, she was not told by administration that ordained ministers could claim a tax deduction for their housing costs. After a male professor informed her of this, Ms. Garrick took steps to file her ordination license with MBI in order to claim the deduction, but she lost the opportunity to take the deduction for a full year.

25. At the MBI's new employee orientation on December 19, 2014, Jean Jacobsen, MBI Benefits Administrator, informed the new employees that 60 percent of Moody's on-campus dormitory space was allocated for males.

26. Female instructors were confined to certain programs, like the one in which Ms. Garrick was hired, while the more prestigious programs were staffed exclusively by men.

27. In late 2015, Ms. Garrick was asked to assist in forming a committee to address women's concerns on campus, which she did. The group, called Respect for Women Personally and Ministerially, was viewed with suspicion and hostility from the beginning. Ms. Garrick was explicitly told by Provost Junias Venugopal ("Mr. Venugopal") that any changes resulting from the committee's work should be "small and incremental." The group began after four communications faculty, including Ms. Garrick, complained of gender discrimination on Moody's campus. Ms. Garrick and another faculty member, Rosalie de Rosset ("Ms. de Rosset"), took the lead in organizing and calling the group together for its first, and only, meeting on February 17, 2016. The group was comprised of both male and female faculty from at least three different majors. At their first meeting, the following issues, *inter alia*, were discussed: the lack of female speakers at President's chapel and student chapel, some professors in the all-male programs being known to be "overtly discouraging" to females; administration citing "donors" as the reason for the lack of female leadership and participation; and the cancellation of a radio program that had gender inclusive messaging. When the topic of Ms. Garrick's involvement in a student's Title IX gender discrimination complaint was discussed, the meeting ended abruptly and would never reconvene during Ms. Garrick's employment.

28. The faculty workroom that Ms. Garrick used was otherwise all-male, and her male colleagues treated her with antagonism. For example, they ignored her when she spoke to them, left the room abruptly when she entered, and openly ridiculed her. When Ms. Garrick tried to suggest solutions to the problem, she was told by MBI administration to simply avoid the workroom and to get her own printer so that she could work in her office.

29. During the relevant time period, Ms. Garrick and similarly-situated female employees

also were treated differently than coworkers of a different gender. For example, female faculty

were subjected to the following acts, *inter alia*…

    (a)  denied the opportunity to speak at President's Chapel, and

    (b)  excluded from teaching in certain undergraduate programs, while male faculty were

        permitted to do so.

30.     Ms. Garrick was denied the opportunity to speak at chapel although she twice requested

to do so.

31.     Some other specific examples of the discrimination and harassment against Ms. Garrick

and similarly-situated female employees include the following acts, *inter alia*…

    (a)  two of the three outspoken female faculty members who served on Ms. Garrick's

        Grievance Committee, and who actively questioned Moody administration's actions

        concerning Ms. Garrick, were terminated very shortly after Ms. Garrick's termination,

        while the two male professors on the Grievance Committee were retained;

    (b)  Ms. Garrick was subject to peer reviews while similarly-situated male professors in the

        Communications Program were not;

    (c)  Ms. Garrick was disciplined for her "inflammatory rhetoric" at a faculty meeting, and

        told she needed "to learn how to speak around here" while a male professor (who wrote

        and presented their *joint* proposal) was not disciplined; and

    (d)  Ms. Garrick was not informed by Moody that she could receive a tax exemption for being

        an ordained minister while her male counterparts were informed of this benefit by Moody

        and allowed to use this employment/job qualification to claim a tax exemption.

32.     During the relevant time period, Ms. Garrick was denied a reduced teaching load at

Moody while she completed a terminal degree in her field, while similarly-situated male faculty

in terminal degree programs did receive reduced teaching loads.

33.    During the relevant time period, Ms. Garrick was required to develop and create

complete, from scratch, five new undergraduate courses beyond the scope of her Instructor

position requirements while recently hired male Instructors received no similar assignments.

34.    In the presence of Ms. Garrick and the entire Communications Program faculty, Moody's

Title IX coordinator stated at a meeting that she would have been able to accomplish certain

tasks had she not been occupied with a Title IX complaint.

35.    The Defendant has created a hostile workplace by discriminating against females

repeatedly, including the following acts, *inter alia*…

  (a) being ignored, avoided, and rejected by male professors in the common workroom and

  hallways by stopping talking/going silent when Ms. Garrick entered the workroom, putting

  heads down and avoiding eye contact with Ms. Garrick, quickly leaving/clearing the

  workroom when Ms. Garrick entered, and/or ignoring Ms. Garrick when Ms. Garrick spoke

  directly to them;

  (b) being told by a male professor how women in Moody's hiring process frequently need to

  be "walked through" required employment documents;

  (c) disparaging comments about Ms. Garrick's dress while she stood at the photocopier

  ("What are you wearing?" remarked one male theology professor. "I thought you were a

  student");

  (d) disparaging remarks about Ms. Garrick's undergraduate and post-graduate educational

  institutions for being too liberal and inclusive. After inquiring about Ms. Garrick's

  educational background, a male professor remarked "they believe anything and everything

  there," and upon hiring, administrator Larry Davidhizar ("Mr. Davidhizar"), Moody's

Associate Provost of Faculty, referred to Ms. Garrick's undergraduate education as inadequate and offered her the opportunity to take classes at Moody;

(e) being told by Mr. Davidhizar that she did not understand her theological positions even though she held an advanced seminary degree;

(f) being ignored by a male Theology professor after Ms. Garrick spoke and wrote about "white privilege" on Moody's campus and in broader culture.

36. Additionally, during the relevant time period, there were numerous reports of gender harassment and gender-based violence (sexual assault, rape) that went unaddressed or ignored by Moody administration contributing to an unsafe campus environment for female students and faculty to speak up and to report. For example, one female student who alleged physical assault by her partner, a male MBI student, was instructed to remain silent and to *not* file a Title IX complaint.

37. The environment of pervasive gender discrimination at Moody contributed to a hostile work environment and created a male-dominated workplace culture in which the retaliatory firing of Ms. Garrick would be acceptable and routine.

38. In 2012, the Higher Learning Commission, an independent accrediting body, critiqued Moody that its faculty looks "white male," and tasked it to diversify. The Defendant has created a hostile workplace by discriminating against females repeatedly, including the following acts, *inter alia…*

(a) male students organized a student "walk out" when a female speaker took the stage at Founder's Week (February 6-10, 2017) which, on information and belief, resulted in no discipline or admonishment from administration. At a February 22, 2017 faculty meeting, a long-term male Bible Program faculty member argued: "I think it's time we addressed

8

**A.098**

the misogyny and sexism at this institution;"

(b) Moody's annual Pastor's Conference had never included female speakers as main session speakers, leading to continued feelings of exclusion and disenfranchisement from females;

(c) there were a disproportionate number of male to female speakers at required student chapels;

(d) some Bible professors were known to be "overtly discouraging" to female students in their classes (this statement was made by a Bible professor at the Women's Concerns meeting);

(e) there were zero female faculty teaching in the Bible Program despite qualified applicants,

(f) there were zero female faculty teaching in the Theology Program despite qualified applicants;

(g) there were a disproportionate number of male to female faculty;

(h) there were zero female administrators despite qualified applicants, and

(i) while Moody purportedly requires faculty to sign and adhere to their contract "without disclaimers, clarifications, or personal exceptions," Moody selectively enforces adherence, and this enforcement disproportionately affects female faculty who do not "align" or "adhere;"

(j) During the relevant time period, there were allegedly key male Moody Radio personnel and male faculty who did not affirm Moody's contract "without disclaimers, clarifications, or personal exceptions" but who remained employed by Moody.

### *Advocacy on Behalf of Students*

39.    In February 2015, Ms. Garrick was approached by a lesbian student who was struggling

with MBI's hostility toward her sexual orientation. Ms. Garrick brought the student's concerns to

Dean Tim Arens. His response was to ask what she said and did in response to the student and to

warn her that MBI had "community living standards." The female student was later expelled from

MBI.

40.    In October 2015, a female student informed Ms. Garrick that she wanted to enter the

Pastoral Ministry program but that it was closed to women. Ms. Garrick was shocked and began

to investigate MBI's stance on barring women from access to its programs.

41.    In January 2016, another female student came to Ms. Garrick for help with the same

problem. The student wanted to change her major to Pastoral Ministry, which is an undergraduate

program that teaches students to become leaders, pastors, and teachers in the church. MBI refused

to allow her to enter the program because of her gender.

42.    Ms. Garrick discovered that MBI's website at the time stated that the program was only

open to male students. She contacted her own faculty mentor and the head of the program to ask

about the exclusion of women, and they confirmed that it was true.

43.    MBI was accepting federal financial aid funds during this time and, on information and

belief, was reporting to the Department of Education that it met all the relevant criteria, including

the prohibition against discriminating on the basis of sex.

44.    Ms. Garrick helped this student lodge the first Title IX complaint ever brought at MBI.

45.    On February 17, 2016, the first meeting of the Respect for Women Personally and

Ministerially group was held. Ms. Garrick was rebuked when she told the participants that she

was assisting a student who had been barred from an MBI program because of her sex.

Immediately after the meeting, Ms. Garrick's faculty mentor called her into a closed-door meeting and attacked her further, asking, "How can you have any integrity?"

46.     On February 20, 2016, Ms. de Rosset cancelled the second Respect for Women Personally and Ministerially meeting – the group would never reconvene during Ms. Garrick's tenure, and Ms. de Rosset would go on to slander Ms. Garrick as a liberal progressive in staff meeting.

47.     On February 23, 2016, Ms. Garrick met with Mr. Davidhizar and Bryan O'Neal about the student's complaint and about the hostility Ms. Garrick herself was facing. Rather than seeking solutions to the concerns raised by Ms. Garrick, the administrators suggested she might not be able to continue in the faculty and told her she should voluntarily leave MBI.

48.     Ms. Garrick decided to stay and fight.

49.     Throughout the spring of 2016, Ms. Garrick continued to work with the student to advance her Title IX gender discrimination complaint against MBI.

50.     At first, MBI denied that the Pastoral Ministry program was not open to women, despite the fact that its website explicitly limited the degree program to male students. Then MBI tried to convince the student to take courses in another program, presenting her with false and misleading information about its offerings. Ultimately, despite its attempts to muddy the waters, it became clear that MBI had been discriminating against women by barring them from the Pastoral Ministry program from 1928 until this student filed her complaint.

51.     Despite this admission, MBI denied the student's complaint in writing, stating that her concerns were "programmatic" and were not "appropriately addressed through an investigatory process designed to address discrete complaints of sexual misconduct." In its denial letter, MBI

purported to have misunderstood the nature of the student's complaint – which was untrue, as Ms.

Garrick and the student had made it clear numerous times.

52.     With Ms. Garrick's help, the student appealed.

53.     After word spread on campus about the Title IX complaint, professors made disparaging

comments to the student such as, "Don't you know the image of God is male?" and "What makes

you think you have the right to preach?"

54.     The student and Ms. Garrick continued to push MBI to open the program to all women.

As a result, on April 20, 2016, MBI announced that it intended to remove the discriminatory

restrictions and open the Pastoral Ministry program to women (though it failed to notify the

student herself until mid-May 2016, and even then continued to equivocate about its position).

55.     Even after this decision, MBI continued, and, on information and belief, continues to

discourage women from applying to the Pastoral Ministry program. At the time of Ms. Garrick's

termination there were just three women in a program of approximately 60 students. It is unclear

whether MBI has officially opened the program to all women.

56.     Throughout the summer and fall of 2016, Ms. Garrick continued to experience hostility

and opposition from MBI's faculty and administration.

57.     Ms. Garrick also assisted a transgender student with her hostile environment concerns,

which Ms. Garrick reported to faculty and administrators. That student ultimately left the

institution because of the discrimination and harassment she experienced.

58.     In September 2016, Ms. Garrick spoke out at an all-faculty and administration meeting

and told a story about a transgender student who came to Ms. Garrick in tears over feeling

shunned and excluded at Moody.  Ms. Garrick co-prepared, co-submitted, and co-presented (with

a male faculty member) a proposal with an inclusive message.

59.    In response, the next day Mr. Davidhizar pulled Ms. Garrick into his office and told her

that the speech was "inflammatory rhetoric" and that she was "not a Moody fit." The male faculty

member who co-presented and co-wrote the proposal was never the subject of any verbal

harassment or disciplinary treatment.

### Retaliatory Denial of Promotion and Hostile Work Environment

60.    On September 29, 2016, at Ms. Garrick's request, she met with James Spencer ("Mr.

Spencer"), Vice President and Dean, in order to discuss the intimidating, hostile, and/or offensive

work environment she was experiencing. Upon information and belief, Ms. Garrick's complaints

were not addressed by Moody administration as the behavior continued during the remainder of

her employment.

61.    On November 1, 2016, after two years as an Instructor at MBI, Ms. Garrick submitted a

written application for an increase in rank to Assistant Professor.

62.    The position of Instructor is the lowest-paid and lowest-status position at MBI.

63.    To become an Assistant Professor, MBI requires the faculty member to have a Master's

Degree or equivalent and a minimum of 12 years of full time experience in a field directly related

to his or her primary teaching responsibilities. Once those requirements are met, MBI reviews

three sets of criteria to determine whether to issue a promotion to a faculty member: Teaching

Performance, Professional/Scholarly Status, and Service within each criterion.

64.    Ms. Garrick's background and performance fully qualified her for a promotion to

Assistant Professor under all of MBI's requirements. She had a Master's Degree (and began

working on a second advanced degree in 2016). She also had 15 years of experience in the

Communications field.

65.    During her two years as an Instructor, Ms. Garrick was required to perform work at the level of an Assistant Professor. Among many other duties, she developed and implemented six courses, including upper-level electives; created institution-wide initiatives like the publication of a new art and theology journal; developed an educational plan for ESL students; fulfilled all of her academic and professional duties; and actively participated in her department and the wider institution. Such duties – particularly the creation of new course curriculum – were beyond the scope of the Instructor rank, based on Moody's own written policies.

66.    Nevertheless, on November 1, 2016 Mr. Davidhizar denied Ms. Garrick's application for rank increase within one hour of receipt, stating that she needed to "improve her fit within the division" – a clear reference to the hostility against Ms. Garrick as a result of her opposition to discrimination at the institution.

67.    MBI's retaliatory denial of Ms. Garrick's promotion application resulted in both a loss of income and the loss of professional development opportunities.

68.    On December 3, 2016, Ms. Garrick received an informal performance review from Mr. Strandt in which he congratulated her on "two years of excellent service" and stated that she was "concise, clear and engaging with the students" during a class he had observed her teaching. Mr. Strandt's glowing review further highlighted the disconnect between Ms. Garrick's excellent performance and MBI's denial of her application for a promotion.

69.    In retaliation for Ms. Garrick's complaints, the Defendant took the following actions, *inter alia...*

   (a) verbally harassed and disciplined her (administrators such as Mr. Davidhizar told her she needed to be more careful about how she spoke around MBI, told her that her rhetoric was inflammatory, warned her against waving the women's rights "flag");

(b) shunned her/gave her the silent treatment (male professors refused to speak to Ms. Garrick when she spoke to them, they avoided eye contact with her, and did not speak to her in the workroom and hallways);

(b) threatened to demote her to teaching General Education courses and to assign her elective courses to another professor;

(c) subjected her to an unfounded negative performance evaluation,

(d) denied her a chance for promotion;

(e) treated her poorly in her final days at Moody including having a security guard follow her as she left campus, clearing out her office; and

(f) terminated her employment.

70.     During the relevant time period, and in the middle of Ms. Garrick's assistance to a female student in filing a Title IX (gender discrimination) complaint, Moody administrators pressured Ms. Garrick to quit her job.

71.     During the relevant time period, Ms. Garrick experienced open hostility from some of the all-male faculty in the Bible and Theology Programs after it became known to them that in January 2016 she began assisting a female student in filing a Title IX complaint (for her exclusion from the all-male Pastoral Ministry undergraduate program).

72.     On February 19, 2016, Ms. Garrick requested a meeting with Debbie Zelinski ("Ms. Zelinski"), Vice President of Human Resources, to discuss the Title IX backlash and hostility she was experiencing from peer faculty. Ms. Zelinski, *inter alia*, suggested that Ms. Garrick avoid the Sweeting 3 workroom and get a printer for her office.

73.     On February 23, 2016, in a meeting in which Ms. Garrick discussed the Title IX backlash and hostility she was experiencing from peer faculty, Mr. Davidhizar and Bryan O'Neal, Dean of Faculty, pressured Ms. Garrick to quit.

74.     At a Communications department meeting on April 18, 2016, faculty member, Ms. de Rosset, attacked Ms. Garrick for being "liberal progressive" and warned that the department did not need to hire any more such faculty. Subsequently, Ms. Garrick was told by Unity Ostercamp, a Moody administrator whom Ms. Garrick had never met, "I heard de Rosset hates you." Ms. Garrick reported this, and complained to her immediate supervisor, Communications Program Head, Brian Kammerzelt ("Mr. Kammerzelt"). Upon information and belief, Mr. Kammerzelt did nothing to address the hostile work environment.

75.     Mr. Davidhizar also instructed Ms. Garrick to remove herself from her role in organizing and co-leading the Respect for Women Professionally and Ministerially group.

76.     Ms. Garrick reported this negative conversation with Mr. Davidhizar to Communications Program Head, Mr. Kammerzelt.

77.     In fact, on numerous occasions, both in-person and in writing, Ms. Garrick reported to Mr. Kammerzelt that she was experiencing an intimidating, hostile, and/or offensive work environment from both her peer faculty and Moody administrators.

78.     In January 2017, at Ms. Garrick's two-year performance review, Mr. Kammerzelt praised her for "doing everything you were hired to do," and informed her that Larry Davidhizar wanted to know if she intended to stay. Ms. Garrick responded yes.

79.     The Defendant has retaliated against Ms. Garrick, including the following acts, *inter alia*…

(a) on December 3, 2016, after two years of employment, Ms. Garrick received a glowing

review in writing by Mr. Strandt, Chair of the Music and Media Arts Division, after he

had observed one of her classes, Core Tools: Words:

"Dear Janay, Congratulations on your two years of excellent service to
MBI. Your Industry and enthusiasm is gratifying and contributing in a huge way
to your Program and the whole Division. I enjoyed very much your class on
Grant Writing for NGO's. You were concise, clear and engaging with the
students. I hope that God blesses you with the same unexpected surprise our
family received by finding a long-term home at Moody. Warmly, Terry."

And just four months later, Mr. Strandt would deliver Ms. Garrick a borderline "Below

Standards" performance evaluation;

(b) in January 2017, two months prior to Ms. Garrick receiving a negative performance

evaluation, Mr. Kammerzelt instructed her to add a new course to her teaching schedule

(Debate) and to develop what would have been her fifth new course (Missions

Journalism) slated for release in the fall 2017;

(c) on March 2, 2017, Mr. Davidhizar chastises and verbally harasses Ms. Garrick for

missing her performance evaluation meeting with Mr. Strandt even though Mr. Strandt

had cancelled the meeting. Mr. Davidhizar then communicated with Ms. Garrick that she

would not have a contract renewal in her mailbox when she returned from Spring Recess,

and that if Moody renewed her contract, it would have expectations: "there are

performance and interpersonal issues";

(d) on March 3, 2017, Mr. Kammerzelt stated that Ms. Garrick had been subjected to reviews

by her peer Communications professors. He stated further that she would have the

opportunity to similarly prepare reviews of her peers;

(e) on March 30, 2017, Ms. Garrick received a falsified negative performance evaluation from Mr. Strandt. Mr. Strandt stated that peer reviews helped form the basis for his negative evaluation of her. During this meeting, Mr. Strandt stated that he had no knowledge of Ms. Garrick's work performance and got all his information from Brian Kammerzelt, Larry Davidhizar, and peer reviews. Additionally, Mr. Strandt is the second administrator to have informed Ms. Garrick that she had been subjected to peer reviews, whose existence were later denied by Vice President and Dean, James Spencer, during Ms. Garrick's grievance procedures.

(f) on April 5, 2017, when Ms. Garrick questioned Mr. Davidhizar about Mr. Strandt's negative conclusions regarding her work performance as well as his data collection methods and information sources, Mr. Davidhizar responded:

"This being his (Terry Strandt's) first time has allowed for pure, unadulterated objectivity in all of his reviews. No one has had input into his evaluations of anyone including me. My only input back before Spring Break is when he mentioned that it would not be a strong review I talked to him about what should be included in a 'Performance Improvement Program'"; and

(g) Ms. Garrick was never given any information about the peer reviews even though she requested to see them. During the grievance procedure, James Spencer, Vice President and Dean of Moody Bible Institute, stated that there were no peer reviews.

80.     On April 5, 2017, in an email entitled "Performance Evaluation Follow-up Meeting | April 7 @ 1pm," Moody changed tactics for separating Ms. Garrick from her employment, Mr. Davidhizar stating that he would like to meet "to discuss (Ms. Garrick's) vocal non-alignment with the Institute's doctrinal statement as it relates to 'Gender Roles in Ministry.'"

81.     On April 9, 2017, after fighting her negative performance evaluation, Moody raised Ms. Garrick's score from 2.57 (borderline "Below Standards") to 2.96 ("Meets Standards"). Even

though Ms. Garrick's score was raised, there was never any acknowledgement of the five new

courses she created during her first two years of employment at Moody.

### *Retaliatory Discharge*

82.     In early 2017, Ms. Garrick was due to receive her formal two-year performance review.

She initially met with Mr. Kammerzelt, who asked her if she wanted to stay at MBI. She

responded that she did.

83.     This led to a series of meetings, cancelled meetings, and emails with MBI administrators

regarding Ms. Garrick's performance. Mr. Davidhizar told her she had "performance and

interpersonal issues," despite a lack of evidence of either. Mr. Kammerzelt told her she had been

found to be performing "below standards" by Mr. Strandt, despite his earlier glowing reports. Mr.

Kammerzelt also threatened to demote Ms. Garrick to teaching only General Education courses

and to shift three of the elective courses she had developed into the hands of another full

Communications professor.

84.     Finally, on March 30, 2017, Ms. Garrick met with Mr. Strandt for a final, formal

performance review. He handed her a negative written performance evaluation – the first written

criticism of her performance she had ever received at MBI – that was filled with inaccuracies and

misinformation. There was no mention at this time of Ms. Garrick being non-aligned with the

gender provisions of MBI's doctrinal statement.

85.     On April 12, 2017, Ms. Garrick met with Mr. Davidhizar and the Vice President of

Human Resources. Mr. Davidhizar told her that she did not fit in and that she was not aligned with

MBI's doctrinal statement as it related to gender roles in ministry. Mr. Davidhizar admitted that he

heard Ms. Garrick state her egalitarian position during her October 2014 panel interview prior to

MBI's decision to hire her.

86.     On April 17, 2017, Ms. Garrick was officially terminated. MBI stated that she was required to continue teaching classes and performing her other job duties until the end of that semester, then stay on as a non-teaching faculty member for the Fall 2017 semester. Her last day of pay was December 31, 2017.

87.     On April 26, 2017, after Ms. Garrick spoke to students and student reporters about her termination, MBI asked her to leave campus early and to turn in her computer and keys, stating that it would close out the semester for her.

88.     Ms. Garrick filed an internal grievance on May 17, 2017 and went through MBI's grievance process in the summer of 2017. In her grievance document, she pointed out that MBI had hired her in 2014, renewed her contract for 2015, and renewed her contract for 2016 – all the while apparently pleased with her performance. It was only after she began advocating for the full inclusion of female students that MBI began to pressure Ms. Garrick to quit, then fired her.

89.     In fact, as alleged above, MBI knew from her resume and interviews that Ms. Garrick held an egalitarian view before it even hired her. On April 18, 2017 MBI officially notified Ms. Garrick of her termination. MBI's decision was pretext for its true motives – discrimination and retaliation.

90.     MBI engaged in a variety of tactics to thwart any chance of Ms. Garrick succeeding in the grievance process. In her grievance document, she fully documented the discrimination and retaliation she had been subjected to. She also presented written testimony from 12 female students who reported violations ranging from sexual assault to harassment in the classroom and on the campus by both faculty members and fellow students. MBI ignored these testimonials and took no action to follow up.

91.     On April 25, 2017, after Ms. Garrick began to speak to students and student journalists about her termination, Ms. Garrick was dismissed from campus (instructed to turn in her keys and computer) before the semester's end.

92.     Following her firing, Ms. Garrick was subjected to an impossible grievance hearing process that was lacking in any manner of reasonable due process. For example, retaliatory acts by the Defendant, *inter alia*…

   (a) on April 18, 2018 when Ms. Garrick was given her notice of termination, Mr. Davidhizar commented that she could file a grievance but that she would not have much time to do so. Mr. Davidhizar stated that summer break would make it all the more difficult to convene a grievance committee as faculty would not be on campus;

   (b) in preparation for the grievance hearing, questions for witnesses had to be approved in advance by Moody, and Moody gave Ms. Garrick less than 24-hour notice about her ability to call witnesses (in the middle of the work week) to testify on her behalf; and

   (c) at the July 7, 2017 grievance hearing, Moody would not allow any underlying discrimination or retaliation facts to be discussed.

93.     At the grievance hearing, Mr. Davidhizar admitted to hearing Ms. Garrick state her egalitarian position on gender roles in ministry during her Chicago campus interviews in October 2014.

94.     MBI denied Ms. Garrick's grievance on July 24, 2017. In the final grievance determination letter written by MBI President Paul Nyquist he remarked that Ms. Garrick "did not possess theological sophistication in [her] views" since she was "trained in communications and not theology."

95.    After Ms. Garrick's termination, MBI also terminated three faculty members who participated in her grievance hearing, and who had challenged MBI during that process:

(a) Clive Craigen, a male full professor, who had served as Garrick's faculty advocate,

(b) Maria Mocuta, a female full professor who had served as a committee member, and

(c) Desiree Hassler, a female assistant professor, who had served as a committee member.

96.    After Ms. Garrick assisted a female student in filing a Title IX complaint, Ms. Garrick was terminated for her stated position/disagreement with Moody's "Gender Roles in Ministry" addendum included in its doctrinal statement, Defendant stating that she could not sign the doctrinal statement based on her holding to an egalitarian position, In contrast, Moody holds a complementarian position that excludes women from certain roles within the church due to their gender.

97.    Moody used a "religious" reason for Ms. Garrick's termination in order to cloak its true motives: discrimination and retaliation.

**COUNT I**
**Hostile Work Environment Based on Gender (Female) in Violation of Title VII**
**of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)**

98.    Ms. Garrick re-alleges each of the paragraphs set forth above.

99.    Ms. Garrick is a member of a protected class by gender. She is female.

100.    Ms. Garrick, in all respects, was performing her job in a manner that was consistent with Moody's legitimate business expectations.

101.    Ms. Garrick suffered adverse employment actions as alleged above in that she was excluded, verbally harassed, and intimidated because of her gender, and that such conduct was condoned or tolerated by those in a position to stop it because of Ms. Garrick's gender.

102.    The discriminatory statements, threats, and conduct were unwelcome, sufficiently severe

or pervasive, detrimentally affected Ms. Garrick, were viewed as subjectively hostile and abusive

by Ms. Garrick, and would be viewed as objectively hostile and abusive to a reasonable person.

103.    Ms. Garrick complained numerous times to Moody administrators and supervisors about

the intimidating, hostile, and/or offensive work environment, and Moody had actual or

constructive knowledge of said environment.

104.    Moody was aware of and was made aware of the above described conduct; yet, Moody

failed to take prompt and appropriate remedial action to protect Ms. Garrick from said

intimidating, hostile, and/or offensive work environment.

105.    Moody violated Ms. Garrick's rights in that it required Ms. Garrick to work in an

intimidating, hostile, and/or offensive work environment and to work under supervisors who

allowed these actions to go on without taking steps to prevent them.

106.    As a direct and proximate result of said unlawful employment practices and in disregard

of Ms. Garrick's rights and sensibilities, Ms. Garrick has suffered great mental anguish,

humiliation, degradation, emotional distress, pain and suffering, inconvenience, financial crisis,

lost wages and benefits, future pecuniary losses and other consequential damages.

### COUNT II
### Disparate Treatment Based on Gender (Female) in Violation of Title VII
### of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)

107.    Ms. Garrick re-alleges each of the paragraphs set forth above.

108.    Ms. Garrick is a member of a protected class by gender. She is female.

109.    Ms. Garrick, in all respects, was performing her job in a manner that was consistent with

Moody's legitimate business expectations.

110.    Ms. Garrick suffered adverse employment actions as alleged above in that she was, *inter*

*alia*, instructed to deny her qualifications in order to advance in the employment interview

process, tasked with performing job duties beyond her rank and salary, denied a promotion,

denied the opportunity to receive a tax deduction, been subjected to "secret" peer reviews and a

falsified negative performance evaluation, and denied a reduced teaching load while pursuing a

terminal degree in her field because of her gender.

111.    Upon information and belief, similarly-situated male employees of Moody have not

suffered: instructions to deny their qualifications in order to advance in the interview process,

being tasked with performing job duties beyond their rank and salary, denied promotions, denied

opportunities to receive tax deductions, being subjected to "secret" peer reviews and falsified

negative performance evaluations, nor being denied reduced teaching loads while pursuing

terminal degrees in their fields.

112.    Defendant Moody's actions in its administrators, supervisors, and employees

intentionally engaging in and condoning gender discrimination against Ms. Garrick has caused

her great mental anguish, humiliation, degradation, emotional distress, pain and suffering,

inconvenience, financial crisis, lost wages and benefits, future pecuniary losses and other

consequential damages.

<div align="center">

**COUNT III**
**Gender Discrimination (Female) in Violation of Title VII**
**of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.***

</div>

113.    Ms. Garrick re-alleges each of the paragraphs set forth above.

114.    This Count is brought by Plaintiff Ms. Garrick a "Title VII Class Member".

115.    Ms. Garrick filed a timely charge with the EEOC on behalf of herself and others similarly

situated.

116.    Moody, an employer of the Title VII Class Member within the meaning of Title VII, has

discriminated against Ms. Garrick in violation of Title VII by subjecting her to different treatment

<div align="center">

24
**A.114**

</div>

on the basis of her gender, including by engaging in intentional disparate treatment, and by maintaining uniform policies and practices that have an adverse, disparate impact on her.

117.    Moody has engaged in an intentional, institute-wide and systemic policy, pattern, and/or practice of discrimination against Ms. Garrick, the Title VII Class Member by, among other things: maintaining a discriminatory system of determining compensation; maintaining a discriminatory system for promotions; discriminating against the Title VII Class Member in pay and promotions; discriminatorily denying development opportunities; subjecting Ms. Garrick to a hostile work environment; and other forms of discrimination.

118.    These foregoing common policies, practices, and/or procedures have produced an unjustified disparate impact on the Title VII Class Member with respect to the terms and conditions of Ms. Garrick's employment.

119.    As a result of this disparate treatment and disparate impact discrimination, Moody has treated the Title VII Class Member differently from and less preferentially than similarly-situated male employees with respect to pay and promotions.

120.    Moody has failed to prevent, to respond to, to investigate adequately, and/or to appropriately resolve this gender discrimination.

121.    Moody's conduct has been intentional, deliberate, willful, malicious, reckless, and conducted in callous disregard of the rights of the Title VII Class Member, entitling Ms. Garrick to punitive damages.

122.    Because of the continuous nature of Moody's discriminatory conduct, which persisted throughout the employment of the Title VII Class Member, Ms. Garrick is entitled to application of the continuing violations doctrine to all violations alleged herein.

123.    By reason of Moody's discrimination, Ms. Garrick is entitled to all legal and equitable

remedies available for violations of Title VII.

124.    As a result of Moody's conduct alleged in this Complaint, Ms. Garrick has suffered and

continues to suffer harm, including but not limited to lost earnings, lost benefits, and other

financial loss, including interest.

125.    As a further result of Moody's unlawful conduct, Ms. Garrick has suffered and continues

to suffer, *inter alia*, impairment to her name and reputation, humiliation, embarrassment,

emotional and physical distress, and mental anguish. Ms. Garrick is entitled to recover damages

for such injuries from Moody under Title VII.

126.    Attorney's fees and costs should be awarded under 42 U.S.C. § 2000e-5(k).

### COUNT IV
### Retaliation Against Ms. Garrick for Engaging in Protected Activity in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a)

127.    Ms. Garrick re-alleges each of the paragraphs set forth above.

128.    As alleged above, Ms. Garrick reported gender harassment and an intimidating, hostile

and/or offensive work environment resulting from other employees, supervisors, and

administrators to her supervisors and administrators at Moody pursuant to her rights under Title

VII and under Moody's policies and procedures.

129.    Defendant Moody has retaliated against Ms. Garrick as alleged above for reporting that

harassment and an intimidating, hostile and/or offensive work environment based on her gender

by, *inter alia*, denying her qualifications in order to advance in the interview process, tasking with

performing job duties beyond her rank and salary, denying her a promotion, subjecting her to a

falsified negative performance evaluation, and ultimately terminating her.

130.    There was a causal connection between Ms. Garrick's complaints and the materially

adverse actions taken against Ms. Garrick by Moody.

131.     The retaliation endured by Ms. Garrick would dissuade a reasonable employee from making complaints of discrimination and harassment.

132.     Moody retaliated against Ms. Garrick for engaging in protected activity in violation of Section 704(a) of Title VII, 42 U.S.C. § 2000e-3(a).

### PRAYER FOR RELIEF

WHEREFORE, the plaintiff, Janay E Garrick, prays for relief as to all counts of this Complaint as follows:

A.     Enter judgment in favor of Ms. Garrick and against the Defendant for violation of Ms. Garrick's rights under Title VII;

B.     An order enjoining future violations by MBI;

C.     Injunctive relief sufficient to eliminate unlawful and discriminatory policies and procedures at MBI;

D.     Payment of all costs of implementing and monitoring such injunctive relief;

E.     Payment of the Plaintiff's lost past and future wages, benefits, and any other income and/or monetary or monetized benefits of employment that she would have been entitled to absent MBI's unlawful acts;

G.     All other compensatory and consequential damages proven by the Plaintiff;

H.     Punitive damages sufficient to punish MBI for its unlawful behavior and to deter future discriminatory conduct;

I.     Payment of the Plaintiff's attorneys' fees and all costs of litigation (including any expert witness fees);

J.     Pre-and post-judgment interest; and

K.     All other and relief, whether legal or equitable, that the Court may deem

appropriate.

## **JURY DEMAND**

The Plaintiff demands a trial by jury on all counts.

Dated: October 31, 2019                          Respectfully submitted,


                                                 /s/ Janay E. Garrick


Janay E. Garrick, *Pro Se Litigant*
PO BOX 3851
Tallahassee, FL 32301
(407) 803-3051
Janay.garrick@gmail.com

**CERTFICATE OF SERVICE**

       I, the undersigned, certify that on October 31, 2019, I had the foregoing document served by filing it with the Clerk's Office via USPS. On that day, I also served a true and correct copy of the foregoing *Plaintiff's Second Amended Complaint* upon Defendant by causing said document to be delivered to it via email, to which form of service it has consented, addressed as follows:

       Christian Poland
       Bryan Cave LLP
       161 N. Clark Street, Suite 4300
       Chicago, IL 60601
       christian.poland@bryancave.com

                         /s/ Janay E. Garrick

Service List:

Christian Poland
Bryan Cave LLP
161 N. Clark Street, Suite 4300
Chicago, IL 60601
christian.poland@bryancave.com

# EXHIBIT A

EEOC Form 161 (11/16)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

### DISMISSAL AND NOTICE OF RIGHTS

| To: | Janay Garrick<br>c/o Jamie S. Franklin<br>THE FRANKLIN LAW FIRM LLC<br>53 W. Jackson Blvd, Suite 803<br>Chicago, IL 60604 | From: | Chicago District Office<br>500 West Madison St<br>Suite 2000<br>Chicago, IL 60661 |
|---|---|---|---|

|   | On behalf of person(s) aggrieved whose identity is<br>CONFIDENTIAL (29 CFR §1601.7(a)) |
|---|---|

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 440-2018-02205 | Zachary M. Florent,<br>Investigator | (312) 869-8040 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

|   |   |
|---|---|
| [ ] | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| [ ] | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| [ ] | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| [ ] | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| [X] | The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge. |
| [ ] | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| [ ] | Other (briefly state) |

### - NOTICE OF SUIT RIGHTS -
(See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

*Julianne Bowman*                    9/24/18

| Enclosures(s) | **Julianne Bowman,**<br>**District Director** | (Date Mailed) |
|---|---|---|

cc:    The Moody Bible Institute of Chicago
       c/o Christian M. Poland
       Bryan Cave LLP
       161 N. Clark Street, #4300
       Chicago, IL 60601

### A.122

EEOC Form 5 (11/09)

| CHARGE OF DISCRIMINATION | Charge Presented to: | Agency(ies) Charge No(s): |
|---|---|---|
| This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | ☐ FEPA  ☒ EEOC | 440-2018-02205 |

| Illinois Department of Human Rights, Chicago Commission on Human Rights and EEOC | | |
|---|---|---|
| *State or local Agency, if any* | | |

| Name (*indicate Mr., Ms., Mrs.*) Ms. Janay Garrick | Home Phone (*Incl. Area Code*) 407-803-3051 | Date of Birth 04-20-1976 |
|---|---|---|
| Street Address P. O. Box 1729 | City, State and ZIP Code Orlando, FL 32802 | |

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I believe Discriminated Against Me or Others. (*If more than two, list under PARTICULARS below.*)

| Name Moody Bible Institute | No. Employees, Members 100+ Employees | Phone No. (*Include Area Code*) 800-356-6639 |
|---|---|---|
| Street Address 820 N. LaSalle St. | City, State and ZIP Code Chicago, IL 60610 | |
| Name | No. Employees, Members | Phone No. (*Include Area Code*) |
| Street Address | City, State and ZIP Code | |

| DISCRIMINATION BASED ON (Check appropriate box(es).) | DATE(S) DISCRIMINATION TOOK PLACE |
|---|---|
| ☐ RACE  ☐ COLOR  ☒ SEX  ☒ RELIGION  ☐ NATIONAL ORIGIN  ☒ RETALIATION  ☐ AGE  ☐ DISABILITY  ☐ GENETIC INFORMATION  ☐ OTHER (Specify) | Earliest 2016     Latest 12/31/2017  ☐ CONTINUING ACTION |

THE PARTICULARS ARE (*If additional paper is needed, attached extra sheet(s)*):

I am a former faculty member at Moody Bible Institute ("MBI"). I was hired on December 1, 2014 as an Instructor of Communications. I was terminated on April 17, 2017 in violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e *et seq.*, because of my gender (female) and my religion (egalitarian Christian). I was also retaliated against in violation of Title VII after I engaged in protected activity by complaining of discrimination. I bring this charge on behalf of myself and all others who are similarly situated.

Please see the attached additional pages for the particulars.

RECEIVED EEOC

JAN 0 5 2018

CHICAGO DISTRICT OFFICE

| I want this charge filed with both the EEOC and the State or Local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY – When necessary for State and Local Agency Requirements |
|---|---|
| I declare under penalty of perjury that the above is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| _____    *Janay Garrick*  Date          Charging Party Signature | SIGNATURE OF COMPLAINANT  _____  SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year) |

**A.123**

*EEOC Charge of Janay Garrick*
*Page 2 of 4*

## Introduction

MBI is a private academic institution with a stated mission of training students for the Christian ministry. It offers both undergraduate and graduate degrees. MBI receives federal funding from Title IV federal student loan programs, and it is subject to the requirements of Title IX, which prohibits discrimination on the basis of sex in federally-funded education programs and activities.

I was hired on a year-to-year basis to teach in the Communications Program, which is one of two programs in the Music and Media Arts Division. My direct supervisor was Brian Kammerzelt, the Communications Program Head. Terry Strandt functioned as a higher-level supervisor and the Chair of that Division responsible for performance reviews. I also reported to Larry Davidhizar, the Vice President and Associate Provost of Faculty.

MBI has a doctrinal statement that all faculty members are required to sign. It holds that the role of women in ministry is "complementary" – meaning that they are to be subservient to men and are suited to minister only to other women and children. I made it clear from the beginning of my association with MBI that I did not agree with this view, and that, in fact, I was an egalitarian Christian, meaning that I believe that women are equal to men and should not be excluded from any role in the church (or any other sphere). MBI knew my views when it hired me.

## Pattern of Discrimination and Retaliation

From the beginning of my tenure at MBI, I was treated with hostility by some key members of the administration and faculty. Before my campus interview, I was told to remove the reference to being an ordained minister from my resume. I was not told why. Later it became clear that because I was a woman, MBI did not want me to represent myself as an ordained minister.

Female instructors were confined to certain programs, like mine, while the Bible and Theology Programs were staffed exclusively by men. In late 2015, I was asked to assist in forming a committee to address women's concerns on campus. I was explicitly told that any changes resulting from the committee's work should be small and incremental.

MBI retaliated against me for assisting students who had gender-related and other discrimination complaints at MBI. For example, in January 2016, a black female student came to me for help. She wanted to change her major to Pastoral Ministry, which is an undergraduate program that teaches students to become leaders, pastors, and teachers in the church. MBI refused to allow her to enter the program because of her gender. MBI's website at the time confirmed that the program was only open to male students.

I helped this student lodge the first Title IX complaint ever brought at MBI. At first, MBI denied that the Pastoral Ministry program was not open to women, despite the fact that its website at the time stated that the program was strictly for male students. Then MBI tried to convince the student to take courses in another program. Ultimately it became clear that MBI had been

*EEOC Charge of Janay Garrick*
*Page 3 of 4*

discriminating against women by barring them from the Pastoral Ministry program from 1928 until this student filed her complaint.

MBI then dismissed the student's complaint, stating misleadingly that her concerns were "programmatic" and were not "appropriately addressed through an investigatory process designed to address discrete complaints of sexual misconduct." With my help, she appealed. Professors made disparaging comments to her like "don't you know the image of God is male?" and "what makes you think you have the right to preach?"

The student and I continued to push MBI to open the program to all women, and I was open and active in my opposition to MBI's discriminatory practices. As a result, in April 2016, MBI announced that they intended to remove the discriminatory restrictions and open the Pastoral Ministry program to women, after decades of denying them access, though MBI continues to informally discourage women from applying. There are currently just three women in a program that has approximately 60 students enrolled. However, as of the date of the conclusion of my appeal of my termination (June 26, 2017), it is my understanding that MBI still had not removed the gender restrictions from that degree program.

I also assisted a transgender student with her hostile environment concerns, which I reported to faculty and administrators. That student ultimately left the institution because of the discrimination and harassment she experienced.

As a result of my advocacy, I was retaliated against by MBI. For example, after a meeting of the "Respect for Women Professionally and Ministerially" Committee, in which I stated that denying women access to the ministry program was discriminatory under Title IX, my *faculty* mentor called me into her office. She admonished me by reading me the section of MBI's *doctrinal statement* on gender roles, then asked, "How do you have any integrity working here?"

In February 2016, as a result of open hostility from faculty who were aware of my Title IX complaint assistance, I called a meeting with the supervising Deans and Vice Presidents, Larry Davidhizar and Bryan O'Neal, to talk about the hostile work environment and gender discrimination I was experiencing. I also shared my concerns that other female students and faculty were being treated differently because of their gender. In response, my supervisors treated me with increased hostility and questioned whether I could sign the doctrinal statement again. At the end of the meeting, they began to discuss terminating my employment, telling me I should voluntarily leave MBI. I decided to stay and fight.

In September 2016, one of the theology professors at MBI drafted a proposal that would require all students to sign a statement that they could not be both LGBT and also "love Jesus." I spoke out against this blatant bigotry at an all-faculty and administration meeting and told a story about a student who came to me in tears over being told one could not be gay and "saved." I submitted and co-presented (with a male faculty member) a counter-proposal with an inclusive message. Mr. Davidhizar pulled me into his office the next day and told me my speech was "inflammatory rhetoric." He told me I was "not a Moody fit." The male faculty member who co-presented the proposal was never the subject of any disciplinary treatment.

**A.125**

*EEOC Charge of Janay Garrick*
*Page 4 of 4*

Shortly thereafter, MBI denied my application for a promotion in my rank as a faculty member. I was still ranked as an "instructor" – the lowest category and pay at MBI – despite my extensive experience and many accomplishments at MBI. As a result of this retaliatory denial, I lost both professional status and the additional income that I would have received at a higher rank.

**My Unlawful Termination**

In March 2017, at my two-year review, Mr. Davidhizar made it clear that MBI was considering not renewing my contract due to alleged "performance and interpersonal issues." Later that month, Mr. Strandt again threatened to terminate me, and delivered to me a negative performance review – the first written criticism of my performance I had ever received at MBI – prepared by someone unfamiliar with my work and filled with inaccuracies.

On April 12, 2017, I met with Mr. Davidhizar and the Vice President of Human Resources. Mr. Davidhizar told me that I did not fit in and that I was not aligned with the doctrinal statement.

On April 17, 2017, I was officially terminated because of my gender, my form of Christianity, and in clear retaliation for my complaints about my own treatment and my complaints on behalf of female students who were discriminated against.

I filed an internal grievance and went through the grievance process in the summer of 2017. MBI engaged in a variety of tactics to thwart any chance of success. In my grievance document, I presented testimony from 12 women who reported violations ranging from rape to harassment in the classroom and on the campus. My grievance was denied on June 26, 2017 in a document filled with more inaccuracies.

I am now seeking all damages to which I am entitled in law and equity, including reinstatement, back pay, front pay, compensatory damages (including future lost income, emotional distress, mental pain and suffering, inconvenience, and loss of enjoyment of life), attorneys' fees, costs of litigation, and punitive damages.

I bring this charge on behalf of myself and all others similarly situated.

**A.126**

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

**Chicago District Office**

500 West Madison Street, Suite 2000
Chicago, IL 60661
PH: (312) 869-8000
TTY: (312) 869-8001
ENFORCEMENT FAX: (312) 869-8220
STATE & LOCAL FAX: (312) 869-8077
LEGAL FAX: (312) 869-8124

FILE REVIEWS FAX: (312) 869-8220
MEDIATION: (312) 869-8060
HEARINGS FAX: (312) 869-8125

# NOTICE OF DISCLOSURE RIGHTS

Parties to an EEOC charge are entitled to review and obtain copies of documents contained in their investigative file. Requests must be made in writing to **Sylvia Bustos** and either mailed to the address above, faxed to **(312) 869-8220** or sent via email to sylvia.bustos@eeoc.gov (please chose only one method, no duplicate requests). *__Be sure to include your name, address, phone number and EEOC charge number with your request__*.

If you are the Charging Party and a RIGHT TO SUE has been issued, you may be granted access to your file:

\* __Before filing a lawsuit,__ but within 90 days of your receipt of the Right to Sue, or

\* __After your lawsuit has been filed.__ If more than 90 days have elapsed since your receipt of the Right to Sue, include with your request a copy of the entire court *complaint* (with court stamped docket number) or enough pages to determine whether it was filed based on the EEOC charge.

If you are the *__Respondent__* you may be granted access to the file *__only after__* a lawsuit has been filed. Include with your request a copy of the entire court complaint that includes an official court stamped docket number.

Pursuant to federal statutes, certain documents, such as those which reflect the agency's deliberative process, will not be disclosed to either party.

You must sign an Agreement of Nondisclosure **before** you are granted access to the file, which will be sent to you after receipt of your written request. (Statutes enforced by the EEOC prohibit the agency from making investigative information public.)

The process for access to the file will begin no later than ten (10) days following receipt of your request.

When the file becomes available for review, you will be contacted. You may review the file in our offices and/or request that a copy of the file be sent to you. Files may not be removed from the office.

Your file will be copied by **Aloha Print Group, 60 East Van Buren, Suite 1502, Chicago, IL 60605, (312) 542-1300.** You are responsible for the copying costs and must sign an agreement to pay these costs before the file will be sent to the copy service. Therefore, __it is recommended that you first review your file__ to determine what documents, if any, you want copied. EEOC will not review your file or provide a count of the pages contained in it. If you choose not to review your file, it will be sent __in its entirety__ to the copy service, __and you will be responsible for the cost.__ Payment must be made directly to **Aloha Print Group**, which charges 15 cents per page.

(Revised 04/20/2016, previous copies obsolete)

# FILING SUIT IN COURT OF COMPETENT JURISDICTION

### PRIVATE SUIT RIGHTS

The issuance of this *Notice of Right to Sue* or *Dismissal and Notice of Rights* ends the EEOC process with respect to your Charge. You may file a lawsuit against the Respondent within 90 days from the date you receive this Notice. Therefore, you should keep a record of the date. Once the 90 day period is over, your right to sue is lost. If you intend to consult an attorney, you should do so as soon as possible. Furthermore, in order to avoid any question that you did not act in a timely manner, if you intend to sue on your own behalf, your suit should be filed well in advance of the expiration of the 90 day period.

You may file your lawsuit in a court of competent jurisdiction. Filing this Notice is not sufficient. A court complaint must contain a short Statement of the facts of your case which shows that you are entitled to relief. Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the Respondent has its main office.

You may contact the EEOC if you have any questions about your rights, including advice on which court can hear your case, or if you need to inspect and copy information contained in the case file.

IF THE FIRST THREE CHARACTERS OF YOUR EEOC CHARGE NUMBER ARE "21B" AND YOUR CHARGE WAS INVESTIGATED BY THE ILLINOIS DEPARTMENT OF HUMAN RIGHTS (IDHR), REQUEST FOR REVIEWING AND COPYING DOCUMENTS FROM YOUR FILE MUST BE DIRECTED TO IDHR.

A lawsuit against a private employer is generally filed in the U.S. District Court.

A lawsuit under Title VII of the Civil Rights Act of 1964, as amended, against a State agency or a political subdivision of the State is also generally filed in the U.S. District Court.

However, a lawsuit under the Age Discrimination in Employment of the American with *Disabilities* Act or, *probably*, the Equal Pay Act against a State instrumentality (an agency directly funded and controlled by the State) can only be filed in a State court.

A lawsuit under the Age Discrimination in Employment Act or the American with Disabilities Act or the Equal Pay Act against a political subdivision of a State, such as municipalities and counties, may be filed in the U.S. District Court.

For a list of the U.S. District Courts, please see the reverse side.

### ATTORNEY REPRESENTATION

If you cannot afford an attorney, or have been unable to obtain an attorney to represent you, the court having jurisdiction in your case may assist you in obtaining a lawyer. If you plan to ask the court to help you obtain a lawyer, you must make this request of the court in the form and manner it requires. Your *request to the court should be made well in advance of the 90 day period mentioned above. A request for representation does not relieve you of the obligation to file a lawsuit within the 90-day period.*

### DESTRUCTION OF FILE

If you file suit, you or your attorney should forward a copy of your court complaint to this office. Your file will then be preserved. Unless you have notified us that you have filed suit, your Charge file could be destroyed as early as six months after the date of the Notice of Right to Sue.

IF YOU FILE SUIT, YOU OR YOUR ATTORNEY SHOULD NOTIFY THIS OFFICE WHEN THE LAWSUIT IS RESOLVED.

A.128