Docket No. 21-2683

*In the*

# United States Court of Appeals

*for the*

# Seventh Circuit

---

JANAY E. GARRICK,

*Plaintiff-Appellee,*

v.

MOODY BIBLE INSTITUTE,

*Defendant-Appellant.*

---

*Appeal from a Decision of the United States District Court for the Northern District of Illinois,*
*No. 1:18-cv-00573 · Honorable John Z. Lee*

---

## BRIEF *AMICUS CURIAE* OF FEDERAL COURTS PROFESSOR DEREK T. MULLER IN SUPPORT OF DEFENDANT-APPELLANT MOODY BIBLE INSTITUTE

CHRISTOPHER G. MICHEL
RACHEL G. FRANK
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
1300 I Street, N.W., Suite 900
Washington, D.C. 20005
(202) 538-8000
christophermichel@quinnemanuel.com
rachelfrank@quinnemanuel.com

*Attorneys for Amicus Curiae,*
*Professor Derek T. Muller*

August 7, 2023

---

 

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 21-2683

Short Caption: Janay E. Garrick, Plaintiff-Appellee, v. Moody Bible Institute, Defendant-Appellant.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)   The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Amicus Curiae Professor Derek T. Muller

(2)   The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Quinn Emanuel Urquhart & Sullivan LLP

(3)   If the party, amicus or intervenor is a corporation:

   i)     Identify all its parent corporations, if any; and

       N/A

   ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

       N/A

(4)   Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

       N/A

(5)   Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

       N/A

Attorney's Signature: /s/ Rachel G. Frank      Date: 8/7/2023

Attorney's Printed Name: Rachel G. Frank

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   Yes ☐   No ✔

Address: 1300 I Street, NW, Suite 900

       Washington, D.C. 20005

Phone Number: 202.538.8380      Fax Number: 202.538.8100

E-Mail Address: rachelfrank@quinnemanuel.com

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 21-2683

Short Caption: Janay E. Garrick, Plaintiff-Appellee, v. Moody Bible Institute, Defendant-Appellant.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Amicus Curiae Professor Derek T. Muller

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Quinn Emanuel Urquhart & Sullivan LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Christopher G. Michel    Date: 8/7/2023

Attorney's Printed Name: Christopher G. Michel

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☑    No ☐

Address: 1300 I Street, NW, Suite 900

    Washington, D.C. 20005

Phone Number: 202.538.8308    Fax Number: 202.538.8100

E-Mail Address: christophermichel@quinnemanuel.com

rev. 12/19 AK

**TABLE OF CONTENTS**

**Page**

INTEREST OF AMICUS CURIAE ............................................................ 1

SUMMARY OF ARGUMENT ................................................................ 2

ARGUMENT ....................................................................................... 4

I.     SECTION 1291 ALLOWS IMMEDIATE APPEAL OF A
       PRETRIAL ORDER DENYING THE ASSERTION OF A
       CHURCH-AUTONOMY DEFENSE .............................................. 4

       A.     Section 1291 allows immediate appeal of a limited
              category of "final decisions" that precede final
              judgment ......................................................................... 5

       B.     A pretrial decision rejecting a constitutionally rooted
              defense against the burdens of litigation is
              immediately appealable under Section 1291 ...................... 11

       C.     The church-autonomy doctrine is a constitutionally
              rooted defense against the burdens of litigation ................ 20

II.    SECTION 1291 ALLOWS IMMEDIATE APPEAL OF THE
       DISTRICT COURT'S ORDER IN THIS CASE ............................. 24

CONCLUSION ................................................................................... 27

CERTIFICATE OF COMPLIANCE ...................................................... 28

CERTIFICATE OF SERVICE .............................................................. 29

# TABLE OF AUTHORITIES

**PAGE**

C̲ASES

*Abelesz v. OTP Bank,*
    692 F.3d 638 (7th Cir. 2012) ................................................. 16

*Abney v. United States,*
    431 U.S. 651 (1977) .......................................... 4, 14, 15, 19

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ................................................................ 12

*Axon Enters., Inc. v. FTC,*
    143 S. Ct. 890 (2023) ............................................................. 20

*Bronson v. LaCrosse & M.R. Co.,*
    67 U.S. (2 Black) 524 (1862) ................................................. 8

*Brush Elec. Co. v. Elec. Imp. Co. of San Jose,*
    51 F. 557 (9th Cir. 1892) ....................................................... 9

*Cassatt v. Mitchell Coal & Coke Co.,*
    150 F. 32 (3d Cir. 1907) ......................................................... 9

*Cobbledick v. United States,*
    309 U.S. 323 (1940) ........................................................ 5, 6, 8

*Cohen v. Beneficial Indus. Loan Corp.,*
    337 U.S. 541 (1949) ........................................................... 9, 10

*Conlon v. InterVarsity Christian Fellowship,*
    777 F.3d 829 (6th Cir. 2015) ............................................... 23

*Daviess Cnty. Hosp. v. Bowen,*
    811 F.2d 338 (7th Cir. 1987) ............................................... 10

*Demkovich v. St. Andrew the Apostle Parish,*
    3 F.4th 968 (7th Cir. 2021) (en banc) ...................... 3, 22, 26

*Digit. Equip. Corp. v. Desktop Direct, Inc.*,
    511 U.S. 863 (1994) ................................................ 6, 16, 17, 18, 22, 25

*Doe v. Village of Deerfield*,
    819 F.3d 372 (7th Cir. 2016) ....................................................... 11, 26

*Enahoro v. Abubakar*,
    408 F.3d 877 (7th Cir. 2005) ............................................................. 17

*Firestone Tire & Rubber Co. v. Risjord*,
    449 U.S. 368 (1981) .......................................................................... 10

*Forgay v. Conrad*,
    47 U.S. (6. How.) 201 (1848) ........................................................... 7, 8

*Freeman v. Kohl & Vick Mach. Works, Inc.*,
    673 F.2d 196 (7th Cir. 1982) ............................................................... 6

*Garrick v. Moody Bible Inst.*,
    494 F. Supp. 3d 570 (N.D. Ill. 2019) ........................................... 24, 25

*Helstoski v. Meanor*,
    442 U.S. 500 (1979) .................................................................... 16, 19

*Herx v. Diocese of Fort Wayne-S. Bend, Inc.*,
    772 F.3d 1085 (7th Cir. 2014) ........................................................... 24

*United States v. Hollywood Motor Car Co.*,
    458 U.S. 263 (1982) .................................................................... 13, 14

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*,
    565 U.S. 171 (2012) .......................................................................... 21

*Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church
in North America*, 344 U.S. 94 (1952) ........................................... 21, 22

*Lauro Lines v. Chasser*,
    490 U.S. 495 (1989) .................................................................... 14, 18

*McCarthy v. Fuller*,
    714 F.3d 971 (7th Cir. 2013) .................... 2, 4, 16, 19, 21, 22, 23, 25, 26

*United States v. MacDonald,*
    435 U.S. 850 (1978) ............................................................................ 15

*McLish v. Roff,*
    141 U.S. 661 (1891) .............................................................................. 7

*Mitchell v. Forsyth,*
    472 U.S. 511 (1985) ............................................ 4, 13, 14, 16, 19, 20, 25

*Mohawk Indus., Inc. v. Carpenter,*
    558 U.S. 100 (2009) ...................................................... 2, 3, 11, 17, 18, 22

*Nixon v. Fitzgerald,*
    457 U.S. 731 (1982) .................................................................. 4, 16, 19

*NLRB v. Catholic Bishop,*
    440 U.S. 490 (1979) ....................................................................... 21, 25

*Our Lady of Guadalupe Sch. v. Morrissey-Berru,*
    140 S. Ct. 2049 (2020) ......................................................... 3, 20, 22, 26

*Perlman v. United States,*
    247 U.S. 7 (1918) .................................................................................. 9

*Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.,*
    506 U.S. 139 (1993) .......................................................... 4, 16, 19, 24

*United States v. Rinaldi,*
    351 F.3d 285 (7th Cir. 2003) ............................................................. 13

*United States v. River Rouge Improvement Co.,*
    269 U.S. 411 (1926) .............................................................................. 9

*Rubin v. Islamic Republic of Iran,*
    637 F.3d 783 (7th Cir. 2011) ......................................................... 17, 19

*Sell v. United States,*
    539 U.S. 166 (2003) ............................................................................ 13

*Serbian Eastern Orthodox Diocese for United States and Canada*
    *v. Milivojevich,* 426 U.S. 696 (1976) ............................................... 21

*Shoop v. Twyford,*
    142 S. Ct. 2037 (2022) ......................................................... 13

*Sterlinski v. Catholic Bishop,*
    934 F.3d 568 (7th Cir. 2019) ...................................... 21, 22

*Synod of Bishops v. Belya,*
    __ S. Ct. __ (2023) .................................................................. 1

*Van Cuawenberghe v. Biard,*
    486 U.S. 517 (1988) ............................................................. 14

*Watson v. Jones,*
    80 U.S. (13 Wall.) 679 (1872) ......................................... 22

*Whiting v. Bank of the United States,*
    38 U.S. (13 Pet.) 6 (1839) .................................................. 8

*Will v. Hallock,*
    546 U.S. 345 (2006) .............................. 11, 17, 18, 22

*Williams v. Morgan,*
    111 U.S. 684 (1884) .............................................................. 8

*Wisconsin v. Ho-Chunk Nation,*
    512 F.3d 921 (7th Cir. 2008) .......................................... 20

## STATUTES AND REGULATIONS

28 U.S.C. § 1291 ...................................... 2-6, 10-13, 15-20, 23-27

28 U.S.C. § 1292(b) ...................................................... 26, 27

Evarts Act of 1891, 26 Stat. 826, 828 § 6 ............................ 5

Fed. R. App. P. 29 .............................................................. 1, 28

Fed. R. App. P. 32 ................................................................... 28

Judiciary Act of 1789, 1 Stat. 73, 84 § 22 ............................ 5

## OTHER AUTHORITIES

William C. Anderson, *A Dictionary of Law* (1889) ...................................8

Mark E. Chopko & Marissa Parker, *Still a Threshold Question: Refining the Ministerial Exception Post-Hosanna-Tabor*, 10 First Amend. L. Rev. 233 (2012)......................................................23

Carleton M. Crick, *The Final Judgment as a Basis for Appeal*, 41 Yale L.J. 539 (1932)...............................................................7

Timothy P. Glynn, *Discontent and Indiscretion: Discretionary Review of Interlocutory Orders*, 77 Notre Dame L. Rev. 175 (2001)..................................................................................13

Adam Reed Moore, *A Textualist Defense of a New Collateral Order Doctrine*, 99 Notre Dame L. Rev. Reflection (forthcoming 2023), bit.ly/3Zj4B1N ..............................................................8

Adam N. Steinman, *Reinventing Appellate Jurisdiction*, 48 B.C. L. Rev. 1237 (2007) ...............................................12

I Stewart Rapalje & Robert L. Lawrence, *A Dictionary of American and English Law* 356 (1888) ...............................8

Lael Daniel Weinberger, *Is Church Autonomy Jurisdictional?*, 54 Loyola U. Chi. L. Rev. 471 (2023).....................................23

## INTEREST OF AMICUS CURIAE

Derek T. Muller is a Professor of Law at Notre Dame Law School. He has taught courses on federal courts and civil procedure, among other subjects. He is a co-author of a federal courts casebook, *Federal Courts: Cases and Materials on Judicial Federalism and the Lawyering Process* (5th ed. 2022), as well as an open-access resource on federal courts and civil procedure, *Rules and Laws for Civil Actions* (2023). He recently submitted an amicus brief to the Supreme Court in *Synod of Bishops v. Belya*, __ S. Ct. __ (2023) (No. 22-824), contending that the collateral-order doctrine permits an immediate appeal of district court orders denying the assertion of a religious-autonomy defense.

Because this case involves that same important question about the scope of the collateral-order doctrine—a key issue in the fields of federal courts and civil procedure—Professor Muller has an interest in this case's resolution. He submits this brief pursuant to Federal Rule of Appellate Procedure 29(a)(2). All parties have consented to the filing of this brief.[*]

---

[*] No counsel for a party authored this brief in whole or in part, and no one other than amicus or his counsel made a monetary contribution intended to fund the preparation or submission of the brief.

1

## SUMMARY OF ARGUMENT

The threshold question in this appeal is whether the Court has jurisdiction to hear it.  That question turns on the proper construction of 28 U.S.C. § 1291, which confers jurisdiction over appeals from "final decisions of the district courts."  In keeping with the provision's text and history, both the Supreme Court and this Court have long understood Section 1291 to provide for appellate jurisdiction over more than just case-ending final judgments.  *See, e.g.*, *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106 (2009); *McCarthy v. Fuller*, 714 F.3d 971, 974-75 (7th Cir. 2013).  But determining precisely which pre-judgment orders can be immediately appealed under Section 1291 (often termed "collateral orders") has frequently proven difficult for appellate courts.

This case does not require the Court to explore the outer limits of the collateral-order doctrine.  Under the Supreme Court's longstanding construction of Section 1291, an order denying a defendant's request to dispose of a case is immediately appealable under Section 1291 when (1) the defendant asserts a *protection against the burdens of further litigation*, as opposed to a protection against liability alone; and (2) the asserted protection is *rooted in constitutional principles*, thereby

displacing the default federal preference for "deferring appeal until litigation concludes." *Mohawk*, 558 U.S. at 107.

Although that framework does not cover all possible orders immediately appealable under Section 1291, it suffices to resolve the jurisdictional question in this case. The religious-autonomy defense asserted in the district court by appellant Moody Bible Institute (Moody) provides more than just protection against the imposition of liability; it compels courts "to stay out" of disputes over church personnel and governance. *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020); *see Demkovich v. St. Andrew the Apostle Parish*, 3 F.4th 968, 975-80, 83 (7th Cir. 2021) (en banc). And the doctrine is rooted in the structural limitations on government created by the Religion Clauses of the First Amendment, *see Our Lady*, 140 S. Ct. at 2060; *Demkovich*, 3 F.4th at 975, which provide a sufficient basis to overcome the default federal policy against piecemeal appeals.

Under that straightforward analysis, the denial of Moody's church-autonomy defense was a "final decision" appealable under Section 1291, much like orders denying double-jeopardy, official-immunity, qualified-immunity, or sovereign-immunity defenses—all of which appellate courts

have long reviewed under the collateral-order doctrine. *See, e.g.*, *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146-47 (1993); *Mitchell v. Forsyth*, 472 U.S. 511, 526-27 (1985); *Nixon v. Fitzgerald*, 457 U.S. 731, 742-43 (1982); *Abney v. United States*, 431 U.S. 651, 659-60 (1977). This Court accordingly has jurisdiction to resolve Moody's appeal. *Accord McCarthy*, 714 F.3d at 975-76.[1]

## ARGUMENT

## I. SECTION 1291 ALLOWS IMMEDIATE APPEAL OF A PRETRIAL ORDER DENYING THE ASSERTION OF A CHURCH-AUTONOMY DEFENSE

The "final decisions of the district courts" that are subject to immediate appeal under 28 U.S.C. § 1291 include a limited number of orders preceding final judgment—but not many, given the strong federal policy against piecemeal appeals. Defining with precision the category of appealable collateral orders has proven difficult for courts and scholars alike. But the statutory text, purpose, and history—along with precedent from the Supreme Court and this Court—yield an administrable rule that resolves the question presented here. When a district court denies a pretrial motion (1) asserting a defense against the burdens of litigation

---

[1] Amicus addresses only the jurisdictional question and takes no position on the merits.

itself (2) that is rooted in constitutional principles, its order is immediately appealable under Section 1291. Because the church-autonomy defense meets both those criteria, this Court should exercise jurisdiction over Moody's appeal.

### A. Section 1291 allows immediate appeal of a limited category of "final decisions" that precede final judgment

From its earliest days, Congress has provided for appeals as of right from "final" decisions of federal district courts. *See Cobbledick v. United States*, 309 U.S. 323, 326 (1940). The Judiciary Act of 1789 conferred on federal circuit courts mandatory appellate jurisdiction over certain "final judgments and decrees" of district courts. § 22, 1 Stat. 73, 84. When Congress created the federal courts of appeals in the Evarts Act of 1891, it carried forward that provision with a modest revision, providing mandatory appellate jurisdiction over the "final decision" of a district court (or a former circuit court), except where an appeal could be taken directly to the Supreme Court. § 6, 26 Stat. 826, 828. The current statute, 28 U.S.C. § 1291, provides, in substantially identical language, that courts of appeals "shall have jurisdiction of appeals from all final decisions of the district courts … except where a direct review may be had in" the Supreme Court.

5

None of those statutes have defined precisely what constitutes a "final" judgment, decree, or decision. But for as long as the statutes have been on the books, the Supreme Court has understood their references to finality to encompass not only district court rulings that formally "terminate the litigation" but also certain narrow "categories of prejudgment decisions" that must "be treated as 'final'" in order to vindicate the "object of efficient administration of justice in the federal courts." *Digit. Equip. Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 867, 884 (1994). As the Court put it in one leading decision, "finality—the idea underlying 'final judgments and decrees' in the Judiciary Act of 1789 and now expressed by 'final decisions' in [Section 1291]—is not a technical concept of temporal or physical termination," but rather a requirement prescribed by Congress to ensure "a healthy legal system." *Cobbledick*, 309 U.S. at 326; *accord Freeman v. Kohl & Vick Mach. Works, Inc.*, 673 F.2d 196, 199 (7th Cir. 1982) (explaining that Section 1291 recognizes "that there are 'collateral orders' that have aspects of finality and are appealable even though they do not end in the main litigation").

The historical origins of the final-judgment rule buttress that construction. The reference to "final judgments" in the Judiciary Act of

1789 was "declaratory of a well-settled and ancient rule of English" common-law practice, under which "no writ of error could be brought except on a final judgment." *McLish v. Roff*, 141 U.S. 661, 665 (1891). The basis for that English rule was practical rather than doctrinal: an appeal could proceed only when the record of a case was sent up from the trial court, but there was only one "formal record" of the case ("the roll"), and "it could be in only one court at a time." Carleton M. Crick, *The Final Judgment as a Basis for Appeal*, 41 Yale L.J. 539, 543-44 (1932).

The Supreme Court's early decisions accordingly treated "final" as a term of art in which a formal end to the district-court litigation was typically—but not always—required to establish appellate jurisdiction. The Court emphasized that it was "the object of the [appellate-jurisdiction statute] to save the unnecessary expense and delay of repeated appeals in the same suit." *Forgay v. Conrad*, 47 U.S. (6. How.) 201, 205 (1848). Yet the Court repeatedly permitted appellate review of orders that were "not final, in the strict, technical sense of that term" when doing so would be more "consonant with … the meaning of the acts of Congress"—for example, when the decision was practically final and delaying review would inflict "irreparable injury" on the losing party. *Id.*

at 203-04; *see, e.g.*, *Williams v. Morgan*, 111 U.S. 684, 699 (1884); *Bronson v. LaCrosse & M.R. Co.*, 67 U.S. (2 Black) 524, 531 (1862); *Whiting v. Bank of the United States*, 38 U.S. (13 Pet.) 6, 15 (1839); *see also* Adam Reed Moore, *A Textualist Defense of a New Collateral Order Doctrine*, 99 Notre Dame L. Rev. Reflection (forthcoming 2023), bit.ly/3Zj4B1N, at 33-36 (citing additional examples).

When Congress amended the appellate-jurisdiction statute in 1891, it replaced the phrase "final judgments and decrees" with "final decisions"—the language that remains in force today. Although the 1891 amendment did not broaden the substantive scope of appellate rights, *see, e.g., Cobbledick*, 309 U.S. at 324-25, Congress's use of the term "final decisions" aptly captured the Supreme Court's longstanding construction that a formal final judgment or decree was not invariably required to support an appeal. *See, e.g.*, William C. Anderson, *A Dictionary of Law* 318 (1889) (defining a "decision" as "[s]omewhat more abstract or more extensive than 'judgment' or 'decree'"); I Stewart Rapalje & Robert L. Lawrence, *A Dictionary of American and English Law* 356 (1888) (distinguishing a "decision" from "the paper commonly called the 'judgment' docketed with the clerk").

Courts of appeals applying the new statute promptly recognized that "the term 'final decision' … does not mean necessarily such decisions or decrees only which finally determine all the issues presented by the pleadings," but "also appl[ies] to a final determination of a collateral matter" meeting certain requirements. *Brush Elec. Co. v. Elec. Imp. Co. of San Jose*, 51 F. 557, 561 (9th Cir. 1892); *see Cassatt v. Mitchell Coal & Coke Co.*, 150 F. 32, 34 (3d Cir. 1907) (similar). And the Supreme Court likewise continued to hold that, while "the general rule requires that a judgment of a federal court shall be final and complete before it may be reviewed on a writ of error or appeal, it is well settled that" certain prejudgment orders "may be reviewed without awaiting the determination of the general litigation." *United States v. River Rouge Improvement Co.*, 269 U.S. 411, 414 (1926); *see, e.g., Perlman v. United States*, 247 U.S. 7, 12 (1918).

Against that backdrop, Justice Robert Jackson delivered the canonical construction of "final decisions" in his opinion for the Court in *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541 (1949). The "effect of the" statutory appellate-jurisdiction language, the Court explained, "is to disallow appeal from any decision which is tentative, informal or

incomplete," and also from "fully consummated decisions [that] are but steps towards final judgment in which they will merge." *Id.* at 546. But when a decision falls within "that small class which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated," it is a "final decision" within the meaning of Section 1291. *Id.*

Although the formulation in *Cohen*—which came to be known as the collateral-order doctrine—was new, the underlying substance was not. *See Cohen*, 337 U.S. at 546 (citing cases dating back to 1828). As the Supreme Court later explained, "*Cohen* did not establish new law; rather, it continued a tradition of giving § 1291 a 'practical rather than a technical construction.'" *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 375 (1981); *accord, e.g.*, *Daviess Cnty. Hosp. v. Bowen*, 811 F.2d 338, 341 (7th Cir. 1987) ("In determining whether a particular order is 'final' for purposes of appeal, … this court must apply a practical, rather than technical, construction to that term.").

**B.    A pretrial decision rejecting a constitutionally rooted defense against the burdens of litigation is immediately appealable under Section 1291**

In the decades since *Cohen*, the Supreme Court has "distilled" the "requirements for collateral order appeal … to three conditions: that an order '[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment.'" *Will v. Hallock*, 546 U.S. 345, 349 (2006) (citation omitted); *see Doe v. Village of Deerfield*, 819 F.3d 372, 375 (7th Cir. 2016) (same).  The Court has emphasized that those "conditions are 'stringent,'" and should be "kept so," lest the collateral-order doctrine "overpower the substantial finality interests § 1291 is meant to further." *Hallock*, 546 U.S. at 349-50 (citation omitted); *see Mohawk*, 558 U.S. at 106 (emphasizing that doctrine "must 'never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered.'") (citation omitted).

Reasonable disagreement exists about how well certain post-*Cohen* decisions cohere with that principle.  Critics have described the current state of the doctrine as "hopelessly complicated," "dazzling in its

11

complexity," and "an unacceptable morass." Adam N. Steinman, *Reinventing Appellate Jurisdiction*, 48 B.C. L. Rev. 1237, 1238 (2007) (footnotes and citations omitted); *see id.* at 1238-39 (collecting additional commentary). And the Supreme Court itself has acknowledged "[a]s a general matter, the collateral-order doctrine may have expanded beyond the limits dictated by its internal logic and the strict application of the criteria set out in *Cohen*." *Ashcroft v. Iqbal*, 556 U.S. 662, 672 (2009).

For all the debate about Section 1291's outer limits, however, the Supreme Court has generally agreed on its heartland. As explained further below, that is all that is required to resolve this case. This brief accordingly does not attempt to comprehensively define the range of prejudgment decisions that can be "final" under Section 1291. Instead, it is enough that, under the Supreme Court's precedent, a prejudgment decision is the proper subject of an immediate appeal under Section 1291 where the decision rejects a defense that (1) protects the losing party *against the burdens of litigation*, not just against liability, and (2) is *rooted in the Constitution* or another important source of public policy that overcomes the general federal preference for appeal only after final judgment. *See, e.g.*, Timothy P. Glynn, *Discontent and Indiscretion:*

*Discretionary Review of Interlocutory Orders*, 77 Notre Dame L. Rev. 175, 212 (2001) (explaining that prejudgment orders consistent with these categories will qualify as immediately appealable even under a "stringent" interpretation of Section 1291, but "few others will").[2]

1.    As to the first of those criteria, the Supreme Court has long explained that Section 1291 may permit an immediate appeal from a prejudgment decision resulting in the denial of a "right *not to be tried*" (or to face other burdens of litigation), but that Section 1291 does not permit an immediate appeal from a decision that rejects a right merely *to be free from liability*. *United States v. Hollywood Motor Car Co.*, 458 U.S. 263, 269 (1982) (emphasis added).    That is true even when the "remedy" for a violation of the liability protection is "the dismissal of charges." *Id.*; *see Mitchell*, 472 U.S. at 526 (similar).

---

[2]  This approach does not address the branch of the collateral-order doctrine pertaining to decisions (like the order rejecting a requirement to post security in *Cohen*) that would not terminate the litigation.  *See, e.g.*, *Shoop v. Twyford*, 142 S. Ct. 2037, 2043 n.1 (2022) (holding that an order to transport prisoner for medical testing was immediately appealable); *Sell v. United States*, 539 U.S. 166, 176-77 (2003) (holding that a forced-medication order in a criminal case was immediately appealable); *United States v. Rinaldi*, 351 F.3d 285, 288 (7th Cir. 2003) (similar for order of commitment for psychiatric evaluation in criminal case).

That "crucial distinction" follows directly from the reasoning of *Cohen*. *Hollywood Motor Car*, 458 U.S. at 269. When a defendant invokes a protection against further trial proceedings, a court's rejection of that protection is necessarily "conclusive" of the defense, because the defendant by definition must continue with the proceedings. *Mitchell*, 472 U.S. at 527. For similar reasons, such a denial is "separate from the merits" and "effectively unreviewable" on appeal, because the defendant will have irretrievably lost the protection against further litigation regardless of the ultimate result on the merits or in a subsequent appeal. *Id.* at 527-28. By contrast, when a defendant invokes only a protection against liability, a prejudgment order rejecting the defense does not necessarily satisfy any *Cohen* factor, because the defendant retains the ability to adequately vindicate the protection from liability later in the trial litigation or on appeal. *See, e.g.*, *Lauro Lines v. Chasser*, 490 U.S. 495, 496 (1989); *Van Cuawenberghe v. Biard*, 486 U.S. 517, 530 (1988).

The distinction between a right not to be tried and a mere protection against liability is illustrated by two criminal-procedure cases decided by the Court in back-to-back Terms. In *Abney v. United States*, the Court held that the denial of a motion to dismiss a criminal prosecution on

double-jeopardy grounds is appealable under Section 1291, because "the Double Jeopardy Clause protects an individual against more than being subjected to double punishments"; it provides "a guarantee against being twice *put to trial* for the same offense." 431 U.S. at 660-61 (emphasis added). Because that "protection[] would be lost if the accused were forced to 'run the gauntlet' a second time before an appeal could be taken," only immediate appeal can give "full protection" to that constitutional right "not to face trial at all." *Id.* at 662 & n.7.

"In sharp distinction," the Court held a year later in *United States v. MacDonald*, 435 U.S. 850, 858 (1978), that the denial of a motion to dismiss on speedy-trial grounds is *not* appealable under Section 1291, because "the essence of a defendant's" speedy-trial claim is typically "that the passage of time has frustrated his ability to *establish his innocence* of the crime charged," not that is entitled to be entirely free from trial. *Id.* at 860 (emphasis added); *see id*. at 861 ("It is the delay before trial, not the trial itself, that offends against the constitutional guarantee of a speedy trial.").

Given the centrality of that distinction, the paradigmatic example of a prejudgment order immediately appealable under Section 1291 is the

denial of an asserted "*immunity from suit.*"  *Mitchell*, 472 U.S. at 526.

Because such immunities by their nature protect a defendant from any

further litigation proceedings, the Court has repeatedly held that they

may qualify for immediate appeal under Section 1291.  *See Puerto Rico*

*Aqueduct*, 506 U.S. at 144-45 (state-sovereign immunity); *Mitchell*, 472

U.S. at 526 (qualified immunity); *Nixon*, 457 U.S. at 742-43 (absolute

immunity); *cf. Helstoski v. Meanor*, 442 U.S. 500, 508 (1979) (protection

under the Speech or Debate Clause, which protects Members of Congress

"not only from the consequences of litigation's results but also from the

burden of defending themselves") (citation omitted).  By contrast, the

Court has held that many other asserted defenses fail to qualify as a

"right not to stand trial." *Digit. Equip.*, 511 U.S. at 871; *see id.* at 872-74

(collecting decisions).

The law of this Circuit closely and properly follows those principles.

*See Abelesz v. OTP Bank*, 692 F.3d 638, 649-50 (7th Cir. 2012) ("[O]rders

denying various types of immunity may be immediately appealed under

the collateral order doctrine."); *McCarthy*, 714 F.3d at 975 (explaining

that "the principal current application of the [collateral-order] doctrine is

to appeals from denials of official immunity"); *see also Rubin v. Islamic*

16

*Republic of Iran*, 637 F.3d 783, 789-92 (7th Cir. 2011) (exercising appellate jurisdiction over denial of foreign-sovereign immunity defense); *Enahoro v. Abubakar*, 408 F.3d 877, 880 (7th Cir. 2005) (similar).

2.    At the same time, the Supreme Court has explained that an "order[] denying an asserted right to avoid the burdens of trial" is not alone enough to establish a right to immediate appeal under Section 1291. *Hallock*, 546 U.S. at 351.  In part because the notion of a "right to avoid trial" plays into "the lawyer's temptation to generalize," *id*. at 350; *see Digit. Equip.*, 511 U.S. at 873 (acknowledging that "there is no single, 'obviously correct way to characterize'" some asserted rights) (citation omitted), "some further characteristic" is needed for a prejudgment order to satisfy Section 1291, *Hallock*, 546 U.S. at 351.

That further characteristic is a "justification for immediate appeal" that is "sufficiently strong to over-come the usual benefits of deferring appeal until litigation concludes." *Mohawk*, 558 U.S. at 107.  And one sure way to demonstrate the requisite strength is to show that the asserted protection against the burdens of litigation "is embodied in a constitutional or statutory provision." *Digit. Equip.*, 511 U.S. at 879; *see id.* ("Where statutory and constitutional rights are concerned,

'irretrievable loss' can hardly be trivial, and the collateral order doctrine might therefore be understood as reflecting the familiar principle of statutory construction that, when possible, courts should construe statutes (here § 1291) to foster harmony with other statutory and constitutional law.") (brackets and citation omitted).

The requirement that an asserted protection against the burdens of litigation must reflect such a "value of a high order," *Hallock*, 546 U.S. at 352, in order to be immediately appealable under Section 1291, also follows from *Cohen*.  "The second [*Cohen*] condition insists upon 'important questions separate from the merits.'"  *Mohawk*, 558 U.S. at 107 (citation omitted).  And "the third *Cohen* question, whether a right is 'adequately vindicable' or 'effectively reviewable,' … cannot be answered without a judgment about the value of the interests that would be lost through rigorous application of a final judgment requirement."  *Digit. Equip.*, 511 U.S. at 878-79; *see Lauro Lines*, 490 U.S. at 502 (Scalia, J., concurring) ("The importance of the right asserted has always been a significant part of our collateral order doctrine.").

In keeping with that understanding, the Supreme Court's cases finding prejudgment orders appealable under Section 1291 have

consistently involved the denial of defenses rooted in the Constitution, statutes, or similarly higher-order public policies. *See, e.g.*, *Puerto Rico Aqueduct*, 506 U.S. at 145 (reasoning that the denial of an assertion of state-sovereign immunity is immediately appealable in part because it "involves a claim to a fundamental constitutional protection"); *Nixon*, 457 U.S. at 749 (invoking the constitutional "separation of powers"); *Helstoski*, 442 U.S. at 508 (Speech or Debate Clause); *Abney*, 431 U.S. at 660-61 (Double Jeopardy Clause); *see also Mitchell*, 472 U.S. at 525-26 (relying on the importance of the qualified-immunity defense to the effective operation of government). This Circuit's precedents similarly reflect crucial constitutional and other values under the collateral-order doctrine. *See, e.g.*, *McCarthy*, 714 F.3d at 971 (church autonomy); *Rubin*, 637 F.3d at 791-92 (foreign sovereign immunity); *Wisconsin v. Ho-Chunk Nation*, 512 F.3d 921, 928 (7th Cir. 2008) (tribal sovereign immunity).[3]

---

[3] The Supreme Court has adopted a somewhat similar framework for determining when a litigant can bypass the typical requirement to raise challenges to administrative-agency actions before that agency. In *Axon Enters., Inc. v. FTC*, 143 S. Ct. 890 (2023), for example, the Court held that claims challenging an agency's constitutional authority to conduct a proceeding could be asserted directly in district court, rather than only at the conclusion of the agency proceedings. *See id.* at 904-05 (relying on the Court's collateral-order-doctrine precedents).

## C.    The church-autonomy doctrine is a constitutionally rooted defense against the burdens of litigation

A district court's denial of a church-autonomy defense squarely implicates both of the criteria described above:  (1) a church-autonomy defense is a protection against the burdens of litigation, not just against liability, and (2) that protection is constitutionally rooted.  Orders that would force litigants who have asserted a church-autonomy defense to proceed through discovery and trial are accordingly immediately appealable under Section 1291.

*First*, a church-autonomy defense—like immunity defenses for states or government officials—provides an "entitlement not to stand trial or face the other burdens of litigation," not a mere "defense to liability." *Mitchell*, 472 U.S. at 526.  The Supreme Court has long and repeatedly recognized that, on "matters of church government as well as those of faith and doctrine," a religious organization is entitled to be "free from state interference"—not just from judicial judgments. *Kedroff v. Saint Nicholas Cathedral of Russian Orthodox Church in North America*, 344 U.S. 94, 116 (1952).  Courts are accordingly "bound to stay out of" litigation over a religious entity's "internal management decisions." *Our Lady*, 140 S. Ct. at 2060-61; *see Hosanna-Tabor Evangelical Lutheran*

*Church & Sch. v. EEOC*, 565 U.S. 171, 196 (2012) (explaining that the church-autonomy doctrine and its concomitant ministerial exception "bars such a suit"); *Serbian Eastern Orthodox Diocese for United States and Canada v. Milivojevich*, 426 U.S. 696, 708 (1976). Indeed, the "very process of inquiry" into such internal religious matters "impinge[s] on rights guaranteed by the Religion Clauses." *NLRB v. Catholic Bishop*, 440 U.S. 490, 502 (1979); *see Hosanna-Tabor*, 565 U.S. at 205-06 (Alito, J., concurring) (explaining that the "mere adjudication" of such claims "pose[s] grave problems for religious autonomy").

This Circuit's precedents strongly reinforce that understanding. The Court in *McCarthy* expressly held that the asserted religious-autonomy defense provided "immunity from the travails of a trial and not just from an adverse judgment." *McCarthy*, 714 F.3d at 975. In its recent en banc decision in *Demkovich*, the Court explained—in reviewing the denial of a motion to dismiss based on a religious-autonomy defense— that "[a]djudicating" the claim would "cause civil intrusion into, and excessive entanglement with, the religious sphere." *Demkovich*, 3 F.4th at 978; *accord, e.g.*, *Sterlinski v. Catholic Bishop*, 934 F.3d 568, 570 (7th Cir. 2019) ("[I]t is precisely to avoid … judicial entanglement in, and

second-guessing of, religious matters that the Justices established the rule of *Hosanna-Tabor*").

*Second*, a church-autonomy defense undeniably reflects the kind of "value of a high order" required to overcome the default policy against appeals before final judgment. *Hallock*, 546 U.S. at 352; *see Mohawk*, 558 U.S. at 107. By its terms, the doctrine embodies a protection against litigation that "originat[es] in the Constitution." *Digit. Equip.*, 511 U.S. at 879. Specifically, the doctrine "flows" from the Religion Clauses, *Demkovich*, 3 F.4th at 975; *see Our Lady*, 140 S. Ct. at 2060; *Kedroff*, 344 U.S. at 116, which provide a "structural" constitutional protection that "categorically prohibits federal and state governments from becoming involved in religious leadership disputes," *Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 836 (6th Cir. 2015); *see, e.g., Watson v. Jones*, 80 U.S. (13 Wall.) 679, 727-28 (1872) (grounding church-autonomy principles in the "broad and sound view of the relations of church and state under our system of laws" that "lies at the foundation of our political principles"); *Demkovich*, 3 F.4th at 975 (explaining that the church-autonomy doctrine provides a safeguard against "civil intrusion into the religious sphere"). As this Court put it in *McCarthy*,

the doctrine upholds both "the injunction in Matthew 22:21 to 'render unto Caesar the things which are Caesar's, and unto God the things that are God's,'" and "also the First Amendment, which forbids the government to make religious judgments." *McCarthy*, 714 F.3d at 976.

Accordingly, a defendant can immediately appeal the denial of a church-autonomy defense under Section 1291 for the same reasons that defendants can immediately appeal denials of defenses under the Double Jeopardy Clause, the Speech or Debate Clause, principles of state-sovereign immunity, and the qualified- and absolute-immunity doctrines. *See, e.g.*, Lael Daniel Weinberger, *Is Church Autonomy Jurisdictional?*, 54 Loyola U. Chi. L. Rev. 471. 503-05 (2023); Moore, *supra* at 44-46; Mark E. Chopko & Marissa Parker, *Still a Threshold Question: Refining the Ministerial Exception Post*-Hosanna-Tabor, 10 First Amend. L. Rev. 233, 294 (2012). If anything, the appealability of denials of church-autonomy defenses follows a fortiori from the appealability of qualified-immunity defenses, because the church-autonomy doctrine rests on an express and

"fundamental constitutional protection." *Puerto Rico Aqueduct*, 506 U.S. at 145.[4]

## II.    SECTION 1291 ALLOWS IMMEDIATE APPEAL OF THE DISTRICT COURT'S ORDER IN THIS CASE

Applying the framework outlined above, the district court's denial of Moody's motion to dismiss is immediately appealable to this Court under Section 1291.   When plaintiff-appellee Janay Garrick sued for employment discrimination, Moody moved to dismiss based on its "rights to religious autonomy enshrined in the First Amendment."   *Garrick v. Moody Bible Inst.*, 494 F. Supp. 3d 570, 573 (N.D. Ill. 2019).   Specifically, Moody contended that it declined to renew Garrick's contract based on her disagreement with Moody's religious principles, and that inquiring into the basis for her dismissal would require an intrusion into religious affairs of the kind the First Amendment forecloses.   *Id.* at 576-79.

---

[4]    This Court's decision in *Herx v. Diocese of Fort Wayne-S. Bend, Inc.*, 772 F.3d 1085 (7th Cir. 2014), does not counsel otherwise.   That decision rejected arguments made in "only a few sentences" by the defendant in support of Section 1291 appellate jurisdiction.   *Id.* at 1090. The Court's limited discussion of the church-autonomy doctrine consisted largely of drawing factual distinctions with *McCarthy*, culminating in the conclusion that the defendant had "not established" a basis for appellate jurisdiction.   *Id.* at 1090-91.

The district court's denial of that motion falls squarely within the category of orders immediately appealable under Section 1291. As explained above, the church-autonomy doctrine protects against the "very process of inquiry" into a religious actor's decision—not simply against entry of an adverse judgment. *NLRB*, 440 U.S. at 502. If Moody's invocation of the doctrine is correct, the district court's decision will thus deprive it of an "entitlement not to stand trial or face the other burdens of litigation." *Mitchell*, 472 U.S. at 526. And because that entitlement is constitutionally rooted—and therefore overcomes the default policy against appeal before final judgment—the district court's order falls within Section 1291's conferral of appellate jurisdiction as properly understood. *Digit. Equip.*, 511 U.S. at 879.[5]

Reaching that result would not require this Court to break any new ground. In *McCarthy*, the Court properly exercised appellate jurisdiction

---

[5] Of course, Section 1291 entitles a defendant to appellate *review*— not necessarily to appellate *reversal*. If this Court were to conclude that the district court properly rejected Moody's invocation of the church-autonomy doctrine at this stage of the case, the proper disposition would be to exercise appellate jurisdiction and affirm. *See, e.g.*, *Village of Deerfield*, 819 F.3d at 374 (holding that the Court had appellate jurisdiction under Section 1291 but then affirming the district court's order). As noted, amicus takes no position on the merits question.

over a district court's decision to allow a trial on the defendant's religious status, explaining that review was warranted because the constitutionally-rooted church-autonomy defense provides "immunity from the travails of a trial and not just from an adverse judgment." *McCarthy*, 714 F.3d at 975. The en banc Court's decision in *Demkovich* arose from a district court decision even more closely parallel to the one in this case. There, as here, the district court denied a motion to dismiss on church-autonomy grounds. *Demkovich*, 3 F.4th at 974. Exercising appellate jurisdiction under 28 U.S.C. § 1292(b), this Court reversed and ordered dismissal, reasoning that further "[j]udicial involvement in th[e] dispute would depart from" Supreme Court precedent "and threaten the independence of religious organizations 'in a way that the First Amendment does not allow.'" *Id.* at 978 (quoting *Our Lady*, 140 S. Ct. at 2069). Although the Court had no need to address the collateral-order doctrine given the alternative basis for appellate jurisdiction under Section 1292(b), the logic of the Court's holding—recognizing that the church-autonomy doctrine provides constitutionally rooted protection against further judicial involvement in the dispute—supports appellate jurisdiction under Section 1291 here.

## CONCLUSION

For the foregoing reasons, this Court has jurisdiction under Section

1291 to resolve Moody's appeal.


Dated: August 7, 2023

CHRISTOPHER G. MICHEL
RACHEL G. FRANK
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
1300 I Street, N.W.
Suite 900
Washington, D.C. 20005
(202) 538-8000
christophermichel@
  quinnemanuel.com

*Counsel for Amicus Curiae*

## CERTIFICATE OF COMPLIANCE

Pursuant to Fed. R. App. P. 32(a)(7)(C), I hereby certify as follows:

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 29(d) and 32(a)(7)(B) because this brief contains 5,345 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using MS Word 2013 in 14-point Century Schoolbook.

Dated: August 7, 2023

CHRISTOPHER G. MICHEL
RACHEL G. FRANK
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
1300 I Street, N.W.
Suite 900
Washington, D.C. 20005
(202) 538-8000
christophermichel@
  quinnemanuel.com

*Counsel for Amicus Curiae*

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system on August 7, 2023. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

Dated: August 7, 2023

CHRISTOPHER G. MICHEL
RACHEL G. FRANK
QUINN EMANUEL URQUHART
  & SULLIVAN, LLP
1300 I Street, N.W.
Suite 900
Washington, D.C. 20005
(202) 538-8000
christophermichel@
  quinnemanuel.com

*Counsel for Amicus Curiae*