No. 21-2683

# IN THE
# UNITED STATES COURT OF APPEALS
# FOR THE SEVENTH CIRCUIT

JANAY E. GARRICK, ET AL.,

*Plaintiff-Appellee*,

v.

MOODY BIBLE INSTITUTE,

*Defendant-Appellant.*

On Appeal from the United States District Court for the
Northern District of Illinois, No. 1:18-cv-00573,
The Honorable John Z. Lee, Judge

## BRIEF OF INDIANA AND 16 OTHER STATES AS AMICI CURIAE
## IN SUPPORT OF DEFENDANT-APPELLANT MOODY BIBLE INSTITUTE

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-6255
Tom.Fisher@atg.in.gov

THEODORE E. ROKITA
Attorney General of Indiana

THOMAS M. FISHER
Solicitor General

JAMES A. BARTA
Deputy Solicitor General

MELINDA R. HOLMES
Deputy Attorney General

*Counsel for Amici Curiae*

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................... iii

INTEREST OF AMICI STATES ............................................................................ 1

ARGUMENT ............................................................................................................ 1

I.　The Religion Clauses Protect Against Excessive Judicial Entanglement with Religion ........................................................................... 2

II.　The Collateral Order Doctrine Permits Immediate Appeal of Rulings Rejecting Religious Autonomy Defenses ............................................. 5

CONCLUSION ......................................................................................................... 9

# TABLE OF AUTHORITIES

**CASES**

*Alicea-Hernandez v. Cath. Bishop of Chicago*,
  320 F.3d 698 (7th Cir. 2003) ................................................................. 4

*Bryce v. Episcopal Church in the Diocese of Colorado*,
  289 F.3d 648 (10th Cir. 2002) ............................................................... 5

*Conlon v. InterVarsity Christian Fellowship*,
  777 F.3d 829 (6th Cir. 2015) ................................................................. 3

*Demkovich v. St. Andrew Apostle Parish*,
  3 F.4th 968 (7th Cir. 2021) (en banc) ........................................... *passim*

*EEOC v. Cath. Univ. of Am.*,
  83 F.3d 455 (D.C. Cir. 1996) ................................................................. 5

*Herx v. Diocese of Fort Wayne-S. Bend, Inc.*,
  772 F.3d 1085 (7th Cir. 2014) ............................................................... 7

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*,
  565 U.S. 171 (2012) ............................................................................... 4

*Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*,
  344 U.S. 94 (1952) ................................................................................. 3

*Lee v. Sixth Mount Zion Baptist Church of Pittsburgh*,
  903 F.3d 113 (3d Cir. 2018) .................................................................. 3

*In re Lubbock*,
  624 S.W.3d 506 (Tex. 2021) .................................................................. 4

*McCarthy v. Fuller*,
  714 F.3d 971 (7th Cir. 2013) ........................................................ *passim*

*McClure v. Salvation Army*,
  460 F.2d 553 (5th Cir. 1972) ................................................................. 4

*Natal v. Christian & Missionary All.*,
  878 F.2d 1575 (1st Cir. 1989) ............................................................... 4

*NLRB v. Catholic Bishop of Chicago*,
  440 U.S. 490 (1979) ..................................................................... 1, 2, 4, 7

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
    140 S. Ct. 2049 (2020) .............................................................................. 1, 2, 3

*Presbyterian Church (U.S.A.) v. Edwards*,
    566 S.W.3d 175 (Ky. 2018) ............................................................................ 5, 6

*Rayburn v. Gen. Conf. of Seventh-Day Adventists*,
    772 F.2d 1164 (4th Cir. 1985) .................................................................*passim*

*Serbian E. Orthodox Diocese for U.S. of Am. & Canada v. Milivojevich*,
    426 U.S. 696 (1976) ............................................................................................ 4

*Smith v. Finkley*,
    10 F.4th 725 (7th Cir. 2021) ............................................................................... 8

*Starkey v. Roman Cath. Archdiocese of Indianapolis, Inc.*,
    No. 20-3265, 2021 WL 9181051 (7th Cir. July 22, 2021) .................................. 7, 8

*Starkey v. Roman Catholic Archdiocese of Ind.*,
    41 F.4th 931 (7th Cir. 2022) ............................................................................... 3

*Tomic v. Cath. Diocese of Peoria*,
    442 F.3d 1036 (7th Cir. 2006) ......................................................................... 3, 6

*United Methodist Church v. White*,
    571 A.2d 790 (D.C. 1990) ................................................................................ 5, 6

*Watson v. Jones*,
    80 (13 Wall.) 679, 729 (1871) ............................................................................. 4

*Whole Woman's Health v. Smith*,
    896 F.3d 362 (5th Cir. 2018) ............................................................................ 4, 6

**CONSTITUTIONAL PROVISION**

U.S. Const. amend. I.................................................................................................. 2

**INTEREST OF AMICI STATES**

The amici States of Indiana, Alabama, Alaska, Arkansas, Georgia, Iowa, Kansas, Louisiana, Mississippi, Missouri, Nebraska, Oklahoma, South Carolina, Texas, Utah, Virginia, and West Virginia are home to countless citizens, organizations, and institutions holding diverse religious beliefs. Sometimes debates over religious matters spill into secular courts. But the "very process of inquiry" into matters of religious faith, doctrine, and leadership "may impinge on rights guaranteed by the Religion Clauses." *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 502 (1979). So it is essential that defendants asserting that the Religion Clauses provide immunity from suit have a right to appeal orders rejecting such defenses immediately. Wrongly permitting discovery, motions practice, and trial over matters the Constitution leaves to conscience would undermine its guarantee of religious autonomy.

To protect citizens' religious freedoms, amici have a significant interest in ensuring that courts resolve religious autonomy defenses at the earliest opportunity. Amici also have a substantial interest in protecting their own officials, agencies, and judicial systems from excessive entanglement with religion. Doctrines permitting immediate review of orders rejecting religious autonomy defenses help to ensure that no branch of government trammels religious rights, even inadvertently.

**ARGUMENT**

The First Amendment's Religion Clauses guarantee religious institutions "autonomy" in matters of "faith," "doctrine," and "church government." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2060 (2020) (citation omitted). Those

provisions thus confer on a "school with a religious mission . . . independence" in the selection of faculty "with the responsibility of educating and forming students in the faith." *Id.* at 2069. In this case, however, the district court refused to dismiss a suit against Moody Bible Institute—an institution dedicated to educating students for Christian ministry—by former faculty member Janay Garrick who admitted that she "was terminated for her stated position/disagreement" with Moody's "doctrinal statement." Dkt. 97 ¶ 96. The court reasoned that the "complaint portrays Moody's religious justification as a *pretext* for gender discrimination." SA11.

Although amici are skeptical that the district court's decision can be squared with Garrick's admissions and religious autonomy principles, they take no position on whether the Religion Clauses bar this suit. Amici's concern is with *when* that question should be resolved—now or only after discovery, motions practice, and (potentially) trial. They urge this Court to take up the question now so that a "protracted legal process" does not itself "impinge on rights guaranteed by the Religion Clauses." *Demkovich v. St. Andrew Apostle Parish*, 3 F.4th 968, 982–83 (7th Cir. 2021) (en banc) (quoting *NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490, 502 (1979), and *Rayburn v. Gen. Conf. of Seventh-Day Adventists*, 772 F.2d 1164, 1171 (4th Cir. 1985)). As this Court has observed, the "harm of such a governmental intrusion into religious affairs would be irreparable." *McCarthy v. Fuller*, 714 F.3d 971, 976 (7th Cir. 2013).

### I. The Religion Clauses Protect Against Excessive Judicial Entanglement with Religion

The First Amendment provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const.

2

amend. I. Together, the Religion Clauses "protect the right of churches and other religious institutions to decide matters of faith and doctrine without government intrusion." *Our Lady of Guadalupe*, 140 S. Ct. at 2060. They also protect the "autonomy" of religious institutions "with respect to internal management decisions that are essential to the institution's central mission." *Id.* Without the power to remove a minister, religious teacher, or other key personnel "without interference by secular authorities," "a wayward minister's preaching, teaching, and counseling could contradict the church's tenets and lead the congregation away from the faith." *Id.* The Clauses guarantee "religious organizations, an independence from secular control or manipulation, in short, power to decide for themselves, free from state interference, matters of church government as well as those of faith and doctrine." *Kedroff v. St. Nicholas Cathedral of Russian Orthodox Church in N. Am.*, 344 U.S. 94, 116 (1952).

In guaranteeing ecclesiastical independence, the Religion Clauses do more than provide a defense against liability. They impose a "structural limitation . . . on the government." *Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 836 (6th Cir. 2015); *see Lee v. Sixth Mount Zion Baptist Church of Pittsburgh*, 903 F.3d 113, 118 n.4 (3d Cir. 2018) (observing the ministerial "exception is rooted in constitutional limits on judicial authority"); *Tomic v. Cath. Diocese of Peoria*, 442 F.3d 1036, 1042 (7th Cir. 2006) ("A federal court will not allow itself to get dragged into a religious controversy even if a religious organization wants it dragged in."). The Religion Clauses require "[r]eligious questions to be answered by religious bodies." *McCarthy*, 714 F.3d at 976; *see Starkey v. Roman Catholic Archdiocese of Ind.*, 41 F.4th 931,

944–45 (7th Cir. 2022). It "would lead to the total subversion of such religious bodies, if any one aggrieved by one of their decisions could appeal to the secular courts and have them reversed." *Serbian E. Orthodox Diocese for U.S. of Am. & Canada v. Milivojevich*, 426 U.S. 696, 711 (1976) (quoting *Watson v. Jones*, 80 (13 Wall.) 679, 729 (1871)).

The "very process of inquiry" into internal religious disputes, moreover, "may impinge on rights guaranteed by the Religion Clauses." *Catholic Bishop of Chicago*, 440 U.S. at 502 (1979); *see Natal v. Christian & Missionary All.*, 878 F.2d 1575, 1577 (1st Cir. 1989). "By probing the ministerial work environment, the state—acting through a court—interferes with the Free Exercise Clause, 'which protects a religious group's right to shape its own faith and mission.'" *Demkovich*, 3 F.4th at 980 (quoting *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 188 (2012)). Adjudication may "enmesh the court in endless inquiries as to whether each discriminatory act was based in Church doctrine or simply secular animus"—a decision that courts are ill suited to make. *Id.* at 981 (quoting *Alicea-Hernandez v. Cath. Bishop of Chicago*, 320 F.3d 698, 703 (7th Cir. 2003)). Or a "protracted legal process" may "pit[] the church and state as adversaries," subjecting religious institutions to pervasive monitoring and probing. *Id.* at 982 (quoting *Rayburn*, 772 F.2d at 1171).

The burdens of discovery and secular scrutiny, in turn, may "produce by . . . coercive effect the very opposite of that . . . contemplated by the First Amendment." *McClure v. Salvation Army*, 460 F.2d 553, 560 (5th Cir. 1972); *see Demkovich*, 3 F.4th at 982–83; *Whole Woman's Health v. Smith*, 896 F.3d 362, 373 (5th Cir. 2018); *In re*

4

*Lubbock*, 624 S.W.3d 506, 515–16 (Tex. 2021). "Having once been deposed, interrogated, and haled into court," a religious institution may start making employment decisions "with an eye to avoiding litigation or bureaucratic entanglement rather than upon the basis of their own personal and doctrinal assessments of who would best serve" the institution's religious mission. *EEOC v. Cath. Univ. of Am.*, 83 F.3d 455, 466–67 (D.C. Cir. 1996) (quoting *Rayburn*, 772 F.2d at 1171).

Thus, as this Court and others have recognized, where the Religion Clauses apply, they provide "immunity from the travails of a trial and not just from an adverse judgment." *McCarthy*, 714 F.3d at 975; *see Presbyterian Church (U.S.A.) v. Edwards*, 566 S.W.3d 175, 179 (Ky. 2018) (religious institutions are "immune not only from liability, but also 'from the burdens of defending the action'"); *United Methodist Church v. White*, 571 A.2d 790, 792–793 (D.C. 1990) (Religion Clauses "grant churches an immunity from civil [merits] discovery"). That conclusion reflects that the act of "submitting [a] question" about religious matters "to a jury would undermine the authority and autonomy" of religious institutions guaranteed by the Religion Clauses. *McCarthy*, 714 F.3d at 978; *see Demkovich*, 3 F.4th at 980 ("[a]djudicating" employment claims by religious leaders against religious institutions may "lead to an impermissible intrusion into, and excessive entanglement with, the religious sphere").

## II.   The Collateral Order Doctrine Permits Immediate Appeal of Rulings Rejecting Religious Autonomy Defenses

To avoid impinging on the Religion Clauses, it is essential that courts decide "early in litigation" whether they bar suit. *Bryce v. Episcopal Church in the Diocese of Colorado*, 289 F.3d 648, 654 n.1 (10th Cir. 2002). And it is equally important that

5

parties be able to seek immediate appellate review of district court rulings rejecting arguments that the Religion Clauses bar suit. As this Court has recognized, a ruling rejecting a claim to immunity predicated on the Religion Clauses is "closely akin to a denial of official immunity." *McCarthy*, 714 F.3d at 975. A right to immediate appeal is thus critical for religious defendants: "If the defense of immunity is erroneously denied and the defendant has to undergo the trial before the error is corrected he has been irrevocably deprived of one of the benefits—freedom from having to undergo a trial—that his immunity was intended to give him." *Id.*; *see id.* at 796; *see also Whole Woman's Health*, 896 F.3d at 368 (similar); *Presbyterian Church (U.S.A.)*, 566 S.W.3d at 179 (similar); *United Methodist Church*, 571 A.2d at 792–73 (similar).

Allowing immediate appeals not only protects religious bodies from the "irreparable" harm of "government intrusion into religious affairs" but advances the judiciary's interests as well. *McCarthy*, 714 F.3d at 796. The more the judiciary probes into a religious institution's decisionmaking process, the greater the danger the judiciary will meddle with matters of "ecclesiastical cognizance that are not the federal courts' concern." *Demkovich*, 3 F.4th at 983 (citations omitted); *see id.* (explaining the difference between a "threshold inquiry" and full merits discovery); *Tomic*, 442 F.3d at 1039 (observing the Religion Clauses protect against the "concern" that, "in investigating employment discrimination claims by ministers against their church, secular authorities would necessarily intrude into church governance"). Immediate appellate review helps the judiciary steer clear of civil "entanglement[s]" with religion that "result from a protracted legal process." *Rayburn*, 772 F.2d at 1171. It ensures that

6

secular courts do not mistakenly issue "final judgment[s]" deciding "religious questions," which could cause "confusion, consternation, and dismay in religious circles." *McCarthy*, 714 F.3d at 976; *see Demkovich*, 3 F.4th at 982 ("worry[ing]" about protracted litigation and noting the "prejudicial effects of incremental litigation").

Garrick has suggested that *Herx v. Diocese of Fort Wayne-S. Bend, Inc.*, 772 F.3d 1085 (7th Cir. 2014), precludes immediate appeal. But that decision focused on "Title VII's exemptions for religious organizations," holding that those statutory protections do not "provide an immunity from the burdens of trial rather than an ordinary defense to liability." *Id.* at 1091. *Herx* is best understood as holding that the Diocese did not "assert a genuine 'right not to be tried'" but rather "only a right to prevail" at final judgment. *Starkey v. Roman Cath. Archdiocese of Indianapolis, Inc.*, No. 20-3265, 2021 WL 9181051, at *1 (7th Cir. July 22, 2021). The issue here, in contrast, is whether the Religion Clauses themselves provide immunity from *trial*.

To the extent that *Herx* suggests the First Amendment does not "provide[] an immunity from trial, as opposed to an ordinary defense to liability," 772 F.3d at 1090, that view cannot survive this Court's intervening en banc decision in *Demkovich*. *Demkovich* made clear that a "'protracted legal process'" itself "may impinge on rights guaranteed by the Religious Clauses." 3 F.4th at 982–83 (quoting *Cath. Bishop of Chicago*, 440 U.S. at 502, and *Rayburn*, 772 F.2d at 1171). It "worr[ied]" about the "prejudicial effects" of allowing discovery and motions practice in a hostile-work environment claim between a religious organization and a minister. *Id.* at 982. And while the full Court observed that "some threshold inquiry" may be "necessary" to

7

determine whether the Religion Clauses bar litigation in a religious employment dispute, it warned courts about allowing "discovery" into the merits of an employment dispute lest the "ministerial relationship" fall under "invasive examination." *Id.* at 983. Indeed, not merely liability, but the very process of "*adjudicating . . . claims*" could "lead to impermissible intrusion into, and excessive entanglement with, the religious sphere." *Id.* at 980 (emphasis added).

Moody's argument is, in effect, that pretext claims here are just as objectionable under the church autonomy doctrine as straightforward claims that a religious leader was fired over doctrinal disagreements. Under its view, further litigation over the pretext issue—*i.e.*, the true motivations of Moody's religious leaders—would "irreparab[ly]" harm the very interests the Religion Clauses protect. *McCarthy*, 714 F.3d at 976; *see* Moody Br. 3–4, 26–37. That suffices to confer appellate jurisdiction under the collateral order doctrine. *See McCarthy*, 714 F.3d at 976. Resolution of whether the church autonomy doctrine applies here turns not on disputed facts, but on a purely legal assessment, which makes application of the collateral order doctrine appropriate. *Cf. Smith v. Finkley*, 10 F.4th 725, 736 (7th Cir. 2021) (observing that immediate review of an otherwise appealable collateral order is inappropriate only if "all of the arguments made by the party seeking to invoke our jurisdiction are dependent upon, and inseparable from, disputed facts") (citation omitted)); *Starkey*, 2021 WL 9181051, at *1 (similar). The Court should not postpone resolution of the important question Moody raises until after merits discovery, motions practice, and trial—at which point the immunity Moody asserts will have been lost.

8

## CONCLUSION

The Court should resolve this appeal on the merits.

Respectfully submitted,

THEODORE E. ROKITA
Attorney General of Indiana

/s/ Thomas M. Fisher
THOMAS M. FISHER
Solicitor General

JAMES A. BARTA
Deputy Solicitor General

MELINDA R. HOLMES
Deputy Attorney General

Office of the Attorney General
IGC South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204
(317) 232-6255
Tom.Fisher@atg.in.gov

Case: 21-2683     Document: 59          Filed: 08/07/2023     Pages: 16

## ADDITIONAL COUNSEL

| | |
|---|---|
| STEVE MARSHALL<br>Attorney General<br>State of Alabama | ANDREW BAILEY<br>Attorney General<br>State of Missouri |
| TREG TAYLOR<br>Attorney General<br>State of Alaska | MICHAEL T. HILGERS<br>Attorney General<br>State of Nebraska |
| TIM GRIFFIN<br>Attorney General<br>State of Arkansas | GENTNER F. DRUMMOND<br>Attorney General<br>State of Oklahoma |
| CHRISTOPHER M. CARR<br>Attorney General<br>State of Georgia | ALAN WILSON<br>Attorney General<br>State of South Carolina |
| BRENNA BIRD<br>Attorney General<br>State of Iowa | ANGELA COLMENERO<br>Provisional Attorney General<br>State of Texas |
| KRIS KOBACH<br>Attorney General<br>State of Kansas | SEAN REYES<br>Attorney General<br>State of Utah |
| JEFF LANDRY<br>Attorney General<br>State of Louisiana | JASON MIYARES<br>Attorney General<br>State of Virginia |
| LYNN FITCH<br>Attorney General<br>State of Mississippi | PATRICK MORRISEY<br>Attorney General<br>State of West Virginia |

# CERTIFICATE OF COMPLIANCE

1.　　This document complies with the type-volume limitation of Circuit Rule 29 because this document contains 2,210 words, excluding the parts exempted by Fed. R. App. P. 32(f).

2.　　This document complies with the typeface requirements of Circuit Rule 32(b) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Century Schoolbook 12-point font.

August 7, 2023　　　　　　　　　　　　　　　/s/ Thomas M. Fisher
　　　　　　　　　　　　　　　　　　　　　　THOMAS M. FISHER
　　　　　　　　　　　　　　　　　　　　　　Solicitor General

# CERTIFICATE OF SERVICE

I hereby certify that on August 7, 2023, I electronically filed the foregoing document with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Thomas M. Fisher
THOMAS M. FISHER
Solicitor General

Office of the Indiana Attorney General
Indiana Government Center South, Fifth Floor
302 W. Washington Street
Indianapolis, IN 46204-2770
Telephone: (317) 232-6255
Facsimile: (317) 232-7979
Tom.Fisher@atg.in.gov