No. 21-2683

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE SEVENTH CIRCUIT
_____

JANAY GARRICK,

      Plaintiff-Appellant,

v.

MOODY BIBLE INSTITUTE,

      Defendant-Appellee.

_____

On Appeal from the United States District Court
for the Northern District of Illinois

_____

BRIEF OF THE EQUAL EMPLOYMENT OPPORTUNITY
COMMISSION AS AMICUS CURIAE IN SUPPORT OF
APPELLEE AND IN FAVOR OF DISMISSAL OF THE APPEAL

_____

GWENDOLYN YOUNG REAMS
Acting General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

ANNE NOEL OCCHIALINO
Assistant General Counsel

GEORGINA C. YEOMANS
Attorney

EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
202-921-2748
georgina.yeomans@eeoc.gov

# TABLE OF CONTENTS

Table of Contents ............................................................. i

Table of Authorities .......................................................... ii

Statement of Interest ........................................................1

Statement of the Issues .....................................................1

Statement of the Case .......................................................2

  A. Statement of the Facts.................................................2

  B. District Court Decisions................................................5

Argument ...................................................................7

  I. First Amendment principles do not categorically bar Title VII disparate treatment and retaliation claims like Garrick's..............................9

    A. General Title VII principles........................................9

    B. Title VII's applicability to religious employers. ...................13

      1. Statutory exemptions. ........................................13

      2. First Amendment religious autonomy principles. . .........................14

  II. The district court's opinion is not immediately appealable under the collateral order doctrine. ..................................................22

    A. Moody does not argue that this Court has jurisdiction over its Title VII statutory exemptions argument......................................22

    B. This Court does not have interlocutory jurisdiction under the religious autonomy doctrine....................................................23

      1. Seventh Circuit precedent precludes Moody's appeal. .................24

      2. The religious autonomy doctrine does not provide an immunity from trial...............................................................27

      3. Moody cannot satisfy the Supreme Court's three conjunctive requirements for establishing collateral order jurisdiction.................32

Conclusion...................................................................36

Certificate of Compliance ..................................................38

Certificate of Service ......................................................39

# TABLE OF AUTHORITIES

## Cases

*Belya v. Kapral,*
    45 F.4th 621 (2d Cir. 2022) ............................................................23, 27, 33, 35

*Bostock v. Clayton Cnty.,*
    140 S. Ct. 1731 (2020) ..............................................................................10

*Bryce v. Episcopal Church in the Diocese of Colo.,*
    289 F.3d 648 (10th Cir. 2002) ...............................................................15

*Burwell v. Hobby Lobby Stores, Inc.,*
    573 U.S. 682 (2014)...................................................................................18

*Cheli v. Taylorville Cmty. Sch. Dist.,*
    986 F.3d 1035 (7th Cir. 2021) ..................................................................2

*Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.,*
    450 F.3d 130 (3d Cir. 2006) ...............................................................16, 18, 19

*DeMarco v. Holy Cross High Sch.,*
    4 F.3d 166 (2d Cir. 1993) ....................................................................17, 19, 31

*Demkovich v. St. Andrew the Apostle Par.,*
    3 F.4th 968 (7th Cir. 2021) (en banc) ...........................................15, 27, 28, 29

*Dig. Equip. Corp. v. Desktop Direct, Inc.,*
    511 U.S. 863 (1994).................................................................................22

*EEOC v. Catholic Univ. of Am.,*
    83 F.3d 455 (D.C. Cir. 1996).................................................................29

*EEOC v. Fremont Christian Sch.,*
    781 F.2d 1362 (9th Cir. 1986) .............................................................14

*Fitzgerald v. Roncalli High Sch., Inc.,*
    73 F.4th 529 (7th Cir. 2023) ...............................................................14, 17

*Flanagan v. United States*,
    465 U.S. 259 (1984)................................................................23

*Geary v. Visitation of Blessed Virgin Mary Par. Sch.*,
    7 F.3d 324 (3d Cir. 1993) ...................................................16, 18, 19

*Gordon Coll. v. DeWeese-Boyd*,
    142 S. Ct. 952 (2022)............................................................35

*Grussgott v. Milwaukee Jewish Day Sch., Inc.*,
    882 F.3d 655 (7th Cir. 2018)..................................................28

*Gutierrez v. Kermon*,
    722 F.3d 1003 (7th Cir. 2013).................................................22

*Herx v. Diocese of Fort Wayne-S. Bend, Inc.*,
    772 F.3d 1085 (7th Cir. 2014)..........................................*passim*

*Johnson v. Jones*,
    515 U.S. 304 (1995)............................................................34

*Joll v. Valparaiso Cmty. Schs.*,
    953 F.3d 923 (7th Cir. 2020)..................................................11

*Jones v. Wolf*,
    443 U.S. 595 (1979)............................................................16

*Korte v. Sebelius*,
    735 F.3d 654 (7th Cir. 2013)..................................................18

*Lewis v. Wilkie*,
    909 F.3d 858 (7th Cir. 2018)..................................................13

*Lord v. High Voltage Software, Inc.*,
    839 F.3d 556 (7th Cir. 2016)..................................................12

*Lorillard v. Pons*,
    434 U.S. 575 (1978)............................................................17

*Luevano v. Wal-Mart Stores, Inc.*,
    722 F.3d 1014 (7th Cir. 2013).............................................10, 12

*McCarthy v. Fuller,*
  714 F.3d 971 (7th Cir. 2013)........................................................29, 30

*McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.,*
  966 F.3d 346 (5th Cir. 2020)..................................................................33

*Mitchell v. Forsyth,*
  472 U.S. 511 (1985)..................................................................24, 32, 35

*Morgan v. SVT, LLC,*
  724 F.3d 990 (7th Cir. 2013)...................................................................10

*NLRB v. Catholic Bishop of Chi.,*
  440 U.S. 490 (1979)...........................................................................30, 31

*Ortiz v. Werner Enters., Inc.,*
  834 F.3d 760 (7th Cir. 2016)...................................................................10

*Our Lady of Guadalupe Sch. v. Morrissey-Berru,*
  140 S. Ct. 2049 (2020)......................................................................14, 27

*Rayburn v. Gen. Conf. of Seventh-Day Adventists,*
  772 F.2d 1164 (4th Cir. 1985)..........................................................14, 29, 30

*Runkel v. City of Springfield,*
  51 F.4th 736 (7th Cir. 2022)...................................................................10

*Serbian E. Orthodox Diocese for U.S. & Canada v. Milivojevich,*
  426 U.S. 696 (1976)...........................................................................16

*Sterlinski v. Cath. Bishop of Chi.,*
  934 F.3d 568 (7th Cir. 2019).........................................................*passim*

*Thomas v. Rev. Bd. Of Indiana Emp. Sec. Div.,*
  450 U.S. 707 (1981)...........................................................................18

*Tucker v. Faith Bible Chapel Int'l,*
  36 F.4th 1021 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 2608
  (2023) .........................................................................................15, 28

*U.S. Postal Serv. Bd. of Governors v. Aikens,*
    460 U.S. 711 (1983)..................................................................12

*Van Cauwenberghe v. Biard,*
    486 U.S. 517 (1988)........................................................24, 27, 32

*Weissman v. Congregation Shaare Emeth,*
    38 F.3d 1038 (8th Cir. 1994)....................................................31

*Whole Woman's Health v. Smith,*
    896 F.3d 362 (5th Cir. 2018)....................................................31

*Widmar v. Sun Chem. Corp.,*
    772 F.3d 457 (7th Cir. 2014)....................................................17

*Will v. Hallock,*
    546 U.S. 345 (2006)........................................................23, 24, 35

**Statutes**

29 U.S.C. § 1292(b)........................................................................7

42 U.S.C. § 2000e-1(a)..................................................................13

42 U.S.C. § 2000e-2(a)(1)..............................................................9

42 U.S.C. § 2000e-2(m) ............................................................9, 21

42 U.S.C. § 2000e-3(a)..................................................................12

42 U.S.C. § 2000e(b)......................................................................13

Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb *et seq.*....................18

**Other Authorities**

EEOC Compliance Manual on Religious Discrimination (Jan.
    15, 2021), https://www.eeoc.gov/laws/guidance/section-
    12-religious-discrimination ......................................................14

## STATEMENT OF INTEREST

Congress charged the Equal Employment Opportunity Commission (EEOC) with administering and enforcing Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq*. At issue in this case is the immediate appealability of interlocutory rulings on Title VII's protections for non-ministerial employees of religious institutions, and the scope of the religious autonomy doctrine. Because the EEOC has a substantial interest in the proper interpretation of Title VII and the process for its enforcement, we file this brief pursuant to Federal Rule of Appellate Procedure 29(a).

## STATEMENT OF THE ISSUES

1.  Whether this Court has jurisdiction under the collateral order doctrine to review the denial of the defendant's motion to dismiss the plaintiff's second amended complaint.

2.  Whether the religious autonomy doctrine categorically bars Title VII gender discrimination and retaliation claims that do not question the validity of religious doctrine.

## STATEMENT OF THE CASE

### A.    Statement of the Facts[1]

Plaintiff Janay Garrick worked for over two years as an Instructor of

Communications at Defendant Moody Bible Institute. A.91-92 ¶¶ 1, 5.

Moody is a religious educational institution that "holds a complementarian

position that excludes women from certain roles within the church." A.112

¶ 96. Garrick is an "egalitarian Christian" who believes in "gender equality

in the ministry," a fact she told Moody during the hiring process. A.93 ¶ 20;

A.109 ¶ 85. Nonetheless, Moody twice renewed Garrick's employment

contract and Garrick, in signing, affirmed that she "agree[d] with,

personally adhere[d] to, and support[ed]" Moody's "Doctrinal Statement"

and "Institutional Positions Related to the Moody Bible Institute Doctrinal

Statement." A.45; A.93 ¶ 20.

While working at Moody, Garrick suffered hostility and poor

treatment based on her gender. For instance, Moody gave Garrick a heavier

workload than male faculty, A.97 ¶ 33; denied a reduction of her workload

---

[1] This brief accepts the facts alleged in the second amended complaint as
true and draws all permissible inferences in Garrick's favor, as is required
at this stage of the litigation. *See Cheli v. Taylorville Cmty. Sch. Dist.*, 986 F.3d
1035, 1038 (7th Cir. 2021).

to finish an advanced degree, despite giving male faculty that accommodation, A.96-97 ¶ 32; and required her to undergo peer reviews, but did not require male faculty to do so, A.96 ¶ 31(b). Garrick's male colleagues treated her with antagonism and "openly ridiculed her." A.95 ¶ 28. When she complained to Moody administrators, they told her to keep to her office. *Id*; A.105 ¶ 72. After delivering a joint proposal with a male colleague, Garrick, but not her colleague, was disciplined for "inflammatory rhetoric." A.96 ¶ 31(c); A.102-03 ¶¶ 58-59. Moody did not allow Garrick and other female faculty to speak at chapel. A.95-96 ¶¶ 29-30. All of this allegedly took place within a broader environment of hostility to women. *E.g.*, A.94 ¶ 22; A.98-99 ¶¶ 36-38.

After nearly two years, Garrick applied for promotion to Assistant Professor, a position for which she was fully qualified and whose duties she had already largely been performing. A.103-04 ¶¶ 61, 63-65. Moody denied her application "within one hour of receipt, stating that she needed to 'improve her fit within the division.'" A.104 ¶ 66. A month later, in December 2016, she received a stellar informal performance review, A.104 ¶ 68; A.107 ¶ 79(a), and in January 2017, at her official performance review,

3

Moody praised her for "doing everything [she was] hired to do," A.106

¶ 78.

    Garrick protested her own mistreatment, speaking with supervisors

about the harassment she experienced. A.101 ¶ 47; A.103 ¶ 60; A.106 ¶¶ 76-

77. She also advocated generally for gender equality at Moody throughout

her employment. Moody tasked her with "forming a committee to address

women's concerns on campus," called "Respect for Women Personally and

Ministerially," although Moody shut down that effort after the committee's

inaugural meeting was cut short. A.95 ¶ 27; A.101 ¶ 46. She also assisted a

student in filing a Title IX gender discrimination complaint when Moody

excluded that student from the pastoral ministry major. Upon learning this,

Moody administrators pressured her to quit. A.100-02 ¶¶ 44-54; A.105 ¶ 70;

A.106 ¶ 73.

    In March 2017, Garrick received her first negative performance

review, just two months after her positive January review. A.108 ¶ 79(e);

A.109 ¶ 84. The review was "filled with inaccuracies and misinformation"

regarding her performance. A.109 ¶ 84. It said nothing about Garrick's

alignment or non-alignment with Moody's doctrinal standards. *Id.* After

Garrick protested her negative review, Moody "changed tactics" and began

discussing her "vocal non-alignment with the Institute's doctrinal statement as it relates to 'Gender Roles in the Ministry.'" A.108 ¶ 80; A.109 ¶ 85. Later that month, Moody terminated Garrick, but delayed the effective date of her termination to December 31, requiring her to stay on to teach the remainder of the spring semester and to serve as a non-teaching faculty member in the fall. A.110 ¶ 86. When Garrick publicized her termination, Moody effectuated her termination immediately. A.110 ¶ 87.

## B.   District Court Decisions

Garrick sued Moody under Title VII of the 1964 Civil Rights Act, alleging claims of gender discrimination, religious discrimination, and retaliation.

The district court dismissed Garrick's first amended complaint without prejudice. SA.70. The court dismissed Garrick's claim that Moody discriminated against her because of her "different religious beliefs," finding the claim barred by Title VII's exemptions for religious institutions. A.83-84. It dismissed the remainder of Garrick's Title VII claims, concluding that they were barred by First Amendment principles because, as pleaded, they alleged that Moody terminated Garrick for objecting to Moody's complementarian creed. A.83-84, 86-88. The court declined to

hold that Garrick was a minister for purposes of the ministerial exception, finding further fact development necessary before deciding that question. A.84-86.

Garrick filed a second amended complaint (SAC), alleging a hostile work environment, disparate treatment, and retaliation under Title VII. *See* A.91. Her SAC alleged gender-based mistreatment, detailed above, and claimed that Moody's explanation that it terminated her for disagreeing with its doctrinal beliefs was pretext for gender discrimination. *E.g.*, A.110 ¶ 89; A.112 ¶ 97.

The court allowed Garrick's disparate treatment and retaliation claims to proceed to summary judgment. The court first declined to dismiss Garrick's claims based on Title VII's religious exemptions. It held that because Garrick alleged discrimination based on her gender, not based on her religious views, the exemptions did not apply. SA.9-10. The court also rejected Moody's argument that the First Amendment church autonomy doctrine continued to bar the claims in their entirety. SA.10-15. In the court's view, a factfinder could evaluate whether Moody's explanation for firing Garrick—her vocal non-alignment with Moody's doctrinal statement—was pretextual without having to impermissibly probe the

validity or reasonableness of the religious doctrine itself. For example, Garrick could "identify disparaging comments Moody's supervisors made about women or spotlight male instructors who disagreed with Moody's complementarian doctrine yet retained their positions." SA.12, 14. The court also noted that allegations that amounted to challenges to Moody's complementarian creed could not inform liability under the religious autonomy doctrine. SA.13-14.[2]

After the court denied Moody's motion to reconsider and motion to certify the church autonomy question for interlocutory appeal under 29 U.S.C. § 1292(b), Moody filed the instant interlocutory appeal, claiming the court's order as to the religious autonomy doctrine is immediately reviewable under the collateral order doctrine. Moody also argues that the First Amendment and Title VII's religious organization exemptions bar Garrick's claims.

## ARGUMENT

Binding circuit precedent precludes this Court from exercising appellate jurisdiction to consider the merits of Moody's First Amendment

---

[2] The court dismissed Garrick's harassment claim on other grounds; we do not address it in this brief.

religious autonomy defense and its Title VII religious exemptions defense at this stage of litigation. *See generally Herx v. Diocese of Fort Wayne-S. Bend, Inc.*, 772 F.3d 1085 (7th Cir. 2014).

Even if it did not, this Court should deny Moody's request for relief because the district court properly applied the law in denying Moody's motion to dismiss the SAC on First Amendment religious autonomy grounds. To be sure, religious autonomy principles prevent secular courts from scrutinizing the validity or reasonableness of religious doctrine. But they do not categorically preclude probing whether a religious institution's explanation for taking an employment action against a non-ministerial employee is a pretext for discrimination where, as here, a plaintiff plausibly pleads she suffered an adverse action based on a protected trait and not her disagreement with religious doctrine.

Finally, because Moody does not argue that this Court has jurisdiction over its Title VII statutory exception argument, and because precedent forecloses it from establishing jurisdiction, we do not address the merits of Moody's statutory defense.

**I.    First Amendment principles do not categorically bar Title VII disparate treatment and retaliation claims like Garrick's.**

We begin by discussing general Title VII principles, including how Title VII applies to religious institutions. In doing so, we explain that the district court concluded correctly that Garrick's gender discrimination claims are not categorically barred by religious autonomy principles. We then turn to the question of this Court's jurisdiction over Moody's interlocutory appeal. We structure the discussion in this way—starting with the merits and then addressing jurisdiction—because the jurisdictional inquiry requires a comprehensive understanding of the substantive law at issue.

**A.    General Title VII principles.**

Title VII forbids employers from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1); *see also* 42 U.S.C. § 2000e-2(m) (unlawful employment practice established where protected trait "was a motivating factor for any employment practice"). At this stage in the litigation, Garrick's complaint "need only aver that [Moody] instituted a (specified) adverse employment

action against [her] on the basis of her sex." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1028 (7th Cir. 2013) (quoting *Tamayo v. Blagojevich*, 526 F.3d 1074, 1084 (7th Cir. 2008)). If she has done so, her claim can advance to discovery and, if the parties so move, summary judgment, where Garrick will have to proffer evidence from which a jury could reasonably conclude that Moody discriminated against her because of her sex. *Morgan v. SVT, LLC*, 724 F.3d 990, 997 (7th Cir. 2013).

Garrick can avoid summary judgment by pointing to evidence from which a reasonable jury could conclude that she would have kept her job had she not been a woman "and everything else had remained the same," *Ortiz v. Werner Enters., Inc.*, 834 F.3d 760, 764 (7th Cir. 2016), or that sex was a motivating factor for her termination, *see Runkel v. City of Springfield*, 51 F.4th 736, 743 (7th Cir. 2022); *see also Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1739–40 (2020) (noting Title VII plaintiffs may prevail by showing that a protected trait was a but-for cause of an adverse action, or "that a protected trait like sex was a 'motivating factor' in a defendant's challenged employment practice") (quoting 42 U.S.C. § 2000e-2(m)). The central inquiry at summary judgment in this case will almost certainly be whether the record would permit a jury to reasonably find that Moody's

10

explanation for terminating Garrick—namely, her "vocal non-alignment with the Institute's doctrinal statement as it relates to 'Gender Roles in the Ministry,'" A.108 ¶ 80—was a pretext for gender discrimination. *See Joll v. Valparaiso Cmty. Schs.*, 953 F.3d 923, 932 (7th Cir. 2020) ("Employment discrimination law has long recognized that an employer's dishonest explanation of a decision can support an inference that its real reason was unlawful."). Importantly, Garrick is not required to plead pretext in her complaint—this is an inquiry that arises only at summary judgment and trial, after an employer articulates a non-discriminatory reason for its action. *See Sterlinski v. Cath. Bishop of Chi.*, 934 F.3d 568, 571 (7th Cir. 2019) (noting that plaintiffs do not have to anticipate possible defenses, like the ministerial exception, in the complaint and thus do not have to plead facts addressing whether a possible defense is pretextual).

At trial, if Moody presents evidence that it terminated Garrick based only on her nonalignment with its doctrinal statement, it will be the factfinder's job to "decide which party's explanation of the employer's motivation it believes." *U.S. Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983).

Title VII also prohibits employers from retaliating against employees for speaking out against discrimination. In other words, employers may not discriminate against any individual because that individual has "opposed any practice made an unlawful employment practice" by Title VII. 42 U.S.C. § 2000e-3(a). "To plead a retaliation claim under Title VII, a plaintiff must allege that she engaged in statutorily protected activity and was subjected to adverse . . . action as a result of that activity[.]" *Luevano*, 722 F.3d at 1029.

To ultimately recover on a retaliation claim, Garrick "must prove that [s]he engaged in protected activity and suffered an adverse . . . action, and that there is a causal link between the two." *Lord v. High Voltage Software, Inc.*, 839 F.3d 556, 563 (7th Cir. 2016). At summary judgment, analysis of Garrick's retaliation claim will resemble her gender discrimination claim, in that the central inquiry will likely be whether the record would permit a jury to reasonably find that Moody's explanation for terminating her was pretextual. She can survive summary judgment by gathering evidence from which a factfinder could conclude that retaliation was a but-for cause of her termination. *See Lewis v. Wilkie*, 909 F.3d 858, 871 (7th Cir. 2018).

12

**B.   Title VII's applicability to religious employers.**

Religious institutions that otherwise fall within Title VII's definition of "employer," 42 U.S.C. § 2000e(b), are subject to Title VII's prohibitions, with some exceptions, set forth below.

**1.   Statutory exemptions.**

Title VII contains two exemptions to coverage of religious organizations. First, 42 U.S.C. § 2000e-1(a) specifies the statute does not apply to religious educational institutions (and other religious entities) "with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such . . . educational institution . . . of its activities." Next, section 2000e-2(e)(2) provides that "it shall not be an unlawful employment practice for a[n] educational institution . . . to hire and employ employees of a particular religion if . . . the curriculum of such school, college, university, or other educational institution or institution of learning is directed toward the propagation of a particular religion."

These provisions "allow a qualifying religious organization to assert as a defense to a Title VII claim of discrimination or retaliation that it made the challenged employment decision on the basis of religion." EEOC

Compliance Manual on Religious Discrimination § 12-I.C.1 & n.67 (Jan. 15, 2021) (citing cases), *available at* https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination. But "[r]eligious organizations are subject to the Title VII prohibitions against discrimination on the basis of . . . sex . . . and may not engage in related retaliation." *Id.* & n.65 (citing cases); *see Rayburn v. Gen. Conf. of Seventh-Day Adventists*, 772 F.2d 1164, 1166-67 (4th Cir. 1985) (discussing legislative history and concluding "Congress plainly did not" generally exempt religious employers from Title VII); *see also EEOC v. Fremont Christian Sch.*, 781 F.2d 1362, 1366 (9th Cir. 1986) (same); *and see Fitzgerald v. Roncalli High Sch., Inc.*, 73 F.4th 529, 536 (7th Cir. 2023) (Brennan, J., concurring) (employers cannot point to an employee's religious beliefs as a "pretext for discrimination on a basis other than religion").

### 2. First Amendment religious autonomy principles.

Setting aside the text of Title VII, the Supreme Court has held that, under the First Amendment, "general principle[s] of church autonomy" protect religious institutions' "independence in matters of faith and doctrine and in closely linked matters of internal government." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2061 (2020).

14

One manifestation of this church autonomy doctrine is "the so-called ministerial exception," which is an affirmative defense that exempts from Title VII liability a religious institution's employment disputes with "individuals who play certain key roles" in the organization. *Id.* at 2060-61; *see also Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1028-29 (10th Cir. 2022), *cert. denied*, 143 S. Ct. 2608 (2023). It is a fact-intensive inquiry that often requires some discovery "to determine who is a minister." *Demkovich v. St. Andrew the Apostle Par.*, 3 F.4th 968, 983 (7th Cir. 2021) (en banc). Earlier in this litigation, Moody argued that Garrick fell within this exception, but the district court held that it could not decide the issue absent further factual development, and Moody has not raised it on appeal. The ministerial exception is therefore not currently before this Court.

The church autonomy doctrine "extends beyond the selection of clergy," however, and thus beyond the ministerial exception. *Bryce v. Episcopal Church in the Diocese of Colo.*, 289 F.3d 648, 656 (10th Cir. 2002). It is a generally applicable principle that requires civil courts to "defer to the resolution of issues of religious doctrine or polity by the highest court of a hierarchical church organization." *Jones v. Wolf*, 443 U.S. 595, 602 (1979). It instructs that courts should not be in the business of resolving disputes

based on "extensive inquiry by civil courts into religious law and polity."

*Serbian E. Orthodox Diocese for U.S. & Canada v. Milivojevich*, 426 U.S. 696,

709 (1976).

In the employment discrimination context, this principle applies in

limited circumstances where resolution of a claim would require the court

or factfinder to interpret or weigh the reasonableness of church doctrine.

For instance, the Third Circuit has held that a discrimination claim whose

resolution would require a court to assess the relative severity of

"'offenses' against Catholic doctrine" would violate the First Amendment

because it would require the court to wade into the meaning of Catholic

teachings. *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d

130, 139 (3d Cir. 2006).

But "many claims of discrimination against a religious employer

under Title VII will not raise serious constitutional questions." *Id*. For

instance, where a plaintiff does not "challenge the validity or plausibility of

the religious doctrine said to support her dismissal, but only question[s]

whether it was the actual motivation, excessive entanglement questions

[are] not raised." *Id*. (citing *Geary v. Visitation of Blessed Virgin Mary Par.*

*Sch.*, 7 F.3d 324, 330 (3d Cir. 1993) (Age Discrimination in Employment Act

16

case) and *DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 170-71 (2d Cir. 1993)

(same)).[3] That is because the pretext inquiry in employment discrimination

cases focuses not on whether the employer's explanation is accurate,

reasonable, prudent, or fair, but rather whether it was the employer's

"honest belief and not a pretext for . . . discrimination." *Widmar v. Sun*

*Chem. Corp.*, 772 F.3d 457, 464-65 (7th Cir. 2014). It is similar to the pretext

analysis in ministerial exception cases, which this Court recently

addressed. In ministerial exception cases, "a church cannot show

entitlement to the ministerial exception simply by asserting that everyone

on its payroll is a minister or by requiring that all employees sign a

ministerial contract." *Fitzgerald*, 73 F.4th at 531-32. Instead, "like in other

Title VII cases, the plaintiff can defeat summary judgment by producing

evidence that the church's justification" for designating the plaintiff as

ministerial "is pretextual." *Id*. Leaving room for a pretext inquiry in such

cases "draw[s] the line between judicial abnegation . . . and independent

judicial resolution of ecclesiastical issues." *Sterlinski*, 934 F.3d at 571.

---

[3] "[T]he prohibitions of the ADEA were derived *in haec verba* from Title VII," and therefore are interpreted similarly. *Lorillard v. Pons*, 434 U.S. 575, 584 (1978).

Probing pretext in this way is familiar to courts and not burdensome on First Amendment rights. A religious institution's burden to "explain the application of its own doctrines" is "no more onerous than is the initial burden of any institution in any First Amendment litigation." *Geary*, 7 F.3d at 330.[4] And "[r]equiring a religious employer to explain why it has treated two employees who have committed essentially the same offense differently poses no threat to the employer's ability to create and maintain communities of the faithful." *Curay-Cramer*, 450 F.3d at 141.

If a Title VII discrimination plaintiff raises a pretext argument that implicates weighing doctrine, courts are capable of identifying such cases when they arise and either dismissing them or focusing the inquiry on grounds that do not burden the religious institution's First Amendment

---

[4] The Religious Freedom Restoration Act, 42 U.S.C. §§ 2000bb *et seq.*, provides a helpful analogy. In such cases, courts routinely probe plaintiffs' "sincerity and religiosity," not to "ask whether the claimant has correctly interpreted his religious obligations," but to assess whether "the claimant has an 'honest conviction' that what the government is requiring . . . conflicts with his religion." *Korte v. Sebelius*, 735 F.3d 654, 683 (7th Cir. 2013); *see also Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 725 (2014) ("[I]t is not for us to say that their religious beliefs are mistaken or insubstantial. Instead, our 'narrow function . . . in this context is to determine' whether the line drawn reflects 'an honest conviction[.]'") (quoting *Thomas v. Rev. Bd. of Indiana Emp. Sec. Div.*, 450 U.S. 707, 716 (1981)).

rights. *See Geary*, 7 F.3d at 330; *DeMarco*, 4 F.3d at 172; *see also Curay-Cramer*, 450 F.3d at 139-40; *and see Herx*, 772 F.3d at 1087-88, 1091 (recounting district court was "sensitive to" religious autonomy concerns and proposed jury instruction limiting scope of inquiry to pretext). Indeed, the district court in this case guarded that line, rejecting any challenge to Moody's "complementarian creed," but permitting further litigation over allegations that Moody mistreated Garrick in ways not dictated by faith. SA.13-14.

The First Amendment therefore does not categorically bar Garrick's gender discrimination and retaliation claims from moving forward to summary judgment, where she will have an opportunity to proffer evidence of pretext that does not question the validity of Moody's Doctrinal Statement. Garrick was not required to plead pretext in her SAC, but, even so, its allegations shed light on ways she may be able to prove pretext without requiring inquiry into the reasonableness or validity of Moody's religious beliefs. For instance, as the district court noted, "Garrick alleges that Moody expected female teachers of secular subjects to perform more demanding duties and submit to more onerous performance reviews than similarly situated male teachers" — a disparity in treatment that, so far, Moody does not claim is compelled by its religious beliefs. SA.14. The

denial of Garrick's promotion application to a higher-ranking secular position, despite her qualifications, experience, and positive reviews likewise does not appear at this stage to implicate religious autonomy. *See* A.103-04 ¶¶ 61-65 (describing qualifications for promotion); *id*. ¶ 66 (alleging Moody attributed denial of Garrick's promotion application to "fit," not religious reasons).

Moody claims that Garrick "state[d] under penalty of perjury that she was terminated because her 'form of Christianity' was 'not aligned with [Moody's] doctrinal statement,'" which, Moody claims, shows that Moody's stated religious reason for terminated Garrick was "undisputedly not 'a lie.'" Moody Br. at 35. This is not a fair characterization of Garrick's EEOC administrative charge. The charge claims that Moody discriminated against Garrick because of her gender and religion and it retaliated against her after she complained of discrimination. A.50. Her attached narrative largely tracks the allegations in the SAC, including the denial of her promotion despite her qualifications. A.52-53. It recites the religious reason Moody gave Garrick for her termination, but cannot be read to embrace Moody's stated reason as true. Instead, it alleges, "I was officially terminated because of my gender, my form of Christianity, and in clear

20

retaliation for my complaints about my own treatment." A.53. Her charge thus plainly encompasses both the religious discrimination claim that the district court dismissed in its first opinion, A.83-84, and then explicitly carved out as non-actionable in the opinion under review, SA.13-14, as well as gender discrimination and retaliation claims that should be allowed to move forward to discovery. Moody's related assertion that "Garrick's pleadings *admit* that her nonrenewal was in fact motivated by religious belief" and disagreement with religious doctrine, Moody Br. at 24, is incorrect, as the SAC alleges her firing was pretextual. *E.g.*, A.110 ¶ 89; A.112 ¶ 97.

Even if Moody ultimately shows that disagreement with religious doctrine was one reason for Garrick's termination, Garrick could still prevail by showing that retaliation or gender separately was a but-for cause of her termination, or—on her gender discrimination claim only—by showing gender was a motivating factor. *See* 42 U.S.C. § 2000e-2(m). The district court therefore correctly declined to dismiss Garrick's gender discrimination and retaliation claims.

## II.   The district court's opinion is not immediately appealable under the collateral order doctrine.

Before this Court can reach the merits of Moody's affirmative

defense, however, this Court must assure itself of its jurisdiction over

Moody's appeal. Because the Court does not have jurisdiction at this

juncture, the Court should dismiss the appeal.

### A.   Moody does not argue that this Court has jurisdiction over its Title VII statutory exemptions argument.

Although Moody premises its jurisdictional argument only on the

First Amendment religious autonomy doctrine, it includes in its appellate

brief an argument that Title VII's religious organization exemptions bar

Garrick's claims.

The Supreme Court has held that collateral order jurisdiction

implicates the appellate court's subject matter jurisdiction, *Dig. Equip. Corp.*

*v. Desktop Direct, Inc.*, 511 U.S. 863, 869 n.3 (1994), which Moody bears the

burden of establishing, *Gutierrez v. Kermon*, 722 F.3d 1003, 1010 (7th Cir.

2013). By failing to address it, Moody forfeited any argument that the

Court has jurisdiction over its statutory exception argument.

In any event, this Court has already held that Title VII's statutory

exemptions do not warrant collateral review in the context of a Title VII sex

22

discrimination case. *See generally Herx*, 772 F.3d 1085. The Court therefore lacks jurisdiction to consider the arguments in Section III of Moody's brief.

### B. This Court does not have interlocutory jurisdiction under the religious autonomy doctrine.

The Court also does not have jurisdiction over Moody's interlocutory appeal based on its First Amendment religious autonomy argument.

The collateral order doctrine provides for appellate jurisdiction over only a small category of interlocutory orders. *Herx*, 772 F.3d at 1088. "In almost two decades, the Supreme Court has expanded the collateral order doctrine in only one instance, to address state sovereignty and the All Writs Act[.]" *Belya v. Kapral*, 45 F.4th 621, 630 n.5 (2d Cir. 2022) (citing *Shoop v. Twyford*, 142 S. Ct. 2037 (2022)).

To be treated as collateral, an interlocutory order must, "at a minimum," "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Flanagan v. United States*, 465 U.S. 259, 265 (1984); *Will v. Hallock*, 546 U.S. 345, 349 (2006) (quoting *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993)).

"The critical question" under the collateral order doctrine "is whether 'the essence' of the claimed right is a right not to stand trial." *Van Cauwenberghe v. Biard*, 486 U.S. 517, 524 (1988) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 525 (1985)). And even where a right not to stand trial exists, the Supreme Court has applied the collateral order doctrine only in cases where trial would "imperil a substantial public interest," including claims of absolute immunity, qualified immunity, states' Eleventh Amendment immunity, and double jeopardy. *Will*, 546 U.S. at 350, 353.

## 1. Seventh Circuit precedent precludes Moody's appeal.

This Court's decision in *Herx* controls and compels dismissal of this appeal. In *Herx*, the employer, a Catholic school, fired the plaintiff from her language-arts teaching job for undergoing in vitro fertilization. 772 F.3d at 1086-87. The employer moved for summary judgment on the plaintiff's claims of sex and disability discrimination, arguing that in vitro fertilization is inconsistent with its religious beliefs and that it would have fired any teacher who participated in such a procedure. *Id.* at 1088. The employer argued that Title VII's statutory exemptions for religious institutions barred the claims, and alternatively that the First Amendment barred the claims because they would require a jury to inquire into

Catholic teachings. *Id*. at 1087. The district court rejected those arguments, and the employer appealed under the auspices of the collateral order doctrine. *Id*. at 1088. After extensive analysis, this Court held that it had no jurisdiction over the interlocutory appeal because the interests the defendant raised were not effectively unreviewable after trial. *Id*. at 1091. It also held that neither the statutory exemptions nor the First Amendment conferred an immunity from trial, as opposed to a protection from liability. *Id*. at 1090-92. *Herx* thus established that neither Title VII's statutory exemptions for religious institutions nor First Amendment religious autonomy principles provide for collateral order review in Title VII sex discrimination cases.

Moody dismisses *Herx* as nonbinding because "only a few sentences in the appellant Diocese's briefing were even addressed to the criteria for collateral order review." Moody Br. at 24 (quotation marks omitted). Whatever the quality of the briefing, the only question before the *Herx* court was whether this Court had appellate jurisdiction over a non-final order denying a motion for summary judgment based on Title VII's exemptions for religious institutions or based on First Amendment religious autonomy principles. 772 F.3d at 1088, 1090. The Court engaged

in extensive analysis of the question and concluded that it had no

jurisdiction to review the district court's order. *Id*. at 1091-92.

Moody also claims that "*Herx* emphasized that it 'held only that the

Diocese had not made a persuasive case' for interlocutory appeal—not that

a church autonomy defense never warrants interlocutory review." Moody

Br. at 24. But Moody mischaracterizes the quoted language. In saying it

held "only that the Diocese has not made a persuasive case for expanding

the scope of the collateral order doctrine to cover the interlocutory decision

rendered here," this Court was expressing "no opinion on the merits of the

district court's summary-judgment decision," not cabining its jurisdictional

holding. 772 F.3d at 1091; *see id*. at 1091-92 (because Diocese's interests will

not be irreparably harmed, and because district court's order can be

effectively reviewed on appeal, "the collateral order doctrine does not

apply").

*Herx* is not meaningfully distinguishable from this case on the

jurisdictional question and should be dispositive of this appeal.

### 2. The religious autonomy doctrine does not provide an immunity from trial.

In arguing that *Herx* does not control, Moody claims that intervening precedent—namely *Morrissey-Berru*, 140 S. Ct. 2049, *Sterlinski*, 934 F.3d 568, and *Demkovich*, 3 F.4th 968—silently abrogated it and clarified that the religious autonomy doctrine provides immunity from trial. But this Court has never said that and the best authority available suggests the opposite: that religious autonomy is an affirmative defense, not an "immunity from discovery and trial." Moody Br. at 23. Moody's invocation of this Court's jurisdiction thus fails the "critical question" governing collateral order review. *Van Cauwenberghe*, 486 U.S. at 524.

Recently, the Second Circuit held, in the context of a religious autonomy defense to a defamation claim, that "[t]he church autonomy doctrine provides religious associations neither an immunity from discovery nor an immunity from trial on secular matters." *Belya*, 45 F.4th at 633.

The Supreme Court and this Court have described the ministerial exception, which is part of the religious autonomy doctrine, as a non-jurisdictional affirmative defense on the merits. *See Hosanna-Tabor*, 565 U.S.

at 195 n.4; *see also Sterlinski*, 934 F.3d at 571 ("The ministerial exception is a defense, not a component of subject-matter jurisdiction."); *and see Tucker*, 36 F.4th at 1028-29 (describing ministerial exception, part of the church autonomy doctrine, as an affirmative defense not subject to collateral order review).

And this Court has recognized that, within the context of the ministerial exception, religious institutions must at times participate in discovery so that courts can guard against pretextual claims that employees are ministerial. For instance, *Demkovich* recognized that a religious institution claiming that an employee is "ministerial" within the meaning of the exception is not immune from judicial process once the defense is invoked, but instead is subject to a "threshold inquiry," which often includes discovery to "determine who is a minister." 3 F.4th at 983. Within this inquiry, courts may sometimes "question a religious organization's designation of what constitutes religious activity" when there is reason to believe the religious employer's invocation of the exception is pretextual. *Grussgott v. Milwaukee Jewish Day Sch., Inc.*, 882 F.3d 655, 660 (7th Cir. 2018); *see also Sterlinski*, 934 F.3d at 571 (courts may test religious employers' invocation of ministerial exception for pretext).

The cases Moody cites do not persuasively establish that religious autonomy provides it with an immunity from trial. *Demkovich*, on which Moody heavily relies, suggests the opposite, as discussed above. *Rayburn*, 772 F.2d 1164, and *EEOC v. Catholic University of America*, 83 F.3d 455 (D.C. Cir. 1996), are both cases applying the ministerial exception to hold that, once an employee is deemed a minister—in other words, once a religious employer has established that its affirmative defense rooted in religious autonomy principles actually applies—further inquiry into the merits of a disputed employment action is impermissible. But here, Moody has yet to establish that Garrick's claims implicate religious autonomy. The cases are therefore not helpful to Moody.

Other cases on which Moody relies are distinguishable because, unlike the limited pretext inquiry at issue here, they implicate instances in which a court would be asked to second guess a religious institution's application of its own doctrine. For instance, *McCarthy v. Fuller*, on which Moody principally relies, exercised interlocutory review of a district court order that directly submitted to a jury the religious question of whether the defendant was a nun in good standing. 714 F.3d 971, 976 (7th Cir. 2013). This Court has explicitly distinguished *McCarthy* from Title VII claims

29

implicating religious institutions, and specifically from cases in which "[t]he district court has not ordered a religious question submitted to the jury for decision." *Herx*, 772 F.3d at 1091; *see also id.* (noting, to the court's knowledge, there is no "authority for the proposition that Title VII's religious exemptions provide an immunity from the burdens of trial rather than an ordinary defense to liability").[5] And in *McCarthy*, the court acknowledged that courts "must be allowed to decide" the preliminary question of "whether a party is correct in arguing that there is an authoritative church ruling on an issue," leaving the type of inquiry at issue here—whether religious autonomy applies at all—in the hands of secular courts. 714 F.3d at 976.

*NLRB v. Catholic Bishop of Chicago*, 440 U.S. 490 (1979), falls into this category as well. There, the Supreme Court held that the National Labor Relations Act (NLRA) does not apply to religious schools because (1) unlike Title VII, the text of the NLRA does not make clear Congress's intent that it do so, *see Rayburn*, 772 F.2d at 1166-67, and (2) subjecting religious

---

[5] *McCarthy* also did not "stress[] that the Religion Clauses protect from 'the travails of a trial,'" as Moody claims. That quoted language was discussing "official immunity." 714 F.3d at 975.

schools to unfair labor practice complaints would give the National Labor

Relations Board jurisdiction to adjudicate disputes over almost every

condition of the workplace, heavily implicating schools' efforts to carry out

their religious missions, 440 U.S. at 502-03, 506-07. As the Second Circuit

pointed out, NLRA jurisdiction is much broader than employment

discrimination claims' limited scope. *DeMarco*, 4 F.3d at 169-70; *see also*

*Weissman v. Congregation Shaare Emeth*, 38 F.3d 1038, 1044 (8th Cir. 1994)

(agreeing with *DeMarco*'s analysis), *abrogated on other grounds by Torgerson*

*v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011).

Finally, *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018),

did not establish that "the Religion Clauses bar intrusive and entangling

litigation, not just liability." Moody Br. at 21. The Fifth Circuit's decision to

grant collateral review of a discovery order in that case was heavily

dependent on the appealing religious entity's status as a third party to the

litigation, which made the order conclusive, separate from the merits, and

effectively unreviewable on appeal. 896 F.3d at 367-69.

For these reasons, Moody has not established that religious

autonomy principles provide it with an immunity from trial, and thereby

fails to satisfy the "critical question" governing collateral order review. *Van Cauwenberghe*, 486 U.S. at 524.

### 3. Moody cannot satisfy the Supreme Court's three conjunctive requirements for establishing collateral order jurisdiction.

The fact that religious autonomy does not provide an immunity from trial also informs the Supreme Court's three conjunctive collateral order considerations, none of which is satisfied here.

*Conclusiveness*. First, because it does not implicate an immunity from trial, the denial of a religious autonomy defense to Moody at the Rule 12(b)(6) stage is not conclusive. *Cf. Mitchell*, 472 U.S. at 525-27 (denial of qualified immunity conclusive because it settles the question of official's immunity from suit).

The district court's order is also not conclusive because Moody can re-assert the religious autonomy defense at later stages in the litigation. As discussed above, discrimination claims involving a religious institution's religious explanation for its actions do not necessarily implicate religious autonomy. That is because the plaintiff may attempt to rebut the employer's proffered reason for its actions without probing the plausibility or validity of a religious belief or doctrine. "At this early stage of the

litigation, it is not clear that [Garrick's claims] will require the court to address purely ecclesiastical questions," but Moody can re-raise the defense if it becomes clear at a later stage that they do. *See McRaney v. N. Am. Mission Bd. of the S. Baptist Convention, Inc.*, 966 F.3d 346, 348-49 (5th Cir. 2020).

The Second Circuit reached the same conclusion at the pleading stage in *Belya v. Kapral*. In that case, a religious institution sought unsuccessfully to dismiss defamation claims based on its contention that resolving the claims would violate its religious autonomy. 45 F.4th at 625. The Second Circuit held that rejection of the religious autonomy defense at the Rule 12(b)(6) stage is not eligible for collateral review. *Id*. In assessing the conclusiveness prong of the collateral order doctrine, the Second Circuit noted that denying a motion to dismiss on religious autonomy grounds is not conclusive because it does not constitute a "final rejection" of the defense—the defendant could continue to assert the defense throughout the litigation as the precise contours of the dispute became clearer with fact development. *Id*. at 631 ("It is possible that at some stage Defendants' church autonomy defenses will require limiting the scope of Belya's suit, or the extent of discovery, or even dismissal of the suit in its entirety. But we

cannot and do not prematurely jump into the fray."). The same reasoning applies here.

*Important issue separate from the merits*. "[A]lthough the statutory and constitutional rights" Moody asserts "are undoubtedly important," *Herx*, 772 F.3d at 1090, Moody's religious autonomy defense is not separate from the merits of Garrick's claims.

The Supreme Court has explained that "[t]he requirement that the matter be separate from the merits of the action itself means that review *now* is less likely to force the appellate court to consider approximately the same (or a very similar) matter more than once." *Johnson v. Jones*, 515 U.S. 304, 311 (1995). Here, if the Seventh Circuit decides on interlocutory appeal that Garrick's complaint plausibly alleges a claim of discrimination that can be adjudicated without infringing Moody's First Amendment rights, it may be required to assess the same question (albeit under a different standard of review) after summary judgment, and then again after trial. That is because the applicability of church autonomy will come into sharper focus in tandem with the merits of Garrick's claims. The fundamental question governing both the religious autonomy defense and liability is whether Garrick can show that Moody's proffered reason for firing her was

pretextual, without calling into question the validity of Moody's religious beliefs. As the *Belya* court explained, a case that on the face of the complaint appears justiciable with neutral principles of law may turn out to implicate church autonomy after further development. *Belya*, 45 F.4th at 632-33. That is particularly true in employment discrimination cases, where pretext need not be pleaded in the complaint. *Sterlinski*, 934 F.3d at 571.

*Reviewability*. Finally, because the religious autonomy defense is an affirmative defense, providing immunity from liability, not trial, an order rejecting the defense is also effectively reviewable on appeal. *Cf. Gordon Coll. v. DeWeese-Boyd*, 142 S. Ct. 952, 955 (2022) (Alito, J., statement respecting the denial of cert.) (concurring on the understanding that the religious employer's ministerial exception defense could be reviewed after a final decision, should it lose at trial); *Mitchell*, 472 U.S. at 525-27 (because qualified immunity is meant to insulate officials not only from liability, but also trial, its loss is not effectively reviewable on appeal).

This factor also requires more than a mere entitlement to avoid trial; it requires a showing that trial "would imperil a substantial public interest." *Will*, 546 U.S. at 352-53. Moody does not attempt to establish that a substantial public interest is at stake in this appeal. *Cf. Herx*, 772 F.3d at

1090 ("This suit involves private parties—not public officials or a unit of government—so delaying appellate review until final judgment does not 'imperil a substantial public interest[.]'").

Moody has not satisfied its burden to invoke the Court's jurisdiction at this stage of the litigation. And even if it could, the district court correctly held that, although further development of the facts and arguments in this case may well reveal that Garrick's claims implicate religious autonomy, at this stage in the litigation they do not.

## CONCLUSION

For the foregoing reasons, this Court should dismiss Moody's appeal and remand the case to the district court for further proceedings.

Respectfully submitted,

GWENDOLYN YOUNG REAMS
Acting General Counsel

JENNIFER S. GOLDSTEIN
Associate General Counsel

ANNE NOEL OCCHIALINO
Assistant General Counsel

s/*Georgina C. Yeomans*
GEORGINA C. YEOMANS

Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
202-921-2748
georgina.yeomans@eeoc.gov

September 8, 2023

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Circuit Rule 29 because it contains 6,997 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

This brief complies with the typeface requirements of Circuit Rule 32 and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 365 in Book Antiqua 14 point.

s/*Georgina C. Yeomans*
GEORGINA C. YEOMANS
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
202-921-2748
georgina.yeomans@eeoc.gov

September 8, 2023

## CERTIFICATE OF SERVICE

I certify that September 8, 2023, I electronically filed the foregoing brief in PDF format with the Clerk of Court via the appellate CM/ECF system.  I certify that all counsel of record are registered CM/ECF users, and service will be accomplished via the appellate CM/ECF system.

<div style="margin-left:40%">

s/*Georgina C. Yeomans*
GEORGINA C. YEOMANS
Attorney
EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION
Office of General Counsel
131 M St. N.E., 5th Floor
Washington, D.C. 20507
202-921-2748
georgina.yeomans@eeoc.gov

</div>