No. 21-2683

# UNITED STATES COURT OF APPEALS
## FOR THE SEVENTH CIRCUIT

---

JANAY E. GARRICK,

*Plaintiff-Appellee,*

v.

MOODY BIBLE INSTITUTE,

*Defendant-Appellant.*

---

On Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division
Case No. 1:18-cv-00573 – Judge John Lee, Magistrate Judge Young Kim

---

BRIEF OF *AMICI CURIAE*
THE AMERICAN CIVIL LIBERTIES UNION AND
THE AMERICAN CIVIL LIBERTIES UNION OF ILLINOIS
IN SUPPORT OF PLAINTIFF-APPELLEE AND AFFIRMATION

---

AMERI R. KLAFETA
REBECCA GLENBERG
Roger Baldwin Foundation of ACLU, Inc.
150 N. Michigan Ave, Suite 600
Chicago, IL 60601
Tel: (312) 201-9740
aklafeta@aclu-il.org
rglenberg@aclu-il.org

ADITI FRUITWALA
*Counsel of Record*
DANIEL MACH
JOSHUA BLOCK
American Civil Liberties Union
Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
afruitwala@aclu.org
dmach@aclu.org
jblock@aclu.org

*Counsel for Amici Curiae*

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 21-2683

Short Caption: Garrick v. Moody Bible Inst.

To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)     The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

American Civil Liberties Union; American Civil Liberties Union of Illinois

(2)     The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

American Civil Liberties Union Foundation; American Civil Liberties Union Foundation of Illinois

(3)     If the party, amicus or intervenor is a corporation:

i)     Identify all its parent corporations, if any; and

N/A

ii)     list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

N/A

(4)     Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)     Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Aditi Fruitwala     Date: September 5, 2023

Attorney's Printed Name: Aditi Fruitwala

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).     Yes ✓     No ☐

Address: 125 Broad Street, 18th Floor

New York, New York 10004

Phone Number: (212) 549-2500     Fax Number:

E-Mail Address: afruitwala@aclu.org

rev. 12/19 AK

Save As    Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 21-2683

Short Caption: Garrick v. Moody Bible Inst.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

[ ]    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
    American Civil Liberties Union; American Civil Liberties Union of Illinois

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
    American Civil Liberties Union Foundation; American Civil Liberties Union Foundation of Illinois

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and
        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:
        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:
    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:
    N/A

Attorney's Signature: /s/ Ameri R. Klafeta    Date: September 5, 2023

Attorney's Printed Name: Ameri Klafeta

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes [ ]  No [✓]

Address: 150 N. Michigan Ave, Suite 600

    Chicago, IL 60601

Phone Number: (312) 201-9740    Fax Number:

E-Mail Address: aklafeta@aclu-il.org

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: __21-2683__

Short Caption: __Garrick v. Moody Bible Inst.__

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
  American Civil Liberties Union; American Civil Liberties Union of Illinois

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
  American Civil Liberties Union Foundation; American Civil Liberties Union Foundation of Illinois

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

  N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

  N/A

Attorney's Signature: __/s/ Rebecca Glenberg__    Date: __September 5, 2023__

Attorney's Printed Name:  __Rebecca Glenberg__

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).  **Yes** ☐  **No** ☑

Address: __150 N. Michigan Ave, Suite 600__

    __Chicago, IL 60601__

Phone Number: __(312) 201-9740__    Fax Number: _____

E-Mail Address: __rglenberg@aclu-il.org__

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: __21-2683_____

Short Caption: __Garrick v. Moody Bible Inst._____

 To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

 The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1) The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):
 American Civil Liberties Union; American Civil Liberties Union of Illinois _____

_____

(2) The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:
 American Civil Liberties Union Foundation; American Civil Liberties Union Foundation of Illinois ___

_____

(3) If the party, amicus or intervenor is a corporation:

  i)  Identify all its parent corporations, if any; and

    __N/A_____

  ii)  list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    __N/A_____

(4) Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

 __N/A_____

(5) Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

 __N/A_____

Attorney's Signature: __/s/ Joshua Block_____ Date: __September 5, 2023_____

Attorney's Printed Name:  __Joshua Block_____

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes ☐ No ☑

Address: __125 Broad Street, 18th Floor_____

 __New York, New York 10004_____

Phone Number: __(212) 549-2593_____ Fax Number: _____

E-Mail Address: __jblock@aclu.org_____

rev. 12/19 AK

Save As     Clear Form

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 21-2683

Short Caption: Garrick v. Moody Bible Inst.

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

American Civil Liberties Union; American Civil Liberties Union of Illinois

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

American Civil Liberties Union Foundation; American Civil Liberties Union Foundation of Illinois

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Dan Mach    Date: September 5, 2023

Attorney's Printed Name:  Dan Mach

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐  No ☑

Address:  915 15th St. NW

    Washington, DC 20005

Phone Number:  (202) 548-6604    Fax Number:

E-Mail Address: dmach@aclu.org

rev. 12/19 AK

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................. v

INTEREST OF *AMICI CURIAE* ....................................................... 1

SUMMARY OF ARGUMENT ............................................................ 3

ARGUMENT ...................................................................................... 5

    I.     Title VII's Exemptions Do Not Provide a Defense for Policies or Practices That Discriminate Based on Race, Color, Sex, or National Origin. ..................................................................................... 5

        A. Section 702 of Title VII exempts religious organizations from religious discrimination claims only. ............................................ 5

        B. Moody's broad interpretation of Section 702 contradicts its text, history, and prior precedents. ................................................... 8

            1. Section 702's text ............................................................... 9
            2. Section 702's comparison to other discrimination laws and its legislative history .............................................................. 11
            3. Section 702's interpretation .............................................. 14

    II.    Adopting Moody's Interpretation of Section 702 Would Gut Employment Protections. ............................................................. 19

CONCLUSION .................................................................................. 21

CERTIFICATE OF COMPLIANCE .................................................. 23

CERTIFICATE OF SERVICE ........................................................... 24

# TABLE OF AUTHORITIES

## Cases

*Bear Creek Bible Church v. EEOC,*
    571 F. Supp. 3d 571 (N.D. Tex. 2021) .................................................................. 19

*Billard v. Charlotte Cath. High Sch.*,
    No. 3:17-cv-00011, 2021 WL 4037431, at *8 (W.D.N.C. Sept. 3, 2021),
    *appeal filed*, No. 22-1440 (4th Cir. Apr. 25, 2022) ........................................ 1, 5, 6

*Bostock v. Clayton Cnty. Ga.,*
    140 S. Ct. 1731 (2020) ...................................................................................... 7, 8

*Boyd v. Harding Acad. of Memphis, Inc.*,
    88 F.3d 410 (6th Cir. 1996) .............................................................................. 6, 14

*Braidwood Mgmt., Inc. v. EEOC,*
    70 F.4th 914 (5th Cir. 2023) .................................................................................. 19

*Cline v. Catholic Diocese of Toledo,*
    206 F.3d 651 (6th Cir. 2000) .................................................................................. 7

*CompassCare v. Hochul,*

    No. 22-951 (2d Cir. filed Apr. 29, 2022) .............................................................. 1

*Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v.
    Amos,*
    483 U.S. 327 (1987) ................................................................................................ 5

*Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*,
    450 F.3d 130 (3d Cir. 2006) ...................................................................... 14, 15, 16

*DeMarco v. Holy Cross High Sch.*,
    4 F.3d 166 (2d Cir. 1993) ................................................................................. 6, 14

*EEOC v. Arabian American Oil Co.*,
    499 U.S. 244 (1991) .............................................................................................. 11

*EEOC v. Fremont Christian School*,
    781 F.2d 1362 (9th Cir. 1986) ................................................................................ 7

*EEOC v. Miss. Coll.*,
    626 F.2d 477 (5th Cir. 1980) ......................................................................... 14, 16

*EEOC v. Pac. Press Publ'g Ass'n*,
    676 F.2d 1272 (9th Cir. 1982) ............................................ 6, 7, 8, 14

*Fitzgerald v. Roncalli High Sch., Inc.*,
    73 F.4th 529 (7th Cir. 2023) ................................................... 1, 10

*Garcia v. Salvation Army*,
    918 F.3d 997 (9th Cir. 2019) ..................................................... 18, 19

*Herx v. Diocese of Fort Wayne-S. Bend Inc.*,
    48 F. Supp. 3d 1168 (N.D. Ind. 2014), *appeal dismissed*, 772 F.3d 1085
    (7th Cir. 2014) ....................................................................... 6, 7

*Hobby Lobby Stores, Inc v. Sommerville*,
    186 N.E.3d 67 (Ill. App. Ct. 2021) ............................................... 2

*Kennedy v. St. Joseph's Ministries, Inc.*,
    657 F.3d 189 (4th Cir. 2011) ................................................. 6, 14, 18

*Legal Aid Chicago v. Hunter Properties Inc.*,
    No. 1:23-CV-04809 (N.D. Ill. filed July 25, 2023) ......................... 1

*Little v. Wuerl*,
    929 F.2d 944 (3d Cir. 1991) ....................................................... 18

*Maguire v. Marquette Univ.*,
    627 F.Supp. 1499 (E.D. Wis. 1986) ........................................ 14, 16, 17

*McClure v. Salvation Army*,
    460 F.2d 553 (5th Cir. 1972) ...................................................... 6

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
    140 S. Ct. 2049 (2020) .............................................................. 20

*Panattoni v. Vill. of Frankfort*,
    No. 1:17-CV-06710 (N.D. Ill. dismissed Oct. 8, 2020) ..................... 2

*People v. Bowers*,
    194 N.E.3d 498 (Ill. App. Ct. 2021) ............................................. 2

*People v. Wells*,
    No. 127169 (Ill. argued Nov. 16, 2022) ......................................... 2

*Rayburn v. Gen. Conf. of Seventh-day Adventists*,
    772 F.2d 1164 (4th Cir. 1985) ..................................................... 7

*Spriesch v. City of Chicago*,
　　No. 17 C 1952, 2017 WL 4864913 (N.D. Ill. Oct. 26, 2017).....................................2

*Stachler v. Bd of Educ. of the City of Chicago*,
　　2021-L-010663 (Ill. Cir. Ct. 2021), *appeal docketed,* No. 1-22-1092 (Ill.
　　App. Ct. Sept. 26, 2022).....................................................................................1

*Starkey v. Roman Catholic Archdiocese of Indianapolis, Inc.*,
　　41 F.4th 931 (7th Cir. 2022) ...............................................................................10

*Trans World Airlines, Inc. v. Hardison*,
　　432 U.S. 63 (1977) ...............................................................................................11

*Ysleta Del Sur Pueblo v. Texas*,
　　142 S. Ct. 1929 (2022) .........................................................................................14

## Statutes

20 U.S.C. § 1681(a)(3) ..................................................................................................14

42 U.S.C. § 12113(d)(1) ..........................................................................................12, 13

42 U.S.C. § 12113(d)(2) ..........................................................................................13, 14

42 U.S.C. § 2000e(j) .............................................................................................9, 10, 11

42 U.S.C. § 2000e-1(a) .......................................................................................... passim

42 U.S.C. § 2000e-2(a)(1) .................................................................................4, 5, 9, 10

## Other Authorities

H.R. Rep. 101-485 (II), 76, (1990) *as reprinted in 1990* U.S.C.C.A............................13

## INTEREST OF *AMICI CURIAE*[1]

The American Civil Liberties Union ("ACLU") is a nationwide, nonprofit, nonpartisan organization with approximately two million members dedicated to defending the principles of liberty and equality embodied in the Constitution. The ACLU of Illinois is one of the ACLU's statewide affiliates with approximately 50,000 members. As organizations that advocate for religious liberty as well as equal rights for women, the ACLU, the ACLU of Illinois, and their members have a strong interest in the application of proper standards when evaluating constitutional challenges to civil rights laws.

*Amicus* ACLU has filed amicus briefs or served as counsel in numerous cases at the intersection of competing claims of religious liberty and sex discrimination in employment. *See, e.g.*, *Fitzgerald v. Roncalli High Sch., Inc.*, 73 F.4th 529 (7th Cir. 2023) (amicus); *CompassCare v. Hochul*, No. 22-951 (2d Cir. filed Apr. 29, 2022) (amicus); *Billard v. Charlotte Cath. High Sch.*, No. 3:17-cv-00011, 2021 WL 4037431, at *8 (W.D.N.C. Sept. 3, 2021), *appeal filed*, No. 22-1440 (4th Cir. Apr. 25, 2022) (counsel). *Amicus* ACLU of Illinois has been involved in important cases in recent years in Illinois involving the civil rights and liberties of women. *See, e.g., Legal Aid Chicago v. Hunter Properties Inc.*, No. 1:23-CV-04809 (N.D. Ill. filed July 25, 2023) (counsel); *Stachler v. Bd of Educ. of the City of Chicago*, 2021-L-010663

---

[1] This brief has not been authored, in whole or in part, by counsel to any party in this appeal. No person, other than the amici, their members, or their counsel, contributed money that was intended to fund preparation or submission of this brief. All parties have consented to the filing of this brief.

(Ill. Cir. Ct., Cook Cnty. 2021), *appeal docketed,* No. 1-22-1092 (Ill. App. Ct. Sept. 22, 2022) (amicus); *People v. Wells*, No. 127169 (Ill. argued Nov. 16, 2022) (amicus); *People v. Bowers*, 194 N.E.3d 498 (Ill. App. Ct. 2021) (amicus); *Hobby Lobby Stores, Inc v. Sommerville*, 186 N.E.3d 67 (Ill. App. Ct. 2021) (amicus); *Panattoni v. Vill. of Frankfort*, No. 1:17-CV-06710 (N.D. Ill. dismissed Oct. 8, 2020) (counsel); *Spriesch v. City of Chicago*, No. 17 C 1952, 2017 WL 4864913 (N.D. Ill. Oct. 26, 2017) (counsel).

## BACKGROUND

Moody Bible Institute ("Moody"), a religious college, hired Janay Garrick ("Garrick") to teach in its Communications Program. A.092 ¶ 5. Garrick alleges she suffered rampant gender discrimination and harassment from the school administration and her colleagues, including being denied benefits of employment granted to her male counterparts and enduring open disrespect and vitriol from her male peers. A.094 ¶ 26, A.096 ¶ 30, A.097-98 ¶ 35. When Garrick complained, Moody fired her. A.109 ¶ 85, A.112 ¶ 96. Garrick alleges that she was fired because she is a woman who complained about gender discrimination. A.110 ¶ 89, A.112 ¶¶ 96-97. Garrick brought claims for sex-based disparate treatment, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act, among other claims. A.112 ¶ 98 – A.117 ¶ 132.

Moody moved to dismiss Garrick's Second Amended Complaint, arguing that Garrick's claims are barred by principles of religious autonomy, Title VII's religious

exemption, and statute of limitations. Dkt. 103. The district court granted Moody's motion to dismiss as to Garrick's hostile work environment claim and denied the motion as to disparate treatment and retaliation based on sex. Dkt. 126. Of relevance here, the court held that Title VII's statutory exemption for religious employers "with respect to employment of individuals of a particular religion" did not bar Garrick's sex discrimination claim. Dkt. 126.

When Moody moved to reconsider, the court again refused to dismiss the sex discrimination claims and denied Moody's request to certify an interlocutory appeal. Dkt. 134. Moody filed a Notice of Appeal, claiming jurisdiction under the collateral order doctrine. Dkt. 142.

## SUMMARY OF ARGUMENT

*Amici* agree with Garrick that the Court does not have appellate jurisdiction over this case in general, nor over Moody's defense based on Section 702 in particular. If, however, the Court does find a jurisdictional basis to consider Section 702, *amici* urge the Court to reject Moody's broad interpretation of that provision, which is inconsistent with its text and history, and which contradicts all circuit court precedents on the issue.

The district court correctly ruled Garrick's sex discrimination claims could move forward because the Section 702 exemption applies only to claims for religious discrimination. On its face, Section 702 applies only "with respect to the employment of individuals of . . . a particular religion," 42 U.S.C. § 2000e-1(a),

3

which echoes Title VII's underlying prohibition on discrimination "with respect to . . . employment because of [an] individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). Because Section 702 does not provide for a similar exemption with respect to employment of individuals of a particular race, color, sex, or national origin, it does not bar plaintiffs from bringing claims for "discrimination with respect to . . . employment because of such individual's race, color, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

When Congress has wanted to protect religious organizations more broadly for all employment decisions based on the organization's religious tenets, it has done so in other statutes. But Congress repeatedly rejected amendments that would have provided such an exemption in Title VII. It is no surprise, therefore, that every circuit court to consider the question has held that Section 702 does not allow religious organizations to discriminate against employees based on sex, even when employers argued that the sex discrimination was grounded in religious beliefs.

This Court should reject Moody's invitation to depart from the plain text of Title VII and provide religious organizations an unfettered right to discriminate against their entire secular workforce based on any protected characteristic whenever they have a religious reason for doing so. If the Court rules on Section 702 at all, it should affirm the district court's order and remand for long-delayed proceedings in this case.

**ARGUMENT**

I.    **Title VII's Exemptions Do Not Provide a Defense for Policies or Practices That Discriminate Based on Race, Color, Sex, or National Origin.**

A. **Section 702 of Title VII exempts religious organizations from religious discrimination claims only.**

The district court correctly found that Title VII's exemption for religious organizations is limited to claims of religious discrimination. Dkt. 126. Title VII prohibits discrimination "against any individual with respect to. . . employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Against the backdrop of that general prohibition, Section 702 carves out a limited exception providing that "[t]his subchapter shall not apply to . . . a religious organization . . .with respect to the employment of individuals of a particular religion." 42 U.S.C. § 2000e-1(a). The plain language of Section 702 "exempts religious organizations from Title VII's prohibition against discrimination in employment on the basis of religion." *Corp. of Presiding Bishop of Church of Jesus Christ of Latter-day Saints v. Amos*, 483 U.S. 327, 329 (1987). It does not provide an exemption with respect to employment of individuals of a particular race, color, sex, or national origin.[2]

---

[2] Section 703(e) of Title VII provides a similar exemption for an educational institution that is "owned, supported, controlled, or managed" by a religious organization or "if the curriculum of such school. . . is directed toward the propagation of a particular religion." 42 U.S.C. § 2000e-2(e). As Moody concedes, both sections effectually do the same thing. See Moody's Br. 38; see also *Billard v.*

Every circuit to consider the question agrees: The exemption permits religious institutions to employ members of their own religion "without fear of being charged with religious discrimination. Title VII still applies, however, to a religious institution charged with sex discrimination." *Boyd v. Harding Acad. of Memphis, Inc.*, 88 F.3d 410, 413 (6th Cir. 1996) *accord Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189, 192 (4th Cir. 2011); *DeMarco v. Holy Cross High Sch.*, 4 F.3d 166, 173 (2d Cir. 1993); *EEOC v. Pac. Press Publ'g Ass'n*, 676 F.2d 1272, 1276 (9th Cir. 1982); *McClure v. Salvation Army*, 460 F.2d 553, 558 (5th Cir. 1972).

Courts also agree that Title VII prohibits religious organizations from engaging in sex discrimination even when that discrimination is motivated by religious beliefs. *Herx v. Diocese of Fort Wayne-S. Bend Inc.*, 48 F. Supp. 3d 1168, 1175-76 (N.D. Ind. 2014) (collecting cases), *appeal dismissed*, 772 F.3d 1085 (7th Cir. 2014); *Billard 2021 WL 4037431, at *8.* For example, in *Herx*, the district court found that Section 702 did not insulate a religious school's decision to not renew a teacher's contract after learning that she was undergoing in vitro fertilization in an effort to become pregnant, because – though the school's decision was based in its religious beliefs – the teacher's "Title VII claim alleges sex discrimination, not religious discrimination." *Herx*, 48 F. Supp. 3d at 1176. Similarly, in *Pacific Press*, a publishing house affiliated with the Seventh-day Adventist church could not fire an

*Charlotte Cath. High Sch.*, No. 3:17-cv-00011, 2021 WL 4037431, at *8 (W.D.N.C. Sept. 3, 2021), *appeal filed*, No. 22-1440 (4th Cir. Apr. 25, 2022).

employee for filing a charge of sex discrimination with the EEOC even though the employee had violated church doctrine that prohibited lawsuits by members against the church. *See Pac. Press*, 676 F.2d at 1276-77, 1280. In *EEOC v. Fremont Christian School*, a religious school could not enforce the religious belief that men should be the head of the household by paying health benefits to married men but not to married women. *See* 781 F.2d 1362, 1365-67 (9th Cir. 1986). And in *Cline v. Catholic Diocese of Toledo*, a religious employer could not enforce a religious prohibition on sexual activity outside marriage in a facially discriminatory manner by using "the mere observation or knowledge of pregnancy as its sole method of detecting violations of its premarital sex policy." 206 F.3d 651, 667 (6th Cir. 2000). Indeed, no circuit has ever held that Section 702 allows employers to discriminate based on sex. *See Bostock v. Clayton Cnty. Ga.,* 140 S. Ct. 1731,1781, n.55 (2020) (Alito, J., dissenting) (surveying existing circuit precedent interpreting Section 702 to provide "only narrow protection").[3]

These settled principles are consistent with Title VII's legislative history and purpose. *See Herx*, 48 F. Supp. 3d at 1175 (citing *Rayburn v. Gen. Conf. of Seventh-day Adventists*, 772 F.2d 1164, 1167 (4th Cir. 1985)). Congress repeatedly rejected proposals to expand the exemptions beyond claims for religious discrimination. The

---

[3] Moody argues that *Bostock*'s discussion of religious liberty doctrines implies that Section 702 is applicable in sex discrimination cases. Moody's Br. 43 (citing *Bostock v. Clayton Cnty., Ga*, 140 S. Ct. 1731). *Bostock*, however, did not address whether Section 702 could bar claims of sex discrimination – the majority mentions Section 702 only in recounting the ways Congress and the courts have struck a balance between employment protections and religious liberties. *Id*. at 1754.

original 1964 bill passed by the House of Representatives would have provided a complete exemption for religious organizations, but the Senate replaced it with a narrower exemption limited to the employment of individuals of a particular religion. *See* EEOC, Legislative History of Title VII and IX of Civil Rights Act of 1964 at 1004, 3004, 3017 (1968) ("1964 Legis. Hist."). In 1972, Congress expanded Section 702 to cover all of a religious organization's activities (not merely its religious ones) but rejected an amendment that would have covered all types of discrimination (not merely discrimination based on religion). *See EEOC v. Pac. Press Publ'g Ass'n*, 482 F. Supp. 1291, 1304 (N.D. Cal. 1979), *aff'd,* 676 F.2d 1272 (9th Cir. 1982) (collecting legislative history).

Employers cannot convert a claim of sex discrimination under Title VII to a case of religious discrimination by suggesting there was a religious reason behind the employment decision. The employer's motivation may be to enforce its religious teachings, "[b]ut [if] to achieve that purpose the employer must, along the way, intentionally treat an employee worse based in part on that individual's sex", then there is a clear violation of Title VII. *Bostock*, 140 S. Ct. at 1742. And Section 702's exemption for religious organizations covers only discrimination against individuals of a particular religion, not discrimination based on an individual's sex.

### B. Moody's broad interpretation of Section 702 contradicts its text, history, and prior precedents.

In the face of decades of settled precedent, Moody, relying on two single-judge concurrences, concludes that Section 702 allows religious organizations to engage in

race, color, sex, and national origin discrimination as long as the discrimination is grounded in their religious beliefs. Moody's Br. 37-45. This Court should reject such a broad interpretation of Section 702 – an interpretation that is inaccurate in its textual analysis, statutory construction, and evaluation of precedent.

## 1. Section 702's text

The text of Section 702 supports Garrick—not Moody. Moody emphasizes that Section 702 does not use the term "religious discrimination," but Title VII's underlying prohibitions do not use the term "religious discrimination" either. Rather, Title VII prohibits discrimination "because of [an] individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Section 702 tracks that phrasing by carving out an exception "with respect to the employment of individuals of a particular religion." 42 U.S.C. § 2000e-1(a). Both provisions focus on the attributes of the "individual," not the motivations of the employer.

Thus, the definition of "religion" in 42 U.S.C. § 2000e(j) upon which Moody relies simply indicates that protections from religious discrimination include the right to reasonable accommodations for an individual employee's religious practice. It does not provide religious organizations with new rights to use their own religious beliefs to discriminate based on an employee's race, color, sex, or national origin. After all, the relevant religion referred to in Section 702 is the religion of the "individual," not the religion of the employer.

Although Moody claims the plain text of Section 702 supports its interpretation, Moody repeatedly abbreviates the text to suit its purposes. Moody, citing the concurrences in *Starkey v. Roman Catholic Archdiocese of Indianapolis, Inc.* and *Fitzgerald v. Roncalli High Sch, Inc.*, first asserts that Section 702 applies to all discrimination claims—not just claims for religious discrimination—because Section 702 says "this subchapter shall not apply" and the subchapter "comprises all of Title VII." Moody's Br. 38 citing *Starkey v. Roman Catholic Archdiocese of Indianapolis, Inc.*, 41 F.4th 931, 945-47 (7th Cir. 2022) (Easterbrook, J., concurring); *Fitzgerald v. Roncalli High Sch, Inc.*, 73 F. 4th 529, 534 (7th Cir. 2023) (Brennan, J., concurring). But that argument does not account for the rest of the sentence, which exempts religious organizations only "with respect to the employment of individuals of a particular religion to perform work connected with the carrying on by such corporation, association, educational institution, or society of its activities." 42 U.S.C. § 2000e-1(a). Thus, Title VII does not apply to religious organizations with respect to discrimination "because of [an] individual's . . . religion," but does apply with respect to discrimination "because of such individual's race, color, . . . sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).

Moody also asserts that Section 702 provides an exemption for religiously motivated sex discrimination because Title VII defines "religion" to include "belief," "observance," or "practice." Moody's Br. 39 (quoting 42 U.S.C. § 2000e(j)). But again, it quotes just a fragment of the definition. The full definition states that "[t]he term 'religion' includes all aspects of religious observance and practice, as well as belief,

unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). "The intent and effect of this definition was to make it an unlawful employment practice . . . for an employer not to make reasonable accommodations, short of undue hardship, for the religious practices of his employees and prospective employees[]", *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63, 74 (1977), - *not* to expand the scope of religion-based discrimination to subsume discrimination against *all* protected categories when *motivated* by religion.

### 2. Section 702's comparison to other discrimination laws and its legislative history

Unable to find textual support for its interpretation of Section 702's religious exemption, Moody attempts to draw analogies to other statutory provisions that it contends have been interpreted to provide more comprehensive exemptions. Moody's Br. 40-41. But Moody's analogies fall flat because Moody misunderstands the statutes it cites.

Moody first argues that Section 702's religious exemption "must be read equally broadly" as Section 702's "alien exemption."[4] See Moody's Br. 40. But there

---

[4] Moody misunderstands what the "alien exemption" actually does. Noncitizens outside the United States are excluded from the scope of Title VII because they are not encompassed in Title VII's definition of "employee" in 42 U.S.C. § 2000e(f)—not because of Section 702. That is because the Supreme Court held in *EEOC v. Arabian American Oil Co.*, 499 U.S. 244 (1991), that Title VII did not apply to the employment of anyone outside the United States, rendering the "alien exemption"

are crucial textual differences between the "alien exemption" and the limited exemption for religious organizations. The original version of Section 702 passed by the House provided a categorical exemption for employment of aliens abroad and for religious organizations; it provided that "[t]his title shall not apply to an employer with respect to the employment of aliens outside any State, or to a religious corporation, association, or society." See 1964 Legis. Hist. at 3050 (reprinting annotated text of House bill showing Senate changes). The Senate then added new language limiting the exemption for religious organizations to an exemption "with respect to the employment of individuals of a particular religion." *Id*. The 'alien exemption' does not contain similar phrasing about an "individual's" characteristics and cannot provide any guidance on how the phrase "individuals of a particular religion" should be interpreted. 42 U.S.C. § 2000e-1(a). When Congress adds text to limit the scope of one exemption and not the other, there is no basis for courts to interpret the two as "carry[ing] analogous meanings" as Moody contends. Moody's Br. 40.

Moody also attempts to analogize Section 702 to two provisions in the Americans with Disabilities Act ("ADA"), but those analogies are even less convincing. Moody's Br. 41. The first ADA provision states that "[t]his subchapter shall not prohibit a religious [organization] . . . from giving preference in

---

functionally irrelevant. Congress responded by amending the definition of "employee" to provide that "[w]ith respect to employment in a foreign country, such term includes an individual who is a citizen of the United States." 42 U.S.C. § 2000e(f).

employment to individuals of a particular religion." 42 U.S.C. § 12113(d)(1). That provision does not allow religious organizations to discriminate based on a person's disability (whether for religious reasons or otherwise). It merely provides reassurances that religious organizations are not prohibited "from giving preference in employment to individuals of a particular religion" over a qualified person with a disability. 42 U.S.C. § 12113(d)(1) (emphasis added). "Thus, assume that a Mormon organization wishes to hire only Mormons to perform certain jobs. If a person with a disability applies for the job, but is not a Mormon, the organization can refuse to hire him or her." H.R. Rep. 101-485 (II), 76, (1990) *as reprinted in 1990* U.S.C.C.A.N. 303, 359.

The second ADA provision further undermines Moody's attempted analogy. That provision states that religious organizations "may require that all applicants and employees conform to the religious tenets of such organization." 42 U.S.C. § 12113(d)(2). That language was deliberately drawn from the religious exemption in Title IX, which is more sweeping than the Title VII language. The House Report notes that the "religious tenets" provision contains language "not included in title VII," and specifically instructs that "[t]he inclusion of a 'religious tenets' defense [in the ADA] is not intended to affect in any way the scope given to section 702 of title VII." H.R. Rep. 101-485 (II), 77, (1990) *as reprinted in 1990* U.S.C.C.A.N. 303, 359. Since Congress drafted the ADA's religious exemption on the express understanding that it was *broader* than the Title VII exemption, it makes no sense to retrofit Section 702 to the language in the ADA.

13

Importantly, Moody fails to identify any text in Section 702 referring to the employer's religious motivations. In other antidiscrimination statutes, Congress has provided religious organizations exemptions based on the organization's "religious tenets." *See* 20 U.S.C. § 1681(a)(3) (Title IX); 42 U.S.C. § 12113(d)(2) (ADA). But Congress did not include the same language in Title VII. *Cf. Ysleta Del Sur Pueblo v. Texas*, 142 S. Ct. 1929, 1941 n.2 (2022) ("[R]ather than compare the [statute] to hypothetical language Congress could have used, it seems more appropriate to compare [its] terms to language Congress did use in closely related statutes[.]").

### 3. Section 702's interpretation

No circuit court has ever held that Section 702 allows employers to engage in religiously motivated discrimination based on race, color, sex, or national origin. *See Boyd*, 88 F.3d at 413; *Kennedy*, 657 F.3d at 192; *DeMarco*, 4 F.3d at 173; *Pac. Press Publ'g Ass'n*, 676 F.2d at 1276. Instead, Moody relies on non-controlling cases that do not address that question, much less resolve it. Moody's Br. 42-43 citing *Curay-Cramer v. Ursuline Acad. of Wilmington, Del., Inc.*, 450 F.3d 130 (3d Cir. 2006), *EEOC v. Miss. Coll.*, 626 F.2d 477 (5th Cir. 1980), and *Maguire v. Marquette Univ.*, 627 F.Supp. 1499, 1502-04 (E.D. Wis. 1986).

In *Curay-Cramer* a school fired a teacher for including her name on a political advertisement supporting *Roe v. Wade. See* 450 F.3d at 132. Although firing teachers for engaging in pro-choice advocacy is not sex discrimination in and of itself, the employee alleged that the school engaged in sex discrimination by

punishing women more harshly for publicly supporting abortion than it would have punished men who opposed religious teachings on different issues (such as the Iraq war). See *id*. at 139. The Third Circuit rejected that argument because the plaintiff's theory required the court to balance the relative importance of different religious doctrines, which would force the court to answer an ecclesiastical question in violation of constitutional principles of church autonomy. *Id*. at 141.

*Curay-Cramer* did not, however, adopt the expansive reading of Section 702 that Moody advocates here, which would provide a blanket exemption whenever employment discrimination is motivated by religious belief regardless of whether the claim could be addressed without answering ecclesiastical questions. To the contrary, *Curay-Cramer* emphasized, "under most circumstances, Title VII's substantive provisions, *with the exception of the prohibition against religious discrimination*, apply to religious employers." *Id*. at 140 (emphasis added). As the court noted, this reading accords with the statute's legislative history. *Id*. Moreover, a claim of sex discrimination need not be dismissed merely because the plaintiff seeks to show that an employer's proffered religious reason for its action was pretextual. *Id*. at 142. Rather, the court dismissed the case only because it would require courts to "compare the relative severity of violations of religious doctrines."

The court therefore "caution[ed] religious employers against over-reading the impact of our holding," *id.*, which is exactly what Moody does here.[5]

Likewise, in *Mississippi College*—an EEOC action to enforce a subpoena it issued to a religious school—the Fifth Circuit did not deviate from its prior holding that Section 702 allowed religious organizations to discriminate on the basis of religion but not on the basis of any other protected characteristic. 626 F.2d at 484. The court held that if a religious institution "presents convincing evidence" that the challenged employment practice is based on religion—and not based on race, color, sex, religion, or national origin—then the EEOC should not investigate further. *Id.* at 485. But the court indicated that policies "clearly predicated on religious belief. . . might not be protected by Section 702" if they *also* discriminate based on sex, such as "the College's policy of hiring only men to teach courses in religion." *Id.* at 487. Here, Garrick has alleged claims of sex discrimination, and the court has not yet received any evidence regarding Moody's actual reasons for terminating her employment.

Moody's reliance on *Maguire v. Marquette Univ.*, 627 F. Supp. 1499 (E.D. Wis. 1986), is similarly inapposite. Moody's Br. 43. In that case, the district court held that Section 702 precluded the plaintiff's sex discrimination case against a

---

[5] Moody's invocation of the EEOC's 2021 guidance fails for the same reasons. See Moody's Br. 43. Like *Curay-Cramer*, that guidance merely acknowledges that principles of church autonomy might prevent a plaintiff from probing a facially neutral policy to establish pretext. The guidance does not purport to overturn the EEOC's longstanding position that Section 702 does not allow religious employers to engage in race, color, sex, or national-origin discrimination for religious reasons.

Catholic university that refused to hire her as a theology professor because of her views about abortion. On appeal, however, this Court expressly declined to adopt the district court's (or any) interpretation of Section 702 because the alleged conduct was not discrimination based on sex. That is, the problem was not that plaintiff was a woman, but her beliefs about abortion, beliefs that would also disqualify a man. *See Maguire v. Marquette Univ.*, 814 F.2d 1213, 1217-18 (7th Cir. 1987).

Moody dismisses the court's opinion as decided on "other grounds," Moody's Br. at 43, but the district court's misunderstanding of the nature of the claim was key to its interpretation of Section 702. The court perceived that significant First Amendment problems would arise from attempting to hold a religious university liable for insisting that its theology faculty conform to certain beliefs, and it interpreted the provision accordingly (and much more narrowly than Moody does). Specifically, Section 702 "should be read to allow the hiring committee of a theology department in a college controlled by a religious society broad latitude when it makes a decision to hire 'employees of a particular religion.'" *Maguire,* 627 F. Supp. at 1506. These complications do not necessarily arise when a plaintiff actually alleges that she was treated differently because of her sex. Again, Moody will have an opportunity to show that each of the alleged acts of discrimination were about belief rather than sex, or that adjudicating the case will require undue inquiry about its religious beliefs. These are both factual questions that the Court should not attempt to resolve in the absence of a factual record.

Moody also cites *Little v. Wuerl*, 929 F.2d 944 (3d Cir. 1991) for the proposition that Section 702 authorizes Moody to "employ only persons whose beliefs and conduct are consistent with [its] religious precepts." Moody's Br. 40 (citing *Little*, 929 F.2d at 951). But *Little*, a case involving claims for religious discrimination and not sex discrimination, affirmed that Section 702 allows religious employers to enforce their religious beliefs without being sued by employees for *religious* discrimination. *Little*, 929 F.2d at 951 (emphasis added). *Little* did not grant free-standing authority to use religious beliefs to discriminate based on race, color, sex, or national origin.

Moody then suggests that *Kennedy v. St. Joseph's Ministries, Inc.*, 657 F.3d 189 (4th Cir. 2011) and *Garcia v. Salvation Army*, 918 F.3d 997 (9th Cir. 2019) support its position to expand the religious exemption to bar claims of sex discrimination. Moody's Br. 45. Both, however, are straightforward cases of religious discrimination, not sex—without any allegations of discrimination based on race, color, sex, or national origin.[6]

---

[6] In *Kennedy*, the Fourth Circuit rejected the plaintiff's argument that Section 702's exemption for "employment of individuals of a particular religion" referred only to hiring and firing and did not bar his claims for religious harassment and retaliation. *See* 657 F.3d at 192-94. The *Kennedy* court interpreted "employment" to include all forms of *religious* discrimination, but explicitly reaffirmed that Section 702 "does not exempt religious organizations from Title VII's provisions barring discrimination on the basis of [an individual's] race, gender, or national origin." *Id*. at 192.

Moody is ultimately able to cite only a single, out-of-circuit, district court decision that actually adopts its interpretation of Section 702. See Moody's Br. 43 (citing *Bear Creek Bible Church v. EEOC*, 571 F. Supp. 3d 571, 591 (N.D. Tex. 2021)). As explained above, this view of Section 702 contradicts the great weight of authority and was not endorsed by the Fifth Circuit on appeal. *See Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914, 936 (5th Cir. 2023) (noting that "[n]o party appeals this ruling on the merits, so we pretermit discussion of it." (footnote omitted)).

The text, structure, and history of Section 702 all confirm that the statute does not authorize organizations to use religious beliefs to discriminate against their entire secular workforce based on race, color, sex, or national origin.

## II.     Adopting Moody's Interpretation of Section 702 Would Gut Employment Protections.

Title VII's purpose of remedying employing discrimination and improving economic and social conditions of women and people of color in the workplace is furthered by broad employment protections with only limited exceptions. Adopting

---

The Ninth Circuit similarly held that Section 702 precluded claims of religious retaliation and harassment, *Garcia*, 918 F.3d at 1004, and rejected the plaintiff's attempt to avoid Section 702 by arguing that she had no cause of action *labeled* as "religious discrimination." *Id.* at 1005. The court held that Section 702 covered her claims of religious harassment and retaliation regardless of the title of the counts. Because *only* religious harassment and retaliation claims were alleged, the court did *not* rule on Section 702's application to claims based on sex or other protected characteristics as Moody implies. *Id.* at 1101.

Moody's interpretations of Section 702 would give religious organizations a wide license to discriminate against their employees. This could have an enormous impact. Religious organizations employ nearly 1.7 million people in the United States[7] and include churches, schools, hospitals, financial services, broadcasting, and endowments, in addition to the "countless coaches, camp counselors, . . . social-service workers, in-house lawyers, media-relations personnel, and many others." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2082 (2020) (Sotomayor, J., dissenting). Seventy-eight percent of private schools in the United States were religiously affiliated in 2014[8], and 14.5 percent of hospitals were religiously affiliated in 2016.[9] Most staff at these institutions work in non-religious roles. For example, the National Catholic Educational Association reports that 97.4 percent of professional staff at Catholic schools are laity and only 2.6 percent are religious staff or clergy.[10]

---

[7] IBIS World, *Religious Organizations in the US - Employment Statistics 2004–2029*, https://www.ibisworld.com/industry-statistics/employment/religious-organizations-united-states/ (last visited Sept. 5, 2023).

[8] Council for American Private Education, *Private School Statistics at a Glance*, https://capenetwork.org/private-school-statistics-at-a-glance/ (last visited Sept. 5, 2023).

[9] MergerWatch, *Growth of Catholic Hospitals and Health Systems: 2016 Update of the Miscarriage of Medicine Report*, http://static1.1.sqspcdn.com/static/f/816571/27061007/1465224862580/MW_Update-2016-MiscarrOfMedicine-report.pdf?token=BQ0NpBtNtozUjG34D7zm6R5p8lw%3D (last visited Sept. 5, 2023).

[10] National Catholic Educational Association, *Enrollment and Staffing*, https://www.ncea.org/NCEA/Who_We_Are/About_Catholic_Schools/Catholic_School

Moody's proposed interpretations would gut Title VII protections for these 1.7 million employees. To take two examples, a religious organization would be free to pay women less or refuse to hire people of color, as long as the employer alleges a religious motivation. These are precisely the types of employment decisions that our nation's anti-discrimination laws seek to prevent. Accepting Moody's radical analysis would improperly limit our civil rights protections far beyond anything Title VII requires.

## CONCLUSION

For the foregoing reasons, this Court should affirm the district court's judgment.

Dated: September 8, 2023          Respectfully submitted,

/s/ Aditi Fruitwala

ADITI FRUITWALA
DANIEL MACH
JOSHUA BLOCK
American Civil Liberties Union Foundation
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500
afruitwala@aclu.org
dmach@aclu.org
jblock@aclu.org

AMERI R. KLAFETA
REBECCA GLENBERG
Roger Baldwin Foundation of ACLU, Inc.
150 N. Michigan Ave, Suite 600
Chicago, IL 60601
Tel: (312) 201-9740

---

_Data/Enrollment_and_Staffing.aspx?WebsiteKey=60819b28-9432-4c46-a76a-a2e20ac11cfd (last visited Sept. 5, 2023).

aklafeta@aclu-il.org
rglenberg@aclu-il.org

*Counsel for Amici Curiae*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that:

    1.  This brief complies with the type-volume limitation of Fed. R. App. P. 29(b)(4) because excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains 5,881 words.

    2.  This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface with 12-point Century Schoolbook font.

Dated: September 8, 2023               */s/ Aditi Fruitwala*

                                      Aditi Fruitwala

                                        *Counsel for Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that on September 8, 2023, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Seventh Circuit by using the appellate CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

Date:  September 8, 2023          */s/ Aditi Fruitwala*

Aditi Fruitwala


*Counsel for Amici Curiae*