No. 21-2683

# In the United States Court of Appeals for the Seventh Circuit

JANAY E. GARRICK,

*Plaintiff-Appellee,*

v.

MOODY BIBLE INSTITUTE,

*Defendant-Appellant.*

On Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division
Case No. 1:18-cv-00573 – Judge John Lee, Magistrate Judge Young Kim

## APPELLANT'S REPLY BRIEF

Christian M. Poland
BRYAN CAVE LEIGHTON
  PAISNER LLP
161 N. Clark St.,
  Ste. 4300
Chicago, IL 60601-3315
(312) 602-5085
christian.poland@bclplaw.com

Daniel H. Blomberg
Luke W. Goodrich
Laura Wolk Slavis
Colten L. Stanberry
THE BECKET FUND FOR
  RELIGIOUS LIBERTY
1919 Pennsylvania Ave. N.W.,
  Ste. 400
Washington, DC 20006
(202) 955-0095
dblomberg@becketlaw.org

*Counsel for Defendant-Appellant*

## TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................... 1

ARGUMENT ............................................................................................ 2

   I.  This Court has jurisdiction. ............................................................. 2

     A. *McCarthy* confirms this Court's jurisdiction. ............................... 3

     B. Other caselaw confirms this Court's jurisdiction. ........................ 5

  II. The First Amendment bars Garrick's claims. .................................... 8

     A. The Religion Clauses bar employment claims that entangle courts in matters of religious belief, doctrine, and governance. .................. 9

     B. Garrick's Title VII claims are barred by the Religion Clauses. ................. 13

  III.  Title VII's religious exemption bars Garrick's claims. ................................. 17

     A. Title VII allows religious organizations to make employment decisions based on religious "belief," "observance," or "practice." ............. 18

     B. This Court can and should reach Moody's Title VII argument. ................. 21

CONCLUSION ....................................................................................... 22

CERTIFICATE OF COMPLIANCE .......................................................... 23

CERTIFICATE OF SERVICE ................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*303 Creative v. Elenis,*
    142 S.Ct. 2298 (2023) ........................................................... 14

*Adeyeye v. Heartland Sweeteners,*
    721 F.3d 444 (7th Cir. 2013) ................................................ 19

*Asset Allocation v. W. Emps. Ins.,*
    892 F.2d 566 (7th Cir. 1989) ................................................ 22

*Barnes v. Black,*
    544 F.3d 807 (7th Cir. 2008) .................................................. 3

*Belya v. Kapral,*
    59 F.4th 570 (2d Cir. 2023) .................................................... 6

*Bryce v. Episcopal Church,*
    289 F.3d 649 (10th Cir. 2002) ........................................... 9, 12

*Catholic Bishop v. NLRB,*
    559 F.2d 1112 (7th Cir. 1977) ......................................*passim*

*CLS v. Walker,*
    453 F.3d 853 (7th Cir. 2006) ................................................ 12

*Combs v. Central Tex. Ann. Conf.,*
    173 F.3d 343 (5th Cir. 1999) ................................................ 11

*Conlon v. InterVarsity Christian Fellowship,*
    777 F.3d 829, 836 (6th Cir. 2015) ......................................... 7

*Corp. of Presiding Bishop v. Amos,*
    483 U.S. 327 (1987) ............................................................. 10

*Curay-Cramer v. Ursuline Acad.,*
    450 F.3d 130 (3d Cir. 2006) ......................................... 6, 9, 16

*Demkovich v. St. Andrew the Apostle Parish,*
    3 F.4th 968 (7th Cir. 2021) ............................................*passim*

*Demkovich v. St. Andrew the Apostle Parish,*
    343 F.Supp.3d 772 (N.D. Ill. 2018) ..................................... 17

*Digit. Equip. v. Desktop Direct*,
    511 U.S. 863 (1994) ................................................................ 3

*Digit. Realty Tr. v. Somers*,
    138 S.Ct. 767 (2018) ............................................................. 18

*Diocese of Brooklyn v. Cuomo*,
    141 S.Ct. 63 (2020) ................................................................ 5

*EEOC v. Catholic Univ.*,
    83 F.3d 455 (D.C. Cir. 1996) ................................................. 7

*EEOC v. Kroger Ltd.*,
    608 F.Supp.3d 757 (E.D. Ark. 2022) .................................... 19

*Fitzgerald v. Roncalli High Sch.*,
    73 F.4th 529 (7th Cir. 2023) .........................................*passim*

*Fort Wayne Books v. Indiana*,
    489 U.S. 46 (1989) ................................................................ 8

*Garcia v. Salvation Army*,
    918 F.3d 997 (9th Cir. 2019) ............................................... 14

*Grussgott v. Milwaukee Jewish Day Sch.*,
    882 F.3d 655 (7th Cir. 2018) ............................................... 15

*Herx v. Diocese of Fort Wayne*,
    772 F.3d 1085 (7th Cir. 2014) ............................................... 3

*Hill v. Madison County*,
    983 F.3d 904 (7th Cir. 2020) ............................................... 22

*Hosanna-Tabor v. EEOC*,
    565 U.S. 171 (2012) ....................................................*passim*

*Indiana Right to Life v. Morales*,
    66 F.4th 625 (7th Cir. 2023) .......................................... 21, 22

*Jamie S. v. Milwaukee Pub. Schs.*,
    668 F.3d 481 (7th Cir. 2012) ............................................... 22

*Jennings v. Rodriguez*,
    138 S.Ct. 830 (2018) ............................................................. 20

*Korte v. Sebelius*,
    735 F.3d 654 (7th Cir. 2013) ............................................... 22

*Leonard v. Martin,*
    38 F.4th 481 (5th Cir. 2022) ................................................................. 8

*Maguire v. Marquette Univ.,*
    814 F.2d 1213 (7th Cir. 1987) ............................................................ 14

*Marceaux v. Lafayette City-Par. Consol. Gov't,*
    731 F.3d 488 (5th Cir. 2013) ................................................................. 8

*McCarthy v. Fuller,*
    714 F.3d 971 (7th Cir. 2013) ............................................................ 1, 5

*McCarthy v. Fuller,*
    810 F.3d 456 (7th Cir. 2015) ................................................................. 3

*McClendon v. City of Albuquerque,*
    630 F.3d 1288 (10th Cir. 2011) ............................................................ 3

*N.E. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n,*
    707 F.3d 883 (7th Cir. 2013) ............................................................... 22

*NLRB v. Catholic Bishop,*
    440 U.S. 490 (1979) ...................................................................*passim*

*Our Lady of Guadalupe Sch. v. Morrissey-Berru,*
    140 S.Ct. 2049 (2020) ....................................................... 9, 11, 13, 20

*Roman Catholic Archdiocese of San Juan v. Feliciano,*
    140 S.Ct. 696 (2020) ............................................................................ 8

*In re Sealed Case,*
    77 F.4th 815 (D.C. Cir. 2023) ............................................................. 3

*Serbian E. Orthodox Diocese v. Milivojevich,*
    426 U.S. 696 (1976) ................................................................ 2, 5, 11, 13

*St. Augustine Sch. v. Underly,*
    78 F.4th 349 (7th Cir. 2023) ............................................................... 21

*Starkey v. Roman Catholic Archdiocese,*
    41 F.4th 931 (7th Cir.2022) .............................................................*passim*

*Tagore v. United States,*
    735 F.3d 324 (5th Cir. 2013) .............................................................. 17

*In re Text Messaging Antitrust Litig.,*
    630 F.3d 622 (7th Cir. 2010) ................................................................ 2

*Tomic v. Catholic Diocese,*
   442 F.3d 1036 (7th Cir. 2006) ............................................................ 5-6, 11, 17

*Tucker v. Faith Bible Chapel,*
   36 F.4th 1021 (10th Cir. 2022) ................................................................ 4, 5

*United States v. Kerley,*
   753 F.2d 617 (7th Cir. 1985) .................................................................... 7-8

*United States v. Segal,*
   432 F.3d 767 (7th Cir. 2005) ...................................................................... 3

*United States v. Vargas,*
   915 F.3d 417 (7th Cir. 2019) .................................................................... 21

*University of Great Falls v. NLRB,*
   278 F.3d 1335 (D.C. Cir. 2002) ................................................................ 11

*Whole Woman's Health v. Smith,*
   896 F.3d 362 (5th Cir. 2018) ............................................................ 2, 8, 21

## Statutes

28 U.S.C. § 1257 .............................................................................................. 8

28 U.S.C. § 1258 .............................................................................................. 8

28 U.S.C. § 1291 .......................................................................................... 3, 7

42 U.S.C. § 12113 .......................................................................................... 20

42 U.S.C. § 2000e ..................................................................................... 18, 19

42 U.S.C. § 2000e-1 .................................................................................. 18, 19

42 U.S.C. § 2000gg-5 ............................................................................... 19, 20

## Other Authorities

EEOC Compliance Manual (Jan. 15, 2021) ................................................... 7

McCormick on Evidence (8th ed. 2022) ........................................................ 14

## INTRODUCTION

Garrick admits Moody Bible Institute sincerely believes the clergy should be composed of qualified men. She admits she rejects that belief, despite repeatedly signing Moody employment contracts claiming she fully affirmed it. And she admits that it was only after she chose to openly fight against this belief on campus that Moody chose to end her role in its ministry. These admissions alone bring this case squarely within the protections of the Constitution, Title VII, and common sense.

Yet Garrick, now joined by the EEOC, insists she can drag Moody through years of intrusive litigation to have a jury second-guess whether she was a good "fit" at a religious school whose faith she was actively subverting. Resp.10. Garrick argues that this is constitutional because the First Amendment protects *only* against liability and *only* when it flows from a court dictating theology. But, as Moody explained, courts have long rejected this narrow view.

So has Congress, as Title VII's religious exemptions show. Garrick and the EEOC try to evade that conclusion via self-contradictory arguments, insisting this Court ignore whether Title VII even allows Garrick's claims *while also* insisting this Court find that Congress intended to allow the entanglement her claims require. The attempted evasion is a tell.

This case is straightforward. First, under *McCarthy v. Fuller*, this Court has jurisdiction to protect church autonomy rights from irreparable harm caused by judicial proceedings. 714 F.3d 971 (7th Cir. 2013). Second, under *Catholic Bishop v. NLRB*, church autonomy precludes an entangling inquiry into pretext when a teacher at a religious school has been terminated for undisputedly advocating on campus against the school's sincere religious beliefs. 559 F.2d 1112 (7th Cir. 1977) ("*NLRB*"). That's even clearer here, where Garrick's own pleadings admit the genuineness of Moody's religious justification. Third, as Judges Easterbrook and Brennan explained, Congress never authorized lawsuits over religious disputes about clergy composition in

the first place. *Starkey v. Roman Catholic Archdiocese*, 41 F.4th 931, 939 (7th Cir.2022) (Easterbrook, J., concurring); *Fitzgerald v. Roncalli High Sch.*, 73 F.4th 529, 534 (7th Cir. 2023) (Brennan, J., concurring).

Accepting Garrick's contrary arguments would "undermine the general rule that religious controversies are not the proper subject of civil court inquiry," plunging courts "into a religious thicket." *Serbian E. Orthodox Diocese v. Milivojevich,* 426 U.S. 696, 713, 719 (1976). And it would allow religious dissenters to use deeply entangling litigation as leverage in religious disputes. If telecommunications companies cannot face "the discovery swamp—'that Serbonian bog … where armies whole have sunk'"— without the "irrevocable as well as unjustifiable harm … that only an immediate appeal can avert," *In re Text Messaging Antitrust Litig.*, 630 F.3d 622, 625-26 (7th Cir. 2010) (quoting *Paradise Lost* ix 592-94), the same is true of nonprofit religious schools. This Court has jurisdiction and should reverse.

## ARGUMENT

### I. This Court has jurisdiction.

Like an immunity, the church-autonomy doctrine bars irreparable harm caused by judicial proceedings, not just liability, and is thus eligible for interlocutory review. Br.15-26. That's what this Court held in *McCarthy*, what the Fifth Circuit concluded in *Whole Woman's Health v. Smith*, 896 F.3d 362 (5th Cir. 2018), what numerous state high court decisions have explained for decades, Br.23, and what leading scholars argue is constitutionally required, Scholars Br.8-9, Muller Br.2-3. Even Garrick admits *McCarthy* allows interlocutory appeal of orders entangling the judiciary in "answer[ing] a specific religious question" and that *Whole Woman's Health* allows appeals of "church-autonomy issues"; and she has no substantive answer to the numerous state courts and scholars. Resp.25. Thus, Moody has shown at least a "substantial claim" to immunity sufficient to permit interlocutory appeal. Br.26.

### A. *McCarthy* confirms this Court's jurisdiction.

Garrick's and the EEOC's contrary arguments founder on *McCarthy*. Garrick says this Court can't recognize a "new" category of interlocutory appeal that protects church-autonomy interests from judicial harm. Resp.3, 20-22. But *McCarthy* already did, Br.15-18, and Garrick quietly agrees. *Compare* Resp.25 (*McCarthy* holds "religious question" appealable) *with* Resp.18 ("church-autonomy doctrine forbids courts to decide religious questions"). Her own authority agrees that "courts in our constitutional order are bound" to ensure statutory finality policy does not harm First Amendment rights, and thus "'should construe … §1291 to foster harmony with … constitutional law.'" *McClendon v. City of Albuquerque*, 630 F.3d 1288, 1296 (10th Cir. 2011) (quoting *Digit. Equip. v. Desktop Direct,* 511 U.S. 863, 879 (1994)); Resp.20-21. Again, that's what *McCarthy* did. Muller Br.38; Scholars Br.8. Courts often do as much in far less constitutionally fraught cases, from criminal appeals (which construe finality more "strictly") to basic nondisclosure orders. *United States v. Segal*, 432 F.3d 767, 774-75 (7th Cir. 2005); *In re Sealed Case*, 77 F.4th 815, 825-26 (D.C. Cir. 2023); Br.18.

Next, Garrick (at 23) and the EEOC (at 30) claim *Herx v. Diocese of Fort Wayne* categorically bars church-autonomy rights from interlocutory appeal. 772 F.3d 1085 (7th Cir. 2014). But *Herx* held "only" that the appellant failed to make a "persuasive case" in the "few sentences" it used to address collateral-order review. Br.24. More importantly, *Herx* confirmed *McCarthy*'s holding that denial of a church-autonomy defense is "closely akin to a denial of official immunity," and "collateral-order appeal" is appropriate to "vindicate [an] important religious-liberty principle" that faces "irreparable harm." 772 F.3d at 1091; *see also McCarthy v. Fuller*, 810 F.3d 456, 458-59 (7th Cir. 2015) (post-*Herx* ruling favorably recounting earlier exercise of interlocutory jurisdiction); *Barnes v. Black*, 544 F.3d 807, 811 (7th Cir. 2008) ("the purpose of the collateral order doctrine" is to allow "appeal from a nonfinal order … when deferring appeal *could* inflict irreparable harm" (emphasis added)).

Garrick's and the EEOC's remaining arguments also fail under *McCarthy*. Garrick claims official immunity is not comparable to church autonomy. Resp.34. But *McCarthy,* many unrefuted cases, and scholars say they are. Br.21-23; Scholars Br.10-29. The EEOC argues that because church autonomy is not jurisdictional, it is ineligible for interlocutory appeal. EEOC Br.27-28. But *McCarthy* and qualified immunity show that's a non-sequitur. Scholars Br.34-35. Garrick complains church autonomy's protection from Title VII intrusion isn't rooted in the Constitution's text. Resp.29. But that's not true ("Congress shall make no law…"), and even if it were, the lack of a textual hook doesn't prevent qualified immunity appeals. Scholars Br.18-24; Muller Br.23-24. Garrick and the EEOC point to a sharply contested Second Circuit decision barring interlocutory appeal for some church-autonomy defenses. Resp.25; EEOC Br.17.[1] But that case is both distinguishable and wrong, and *McCarthy* is binding precedent regardless. Br.16-18. Garrick claims alternatives like mandamus prevent collateral-order relief here. Resp.21-22. But *McCarthy* didn't require vaulting that very high standard, nor do other immunities. *See also* Br.13 (Moody sought Section 1292(b) certification). Garrick warns it will "clog this Court's docket" to allow appeal. Resp.37. But the experience of this Court since *McCarthy*, the Fifth Circuit since *Whole Woman's Health*, and numerous state courts for decades belies her concern.

*McCarthy* applies here. Garrick rejected Moody's religious beliefs and practices concerning clergy composition, rejected her supervisors' requests to act with integrity regarding Moody's "doctrinal statement on gender roles," and chose to "stay and fight" against Moody's beliefs via vocal on-campus advocacy. A.100-01 ¶45, A.125. Now Garrick insists that courts must determine whether this undisputed "disagreement about gender roles in the ministry" in fact "made her a poor fit for Moody." Resp.12.

---

[1]   Garrick also cites to *Tucker v. Faith Bible Chapel* for support, Resp.26, but that decision declined to reach the more "difficult" church-autonomy issues raised here. 36 F.4th 1021, 1032 n.7 (10th Cir. 2022).

But civil intrusion into such "essentially religious controversies" is precisely what the First Amendment forbids. *Milivojevich*, 426 U.S. at 709. And subjecting Moody to intrusive, entangling, and chilling judicial second-guessing will irreparably hamstring its right to ensure employee alignment with its faith. Religious Colleges Br.29-34. The loss of such rights even for "minimal" periods "unquestionably constitutes irreparable injury." *Diocese of Brooklyn v. Cuomo*, 141 S.Ct. 63, 67 (2020). The threat of losing them for years easily merits interlocutory review under *McCarthy*.

**B. Other caselaw confirms this Court's jurisdiction.**

As the EEOC concedes (at 27), the "critical question" for jurisdiction is whether the church autonomy right at issue protects against trial, not just liability.[2] The answer is yes. In case after case, the Supreme Court, this Court, other circuits, and state high courts have recognized that "[i]t is not only the *conclusions* that may be reached by [the government] which may impinge on rights guaranteed by the Religion Clauses, but also the *very process of inquiry* leading to findings and conclusions." *NLRB v. Catholic Bishop*, 440 U.S. 490, 502 (1979) ("*Catholic Bishop*") (emphasis added); Br.19-21 (collecting cases); Belmont Br.19 (same).

Garrick and the EEOC don't address *Catholic Bishop*'s rule. Instead, they argue it is irrelevant because the case concerned the NRLA, not Title VII. Resp.45; EEOC Br.30-31. That misses the point. Jurisdiction turns on the Religion Clauses' scope, not statutory similarities, and *Catholic Bishop* concludes their scope goes beyond liability. And that scope is why this Court has expressly applied *Catholic Bishop*'s conclusion to Title VII claims. *Demkovich v. St. Andrew the Apostle Parish*, 3 F.4th 968, 983 (7th Cir. 2021) (en banc); *Tomic v. Catholic Diocese*, 442 F.3d 1036, 1038-39 (7th

---

[2]   This is because the immunity question generally resolves the other collateral-order factors. *McCarthy*, 714 F.3d at 976; *Faith Bible*, 36 F.4th at 1036 (agreeing immunity issue is dispositive). An immunity is lost by allowing the case to proceed and is distinct from the merits of the underlying claim. So too here. Br.16-18.

Cir. 2006)). So have the Fourth, Fifth, and D.C. Circuits (among others). Br.21-22. Time and again, courts and scholars have recognized that the process of adjudication is an *independent* harm under the Religion Clauses, distinct from liability. Br.23; Scholars Br.29-35; Muller Br.20-24.

Similarly, relying on *Tomic*'s application of *Catholic Bishop*, the Third and Sixth Circuits have concluded that the Religion Clauses place an independent, structural duty on courts to avoid entanglement. Br.22; States Br.2 (government has own "substantial interest" in ensuring "officials, agencies, and judicial systems" avoid "entanglement"). Neither Garrick nor the EEOC has any response to this precedent, which is irreconcilable with their liability-only position.

They also fail to cite any precedent adopting their narrow view of *Catholic Bishop*. Nor could they, given that similar analysis in *Milivojevich*, *Hosanna-Tabor*, and *Our Lady* all "lead[] to the same conclusion: that 'the very process of inquiry' into matters of faith and church governance offends the Religion Clauses." *Belya v. Kapral*, 59 F.4th 570, 577 n.2 (2d Cir. 2023) (Park, J., joined by Livingston, C.J., and Sullivan, Nardini, and Menashi, JJ., dissenting from denial of rehearing en banc).

Garrick and the EEOC more broadly claim that all NLRA cases are distinct because Congress didn't express clear intent in the NLRA to impose broad state control over religious employers. Resp.45; EEOC Br.30-31. But Title VII claims like Garrick's intrude into the religious workplace and create the same kinds of entanglement problems. *NLRB*, 559 F.2d at 1123-25, 1127, 1129; *infra* Section II. And Congressional purpose cuts against them here. Unlike the NLRA, where the issue was the *absence* of clear intent *to* interfere, Title VII's religious exemptions *express* clear intent to *avoid* interference. Br.37-45; *Curay-Cramer v. Ursuline Acad.*, 450 F.3d 130, 141 (3d Cir. 2006) (finding "Congress has not demonstrated a clear expression of an affirmative intention" to "apply Title VII to" a claim "where it is impossible to avoid inquiry

6

into a religious employer's religious mission or the plausibility of its religious justification for an employment decision"); *infra* Section III.

Garrick next claims decades of consistent holdings by state high courts are irrelevant because they aren't subject to Section 1291. Resp.33 n.7. Again, that misses the point. The issue is whether the Religion Clauses protect against more than just liability. On that issue, state courts have rejected Garrick's position. Br.23.

The EEOC's Compliance Manual does too. It confirms that church-autonomy defenses "should be resolved at the earliest possible stage before reaching the underlying discrimination claim," because they reflect "not just a legal defense … but a constitutionally-based guarantee that obligates the government and the courts to refrain from interfering or entangling themselves with religion." EEOC Compliance Manual, Section 12 & n.113 (Jan. 15, 2021), https://perma.cc/Q96S-8JYE. And it quotes *Conlon v. InterVarsity Christian Fellowship* for the proposition that church autonomy is "a structural limitation imposed on the government by the Religion Clauses." *Id.* (quoting 777 F.3d 829, 836 (6th Cir. 2015)). Indeed, the EEOC's own Title VII investigations—distinct from any liability determination—have been found to violate church-autonomy rights. *EEOC v. Catholic Univ.,* 83 F.3d 455, 466-67 (D.C. Cir. 1996).

Yet now, the EEOC not only rejects any pre-liability protection, but even says (at 35) that the same church-autonomy interests it has previously violated are not "substantial" enough to support jurisdiction here. *But see* Br.17-18. It is unfortunate the agency that pressed the "remarkable view that the Religion Clauses have nothing to say" about clergy *selection* now presses a similarly "untenable" view of religious disputes over clergy *composition. Hosanna-Tabor v. EEOC*, 565 U.S. 171, 189 (2012).

As a parting shot, Garrick says that allowing interlocutory appeal here would advantage the Religion Clauses over other First Amendment rights. Resp.31. She has things backwards. This Court has "often" held First Amendment rights "important enough to justify interlocutory appeals." *United States v. Kerley*, 753 F.2d 617, 619

(7th Cir. 1985) (collecting cases); *Marceaux v. Lafayette City-Par. Consol. Gov't*, 731 F.3d 488, 490 (5th Cir. 2013) ("repeatedly"). It was this solicitude for other First Amendment rights that led the Fifth Circuit to find similar respect owed to the Religion Clauses. *Whole Woman's Health*, 896 F.3d at 368; *Leonard v. Martin*, 38 F.4th 481, 487 (5th Cir. 2022) (emphasizing, *contra* Garrick (at 25), that "substantial First Amendment implications" in *Whole Woman's Health* required deviating from the otherwise-universal rule against interlocutory appeal of nonparty discovery orders).

Even in the parallel context of *state-court* interlocutory appeals, where federalism provides heightened grounds for declining review, the Supreme Court has explained that determining "the proper scope of First Amendment protections has often been recognized" as requiring immediate appeal. *Fort Wayne Books v. Indiana*, 489 U.S. 46, 55 (1989) (applying 28 U.S.C. §1257). Indeed, in *Roman Catholic Archdiocese of San Juan v. Feliciano*, the Supreme Court recently allowed just such an interlocutory appeal in the church-autonomy internal-governance context. 140 S.Ct. 696 (2020) (arising under 28 U.S.C. §1258). And there, the Solicitor General agreed that the risk to the "important federal right" of church autonomy, as with other "First Amendment rights," justified immediate appeal. Brief for United States as Amicus Curiae on Pet. for Cert. at 15, *Feliciano*, 140 S.Ct. 696 (Dec. 9, 2019) (No. 18-921), 2019 WL 6715369.

This case likewise requires immediate appeal to protect an important First Amendment right.

## II. The First Amendment bars Garrick's claims.

Garrick's claims are barred by the First Amendment because they center on her admitted rejection of Moody's religious beliefs about male clergy—which rendered her ineligible for employment. Br.6-7, 30-32. Although the EEOC says (at 6) a jury should probe whether this religious dispute was "pretextual," pretext isn't properly at issue here, because Garrick admitted under penalty of perjury that the stated religious reason for her dismissal was genuine. Br.35. And even if pretext *were* at issue, it

would be "impossible" to adjudicate it here without "inquiry into [Moody's] religious mission or the plausibility of its religious justification for an employment decision." *Curay-Cramer*, 450 F.3d at 141. Such an inquiry is impermissible because it requires an unconstitutionally intrusive and entangling "explanation and analysis, and probably verification and justification, of" religious doctrine. *NLRB*, 559 F.2d at 1129.

To avoid those conclusions, Garrick and the EEOC take two tacks. First, they seek to radically narrow church-autonomy doctrine to protect against little more than judicial theologizing. To them, judges can't decide how many angels dance on the head of a pin, but can punish a religious school for removing a teacher who fought against its core religious beliefs on campus. Second, they reimagine Garrick's allegations to ignore the religious dispute at the heart of her pleadings, as if the First Amendment only requires artificially gerrymandering around religion. Neither effort succeeds.

## A. The Religion Clauses bar employment claims that entangle courts in matters of religious belief, doctrine, and governance.

The legal standard here is well established. Br.27. Since the Founding, a rich lineage of church-autonomy caselaw has protected religious groups' ability to "define their own doctrine, membership, organization, and internal requirements without state interference." *Demkovich*, 3 F.4th at 975; *see also* Belmont Br.6-18 (chronicling extensive Founding-era support for church autonomy); ADF Br.13-14 (similar). This autonomy bars all claims implicating not only matters "of faith and doctrine" but also the "internal management decisions that are essential to [a religious group's] central mission." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S.Ct. 2049, 2060-61 (2020). The First Amendment "outlaws" any "government intrusion" that threatens "even to influence" such matters, let alone "dictate" them. *Id*.

Employment disputes are no exception. Regardless of ministerial status, church autonomy prohibits courts from upending "personnel decision[s]" "rooted in religious belief." *Bryce v. Episcopal Church*, 289 F.3d 649, 656-58 & n.2 (10th Cir. 2002); Br.28-

29. That's because "a religious community defines itself" by ensuring that "only those committed to [the employer's] mission should conduct" its ministry. *Corp. of Presiding Bishop v. Amos*, 483 U.S. 327, 342 (1987) (Brennan, J., concurring).

Both Garrick and the EEOC concede, as they must, that church autonomy "extends … beyond the ministerial exception." EEOC Br.15; Resp.33. Nor do they question the district court's original dismissal of Garrick's sex-discrimination and retaliation claims under the church-autonomy doctrine. Resp.14; EEOC Br.5. And they have no response to this Court's decision in *NLRB*. EEOC further agrees that *Our Lady* and *Milivojevich* instruct that church autonomy covers "matters of internal government" and prevents even "inquiry" into "religious law and polity." EEOC Br.14, 17. Moreover, as the Supreme Court has noted, the EEOC has conceded that the First Amendment bars "a challenge to a church's announced practice of ordaining only male ministers," which would be "impossible to square with their religious view that only men should occupy such roles." Brief for Federal Respondent at 12, 31, *Hosanna-Tabor*, 565 U.S. 171 (Aug. 2, 2011) (No. 10-553), 2011 WL 3319555; *Hosanna-Tabor*, 565 U.S. at 189 (2012). These concessions are fatal.

Sensing this, Garrick attempts to re-characterize church autonomy as a "narrow" doctrine applying only to "strictly and purely ecclesiastical questions." Resp.28. So long as even a single allegation remains after a court artificially strips the doctrinal context, Garrick says church autonomy has no application. *See* Resp.40. Nor does church autonomy have any purchase if, "[a]t this stage," the court can avoid religious debates. Resp.45; *see also* EEOC Br.19-20. Despite conceding church autonomy's extensive reach, the EEOC likewise carves out Title VII as a special exception where the First Amendment bars only answering religious questions. EEOC Br.16. To Garrick and the EEOC, then, while Garrick cannot directly attack Moody's beliefs on male clergy, she can achieve the same result by suing over any conflict arising from her efforts to fight against those beliefs while on the clock.

This is not the law. *Our Lady* and *Demkovich* (among others) recognize church autonomy is "broad." *Our Lady*, 140 S.Ct. at 2061; *Demkovich*, 3 F.4th at 975-76. It provides extensive protection for "internal management decisions that are essential to the institution's central mission," *Our Lady*, 140 S.Ct. at 2060, which includes removing an employee who openly advocates against an employer's Statement of Faith. *See also Tomic*, 442 F.3d at 1038 (church autonomy bars "interfer[ing] with the church's management"). This Court and others have repeatedly distinguished this protection against judicial intrusion into internal religious management from the *additional* rule against answering religious questions. *Id.* at 1039 (problem of "evaluating or interpreting religious doctrine" is "independent" injury from the problem of coercive control); *Combs v. Central Tex. Ann. Conf.*, 173 F.3d 343, 350 (5th Cir. 1999) (similar). And, *contra* the EEOC's self-serving carveout, courts have applied that protection for governance in Title VII and other employment cases. *Tomic*, 442 F.3d at 1040-41; *Combs*, 173 F.3d at 350.

This remains true even where pretext is asserted—when, as here, adjudicating pretext requires probing the credibility of "the claimed doctrinal position," *NLRB*, 559 F.2d at 1129, "trolling through the beliefs" of the religious institution, or "making determinations about its religious mission," *University of Great Falls v. NLRB*, 278 F.3d 1335, 1342 (D.C. Cir. 2002). *Catholic Bishop* rejected investigations that "involve inquiry into the good faith of the position asserted by the [religious institution] and its relationship to the school's religious mission." 440 U.S. at 502. This is because such inquiries require "civil courts to analyze" the "ecclesiastical actions of a church," *Milivojevich,* 426 U.S. at 713, and chill free exercise, *NLRB*, 559 F.2d at 1124.

The First Amendment does not, as Garrick claims, permit judges to ignore the doctrinal context giving rise to a dispute. Pretending lawsuits like Garrick's are the Title VII equivalent of a cashier's lawsuit against Wal-Mart doesn't respect the Religion Clauses; it violates them. For that reason, this Court has stated that "avoidance,

rather than intervention, should be a court's proper role" when asked to adjudicate employment "disputes involving religious governance." *Demkovich*, 3 F.4th at 975.

Garrick's selective attempts to distinguish Moody's cases fail. Resp.44-45. Relying on her narrow reconceptualization of church autonomy, Garrick contends that *Bryce*, *Catholic Bishop*, and other cases bar only "courts ma[king] religious judgments or exert[ing] control over religious governance." Resp.44. Not so, as explained above. Further, *Bryce* held that church autonomy is "implicated" whenever the "alleged misconduct is 'rooted in religious belief.'" 289 F.3d at 657. *Catholic Bishop* held that the problem there was the entanglement inherent in an intrusive process that would test the "good faith" of a religious school's beliefs in relation to its "religious mission." 440 U.S. at 502. And, again, neither Garrick nor the EEOC provide any response to *NLRB*'s bar on entangling pretext inquiries.

Garrick contends this is an "ordinary" Title VII suit. Resp.42. But her claims strike at church autonomy's heartland—whether a religious school can disassociate with a teacher who openly opposes core doctrine. Teachers play a "critical and unique role in fulfilling the mission of a [religious] school," *Catholic Bishop*, 440 U.S. at 501, by "educating" and "training" the next generation "in their faith," *Starkey*, 41 F.4th at 939. And there can be few "clearer example[s] of an intrusion into the internal structure or affairs" of a religious school than having a teacher disputing its core religious beliefs on campus. *CLS v. Walker*, 453 F.3d 853, 861-63 (7th Cir. 2006); *Hosanna-Tabor*, 565 U.S. at 200-01 (Alito, J., concurring) (associational principles illuminate church autonomy); ADF Br.15-16 (collecting cases).

At bottom, Garrick and the EEOC rehash the same argument rejected numerous times before. In *Milivojevich, Catholic Bishop, Hosanna-Tabor*, *Our Lady*, and *Demkovich*, plaintiffs—and often the EEOC itself—argued that their claims could be adjudicated on "neutral" grounds without encroachment into the religious sphere, and

then defined that sphere narrowly. *See, e.g.*, Brief of Federal Respondent, *supra*, at 38-41; *accord* EEOC Br.35 (urging "neutral principles of law"). Each time, courts disagreed. *Milivojevich*, 426 U.S. at 721; *Catholic Bishop,* 440 U.S. at 502; *Hosanna-Tabor*, 565 U.S. at 205-06; *Our Lady*, 140 S.Ct. at 2068-69; *Demkovich*, 3 F.4th at 977-78. This Court should do the same.

### B. Garrick's Title VII claims are barred by the Religion Clauses.

In its first dismissal opinion, the District Court held that allegations like those in Garrick's complaint violate church autonomy, even when the religious-discrimination claim is removed from the case. A.086-88. Neither Garrick nor EEOC contest that determination. Resp.14; EEOC Br.5. But when evaluating the SAC, the district court erred by failing to consider that Garrick's admissions in her EEOC charge meant that the SAC raised the same First Amendment problems as the FAC. Thus, the SAC must be dismissed for the same reasons the FAC was. Further, adjudicating pretext for Garrick's claims would cause the kind of judicial second-guessing and irreparable harm that this Court and others have held cannot proceed under the Religion Clauses. Garrick and the EEOC offer a grab-bag of reasons why this Court should ignore this reality. All fail.

*First*, Garrick and the EEOC attempt to walk back Garrick's dispositive allegations—made under penalty of perjury, while represented by counsel, A.122, and attached to her complaint—that Moody's actions were motivated by religious belief. They insist that though the charge's pronouncements concerning sex discrimination and retaliation are true, Garrick's description of the doctrinal reasons for her termination merely "reported" Moody's pretextual explanation. Resp.13, 43; EEOC Br.20.

Nonsense. Twice in the charge, Garrick asserts Moody engaged in sex discrimination and retaliation in the same breath as her assertion of religious discrimination, with the religious allegation located right between the other two. A.123, A.126. And the charge's entire narrative cuts against Garrick's new post-hoc rationalization. It

states that she was retaliated against "[a]s a result of [her] advocacy" against Moody's religious beliefs; that she called a meeting to discuss the "hostility" she was experiencing by "faculty who were aware of" that advocacy; that Moody "began to discuss terminating [her] employment" after the meeting; and that she was terminated "*because of* … my religion (egalitarian Christian)." A.123, A.125 (emphasis added). The charge never mentioned pretext, because there was none.

Moreover, if Garrick believed Moody's religious rationale for her termination was a lie, she couldn't have honestly claimed religious discrimination before the EEOC and in federal court. A.39-41, A.123; *cf. Garcia v. Salvation Army*, 918 F.3d 997, 1005 n.13 (9th Cir. 2019) (plaintiff's EEOC charge that "checked the form's 'religious discrimination' and 'retaliation' boxes" confirmed she claimed religious discrimination, despite arguing otherwise on appeal). Garrick cannot now—one charge, three complaints, and five years later—contradict her earlier assertion that this suit is about doctrine. *Cf.* 2 McCormick on Evidence § 254 (8th ed. 2022) ("formal concessions in the pleadings … have the effect of withdrawing a fact from issue" and "[are] conclusive in the case"); *303 Creative v. Elenis*, 142 S.Ct. 2298, 2316 (2023) (rejecting theory that was "difficult to square with the parties' stipulations"); *Maguire v. Marquette Univ.*, 814 F.2d 1213, 1218 n.3 (7th Cir. 1987) (holding plaintiff to "the language of the complaint").[3]

That resolves the pretext issue. Garrick concedes, as she must, that she cannot contest the accuracy of Moody's religious beliefs, only their "honesty." Resp.35. And because she already attested to their honesty, she cannot claim pretext. Br.35. Indeed, we are aware of no case—and Garrick and the EEOC provide none—where a

---

[3]    Garrick asserts that in dismissing the FAC, the district court "dismissed" all "allegations" relating to church autonomy. Resp.1, 44; *accord* EEOC Br.20-21. But courts dismiss claims, not allegations, as shown by the fact that the district court still considered the same allegations in its second dismissal opinion. SA.13-14.

court has allowed a claim of pretext to proceed when a plaintiff's pleadings admit under penalty of perjury that a religious employer's religious reason for termination was genuine. This would be the first.[4]

*Second*, Garrick culls her 30-page complaint, purporting to identify thirteen allegations she believes demonstrate sex discrimination divorced from doctrine. Resp.41-42. All but two of these allegations were already present in her FAC, which everyone agrees the district court correctly dismissed. *Compare* A.96-97 ¶¶32-33 *with* A.32 ¶¶98-99; A.95 ¶28 *with* A.20 ¶29; A.97 ¶35(a)-(c) *with* A.32-33 ¶101(a)-(c); A.98 ¶36 *with* A.33 ¶102 (adding only an example against a non-employee student); A.109-10 ¶¶85-86 *with* A.25-26 ¶¶61-62; A.110 ¶89 *with* A.26 ¶64. Indeed, Garrick repeats verbatim in the SAC the key religious-discrimination allegation in the FAC—that "Garrick was terminated for her stated position/disagreement with Moody's 'Gender Roles in Ministry' addendum included in its doctrinal statement." *Compare* A.40 ¶136 *with* A.112 ¶96.

Of the two new allegations, one is about the treatment of *nonemployee students* and therefore irrelevant. *See* A.98-99 ¶38(a); Br.36 n.7. The other asserts that Garrick "co-presented (with a male faculty member) a proposal with an inclusive message" for "transgender" students, but the male faculty member "was never the subject of any verbal harassment or disciplinary treatment." A.102-103 ¶¶58-59. This, Garrick says, shows "Moody did nothing when some male personnel disagreed with Moody's complementarian views." Resp.12.

---

[4]     EEOC now argues (at 21) that Garrick can prevail even if Moody *was* motivated by religion. But that is not what Garrick argued below or on appeal, nor what the district court ruled. It would also cause autonomy problems, since "challenging a religious institution's honest assertion" of religious motivation entails an "incredibly difficult" "type of religious line-drawing" that "impermissibly entangles the government with religion." *Grussgott v. Milwaukee Jewish Day Sch.,* 882 F.3d 655, 660 (7th Cir. 2018). And it would fail under Title VII's religious exemption. *Fitzgerald*, 73 F.4th at 534-35 (Brennan, J., concurring).

It shows nothing of the sort. The alleged co-presentation didn't even address the subject of "Moody's complementarian views," much less oppose them. It addressed a different theological question entirely—the inclusion of transgender students.[5]

Garrick has identified *no* other Moody teacher who openly advocated against Moody's complementarian beliefs on campus. Instead, she seeks to probe how Moody counseled other employees who may have struggled with *different* religious beliefs and expressed their struggle in *different* ways—all in the service of asking courts to second-guess Moody's decisions over these religious matters and conclude that Moody should have handled them all just as it did hers. But "to assess this claim of the relative harshness of penalties for 'similar conduct,' [courts] would have to measure the degree of severity of various violations of Church doctrine," *Curay-Cramer*, 450 F.3d at 137—an inquiry Garrick ultimately agrees is impermissible, Resp.50.[6]

*Finally*, Garrick fails to address how her claim of pretext will inescapably involve "excessive entanglement with[] the religious sphere." *Demkovich*, 3 F.4th at 978; Br.36-37. Garrick has no answer for this Court's *NLRB* decision, which explained that a factfinder cannot "avoid becoming entangled in doctrinal matters" if it must assess "whether the real cause for discharge" was that a religious school's teacher was dismissed for advocacy that is undisputedly "at odds with the tenets of the [school's] faith." 559 F.2d at 1125. To resolve such inquiries, a "civil factfinder [will] sit[] in ultimate judgment of what the accused church really believes, and how

---

[5]   Moreover, immediately before the joint proposal, Garrick alone "spoke out against" a colleague's differing views as "blatant bigotry." A.102 ¶58, A.125. It is no surprise, then, that Davidhizar saw "[her] *speech* []as 'inflammatory rhetoric'" and indicated she was "not a Moody fit." A.103 ¶59, A.125.

[6]   Garrick's brief (but not her pleadings) repeatedly asserts that "the first time" Moody raised Garrick's "disagreement about gender roles in the ministry" was in March and April 2017. Resp.11-12. Not so. In February 2016, "immediately" after she first advocated against Moody's complementarian practices, Garrick was admonished by her faculty mentor by "reading [her] the section of MBI's doctrinal statement on gender roles," and again that month was asked by senior Moody leadership "whether [she] could sign the doctrinal statement again." A.100-01 ¶45, A.125. When Garrick was recalcitrant, Moody decided to part ways.

important that belief is to the church's overall mission." *Hosanna-Tabor*, 565 U.S. at 206 (Alito, J., concurring). The "mere adjudication of such questions would pose grave problems for religious autonomy." *Id.* at 205-06; *accord Tomic*, 442 F.3d at 1040 (second-guessing "religious reason" for dismissal would "propel the court into … quintessentially religious" controversy); *Demkovich v. St. Andrew the Apostle Parish*, 343 F.Supp.3d 772, 786-87 (N.D. Ill. 2018).[7]

Allowing Garrick's suit to proceed would have sweeping consequences for religious institutions throughout the circuit. That is doubly true for minority faiths: "When courts permit pretext inquiries, popular familiarity often becomes the determinative factor—leaving unfamiliar beliefs and practices first on the chopping block." Minority Faiths Br.26. Clergy composition is just one of many hotly debated issues across numerous denominations. Br.33. Accepting Garrick's gambit would remove those discussions from their proper sphere and thrust them into lengthy EEOC investigations and civil litigation, thus pressuring institutions to make doctrinal decisions based on avoiding litigation rather than abiding by conscience. *NLRB*, 559 F.2d at 1124; *Demkovich,* 3 F.4th at 981; Religious Colls. Br.29-34. This intrusion is what the First Amendment is meant to prevent.

## III.  Title VII's religious exemption bars Garrick's claims.

Title VII's religious exemption protects employment decisions based on whether an employee adheres to a religious employer's "religious observance and practice, as well as belief." *Fitzgerald*, 73 F.4th at 534-36 (Brennan, J., concurring); *Starkey*, 41 F.4th at 946 (Easterbrook, J., concurring). Here, Moody dismissed Garrick because

---

[7]    The EEOC says (at 18 n.4) a pretext inquiry here poses no problem because judges can employ the methods used to determine insincerity under the Religious Freedom Restoration Act. While that may be true in some cases, it is not true here for the reasons explained above. Nor would it change the outcome. Courts handle sincerity inquiries "with a light touch, or 'judicial shyness'" to avoid entanglement problems. *Tagore v. United States*, 735 F.3d 324, 328 (5th Cir. 2013). Such a sincerity analysis here would only confirm what the pleadings already show—Garrick's claims are barred.

she vocally rejected its belief, observance, and practice on a core doctrine of church leadership. This case falls squarely within the exemption's plain language. Garrick's effort to limit the exemption to claims of religious discrimination brought by non-coreligionists has no basis in statutory language and creates constitutional conflicts.

### A. Title VII allows religious organizations to make employment decisions based on religious "belief," "observance," or "practice."

"When a statute includes an explicit definition," courts "must follow" it. *Digit. Realty Tr. v. Somers*, 138 S.Ct. 767, 776 (2018). Title VII explicitly defines "religion" to include "all aspects of religious observance and practice, as well as belief[.]" 42 U.S.C. §2000e(j). So, when interpreting any Title VII provision that uses "religion," courts "must follow that definition." *Digit. Realty*, 138 S.Ct. at 776. That includes Title VII's religious exemption, which exempts religious employers from "[t]his subchapter … with respect to the employment of individuals of a particular religion[.]" 42 U.S.C. §2000e-1(a).

Garrick's contrary argument—that the exemption is triggered only when a plaintiff brings a claim of religious discrimination—asks this Court to disregard the statutory definition and the exemption's plain text. Resp.47. That argument has been tried and rejected before. *Compare* Appellant's Reply Br. at 19-25, *Fitzgerald v. Roncalli High School*, 73 F.4th 529 (7th Cir. May 11, 2023) (No. 22-2954) *with Fitzgerald*, 73 F.4th at 534-36 (Brennan, J., concurring); *Starkey*, 41 F.4th at 946 (Easterbrook, J., concurring). And with good reason.

*First*, that reading ignores Title VII's definition: that "religion" covers "all aspects of religious observance and practice, as well as belief[.]" 42 U.S.C. §2000e(j). Thus, an employer engages in exempt conduct when it takes employment actions based on whether an employee's "observance and practice, as well as belief" comply with the employer's religious requirements or beliefs. *Fitzgerald*, 73 F.4th at 534-36 (Brennan, J., concurring); *Starkey*, 41 F.4th at 946 (Easterbrook, J., concurring).

Garrick doesn't contest that, to rule for her, this Court has to ignore Title VII's definition. Instead, she tries misdirection, noting that "religion" is defined to include all aspects of religious observance, practice, and belief "unless" accommodating religion under that definition would cause an employer "undue hardship." Resp.48 (quoting 42 U.S.C. §2000e(j)). But the "unless" clause merely describes when the broad definition is inapplicable. It doesn't change the definition of religion. *EEOC v. Kroger Ltd.*, 608 F.Supp.3d 757, 775 (E.D. Ark. 2022) (§2000e(j) "first provides an unquestionably broad statutory definition of the term 'religion' … then goes on to create a defense to a failure-to-accommodate claim."); *Adeyeye v. Heartland Sweeteners*, 721 F.3d 444, 448 (7th Cir. 2013) ("combines a broad substantive definition of religion with an implied duty to accommodate"). Because this isn't an undue-hardship case, the broad definition of religion applies, and this Court must apply it.

*Second*, Garrick's reading would render the exemption's reference to "This subchapter" nonsensical. "'This subchapter' refers to … all of Title VII," *Starkey,* 41 F.4th at 946 (Easterbrook, J., concurring), a fact Garrick and the EEOC don't dispute, Resp.47; EEOC Br.13. In application, that language exempts all claims—not just a subclass—where the employer engages in the protected conduct. *Fitzgerald*, 73 F.4th at 534 (Brennan, J., concurring). Garrick's contrary reading—which simply "removes" religious discrimination claims, Resp.47—tries to shift the exemption's focus from the employer's conduct to the employee's claim. But that would require the Court to read "This subchapter" to really mean "The portions of this subchapter prohibiting discrimination based on religion." That's not what Congress wrote.

*Third*, Garrick's reading provides no explanation for parallel statutory text in Title VII and elsewhere. For instance, both Title VII's religious exemption and alien exemption state that the Title "shall not apply" to employers who engage in specific conduct—"employment of individuals of a particular religion" or "employment of aliens outside any State." 42 U.S.C. §2000e-1(a); Br.41. Courts have interpreted the

alien exemption to bar all Title VII claims, not just claims of national-origin discrimination. Br.40-41. The same must follow for the religious exemption.

Similarly, Congress has used the same exemption language in statutes that don't prohibit "religious discrimination" at all. The ADA uses language identical to Title VII, exempting religious organizations from "[t]his subchapter" with respect to employment of "individuals of a particular religion." Br.41 (quoting 42 U.S.C. §12113(d)(1)). And the Pregnant Workers Fairness Act (PWFA) expressly incorporates Title VII's religious exemption. *See* 42 U.S.C. §2000gg-5(b). But neither the ADA nor PWFA prohibit religious discrimination; they prohibit only disability and pregnancy-related discrimination. If Congress intended Title VII's religious exemption to only exempt employment of coreligionists, incorporating that religious exemption into the ADA and PWFA makes no sense.

*Finally*, Garrick's interpretation creates constitutional problems. And "[u]nder the constitutional-avoidance canon, when statutory language is susceptible of multiple interpretations, a court may shun an interpretation that raises serious constitutional doubts and instead may adopt an alternative that avoids those problems." *Jennings v. Rodriguez*, 138 S.Ct. 830, 836 (2018). Adopting Garrick's interpretation and permitting this case to proceed would require a secular court to analyze "the good faith of [Moody's] position and its relation to the school's religious mission"—an outcome like what the Supreme Court avoided in *Catholic Bishop* by applying the canon of constitutional avoidance. 440 U.S. at 502-03. Following Garrick would also raise questions courts aren't equipped to answer: if the religious exemption applies only to hiring coreligionists, how does a court determine who is a coreligionist? "Are Orthodox Jews and non-Orthodox Jews coreligionists? ... Would Presbyterians and Baptists be similar enough? Southern Baptists and Primitive Baptists?" *Our Lady*, 140 S.Ct. at 2068-69. These kinds of intractable problems have led courts to reject Garrick's position and follow the plain language of Title VII's exemption. ADF Br.18-19.

So too have the only judges on this Court that have discussed the scope of Title VII's religious exemption, finding it exempts religious employers from all of Title VII when they engage in employment actions related to "all aspects of religious observance and practice, as well as belief." *Fitzgerald*, 73 F.4th at 534-36 (Brennan, J., concurring); *Starkey*, 41 F.4th at 946 (Easterbrook, J., concurring); *accord* EEOC Br.13 (religious exemption bars "a Title VII claim of discrimination or retaliation"). And contrary to Garrick's suggestion otherwise, that interpretation is dispositive, given that Garrick's pleadings admit she was terminated for religious reasons. This Court should find Garrick's Title VII claims foreclosed by the religious exemption.

## B. This Court can and should reach Moody's Title VII argument.

Seeking to evade the religious exemption, Garrick and the EEOC try to have it both ways. In their jurisdictional arguments, they claim that NLRA cases like *Catholic Bishop* are distinguishable because the NLRA does not sufficiently express a Congressional intent to burden religious employers, but Title VII does. Resp.45; EEOC Br.30-31. Then they turn around and claim that, on the merits, Title VII should be ignored as not properly before this Court. Resp.38-39; EEOC Br.22-23. But this Court can't assess Congress's intent to burden religious employers under Title VII without addressing the scope of the statute's exemptions.

Moreover, as *Catholic Bishop* shows, this Court need not resolve the case under the Religion Clauses if it finds that Garrick's claims fail as a statutory matter. "Non-constitutional arguments always come first; constitutional contentions must be set aside until their resolution is unavoidable." *United States v. Vargas*, 915 F.3d 417, 420 (7th Cir. 2019); *St. Augustine Sch. v. Underly*, 78 F.4th 349, 358-59 (7th Cir. 2023); *Indiana Right to Life v. Morales*, 66 F.4th 625, 632 (7th Cir. 2023); *see also Whole Woman's Health*, 896 F.3d at 367-68, 374-76 (finding jurisdiction on church-autonomy grounds but resolving appeal on non-constitutional grounds). That's true even where the statutory or state-law question wasn't addressed below, *Indiana*

*Right to Life*, 66 F.4th at 631-33, or even raised on appeal, *Hill v. Madison County*, 983 F.3d 904, 906 (7th Cir. 2020). That the Title VII issue was both finally resolved below and fully briefed on appeal makes it *better* presented to this Court, not—as Garrick and the EEOC contend—worse.

In any event, this Court always has jurisdiction to resolve issues inextricably bound up with the questions squarely before it. *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 492 (7th Cir. 2012); *Asset Allocation v. W. Emps. Ins.*, 892 F.2d 566, 569 (7th Cir. 1989). That's especially true here, since Title VII's religious exemption is a "legislative application[] of the church-autonomy doctrine," *Korte v. Sebelius*, 735 F.3d 654, 678 (7th Cir. 2013), and thus the exemption presents essentially "the same question" as the First Amendment defense, *N.E. Rural Elec. Membership Corp. v. Wabash Valley Power Ass'n*, 707 F.3d 883, 886 (7th Cir. 2013)—as Garrick's and the EEOC's own threshold jurisdictional arguments illustrate.

## CONCLUSION

This Court has jurisdiction and should reverse.

Respectfully submitted.

/s/ Daniel H. Blomberg

Christian M. Poland
BRYAN CAVE LEIGHTON
  PAISNER LLP
161 N. Clark St.,
  Ste. 4300
Chicago, IL 60601-3315
(312) 602-5085
christian.poland@bclplaw.com

Daniel H. Blomberg
Luke W. Goodrich
Laura Wolk Slavis
Colten L. Stanberry
THE BECKET FUND FOR
  RELIGIOUS LIBERTY
1919 Pennsylvania Ave. N.W.,
  Ste. 400
Washington, DC 20006
(202) 955-0095
dblomberg@becketlaw.org

*Counsel for Defendant-Appellant*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

1. This brief complies with the length limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 6,974 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the requirements of Fed. R. App. P. 32(a) and Circuit Rule 32(b) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Century Schoolbook font.

/s/ Daniel H. Blomberg
Daniel H. Blomberg

Dated: September 22, 2023

## CERTIFICATE OF SERVICE

I certify that on September 22, 2023, the foregoing brief was served on counsel for all parties by means of the Court's ECF system.

/s/ Daniel H. Blomberg
Daniel H. Blomberg