# In the United States Court of Appeals for the Seventh Circuit

JANAY E. GARRICK,

*Plaintiff-Appellee,*

v.

MOODY BIBLE INSTITUTE,

*Defendant-Appellant.*

On Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division
Case No. 1:18-cv-00573 – Judge John Lee, Magistrate Judge Young Kim

## PETITION FOR REHEARING EN BANC

Christian M. Poland
BRYAN CAVE LEIGHTON
  PAISNER LLP
161 N. Clark St.,
  Ste. 4300
Chicago, IL 60601-3315
(312) 602-5085
christian.poland@bclplaw.com

Daniel H. Blomberg
Luke W. Goodrich
Laura Wolk Slavis
Colten L. Stanberry
Richard C. Osborne
THE BECKET FUND FOR
  RELIGIOUS LIBERTY
1919 Pennsylvania Ave. N.W.,
  Ste. 400
Washington, DC 20006
(202) 955-0095
dblomberg@becketlaw.org

*Counsel for Defendant-Appellant*

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2683

Short Caption: Janay Garrick v. Moody Bible Institute

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

The Moody Bible Institute of Chicago

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

The Becket Fund for Religious Liberty

Bryan Cave Leighton Paisner LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: /s/ Christian M. Poland    Date: 4/15/2024

Attorney's Printed Name: Christian M. Poland

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ✓    **No** ☐

Address: 161 N. Clark Street, Suite 4300, Chicago, IL 60601

Phone Number: 312-602-5085    Fax Number: 312-698-7485

E-Mail Address: christian.poland@bclplaw.com

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2683

Short Caption: Janay Garrick v. Moody Bible Institute

　　To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

　　The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

　　　　[ ]　　　**PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)　　The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

　　The Moody Bible Institute of Chicago

(2)　　The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

　　The Becket Fund for Religious Liberty

　　Bryan Cave Leighton Paisner LLP

(3)　　If the party, amicus or intervenor is a corporation:

　　i)　　　Identify all its parent corporations, if any; and

　　　　N/A

　　ii)　　list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

　　　　N/A

(4)　　Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

　　N/A

(5)　　Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

　　N/A

Attorney's Signature: /s/ Daniel H. Blomberg　　　　　Date: 4/15/2024

Attorney's Printed Name:  Daniel H. Blomberg

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).　**Yes** [ ]　**No** [✓]

Address:  1919 Pennsylvania Ave. NW, Suite 400, Washington, D.C. 20006

Phone Number: 202-955-0095　　　　　　　　Fax Number: 202-955-0090

E-Mail Address: dblomberg@becketlaw.org

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2683

Short Caption: Janay Garrick v. Moody Bible Institute

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    The Moody Bible Institute of Chicago

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    The Becket Fund for Religious Liberty

    Bryan Cave Leighton Paisner LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Luke W. Goodrich    Date: 4/15/2024

Attorney's Printed Name: Luke W. Goodrich

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d). Yes ☐ No ☑

Address: 1919 Pennsylvania Ave. NW, Suite 400, Washington, D.C. 20006

Phone Number: 202-955-0095    Fax Number: 202-955-0090

E-Mail Address: lgoodrich@becketlaw.org

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2683

Short Caption: Janay Garrick v. Moody Bible Institute

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    The Moody Bible Institute of Chicago

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    The Becket Fund for Religious Liberty

    Bryan Cave Leighton Paisner LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Laura Wolk Slavis    Date: 4/15/2024

Attorney's Printed Name: Laura Wolk Slavis

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: 1919 Pennsylvania Ave. NW, Suite 400, Washington, D.C. 20006

Phone Number: 202-955-0095    Fax Number: 202-955-0090

E-Mail Address: lslavis@becketlaw.org

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2683

Short Caption: Janay Garrick v. Moody Bible Institute

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐      **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

  The Moody Bible Institute of Chicago

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

  The Becket Fund for Religious Liberty

  Bryan Cave Leighton Paisner LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

    N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

    N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

  N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

  N/A

Attorney's Signature: /s/ Colten L. Stanberry      Date: 4/15/2024

Attorney's Printed Name: Colten L. Stanberry

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐   **No** ☑

Address: 1919 Pennsylvania Ave. NW, Suite 400, Washington, D.C. 20006

Phone Number: 202-955-0095      Fax Number: 202-955-0090

E-Mail Address: cstanberry@becketlaw.org

rev. 12/19 AK

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2683

Short Caption: Janay Garrick v. Moody Bible Institute

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

      ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    The Moody Bible Institute of Chicago

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    The Becket Fund for Religious Liberty

    Bryan Cave Leighton Paisner LLP

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: /s/ Richard C. Osborne    Date: 4/15/2024

Attorney's Printed Name:  Richard C. Osborne

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐    **No** ☑

Address:  1919 Pennsylvania Ave. NW, Suite 400, Washington, D.C. 20006

Phone Number:  202-955-0095    Fax Number:  202-955-0090

E-Mail Address: rosborne@becketlaw.org

rev. 12/19 AK

**Page**

TABLE OF AUTHORITIES ..................................................................... viii

FRAP 35(b) STATEMENT AND INTRODUCTION ................................... 1

STATEMENT....................................................................................... 2

A. Factual Background .................................................................. 2

B. Procedural Background............................................................. 2

C. Panel Decision ........................................................................ 3

ARGUMENT ....................................................................................... 4

I. The panel decision conflicts with the Supreme Court, this Court, and twelve other appellate courts in concluding the Religion Clauses protect only against liability. ............................................................................ 4

    A. The panel decision conflicts with precedent...................................... 5

    B. The panel decision conflicts with other courts and scholars. ......................... 7

    C. The panel decision undermines church autonomy.......................................... 8

II. The panel decision conflicts with the Supreme Court, this Court, and five other appellate courts in concluding the "neutral principles approach" governs church autonomy defenses. ..................................................... 9

III. Exceptionally important First Amendment principles are at stake.................. 13

CONCLUSION...................................................................................... 14

CERTIFICATE OF COMPLIANCE ............................................................. 15

CERTIFICATE OF SERVICE ................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Belya v. Kapral,*
    45 F.4th 621 (2d Cir. 2022) ............................................................................. 9

*Belya v. Kapral,*
    59 F.4th 570 (2d Cir. 2023) ...................................................................... 9, 10

*Carroll Coll. v. NLRB,*
    558 F.3d 568 (D.C. Cir. 2009) .......................................................................... 7

*Catholic Bishop of Chicago v. NLRB,*
    559 F.2d 1112 (7th Cir. 1977) ..................................................................... 6, 12

*Combs v. Cent. Tex. Ann. Conf.,*
    173 F.3d 343 (5th Cir. 1999) ............................................................................ 7

*Conlon v. InterVarsity Christian Fellowship,*
    777 F.3d 829 (6th Cir. 2015) ............................................................................ 8

*Demkovich v. St. Andrew the Apostle Parish,*
    3 F.4th 968 (7th Cir. 2021).................................................................... 5, 11, 13

*Demkovich v. St. Andrew the Apostle Parish,*
    973 F.3d 718 (7th Cir. 2020) .......................................................................... 11

*In re Diocese of Lubbock,*
    624 S.W.3d 506 (Tex. 2021).......................................................................... 13

*EEOC v. Catholic Univ. of Am.,*
    83 F.3d 455 (D.C. Cir. 1996) ............................................................... 7, 9, 12-13

*El-Farra v. Sayyed,*
    226 S.W.3d 792 (Ark. 2006) .......................................................................... 13

*Fitzgerald v. Roncalli High Sch.,*
    No. 19-cv-4291, 2021 WL 4539199 (S.D. Ind. Sept. 30, 2021) ................................ 8

*Harris v. Matthews,*
    643 S.E.2d 566 (N.C. 2007) ............................................................................ 8

*Heard v. Johnson,*
    810 A.2d 871 (D.C. 2002).......................................................................... 8, 13

*Herx v. Diocese of Fort Wayne,*
    772 F.3d 1085 (7th Cir. 2014) ................................ 6

*Hosanna-Tabor v. EEOC,*
    565 U.S. 171 (2012) ................................ 5, 10

*Hutchison v. Thomas,*
    789 F.2d 392 (6th Cir. 1986) ................................ 12

*Kedroff v. St. Nicholas Cathedral,*
    344 U.S. 94 (1952) ................................ 10, 11

*Lee v. Sixth Mount Zion Baptist Church,*
    903 F.3d 113 (3d Cir. 2018) ................................ 8, 9

*McCarthy v. Fuller,*
    714 F.3d 971 (7th Cir. 2013) ................................ 6

*Natal v. Christian & Missionary All.,*
    878 F.2d 1575 (1st Cir. 1989) ................................ 7

*NLRB v. Catholic Bishop of Chicago,*
    440 U.S. 490 (1979) ................................ 5, 9

*Our Lady of Guadalupe Sch. v. Morrissey-Berru,*
    140 S.Ct. 2049 (2020) ................................ 5, 10, 11

*Presbyterian Church v. Edwards,*
    566 S.W.3d 175 (Ky. 2018) ................................ 8

*Presbyterian Church v. Hull Church,*
    393 U.S. 440 (1969) ................................ 10

*Rayburn v. Gen. Conf. of Seventh-day Adventists,*
    772 F.2d 1164 (4th Cir. 1985) ................................ 7

*Scharon v. St. Luke's Episcopal Presbyterian Hosps.,*
    929 F.2d 360 (8th Cir. 1991) ................................ 7

*Serbian Eastern Orthodox Diocese v. Milivojevich,*
    426 U.S. 696 (1976) ................................ 5, 10, 11

*Smith v. Supple,*
    293 A.3d 851 (Conn. 2023) ................................ 8

*Sterlinski v. Catholic Bishop of Chicago,*
    934 F.3d 568 (7th Cir. 2019) ................................ 5-6

*Tilton v. Marshall,*
    925 S.W.2d 672 (Tex. 1996)...................................................... 8

*Tomic v. Catholic Diocese of Peoria,*
    442 F.3d 1036 (7th Cir. 2006) ............................................ 5, 13

*Whole Woman's Health v. Smith,*
    896 F.3d 362 (5th Cir. 2018) ...................................................... 7

*Young v. Northern Ill. Conf. of United Methodist Church,*
    21 F.3d 184 (7th Cir. 1994) ........................................................ 6

## Other Authorities

Thomas Berg, Richard Garnett, et al., *Religious Freedom, Church-State Separation, and the Ministerial Exception*, 106 Nw. U. L. Rev. Colloquy 175 (2011) ..................................................................... 8

Carl H. Esbeck, *An Extended Essay on Church Autonomy*, 22 Federalist Soc'y Rev. 244 (2021) ........................................ 10-11

Jeffrey S. Sutton, 51 Imperfect Solutions (2018) ............................. 8

Lael Weinberger, *Is Church Autonomy Jurisdictional?*, 54 Loy. U. Chi. L.J. 471 (2023) ............................................................................ 8

Lael Weinberger, *The Limits of Church Autonomy*, 98 Notre Dame L. Rev. 1253 (2023) ............................................................................ 10

# FRAP 35(b) STATEMENT AND INTRODUCTION

The panel majority made two fundamental legal errors that truncate the Religion Clauses and conflict with the Supreme Court, this Court, and numerous other courts.

First, the panel concluded that the First Amendment protects religious organizations only from adverse judgments—not from the entangling process of civil adjudication. But the Supreme Court, this Court, and twelve other circuits and state high courts (not to mention leading scholars) have said the opposite in cases like *Catholic Bishop, Milivojevich*, *Demkovich*, and *Sterlinski*. These courts recognized that the very process of adjudication can violate religious autonomy by entangling courts in ecclesiastical matters and forcing religious bodies to make religious decisions with an eye toward avoiding litigation instead of shepherding their flocks. And these courts have repeatedly applied this principle in the context at issue here: government regulation of the relationship between religious schools and their teachers.

Second, the panel reduced church autonomy to a narrow protection for "religious doctrine," subject to a gaping exception for any issue potentially resolvable by "neutral principles" of law. As five dissenting Second Circuit judges recently explained, this theory "eviscerate[s] church autonomy" and "swallows [it] whole," since virtually any dispute can be repackaged in neutral-sounding terms. That's why, in cases like *Milivojevich* and *Demkovich,* the Supreme Court and this Court (and five other appellate courts) have refused to extend the "neutral principles" approach beyond church-property disputes, instead emphasizing that the Religion Clauses protect not just matters of religious doctrine but also matters of faith and church government.

Both legal errors require rehearing.

# STATEMENT

## A. Factual Background.

Moody Bible Institute is a Bible college and seminary. A.091 ¶¶1-2. For almost 140 years, its mission has been "training students for the Christian ministry." A.124. Moody believes that while all Christians—women and men—can serve in ministerial capacities, only men may hold the church office of pastor. A.112 ¶96. This belief (known as "complementarianism") is among core doctrines faculty must annually affirm. A.124.

Janay Garrick was a Moody faculty member. When hired in 2014, Garrick affirmed Moody's beliefs in writing. In January 2016, Garrick began "open and active … opposition" to Moody's complementarianism. A.125. When Moody counseled her to stop, Garrick chose to "stay and fight." A.101. After she confirmed in April 2017 that she rejected complementarianism, Moody declined to renew her contract, stating she wasn't "aligned with [Moody's] doctrinal statement." A.074.

## B. Procedural Background.

Garrick filed an EEOC charge, asserting Title VII retaliation and discrimination claims based on religion and sex. A.123, 126. Under penalty of perjury, she attested that Moody didn't renew her contract because her "form of Christianity" was "not aligned with" Moody's beliefs. A.123, 126. She affirmed that she began advocating against Moody's beliefs in January 2016 and that Moody's allegedly retaliatory acts arose "[a]s a result of [her] advocacy." A.125.

Garrick's first amended complaint repeated her Title VII claims. The complaint described her religious disagreement with Moody, A.019 ¶22, A.040 ¶136; how she advocated against Moody's beliefs, A.019-23 ¶¶25, 28, 31-46; how she faced alleged adverse actions that arose "only after" her advocacy, FAC ¶¶29, 48, 63, 67, 95-102, 112, 115; and how her advocacy led to reprimand and culminated in her contract

nonrenewal, A.040 ¶136. She also alleged that despite annually affirming Moody's beliefs in writing, Moody knew she rejected complementarianism before hiring her and that Moody's religious reasons for nonrenewal were a "pretext." A.026 ¶64.

The district court dismissed the complaint. It deemed her religious discrimination claim barred by Title VII's religious exemption. A.086. And it held her sex discrimination claim barred by church autonomy because "Garrick's disagreement with Moody's beliefs on the role of women in the ministry underlies the majority of Garrick's allegations," so adjudicating her claim "would impermissibly inject the auspices of government into religious doctrine and governance." A.087-88.

Garrick then filed her second amended complaint, which alleged no new material facts. Instead, it dropped some allegations, shuffled others, and deleted terms like "Bible" and "Theology" from otherwise unaltered allegations. Op.42 (Brennan, J., dissenting). It still chronicled Garrick's religious disagreement with Moody, A.112 ¶96; confirmed that the alleged adverse actions arose "[o]nly after" her advocacy, A.104-05 ¶69, A.108 ¶80, A.110 ¶88; and affirmed that Moody's actions were based on religious belief, A.123, A.126. And it contained an "identical" pretext allegation. Op.44 (Brennan, J., dissenting); *compare* A.112 ¶97, *with* A.026 ¶64.

Moody again moved to dismiss. This time, the district court allowed Garrick's claims to proceed, with the sole "distinction" being that she had "crafted" her claims to "portray[ ] Moody's religious justification as a *pretext* for gender discrimination." SA.11.

After the district court denied Moody's request for reconsideration and Section 1292(b) certification, Moody filed this interlocutory appeal.

### C. Panel Decision.

A divided panel held that this Court lacked jurisdiction. Op.23. The majority reasoned that "First Amendment religious-liberty interests [do not] confer immunity" from merits discovery and trial, but instead bar only judicial resolution of "doctrinal

disputes." Op.13, 23. Civil courts, it added, may adjudicate cases like Moody's by applying "neutral principles" of law to the "secular components" of the dispute without "any usurpation" of church autonomy. Op.13, 17, 22. And mandamus, not collateral-order review, provides "adequate protection" to religious employers like Moody before final judgment. Op.17.

Judge Brennan dissented, citing several Supreme Court and Seventh Circuit cases determining "that the Religion Clauses protect religious organizations from the harm caused by trial, not just an adverse judgment." Op.34-35. For that reason, "early resolution of immunity under the church autonomy doctrine is essential," since religious defendants would otherwise be "irreparably harmed" by "invasive civil adjudication." Op.38, 45, 47. Here, that will include discovery into "Moody's church-leadership doctrines," comparisons with Moody's "religious [disciplinary] decisions involving other[s]," and requiring a jury to parse "the credibility of [Moody's] religious motivations" in a case where Moody's religious motivations and Garrick's doctrinal dispute are both conceded. Op.45. Blessing this entanglement with the neutral-principles approach will turn "a fundamental right" into "a pleading game." Op.48-50.

## ARGUMENT

### I. The panel decision conflicts with the Supreme Court, this Court, and twelve other appellate courts in concluding the Religion Clauses protect only against liability.

The panel concluded as a matter of law that the Religion Clauses' church-autonomy doctrine does not constitute a "substantial public interest" or "value of a high order" that requires "immunity *from trial*" or the process of litigation, but instead grants "just an interest in avoiding an adverse judgment." Op.20; Op.23. But the Supreme Court, this Court, seven other circuits, and five state supreme courts have recognized that, when applicable, the church autonomy doctrine protects from merits discovery and trial. That conflict warrants en banc review.

**A. The panel decision conflicts with precedent.**

The panel's ruling conflicts with Supreme Court precedent. *NLRB v. Catholic Bishop of Chicago* recognized that the "rights guaranteed by the Religion Clauses" may be impinged by "not only the *conclusions* that may be reached" by legal proceedings, "but also *the very process* of inquiry leading to findings and conclusions." 440 U.S. 490, 502 (1979) ("*Catholic Bishop*") (emphasis added); Op.35 (Brennan J., dissenting). There, that barred "inquiry into the good faith of [a religious school's] position … and its relationship to the school's religious mission." *Catholic Bishop*, 440 U.S. at 502. Similarly, *Serbian Eastern Orthodox Diocese v. Milivojevich* ruled that "the First Amendment prohibits" "detailed [judicial] review" of evidence of a church's "ecclesiastical actions." 426 U.S. 696, 713, 718 (1976). More recently, *Our Lady of Guadalupe School v. Morrissey-Berru* explained that "[j]udicial review" alone can "undermine the independence of religious institutions in a way that the First Amendment does not tolerate." 140 S.Ct. 2049, 2055 (2020). And Justice Alito, joined by Justice Kagan, elsewhere elaborated how the "mere adjudication" of pretext inquiries "pose[s] grave problems for religious autonomy." *Hosanna-Tabor v. EEOC*, 565 U.S. 171, 205-06 (2012) (concurring).

This Court has likewise repeatedly recognized that the church autonomy doctrine does not merely bar liability, but provides protection against merits discovery and trial. *See* Op.35-36 (Brennan, J., dissenting). Recently, the full Court applied *Catholic Bishop*, emphasizing that church autonomy forbids the "prejudicial effects of … litigation" and "bureaucratic entanglement" resulting from "civil intrusion into the religious sphere." *Demkovich v. St. Andrew the Apostle Parish*, 3 F.4th 968, 975, 980-81 (7th Cir. 2021) (en banc). *Tomic v. Catholic Diocese of Peoria* stated that the doctrine both protects religious groups from "the course of adjudication" over religious matters and gives courts an "independent" duty to refuse being "dragged into a religious controversy." 442 F.3d 1036, 1039, 1042 (7th Cir. 2006). *Sterlinski v. Catholic Bishop of*

*Chicago* explained that a fundamental purpose of church autonomy is preventing the "judicial entanglement" that arises from "discovery and … jury trial." 934 F.3d 568, 570 (7th Cir. 2019). *Young v. Northern Illinois Conference of United Methodist Church* confirmed that "civil court review of ecclesiastical decisions … are *in themselves* an 'extensive inquiry' into religious law and practice … forbidden by the First Amendment." 21 F.3d 184, 187 (7th Cir. 1994). And this Court recognized that the Religion Clauses protect against the chill of "a protracted and expensive unfair labor practice proceeding" and the entanglement of a pretext inquiry like the one here, which "itself erode[s] the protective wall afforded by the constitutional right." *Catholic Bishop v. NLRB*, 559 F.2d 1112, 1124, 1129 (7th Cir. 1977) ("*NLRB*"), *aff'd* 440 U.S. 490.

As Judge Brennan's dissent emphasized, such controlling precedents demonstrate "that the Religion Clauses protect religious organizations from the harm caused by a trial, not just an adverse judgment." Op.34-35. Before the panel decision, this Court's caselaw regarding church autonomy's interaction with interlocutory appeals aligned with this precedent. *McCarthy v. Fuller* involved an issue that didn't implicate liability, yet this Court found litigating the issue threatened church autonomy, explaining that the autonomy is "closely akin to … official immunity," which protects "from the travails of a trial and not just … adverse judgment." 714 F.3d 971, 975 (7th Cir. 2013). And *Herx v. Diocese of Fort Wayne* echoed *McCarthy*'s holding, reiterating the similarity to "official immunity," though the appellant there failed to make "a persuasive case" that the right was at risk. 772 F.3d 1085, 1091 (7th Cir. 2014); Op.30 (Brennan, J., dissenting).

Instead of following that precedent, the panel majority strayed. It overread *Herx* as making church autonomy a liability-only doctrine, limited *McCarthy* to its facts, and conflicted with controlling precedent. That requires rehearing.

## B. The panel decision conflicts with other courts and scholars.

The panel decision also conflicts with the First, Third, Fourth, Fifth, Sixth, Eighth, and D.C. Circuits; the high courts of Connecticut, Kentucky, North Carolina, Texas, and D.C.; and leading scholars.

***Other Circuits.*** The Fourth Circuit has long held that the Religion Clauses protect from "legal process[es] designed to probe the mind of the church" because litigation inevitably pressures churches to base decisions on "avoid[ing] litigation or bureaucratic entanglement" instead of "doctrinal assessments." *Rayburn v. Gen. Conf. of Seventh-day Adventists*, 772 F.2d 1164, 1171 (4th Cir. 1985). The Fifth Circuit has likewise repeatedly recognized that the Religion Clauses guard against the "inherently coercive" process of "investigating employment discrimination claims" that trench on "the internal management of a church," *Combs v. Cent. Tex. Ann. Conf.*, 173 F.3d 343, 351 (5th Cir. 1999), and provide "structural protection" against "judicial discovery procedures," *Whole Woman's Health v. Smith*, 896 F.3d 362, 367, 373-74 (5th Cir. 2018) (allowing interlocutory appeal). And the D.C. Circuit, applying *Catholic Bishop*, concluded that "[t]he First Amendment does not permit [governmental] inquiry" probing the "good faith" of religious colleges' employment decisions *vis-à-vis* their religious mission. *Carroll Coll. v. NLRB*, 558 F.3d 568, 571 (D.C. Cir. 2009); *EEOC v. Catholic Univ. of Am.*, 83 F.3d 455, 466-67 (D.C. Cir. 1996) (being "deposed, interrogated, and haled into court" was "impermissible entanglement with [religious] judgments").

The First and Eighth Circuits concur. *See Scharon v. St. Luke's Episcopal Presbyterian Hosps.*, 929 F.2d 360, 363 (8th Cir. 1991) (rejecting pretext inquiry under *Catholic Bishop*); *Natal v. Christian & Missionary All.*, 878 F.2d 1575, 1577-78 (1st Cir. 1989) (cannot "probe" into "selection and retention of clergymen"; the "inquiry" itself is barred). Likewise, far from merely a "personal" protection against liability, the Third and Sixth Circuits have followed *Tomic* in recognizing that church autonomy

defenses are a "structural limitation imposed … by the Religion Clauses" on judicial "involve[ment] in religious leadership disputes." *Conlon v. InterVarsity Christian Fellowship*, 777 F.3d 829, 836 (6th Cir. 2015); *Lee v. Sixth Mount Zion Baptist Church*, 903 F.3d 113, 118 n.4 (3d Cir. 2018).

**States.** Four states and the District of Columbia have also recognized "the very act of litigating" a claim barred by church autonomy through merits discovery and trial is "itself a [F]irst [A]mendment violation." *Smith v. Supple*, 293 A.3d 851, 864 (Conn. 2023); *Presbyterian Church v. Edwards*, 566 S.W.3d 175, 179 (Ky. 2018) (similar); *Tilton v. Marshall*, 925 S.W.2d 672, 682 (Tex. 1996) (similar); *Harris v. Matthews*, 643 S.E.2d 566, 570 (N.C. 2007) (similar); *Heard v. Johnson*, 810 A.2d 871, 877 (D.C. 2002) (similar); *see* Jeffrey S. Sutton, 51 Imperfect Solutions 172 (2018) (recording state courts' role in protecting First Amendment rights). These cases track numerous historic opinions nationwide. *See* Belmont Br.12-18.

**Scholars.** Scholarly consensus also favors Moody. *See* Muller Br.20-24; Thomas Berg, Richard Garnett, et al., *Religious Freedom, Church-State Separation, and the Ministerial Exception*, 106 Nw. U. L. Rev. Colloquy 175, 189-90 (2011); Lael Weinberger, *Is Church Autonomy Jurisdictional?*, 54 Loy. U. Chi. L.J. 471, 503-04 (2023). That includes Professors Michael McConnell and Douglas Laycock, who, among other leading Religion Clauses scholars, filed an amicus brief explaining that the Clauses confer immunity from merits litigation. Scholars Br.10-12.

**C. The panel decision undermines church autonomy.**

The majority's holding has far-reaching implications. For example, courts in this Circuit "regularly bifurcate discovery" to resolve church autonomy defenses early and "avoid judicial entanglement in the internal organization of religious institutions." *Fitzgerald v. Roncalli High Sch.*, No.19-cv-4291, 2021 WL 4539199, at *1 (S.D. Ind. Sept. 30, 2021) (collecting cases). Courts agreeing with the majority have a different

approach: in *Belya v. Kapral*, the district court denied bifurcation in a lawsuit arising from a priest's failed elevation to bishop, which led to depositions of ten clerics—including archbishops and the church's highest ecclesiastical officer—about internal church deliberations. Mot.2, *Belya v. Kapral*, No.20-cv-6597 (S.D.N.Y. Mar. 29, 2024), Dkt.92; *see Catholic Bishop*, 440 U.S. at 502 n.10 (deposing even one rector about religious matters was entangling).

Taking another example, courts have prophylactically raised church autonomy *sua sponte* when entanglement concerns arose. *Sixth Mount Zion*, 903 F.3d at 118 n.4; *Catholic Univ.*, 83 F.3d at 459. But, following the Tenth Circuit's guidance that the ministerial exception does not protect from discovery or trial, one district court exhorted a church to settle because "the discovery process, preparation for trial, [and] a lengthy jury trial … will be <u>very</u> expensive," despite receiving substantial new evidence that the plaintiff was a minister. Minute Order, *Tucker v. Faith Bible Chapel*, 19-cv-1652 (D.Colo.), Dkt.104; Dkt.112; Dkt.118; Dkt.122.

And, of course, governmental investigations will be more intrusive without constitutional guardrails. Moody Reply.7 (noting EEOC's changed position); States Br.1.

Moody is thus not alone in facing "irreparabl[e] harm[ ]" from the panel decision. Op.47 (Brennan, J., dissenting); Religious Minorities Br.19-29; Religious Coll. Br.18.

## II. The panel decision conflicts with the Supreme Court, this Court, and five other appellate courts in concluding the "neutral principles approach" governs church autonomy defenses.

The panel also held church autonomy applies only when a court must second-guess "questions of religious doctrine." Op.17. Otherwise, courts may "use the 'neutral principles of law' approach." Op.13 (quoting *Belya v. Kapral*, 45 F.4th 621, 630 (2d Cir. 2022)). This flawed conclusion would "eviscerate" church autonomy. *Belya v. Kapral*, 59 F.4th 570, 580 (2d Cir. 2023) (Park, J., dissenting from denial of rehearing en banc).

First, church autonomy protects "matters of church government *as well as* those of faith and doctrine"—not religious doctrine alone. *Kedroff v. St. Nicholas Cathedral*, 344 U.S. 94, 116 (1952) (emphasis added). Second, the "neutral-principles approach" is a narrow rule applicable only in church-property contexts. Applying it "to matters of church government" is a category error that "would swallow the church autonomy doctrine altogether," since "[a]lmost any cause of action has secular components" and "could be pled to avoid questions of religious doctrine." *Belya*, 59 F.4th at 580-82 (Park, J., dissenting from denial of rehearing en banc); *accord* Lael Weinberger, *The Limits of Church Autonomy*, 98 Notre Dame L. Rev. 1253, 1277 (2023). Combining the panel's expansive application of neutral principles with its cramped view of church autonomy neuters the doctrine in conflict with the Supreme Court, this Court, and other appellate courts.

**Supreme Court.** The neutral principles approach was developed for church property disputes, and the Supreme Court has never applied it elsewhere. *Presbyterian Church v. Hull Church*, 393 U.S. 440, 449 (1969). Property cases concern a conflict over which party is the "true church," making it impossible to defer to an authoritative religious body. *See* McConnell & Laycock Br.36, *Belya*, 45 F.4th 621. But the neutral-principles approach doesn't work outside that context. *Id.* Accordingly, *Milivojevich* rejected "reli[ance] on purported 'neutral principles,'" concluding that courts could not constitutionally second-guess "questions of church discipline" under rubrics of "objective criteria" or "secular notions." 426 U.S. at 714-15 & n.8, 717, 721.

So too in *Hosanna-Tabor* and *Our Lady*, where the Supreme Court refused to apply "neutral principles" to religious organizations' decisions to terminate ministers. *Hosanna-Tabor*, 565 U.S. at 189-90; *Our Lady*, 140 S.Ct. at 2060-61. There was "not a single mention of neutral principles in" either opinion, eliminating "[a]ny doubt as to whether [the Court] would extend the neutral-principles option beyond property disputes between separating factions." Carl H. Esbeck, *An Extended Essay on Church*

*Autonomy*, 22 Federalist Soc'y Rev. 244, 262 (2021). Indeed, the ministerial exception's purpose "is to *avoid* applying ostensibly neutral and generally applicable laws that would interfere with internal church affairs." McConnell & Laycock Br.36, *Belya*, 45 F.4th 621.

But this need to avoid meddling in internal affairs is not unique to church autonomy's ministerial-exception "component"; it adheres in the "broad principle" barring adjudicating *any* claim that would infringe religious communities' "independence in matters of faith and doctrine *and in closely linked matters of internal government*." *Our Lady*, 140 S.Ct. at 2060-61 (emphasis added); *see Kedroff*, 344 U.S. at 116 (courts cannot intrude upon churches' "power to decide for themselves … matters of church government"); *Milivojevich*, 426 U.S. at 720 (courts cannot resolve "quintessentially religious controversies" like whether a church followed its own internal disciplinary procedures). These precedents demonstrate not only that church autonomy expands far beyond "questions of religious doctrine," Op.17, but also that the "neutral principles" approach is inapplicable to "employment claims involving decisions that turn on matters of faith, doctrine, and internal governance," Op.26 (Brennan, J., dissenting).

***Seventh Circuit.*** The panel's rule likewise contradicts this Court's precedent, which has already rejected application of neutral principles to hostile-work-environment disputes that couldn't be adjudicated without interfering with internal government. In *Demkovich*, the vacated panel decision held that "courts may apply secular hostile environment jurisprudence" so long as they "stick to applying neutral, secular principles of law." *Demkovich v. St. Andrew the Apostle Parish,* 973 F.3d 718, 733-34 (7th Cir. 2020). This was repeated at the en banc stage, in dissent. *Demkovich*, 3 F.4th at 993-94 (Hamilton, J., dissenting). But the majority rejected such application to "internal church decision[s] that affect[] the faith and mission of the church itself." *Id.* at 980 (quoting *Hosanna-Tabor*, 565 U.S. at 190).

Though *Demkovich* involved a ministerial employee, the Court made clear that the "interests" justifying refusal to apply neutral principles have a "rich lineage" in church autonomy and broadly "teach[] that avoidance, rather than intervention, should be a court's proper role when adjudicating disputes involving religious governance." *Id.* at 975. Thus, *Demkovich* "confirms the importance of church autonomy," reiterating that "[r]eligious groups can 'define their own doctrine, membership, organization, and internal requirements without state interference.'" Op.25, 30 (Brennan, J., dissenting) (quoting *Demkovich*, 3 F.4th at 975). Courts cannot rely on so-called neutral principles to impose "'onerous' burdens on church autonomy rights." Op.47 (quoting *Demkovich*, 3 F.4th at 983).

The panel opinion doesn't address *Demkovich*, which cannot be reconciled with its holding. Nor does it address *NLRB*, which explained that applying neutral principles of labor law would "necessarily alter[] and impinge[] upon the religious character of all parochial schools." 559 F.2d at 1123-24. As Judge Brennan catalogues in dissent, proceeding under "neutral" principles runs headlong into "many religious topics" and "other matters evincing religious differences between the parties" that church autonomy prohibits. Op.48. As *Demkovich* presaged, courts cannot apply neutral principles in these employment disputes because "[i]t is not possible to litigate [such] case[s] without touching religious topics and questions." *Id.*

***Other Appellate Courts.*** The panel opinion breaks with five other circuits and state high courts. The Sixth Circuit stated that the neutral-principles approach "applies only to cases involving disputes over church property" and should "never" be "extended to religious controversies in the areas of church government, order and discipline." *Hutchison v. Thomas*, 789 F.2d 392, 396 (6th Cir. 1986). In *Catholic University*, the D.C. Circuit refused to expand the neutral-principles approach beyond "trust and property law," cautioning that it cannot be utilized in "pretext inquir[ies]" that require a court "to choose between the [parties'] competing religious visions." 83

F.3d at 465-66 (cleaned up). Texas, Arkansas, and the District of Columbia have likewise declined to apply the "narrowly drawn" approach "outside church property disputes." *In re Diocese of Lubbock*, 624 S.W.3d 506, 513 (Tex. 2021); *El-Farra v. Sayyed,* 226 S.W.3d 792, 795-96 (Ark. 2006); *Heard*, 810 A.2d at 880.

\* \* \*

The panel opinion jettisons this well-reasoned precedent in favor of a cramped rule that shrinks church autonomy to merely asking whether a court is second-guessing religious doctrine. If not, then litigants can simply identify the "secular components of a dispute," Op.13, ignore the underlying religious realities, and entangle courts in matters firmly protected by church autonomy. And the panel did all this based on a "neutral principles" theory that Garrick never briefed and the EEOC mentioned only once in passing. EEOC Br.34-35. Such a rule turns the First Amendment into a "pleading game," allowing plaintiffs to "sanitize[]" complaints of "religious terms" to avoid the obvious constitutional implications of their dispute. Op.49-50 (Brennan, J., dissenting). But the First Amendment's substance cannot be reduced to a semantic exercise, evaded where a plaintiff simply "repackage[s]" his claims in neutral-sounding terms. *Demkovich*, 3 F.4th at 973. This Court should grant rehearing to maintain uniformity of its decisions.

## III.  Exceptionally important First Amendment principles are at stake.

The panel's legal errors undermine both Religion Clauses. Religious belief and governance will inevitably be reshaped by the coercive pressures caused by the "very process of inquiry" in federal courts. *See Demkovich*, 3 F.4th at 982-83 (quoting *Catholic Bishop*, 440 U.S. at 502). And the Establishment Clause's structural limits on judicial entanglement in religious affairs will be lost by thrusting courts into every religious dispute with at least one conceivable "secular component[]." Op.22; *Demkovich*, 3 F.4th at 975; *Tomic*, 442 F.3d at 1042.

The panel's legal errors undermine its jurisdictional analysis. *See* EEOC Br.31-32; Op.18-23. More importantly, though, they reflect a fundamental misunderstanding of church autonomy that threatens religious institutions and courts across the Circuit. Rehearing is merited.

## CONCLUSION

Moody respectfully requests the Court grant rehearing.

Respectfully submitted.

/s/ Daniel H. Blomberg

| | |
|---|---|
| Christian M. Poland | Daniel H. Blomberg |
| BRYAN CAVE LEIGHTON | Luke W. Goodrich |
|   PAISNER LLP | Laura Wolk Slavis |
| 161 N. Clark St., | Colten L. Stanberry |
|   Ste. 4300 | Richard C. Osborne |
| Chicago, IL 60601-3315 | THE BECKET FUND FOR |
| (312) 602-5085 |   RELIGIOUS LIBERTY |
| christian.poland@bclplaw.com | 1919 Pennsylvania Ave. N.W., |
| |   Ste. 400 |
| | Washington, DC 20006 |
| | (202) 955-0095 |
| | dblomberg@becketlaw.org |

*Counsel for Defendant-Appellant*

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS, AND
TYPE-STYLE REQUIREMENTS**

1. This brief complies with the length limitation of Fed. R. App. P. 35(b)(2)(A) because it contains 3,894 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2. This brief complies with the requirements of Fed. R. App. P. 32(a) and Circuit Rule 32(b) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 12-point Century Schoolbook font.

/s/ *Daniel H. Blomberg*
Daniel H. Blomberg

Dated: April 15, 2024

**CERTIFICATE OF SERVICE**

I certify that on April 15, 2024, the foregoing brief was served on counsel for all parties by means of the Court's ECF system. In compliance with 7th Cir. R. 40(b), thirty copies of this petition will be served upon the Office of the Clerk of Court via US Mail within seven days of electronic filing.

/s/ *Daniel H. Blomberg*
Daniel H. Blomberg