No. 21-2683

IN THE

# United States Court of Appeals for the Seventh Circuit

JANAY E. GARRICK,

*Plaintiff–Appellee*,

*v.*

MOODY BIBLE INSTITUTE,

*Defendant–Appellant*.

On Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division, Case No. 1:18-CV-00573

**BRIEF OF DR. LAEL WEINBERGER AS AMICUS CURIAE
IN SUPPORT OF MOODY BIBLE AND REHEARING EN BANC**

James A. Sonne
**STANFORD LAW SCHOOL
RELIGIOUS LIBERTY CLINIC**
Stanford Law School
559 Nathan Abbott Way
Stanford, CA 94305
Tel: (650) 723-1422
Fax: (650) 723-4426
jsonne@law.stanford.edu

Aaron M. Streett
Elisabeth Butler
Matthew Hilderbrand[*]
Beau Carter
**BAKER BOTTS L.L.P.**
910 Louisiana St.
Houston, Texas 77002
Tel: (713) 229-1855
Fax: (713) 229-7855
aaron.streett@bakerbotts.com
*Counsel for Amicus Curiae*

---

[*] Application for admission submitted and remains pending. *See* 7th Cir. R. 46(a).

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 21-2683

Short Caption: Janay Garrick v. Moody Bible Institute

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Lael Weinberger

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Baker Botts LLP; Stanford Law School Religious Liberty Clinic

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: s/ Aaron M. Streett    Date: 4/22/2024

Attorney's Printed Name: Aaron M. Streett

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ✓    **No** ☐

Address: 910 Louisiana Street

    Houston, Texas 77002

Phone Number: 713-229-1855    Fax Number: 713-229-7855

E-Mail Address: aaron.streett@bakerbotts.com

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2683

Short Caption: Janay Garrick v. Moody Bible Institute

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

    ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Lael Weinberger

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Baker Botts LLP; Stanford Law School Religious Liberty Clinic

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: s/ James A. Sonne    Date: 4/22/2024

Attorney's Printed Name: James A. Sonne

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    Yes ☐    No ☑

Address: Stanford Law School, 559 Nathan Abbott Way

    Stanford, CA 94305

Phone Number: 650-723-1422    Fax Number: 650-723-4426

E-Mail Address: jsonne@law.stanford.edu

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 21-2683

Short Caption: Janay Garrick v. Moody Bible Institute

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information.  The text of the statement must also be included in the front of the table of contents of the party's main brief.  **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐     **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)      The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate  disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Lael Weinberger

(2)      The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Baker Botts LLP; Stanford Law School Religious Liberty Clinic

(3)      If the party, amicus or intervenor is a corporation:

    i)      Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)      Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)      Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: s/ Elisabeth Butler      Date: 4/22/2024

Attorney's Printed Name:  Elisabeth Butler

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).   **Yes** ☐   **No** ☑

Address:  910 Louisiana Street

    Houston, Texas 77002

Phone Number: 713-229-1855      Fax Number: 713-229-7855

E-Mail Address: elisabeth.butler@bakerbotts.com

## APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT

Appellate Court No: 21-2683

Short Caption: Janay Garrick v. Moody Bible Institute

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

      ☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

Lael Weinberger

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

Baker Botts LLP; Stanford Law School Religious Liberty Clinic

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

N/A

Attorney's Signature: s/ Matthew M. Hilderbrand    Date: 4/22/2024

Attorney's Printed Name: Matthew M. Hilderbrand (application for admission submitted and pending, per 7th Cir. Rule 46(a))

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐    **No** ☑

Address: 401 South First Street, Suite 1300

Austin, TX 78704

Phone Number: 512-322-2513    Fax Number: 512-322-3613

E-Mail Address: matthew.hilderbrand@bakerbotts.com

rev. 12/19 AK

**APPEARANCE & CIRCUIT RULE 26.1 DISCLOSURE STATEMENT**

Appellate Court No: 21-2683

Short Caption: Janay Garrick v. Moody Bible Institute

    To enable the judges to determine whether recusal is necessary or appropriate, an attorney for a non-governmental party, amicus curiae, intervenor or a private attorney representing a government party, must furnish a disclosure statement providing the following information in compliance with Circuit Rule 26.1 and Fed. R. App. P. 26.1.

    The Court prefers that the disclosure statements be filed immediately following docketing; but, the disclosure statement must be filed within 21 days of docketing or upon the filing of a motion, response, petition, or answer in this court, whichever occurs first. Attorneys are required to file an amended statement to reflect any material changes in the required information. The text of the statement must also be included in the front of the table of contents of the party's main brief. **Counsel is required to complete the entire statement and to use N/A for any information that is not applicable if this form is used.**

☐    **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)    The full name of every party that the attorney represents in the case (if the party is a corporation, you must provide the corporate disclosure information required by Fed. R. App. P. 26.1 by completing item #3):

    Lael Weinberger

(2)    The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

    Baker Botts LLP; Stanford Law School Religious Liberty Clinic

(3)    If the party, amicus or intervenor is a corporation:

    i)    Identify all its parent corporations, if any; and

        N/A

    ii)    list any publicly held company that owns 10% or more of the party's, amicus' or intervenor's stock:

        N/A

(4)    Provide information required by FRAP 26.1(b) – Organizational Victims in Criminal Cases:

    N/A

(5)    Provide Debtor information required by FRAP 26.1 (c) 1 & 2:

    N/A

Attorney's Signature: s/ Christopher Beau Carter    Date: 4/22/2024

Attorney's Printed Name: Christopher Beau Carter

Please indicate if you are *Counsel of Record* for the above listed parties pursuant to Circuit Rule 3(d).    **Yes** ☐  **No** ☑

Address: 910 Louisiana Street

    Houston, Texas 77002

Phone Number: 713-229-1855    Fax Number: 713-229-7855

E-Mail Address: beau.carter@bakerbotts.com

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........................................................................ ii

INTEREST OF AMICUS CURIAE .......................................................... 1

INTRODUCTION & SUMMARY OF ARGUMENT ............................... 1

ARGUMENT ............................................................................................ 2

    I.      CASE LAW: ACT III AS FIRST AMENDMENT HARM ................. 3

    II.     CASE STUDY: WHAT HAPPENS IN ACT III? ........................... 4

        A.     Act I: The Falling Out ................................................ 5

        B.     Act II: Ministerial-Exception Litigation ..................... 6

        C.     Act III: The Aftermath ............................................... 8

        D.     Epilogue: The Lesson of Act III ............................... 10

CONCLUSION ....................................................................................... 12

CERTIFICATE OF COMPLIANCE ....................................................... 13

CERTIFICATE OF SERVICE ............................................................... 14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*,
565 U.S. 171 (2012)............................................................................................3

*McCarthy v. Fuller*,
714 F.3d 971 (7th Cir. 2013) ...............................................................................11

*Mitchell v. Forsyth*,
472 U.S. 511 (1985)............................................................................................2

*Our Lady of Guadalupe Sch. v. Morrissey-Berru*,
140 S. Ct. 2049 (2020).........................................................................................3

*Petruska v. Gannon Univ.*,
462 F.3d 294 (3d Cir. 2006) ...............................................................................11

*Skrzypczak v. Roman Cath. Diocese of Tulsa*,
611 F.3d 1238 (10th Cir. 2010) ...........................................................................11

*Tucker v. Faith Bible Chapel Int'l*,
2020 WL 2526798 (D. Colo. May 18, 2020) ......................................................8

*Tucker v. Faith Bible Chapel Int'l*,
36 F.4th 1021 (10th Cir. 2022) .......................................................................8, 9

*United Methodist Church v. White*,
571 A.2d 790 (D.C. 1990) ...................................................................................3

*Watson v. Jones*,
80 U.S. 679 (1872)..................................................................................3, 4, 10

**Statutes**

28 U.S.C. § 1291 .................................................................................................4

**Other Authorities**

Paul Horwitz, *Act III of the Ministerial Exception*, 106 Nw. U. L. Rev.
973 (2012)............................................................................................................1

*Tucker v. Faith Bible Chapel Int'l,*
    No. 19-CV-01652-RBJ (D. Colo. filed June 7, 2019).................................*passim*

Lael Weinberger, *Is Church Autonomy Jurisdictional?*, 54 LOY. U.
    CHI. L.J. 471, 504 (2023) ...................................................................................4

Lael Weinberger, *The Limits of Church Autonomy*, 98 NOTRE DAME
    L. REV. 1253 (2023).............................................................................................10

**INTEREST OF AMICUS CURIAE**

Dr. Lael Weinberger is a nonresident fellow at the Constitutional Law Center at Stanford Law School and an attorney with the Washington, D.C., office of Gibson, Dunn & Crutcher. He has written and taught on church autonomy and has an interest in the sound development of this field of law.[1]

**INTRODUCTION & SUMMARY OF ARGUMENT**

Like a piece of theatre, church autonomy litigation can be viewed as unfolding over three discrete acts. *See* Paul Horwitz, *Act III of the Ministerial Exception*, 106 Nw. U. L. Rev. 973 (2012). Act I is the prelude to conflict, where seeds of discord are sown, and wherein tensions and disputes outside the courtroom set the stage for the legal drama to follow. As the curtain rises for Act II, legal proceedings begin. It is here that the religious institution (typically in the role of defendant) raises the shield of church autonomy.

The outcome of Act II is pivotal; if the doctrine correctly applies, then Act III transitions to a quiet resolution, with the church moving forward without further judicial scrutiny. The plaintiff, of course, can immediately appeal. If the doctrine is incorrectly denied, however, then under the panel majority's rule the church cannot appeal immediately. Act III then becomes an extended and costly legal battle,

---

[1] No counsel for a party authored this brief in whole or in part. No counsel or party made any monetary contribution intended to fund the preparation or submission of this brief.

1

potentially putting courts in the constitutionally untenable position of interfering with the free exercise of religion and deciding matters of religious doctrine, governance, and discipline.

This case is in Act II—for now. If en-banc review is denied, however, the case transitions to Act III. *Faith Bible*, a recent case from Colorado, foreshadows Moody Bible's likely fate, demonstrating how Act III unfolds when the church-autonomy defense is incorrectly denied and interlocutory appeal is unavailable.

The panel majority here assumed that an erroneous denial of church autonomy can be fixed *after* discovery, trial, and judgment. Not so. Church autonomy protects against being subjected to litigation at all; an incorrect denial of church autonomy is impossible to fix after litigation. Interlocutory appeal *before* Act III prevents that harm. The Court should grant rehearing *en banc*.

## ARGUMENT

The whole point of church autonomy is to avoid subjecting religious matters to judicial scrutiny in the first place. When such questions are left unresolved until the *end* of litigation, that purpose is defeated. By that time, the damage is done. *Mitchell v. Forsyth*, 472 U.S. 511, 526-27 (1985). The *Faith Bible* drama offers a vivid case study of this point.

## I.    Case Law: Act III as First Amendment Harm

The Free Exercise and Establishment Clauses give rise to what courts call the church-autonomy doctrine.[2] Interfering with the internal governance of a religious institution violates religious liberty (free exercise), and taking sides in such disputes lets the court dictate religious dogma (establishment). *Hosanna-Tabor Evangelical Lutheran Church & Sch. v. EEOC*, 565 U.S. 171, 188-89 (2012). Thus, the church-autonomy doctrine gives churches "independence in matters of faith and doctrine and in closely linked matters of internal government." *Our Lady of Guadalupe Sch. v. Morrissey-Berru*, 140 S. Ct. 2049, 2061 (2020).

When church autonomy is wrongly denied, the constitutional harm is not just liability; it is the litigation itself. The Religion Clauses "grant churches an immunity from civil discovery"—for "once exposed to discovery and trial, the constitutional rights of the church to operate free of judicial scrutiny would be irreparably violated." *United Methodist Church v. White*, 571 A.2d 790, 792-93 (D.C. 1990).

Denying church autonomy also puts judges in an impossible position. As the Supreme Court has long acknowledged, religious authorities are more "competent in the ecclesiastical law and religious faith" than are judges. *Watson v. Jones*, 80 U.S. 679, 729 (1872). To appeal from the religious body to the courts "would

---

[2] The doctrine shields all religious institutions—churches, synagogues, mosques, etc.—but for convenience, Amicus follows the Supreme Court in using "church autonomy" as a generic label.

therefore be an appeal from the more learned tribunal in the law which should decide the case, to one which is less so." *Id.*

Therefore, the question whether church autonomy applies should be resolved as early as possible. If the defense is denied erroneously and the lawsuit allowed to proceed, there is no way to undo the constitutional harm which occurs simply by virtue of the litigation itself. Lael Weinberger, *Is Church Autonomy Jurisdictional?*, 54 LOY. U. CHI. L.J. 471, 504-05 (2023).

## II. CASE STUDY: WHAT HAPPENS IN ACT III?

Under the panel majority's rule, the right to appeal in church autonomy cases is asymmetrical. Plaintiffs can appeal an erroneous grant of immunity under 28 U.S.C. § 1291. Churches, however, must wait until after the case concludes. But even if the denial of church autonomy is found erroneous, the damage is done.

A recent lawsuit in Colorado provides a case study. In *Tucker v. Faith Bible Chapel Int'l*, No. 19-CV-01652-RBJ (D. Colo. filed June 7, 2019), a local church operated a Christian school, which terminated a teacher after a contentious debate about theology and pedagogy at the school.

After courts rejected Faith Bible's church-autonomy defense, the parties developed a rich public record of the dispute, documenting the burdens on the parties in Act III. This record illustrates what is at stake for many religious institutions upon getting a debatable denial: considerable (and *expensive*) litigation about sensitive

matters of theology and practice within the religious institution. While one should
of course be careful about generalizing from a single case, *Faith Bible* is nonetheless
helpful, as it shows the chaos that happens when a religious dispute is forced through
protracted litigation.

## A. Act I: The Falling Out

In *Faith Bible* Act I, the characters are plaintiff Gregg Tucker and defendant
Faith Bible Chapel International ("Faith Bible").

Faith Bible is a church in Colorado. ECF 72 at 4.[3] It operated a religious
school, Faith Christian Academy. *Id.* Both were dedicated to the same purpose: to
"[b]ring[] people to Jesus and to membership in His Family" and "[e]quip[] people
for their ministry in the church and life mission in the world." *Id.* Founded in 1965,
the church is a fixture in the community. ECF 41-4 at 1.

Tucker taught at the school from 2000 to 2006, left for missions work
overseas, and then returned to teaching at Faith Bible from 2010 until 2018. ECF
41-7 at 1. This productive relationship came to a dramatic end in 2018. ECF 25 at 1.
Because "celebrating God's diverse Kingdom is integral to Faith Bible's core
mission," it held a special chapel program on race and faith, a subject that in
American church history has unfortunately been fraught with controversy and
division. *Id.* at 1-3.

---

[3] All ECF citations refer to the *Faith Bible* district-court docket. *See* D. Colo. No. 19-cv-1652.

Tucker disagreed with other leadership in the church and school about how to address the subject and about the proper use of Scripture in analyzing it. *Id.* at 6. Tucker did the chapel service his way, seeking to confront what he believed to be racism in the community. ECF 13 at 10-11. Parents and students complained. *Id.* at 12. Faith Bible leadership believed Tucker had misapplied Scripture and approached the issue in an inappropriately confrontational manner. ECF 25 at 6. Tucker refused to acknowledge the validity of their concerns or their interpretations of Scripture, instead choosing to publish a letter airing his views. *Id.* He openly opposed leadership on the issue. ECF 57 at 19-20. Predictably, it did not end well. Tucker lost his job, the school lost goodwill, and Tucker sued.

**B. Act II: Ministerial-Exception Litigation**

Tucker alleged that the school fired him in retaliation for opposing a racially hostile environment, in violation of Title VII. ECF 13. As in this case, Tucker's pleading artfully avoided mentioning many religious aspects of Faith Bible and his position there. Indeed, he *amended* his original complaint in an unabashed effort to downplay the role of religion to survive a motion to dismiss. For example, he deleted his original description of Faith Bible Chapel International as a "religious organization," rebranding it as "FBCI," which operated a "vast business network":

> 12.　FBCI operates a vast business network. Each business activity of FBCI is carried out by a distinct enterprise, doing business under a trade name of FBCI. ~~At all times applicable herein, Defendant Faith Bible Chapel International Inc. is a religious organization incorporated within the laws of the State of Colorado.~~

ECF 13-1 at 4. He deleted the word "chapel" in describing the event on faith and race, styling it a "symposium" without reference to its religious setting:

> ~~3.　Plaintiff~~ Tucker had been given authority to organize the ~~Chapel~~ symposium and was at first praised for it by the school's administration. However, after the symposium ~~Chapel~~,

*Id.* at 2. And he removed references to his position as Chapel director:

> 92.　~~In response to these parental complaints, Defendant~~ Hasz and Cook told Tucker that, in response to parent complaints, he would no longer have the responsibility of planning

> Chapel Meetings. ~~removed Plaintiff from his position as Chapel director and~~ Hasz and Cook also told Tucker that he was banned ~~him~~ from speaking in front of students at future Chapel Meetings.

*Id.* at 18-19.

　　Faith Bible moved to dismiss the complaint under the ministerial exception. ECF 25. But on Tucker's motion, ECF 29, the court converted the motion to one for summary judgment, ECF 32, permitted Tucker months to conduct discovery, *id.*, and

denied Faith Bible's defense, ECF 52. The court reasoned, based "on the totality of the facts and circumstances"—drawn entirely from Tucker's own declaration, ECF 41-7—that a jury could conclude Tucker was not a "minister" within the ministerial exception. *Tucker v. Faith Bible Chapel Int'l*, 2020 WL 2526798, at \*6 (D. Colo. May 18, 2020).

On interlocutory appeal, over a vigorous dissent the Tenth Circuit, like the panel majority here, held that it lacked appellate jurisdiction, *Tucker v. Faith Bible Chapel Int'l*, 36 F.4th 1021, 1028 (10th Cir. 2022), mistakenly believing "this category of orders . . . can be effectively reviewed in the usual course of litigation," *id*. at 1036. With that, the case went back for Act III.

### C. Act III: The Aftermath

As it turns out, on remand, trying to work *around* religious issues did not go well. As should have been evident from the beginning of the matter, religious issues suffused the case.

Start with Tucker's job. Tucker had emphasized the science classes he taught, ECF 41-7 at 2, saying he did not teach "specific theology" or "doctrine," *id.* at 2-4. Discovery revealed, however, that most of his teaching took place in the Bible department. He taught 53 courses, *51* of which were in the Bible department, teaching aspects of Scripture, Christian doctrine, and theology. ECF 118-1 at 53. These included a "Foundations of Faith" course, with the Bible as the primary text

("prepar[ing students] for leadership in the church"), and "Worldviews and World Religions," which emphasized evangelism. ECF 118-1 at 4, 12. Tucker led missions trips locally and internationally, ECF 118-1 at 19, and in 2017 he assumed the role of "Chaplain," ECF 25-1 at 1.

Despite increasing evidence confirming that Tucker's job was anything but secular, the district court would not reconsider the ministerial exception, stating it would not address issues "previously decided," ECF 102 at 11, or bifurcate the issue, *id.* at 13. The Tenth Circuit held, after all, that the defense could "be effectively reviewed at the conclusion of the litigation." *Tucker*, 36 F.4th at 1048.

But while discovery lingered on, Faith Bible's expenses were mounting. The court knew this. It repeatedly pushed the parties towards settlement due to the "substantial" "litigation costs" the parties were incurring. ECF 102 at 10. It "strongly recommend[ed]" mediation because "the discovery process, preparation for trial, a lengthy jury trial, and what the Court suspects is an inevitable appeal from the result, will be very expensive to the parties." ECF 104; *see* ECF 122 (denying extension because "[t]he best motivator for a settlement is a fixed trial date").

Given the evidence produced in discovery, Faith Bible intended to move for summary judgment. ECF 125. If the applicability of the ministerial exception was at all doubtful at the pleading stage, it wasn't anymore. But the settlement conference was first. Whatever calculus Faith Bible had in mind for weighing the ongoing costs,

psychological strain, and other burdens of litigation, as well as the statements of the district court about rehearing the defense, it was not enough to lead Faith Bible to stick to its contemplated course. *See* ECF 118 at 2-4 (describing the burdens of litigation). The parties settled. ECF 129. Act III was over, settlement drawing the curtain over whatever remained of the story.

### D. Epilogue: The Lesson of Act III

Act III of the *Faith Bible* story has no shocking twists. Its predictability is the point—and the problem. Church autonomy shields religious institutions from state intrusion on their internal affairs. If the judicial system can peer inside and second-guess decisions of religious institutions, there is considerably less autonomy for the religious institution in question. If the invocation of church autonomy were totally meritless in a given case, that would be one thing. *See* Lael Weinberger, *The Limits of Church Autonomy*, 98 NOTRE DAME L. REV. 1253 (2023) (urging recognition of limits of church autonomy). But when the religious component of the dispute is anything but trivial, as in *Faith Bible*, one wonders how a case like this could be allowed to proceed without serious consideration of church autonomy.

As it turns out, the process is the punishment.

The civil courts are not experts in religious law. They are not supposed to be. When one takes a religious dispute to a secular tribunal, it goes from a court with more expertise to one with less. *Watson*, 80 U.S. at 729. It is nigh impossible for a

court to navigate the treacherous shoals of a religious dispute without crashing ashore.

Meanwhile, it is no great discovery that defending a lawsuit is burdensome. This reality is what courts have acknowledged in the qualified-immunity context, where interlocutory appeals are available. Multiple courts, including this one, have recognized the similarities between church autonomy and qualified immunity. *See, e.g.*, *McCarthy v. Fuller*, 714 F.3d 971, 975 (7th Cir. 2013) (justifying collateral review of denial of church autonomy because it is "closely akin to a denial of official immunity"); *Skrzypczak v. Roman Cath. Diocese of Tulsa*, 611 F.3d 1238, 1242 (10th Cir. 2010) ("[T]he ministerial exception, like the broader church autonomy doctrine, can be likened 'to a government official's defense of qualified immunity.'" (citing *Petruska v. Gannon Univ.*, 462 F.3d 294, 303 (3d Cir. 2006))).

Of course, some religious institutions will assert a church-autonomy claim at Act II and lose. But if that happens, courts should know it is unrealistic that review at the end of Act III will provide an equally good chance to review as at the end of Act II. Given the costs of litigation and the harms imposed upon the congregation, the religious institution might not be able to raise its church-autonomy defense again. Critically, the chief harms that church autonomy guards against—suppression of free religious exercise and the courts' lack of competence—are aggravated by dragging religious institutions through the litigation process until the bitter end.

## CONCLUSION

Amicus respectfully urges the Court to grant rehearing en banc.

April 22, 2024

Respectfully submitted,

/s/ *Aaron M. Streett*

James A. Sonne
**STANFORD LAW SCHOOL
RELIGIOUS LIBERTY CLINIC**
Stanford Law School
559 Nathan Abbott Way
Stanford, CA 94305
Tel: (650) 723-1422
Fax: (650) 723-4426
jsonne@law.stanford.edu

Aaron M. Streett
Elisabeth Butler
Matthew M. Hilderbrand[*]
Beau Carter
**BAKER BOTTS L.L.P.**
910 Louisiana St.
Houston, Texas 77002
Tel: (713) 229-1855
Fax: (713) 229-7855
aaron.streett@bakerbotts.com

*Counsel for Amicus Curiae
Dr. Lael Weinberger*

---

[*] Application for admission submitted and remains pending. *See* 7th Cir. R. 46(a).

**CERTIFICATE OF COMPLIANCE**

1.      This document complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7) because, excluding the parts of the document exempt from the limit by Federal Rule of Appellate Procedure 32(f), this document contains 2,594 words, including words in screenshots.

2.      This document complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5) and Circuit Rule 32(b), and the type-style requirements of Federal Rule of Appellate Procedure 32(a)(6), because this document has been prepared in a proportionally spaced typeface using Microsoft Word for Office 365 in 14-point Times New Roman, with footnotes in 11-point Times New Roman.

*/s/ Aaron M. Streett*
Aaron M. Streett

**CERTIFICATE OF SERVICE**

I certify that on April 22, 2024, the foregoing was electronically filed through this Court's CM/ECF system, which will send a notice of filing to all registered users.

/s/ Aaron M. Streett
Aaron M. Streett